**ATTACHMENT E**



**UNITED STATES MARINE CORPS**
DEFENSE SERVICES ORGANIZATION
MARINE CORPS RECRUIT DEPOT
3700 CHOSIN AVENUE
SAN DIEGO, CALIFORNIA 92140-5197

IN REPLY REFER TO:
5800
9D
30 Mar 2012

From:  Capt N.R. Grey, Counsel for Respondent
To:    Naval Civil Law Support Activity, Code 132
Via:   Civil Law Officer, MCRD San Diego

Subj:  ETHICS ADVISEMENT REQUEST ICO POLITICAL ACTIVITIES OF SGT GARY STEIN,
       USMC, 0101/6842


1.   I have been assigned as defense counsel to represent eight-year veteran
Marine Sgt. Gary A. Stein before an Administrative Separation Board which has
been scheduled to convene on 5 April 2012 to hear charges against Sgt. Stein
for alleged inappropriate use of a social media website in violation of
Department of Defense ("DoD") Directive Number 1344.10.  Based on my
examination of that Directive and other guidance, I believe that Sgt. Stein
is unable to have fair notice of the charges against him, is unable to defend
against those charges, and is unable to receive a fair hearing because the
charge is based on an ambiguous and conflicting set of policies which have
never been clarified by implementing regulations, as required by DoD
Directive 1344.10.5.2.  The ambiguity and confusion in the DoD Directive,
which implicates First Amendment rights to speech, press, religion, assembly
and petition, could be resolved by the issuance of a Legal Ethics Opinion by
your office to ensure that the DoD directive is being interpreted consistent
with an injunction against DoD and the United States Navy by the United
States District Court for the District of Columbia that was never appealed.
*See Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997).  Therefore, on behalf of
Sgt. Gary Stein, I submit this request for a Legal Ethics Opinion on the
following three issues:

**Questions Presented**

2.   **Question One:**  Have the Defense Department's Directive Number 1344.10 and
other interpretative documents been modified to fully comply with the Order
of United States District Court Judge Stanley Sporkin against the Department
of Defense, et al., in *Rigdon v. Perry*, 962 F. Supp. 150, 166 (D.D.C. 1997),
"that the defendants' interpretation of DoD Directive 1344.10 and similar
regulations as barring the plaintiff chaplains from urging their military
congregants to communicate with Congress on passage of the Partial Birth
Abortion Ban Act violates the plaintiffs' rights under the First Amendment"
and that "the defendants, the defendants' officers, agents, servants,
employees, and attorneys, and those persons in active concert or
participation with the defendants who receive actual notice of this order are
hereby ENJOINED from interpreting DoD Directive 1344.10, or any similar law
or regulation, in a manner that prohibits the plaintiffs from exercising
their free speech ... rights under the First Amendment of the Constitution…."

Subj:  ETHICS ADVISEMENT REQUEST ICO POLITICAL ACTIVITIES OF SGT GARY STEIN,
       USMC, 0101/6842

3.   **Question Two:**  May an active duty, non-commissioned U.S. Marine
maintaining a Facebook web page bearing a clear disclaimer that all
statements are personal views, not made in an official capacity and not
representing the views of the Marine Corps, make statements
thereon supporting or opposing either (i) a political party or (ii) a candidate for
federal, state or local office or (iii) both?

4.   **Question Three:**  May such a Marine make statements critical of a
candidate for political office when that candidate is also currently serving
in office?  Does a separate rule apply to criticisms of a candidate for
political office serving as President of the United States?

**Ambiguities and Confusion in DOD Directive 1344.10.4**

5.   The restrictions against (a) speaking before a partisan political
gathering, including any gathering that promotes a cause; and (b)
participating in any "discussion" as an advocate for or against a cause
appear to be content- and viewpoint-discriminatory.  See *Rigdon v. Perry*, 962
F. Supp. 150, 164 (D.D.C. 1997).  This is because, while the promotion or
discussion as an advocate of the incumbent president is *permitted*, a member
is *prohibited* from engaging in such speech with regard to opposing the
incumbent as well as supporting the non-incumbent candidate for president.
Likewise, the restrictions prohibit advocacy of causes deemed to be *contrary*
to existing policy, while permitting members to promote or discuss views in
*support* of existing policy.  Thus, speech in support of the incumbent
president, existing legislation, or public policy would comply with these
restrictions.  On the other hand, speech *not* in support of the incumbent
president, existing legislation, or public policy would violate these
restrictions.  Can these restrictions be used to subject a member to punitive
action under the UCMJ or be used to involuntarily separate a member from the
armed forces?

6.   According to DoD Directive 1344.10.4, it is DoD policy "to encourage
members of the Armed Forces ... to carry out the **obligations of citizenship**."
The obligations of citizenship include the exercise of the voting franchise
and the selection of elected officials to represent the people in our
Constitutional Republic.  To that end, according to sections 4.1.1.1 and
4.1.1.6 of the directive, a service member may express his "personal opinion
on **political candidates** and issues," including writing a "letter to the
editor of a newspaper expressing the member's personal views on public issues
or **political** candidates."  However, he is also told that he may not engage in
any activity that could be construed as **partisan advocacy or endorsement** on
behalf of any specific **political candidate or issue**.  *See* sections 4.1.1.6
and 4.1.2.3.  (Emphasis added.)  The distinction between expressing an
opinion publicly on political candidates, which is permitted, as opposed to
partisan advocacy and endorsements, which is prohibited, is not explained in
such a way as to ensure that the service members would know what they can and
cannot say.  Without providing a careful distinction between expressing one's
opinion and partisan advocacy or endorsement, it appears that the rights of a
service member under this policy depend upon the zeal, or lack thereof, in
the expression of one's opinion, or the subjective opinion of whoever might
be deciding the question.

7.   The DoD Directive encourages a service member "to carry out the
obligations of citizenship," but could be read to imply that he must act

Subj:  ETHICS ADVISEMENT REQUEST ICO POLITICAL ACTIVITIES OF SGT GARY STEIN,
       USMC, 0101/6842

alone, not in cooperation or concert with others.  *See, e.g.,* sections
4.1.1.1, 4.1.1.6, 4.1.1.8, 4.1.2.1, and 4.1.2.3.  Indeed, section 4.1.2.3
prohibits a service member from even "allow[ing]" others to use any
expression of a service member's political opinion to "solicit votes."
Additionally, although section 4.1.1.2 permits a service member to "promote
and encourage others to exercise their voting franchise," could such action
be construed as an impermissible effort to solicit a vote on behalf of the
candidate that he supports and, thus, be in violation of section 4.1.1.3?

8.   The DoD Directive is unclear as to its application to a public figure
wearing two hats as a candidate for election and as an incumbent office
holder.  While section 4.1.1.1 states that a service member may express "a
personal opinion on political candidates and issues," how would this
provision be construed if an opinion expressed relates to actions taken by a
candidate for President who happens also to be an incumbent office holder?
Would there be a different rule that applies to an incumbent office holder
who happens to be President of the United States?

9.   DoD Directive 1344.10 at 4.1.2.3 prohibits the publication of "partisan
political articles, letters, or endorsements signed or written by the member
that solicits votes for or against a []cause."  Section 4.1.2.5 states that a
member of the Armed Forces shall not "Speak before a partisan political
gathering, including any gathering that promotes a []cause."  Finally,
4.1.2.6 prohibits "Participat[ion] in any radio, television, or other program
or group discussion as an advocate for or against a []cause."  The term
"cause" is used in several other places in DoD Directive 1344.10; however,
the term is nowhere defined.  The term "cause" would seem to be capable of
encompassing all public policy issues, thereby undermining the very duty of
citizenship which is the stated policy objective of the Directive.  Examples
include questions of religion, "Don't Ask – Don't Tell", pro-choice vs. pro-
life, gun rights, or virtually any policy issue being widely discussed in the
nation.  In light of the important constitutional guarantees of the freedoms
of speech, press, assembly and petition, it appears that a clearly stated,
working definition of this term would best forward the aims of the directive
rather than the punitive enforcement or administrative discharge proceedings
under Article 134, UCMJ, resulting in involuntary separation.

10.  DoD Directive 1344.10, while specifically designed to "encourage members
of the Armed Forces ... to carry out the obligations of citizenship," fails
to provide for a safe harbor wherein such citizenship would be encouraged.
Instead, it appears that the only procedures are punitive in the nature of
either a threatened court martial or an involuntary separation.  In light of
the important constitutional guarantees of the freedoms of speech, press,
assembly and petition, it appears that procedures that would facilitate
correction, modification and mediation would best forward the aims of the
directive rather than the punitive enforcement or administrative discharge
proceedings under Article 134, UCMJ, resulting in involuntary separation.

11.  DoD Directive 1344.10 at 4.1.1.6 permits a Member to "Write a letter to
the editor of a newspaper expressing the member's personal views on public
issues."  May a soldier state the truism that he would not obey an
unconstitutional or illegal order?

12.  Section 4.1.3 states that "commissioned officers shall not use
contemptuous words," as prohibited by law.  This is consistent with Article

Subj:  ETHICS ADVISEMENT REQUEST ICO POLITICAL ACTIVITIES OF SGT GARY STEIN,
       USMC, 0101/6842

88, UCMJ.  Under the rule of construction *expressio unius est exclusio
alterius,* this Guidance document exempts non-commissioned officers and
enlisted men from this restriction.  Can this section be used as the basis
for the punitive action against an enlisted man?

**Lack of Clarifying Implementing Guidance**

13.  Regulations and procedures are regularly produced by the secretaries of
the various military forces to implement and clarify such directives, but we
have identified only one that appears to be relevant — a Department of the
Navy Guidance for Unofficial Internet Posts and "Social Media Guidance"
released on June 2010 (hereinafter "DON Internet Guidance").  However, even
that Guidance reflects the complexity and ambiguity of DoD Directive
1344.10.5.2 in that it gives persons like Sgt. Stein conflicting signals,
simultaneously advising "You can express your **political** opinion within DoD
guidelines," but then warning "Don't Get **Political**."  (Emphasis added.)  The
DON Unofficial Internet Posts and Social Media Guidance fails to provide the
necessary clarification for what is and what is not permitted.  Instead, it
restates in simple language what is set forth in DOD Directive 1344.10,
bringing no clarification to the ambiguities in that document.

**Conclusion**

14.  The members of the board who have been appointed by the convening
authority to hear the case of Sgt. Stein are not lawyers, or otherwise
legally trained, but they nevertheless will be required to interpret and to
apply the complex and conflicting policy standards which limit First
Amendment rights to free speech, press, religion, assembly and petition
discussed above.  Issuance of a Legal Advisory Opinion would provide those
members with necessary guidance to fulfill their role relating to the
Administrative Discharge hearing.  Clear legal guidance is also needed by
Sgt. Stein well before the hearing so he can know the rules which govern his
behavior, have understanding of the charges against him, and be able to make
a proper defense of his actions.  Further, there is a need for clear guidance
for Members of the Armed Forces as to what they may or may not do, and what
communications and personal expressions are permitted with respect to the new
area of social media.  Such guidance should, of course, be consistent with
established First Amendment law.

N. R. GREY