GARY G. KREEP (CA Bar No. 066482)
NATHANIEL J. OLESON (CA Bar No. 276695)
UNITED STATES JUSTICE FOUNDATION
932 "D" Street, Suite 3
Ramona, California 92065
Tel: (760) 788-6624
Fax: (760) 788-6414
usjf@usjf.net
njoleson@gmail.com

Attorneys for Plaintiff,
Gary A. Stein

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEANT GARY A. STEIN, United States Marine Corps, Camp Pendleton, California 92055;<br><br>Plaintiff,<br><br>v.<br><br>COLONEL C.S. DOWLING, Commander, Weapons and Field Training Battalion, Camp Pendleton, California 92055; RAY MABUS, SECRETARY OF THE UNITED STATES NAVY, The Pentagon, Washington, D.C.; UNITED STATES DEPARTMENT OF DEFENSE, The Pentagon, Washington, D.C.; UNITED STATES OF AMERICA; and, BRIGADIER GENERAL DANIEL YOO;<br><br>Defendants. | Case No.: **'12 CV 0816 H    BGS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

## INTRODUCTION

This is a case about protecting a U. S. Marine against unconstitutional discharge in retaliation for protected speech. Sergeant Gary Stein has served with honor in the Marine Corps for almost nine years, yet he faces the imminent prospect of unfairly expedited proceedings to give him an "Other Than Honorable" discharge, with all its attendant stigma, solely because he has exercised his First Amendment right to speak on matters of public concern in ways that his superiors do not approve. Though he has been vocal about his positions, he has made clear that he speaks only for himself, not for the U. S. Marine Corps, and not for the military. Though he may have spoken intemperately about certain actions of the current Presidential Administration, he has repeatedly and publicly clarified that he was speaking only about the settled rule—codified in military law itself—that servicemembers should not follow unlawful orders. He has not disobeyed or advocated disobeying any particular order issued by any superior officer. His speech is fully protected by the First Amendment, even as applied to the military. Because this case presents substantial Constitutional questions, Sergeant Stein need not exhaust administrative remedies that would fail to prevent the irreparable harm of his imminent discharge in retaliation for protected speech. The Court is therefore respectfully requested to temporarily enjoin the discharge proceedings.

## STATEMENT OF FACTS

Plaintiff is a Sergeant in the United States Marine Corps, having served for almost nine years. His current term expires in July, 2012. He wishes and intends to reenlist in the Marine Corps. Stein Declaration, para. 21.

During the period 2010-2012, Plaintiff — through activities unconnected with his duties as a Marine, on his own personal time — spoke, wrote, and otherwise communicated with other private citizens in connection with a variety of matters of public concern, including public policy issues. In so doing, Plaintiff expressed personal opinions on political candidates and issues, but not as a representative

of the Armed Forces. Plaintiff maintained an account on the computer social networking site known as "Facebook" (hereinafter "Facebook page"), in conjunction with three other individuals.

In April, 2010, Plaintiff was approached by a Marine officer concerning the Facebook page, because of the possibility that it could be construed as emanating from military sources, rather than from private sources. Plaintiff took down his Facebook page while he reviewed the matter. Plaintiff was urged to add a disclaimer to his Facebook page that all statements therein are personal views, not made in an official capacity and not representing the views of the Marine Corps, if he was going to leave the page up. Plaintiff thereafter put his Facebook page back up on the Internet, adding thereon an appropriate disclaimer consistent with what plaintiff had been advised concerning the permissible maintenance of a Facebook page. Plaintiff was not advised, at that time, nor at any subsequent time, to take down the Facebook page, remove it from the Internet, or to make any modifications thereto. Plaintiff continued his comments on the Facebook page, and continued making statements with respect to candidates for office, believing that such actions were permissible. Stein Declaration, para. 7, 8, 9, 10.

From November, 2010, thru March 1, 2012, Plaintiff, and others, posted on this Facebook page various criticisms of Barack Obama and his Administration's policies. He, and others, also posted various comments concerning legislation and public policy issues, and expressed concern about the enforceability of what he believed could comprise unlawful orders and what he personally could, or should, do if called upon to execute unlawful orders. However, though he expressed opinions and discussed hypothetical unlawful orders in the abstract, he did not disobey, or advocate disobeying, any particular order actually issued by any superior officer. Though some of the language he used in discussing certain hypothetical unlawful orders might have been viewed as intemperate, he subsequently clarified, repeatedly and publicly, that he was only discussing the settled principle of military law that servicemembers should not follow unlawful orders.

On March 21, 2012, plaintiff was served by his commanding officer with notification of an Administrative Separation Proceeding ("AdSep"), stating that his commanding officer intended to seek

his "discharge[] from the U.S. Marine Corps," to have his discharge labeled as under "other than honorable conditions," and to have his rank "reduced to pay grade E-3." Complaint Attachment A. The basis of Plaintiff's separation proceedings are that he:

> (i) made certain **statements** on March 1, 2012 "regarding the President of the United States that are prejudicial to good order and discipline" and
>
> (ii) maintained a **Facebook** web page whose content allegedly violates DOD Directive 1344.10. [*Id.*]

Plaintiff was required by that notice to respond to the notice within two working days, the absolute minimum time required by Section 6304.4 of the Marine Corps Separation and Retirement Manual ("MARCORSEPMAN"). The notice was served on Sgt. Stein during a period that the Defendants knew that all Judge Advocates serving as defense counsel at Plaintiff's base were involved in annual legal training, and, thus, were unavailable to consult with him before his response was required to be filed. Complaint, para. 19. Nevertheless, on March 21, 2012, plaintiff timely responded to that notice.

A hearing was immediately scheduled for March 30, 2012. Defendants were fully aware that Judge Advocates serving as defense counsel were at a conference and could not begin work on Plaintiff's case until March 23, 2012. Complaint, para. 20.

On March 23, 2012, Plaintiff's military attorney notified the hearing officer that he had a scheduling conflict on Friday, March 30, 2012. In response, by letter dated March 23, 2012, the hearing was delayed one day, until Saturday, March 31, 2012. On March 25, 2012, Plaintiff requested from his commanding officer an additional one week in order to allow adequate preparation for the hearing. That request was summarily denied on March 26, 2012. Stein Dec., para. 17.

On or about March 26, 2012, Plaintiff retained as civilian counsel J. Mark Brewer, pursuant to MARCORSEPMAN, Section 6304.3(c). On March 27, 2012, civilian counsel requested an extension of Plaintiff's case for 10 days. On March 28, 2012, that request was denied in part, but the hearing was re-scheduled for April 5, 2012, necessitating the filing of the accompanying Motion for a Temporary

Restraining Order.

On or about March 30, 2012, Plaintiff's military defense counsel filed a request for Legal Ethics Opinion. Stein Dec., para. 20. Counsel sought an opinion on the following critical issues:

> 1. Has the Defense Department's Directive Number 1344.10 and other interpretative documents been modified to fully comply with the Order ... in *Rigdon v. Perry*, 963 F. Supp. 150, 164 (D.D.C. 1997)....
>
> 2. May an active duty, non-commissioned, U.S. Marine maintaining a Facebook web page bearing a clear disclaimer that all statements are personal views, not made in an official capacity and not representing the views of the Marine Corps, make statements thereon supporting or opposing either (i) a political party or (ii) a candidate for federal, state or local office or (iii) both?
>
> 3. May such a Marine make statements critical of a candidate for political office when that candidate is also currently serving in office? Does a separate rule apply to criticisms of a candidate for political office serving as President of the United States? [Attachment "E."]

To date, there has been no response to the Request for a Legal Ethics Opinion. If not temporarily enjoined, the administrative separation hearing scheduled for April 5, 2012, will take place before a board of three Marines, appointed by Plaintiff's commanding officer, none of whom are lawyers or judges.

**ARGUMENT**

**I. THIS COURT SHOULD EXERCISE ITS JURISDICTION TO ENJOIN AN UNCONSTITUTIONAL DISCHARGE, BECAUSE PLAINTIFF NEED NOT EXHAUST ADMINISTRATIVE REMEDIES UNDER THESE CIRCUMSTANCES, AND THIS CASE IS APPROPRIATE FOR REVIEW**

"Military discharge decisions are subject to judicial review." *Muhammad v. Secretary of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985). The Court may review unlawful military decisions if the plaintiff alleges (a) violation of a constitutional right, federal statute, or military regulations, and (b) exhaustion of administrative remedies, unless exhaustion is excused. *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002).

Here, Plaintiff alleges violations of his First and Fifth Amendment rights, as well as various military regulations, and, thus, meets the first part of that test. Exhaustion of administrative remedies is excused if "(1) if the intraservice remedies do not provide an opportunity for adequate relief; (2) if the

petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised." *Id.* at 1073. Without waiving other arguments as to why exhaustion is excused, Plaintiff raises substantial Constitutional questions, as demonstrated below, and would suffer irreparable harm if the discharge proceedings are permitted to occur without sufficient time for his counsel to prepare, especially given that First Amendment violations cause irreparable harm as a matter of law. *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998).

Given that Plaintiff alleges Constitutional violations, and exhaustion is excused, "a court weighs four factors to determine whether judicial review of his claims is appropriate. These factors include: (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved." *Wenger*, 282 F.3d at 1072. Each factor is discussed below, in turn.

**A.    SGT. STEIN IS LIKELY TO PREVAIL ON THE MERITS OF HIS SEVERAL LEGAL CLAIMS**

**1.    Sgt. Stein is Likely to Prevail on Counts I and II of the Complaint**

"It is axiomatic that an agency of the government must scrupulously observe its own rules, regulations and procedures." *Blassingame v. Secretary of the Navy*, 866 F.2d 556, 560 (2d Cir. 1989). "With respect to the armed forces, this requirement 'does not involve any undue interference with the proper and efficient operation of our military forces because we only require that the [Navy] carry out the procedures and regulations it created itself." *Id. See also Wisotsky v. United States*, 69 Fed. Cl. 299, 305, 2006 U.S. Claims LEXIS 5, **17-**18 (2006). Defendants have failed to meet this standard in two ways.

First, at the heart of the Notice of Administrative Separation Proceeding is the allegation that Plaintiff violated DOD Directive 1344.10, the subject of which is "Political Activities by Members of the Armed Forces," by expressing certain unspecified political views on Plaintiff's Internet Facebook page. According to para. 5.2. of that directive, the Secretary of the Navy was required to "issue implementing

6

P&A's IN SUPPORT OF MOTION FOR TRO

documents" to, among other things, "encourage [its] members ... to carry out the obligations of citizenship." Instead of fulfilling its duty to so encourage, the Secretary of the Navy issued, in June, 2010, a Guidance for Unofficial Internet Posts, slide 13 of which carried the banner headline in bold, **DON'T GET POLITICAL**. Defendants may not proceed against Plaintiff for violation of DOD Directive 1344.10, because the Secretary of the Navy, in violation of the Department of Defense's own rules, failed to issue implementing instructions as to how the DOD Directive would be applied to new forms of social media, including Facebook, as alleged in Count I.

Second, Defendants have initiated this involuntary separation proceeding in violation of MARCORPSMAN 6302. Paragraph 1 of that section provides that "the commanding officer should initiate separation processing" only "when a Marine's performance or conduct falls within the reasons within section 2 **and** all required command attempts at leadership and rehabilitation of the Marine has been unsuccessful." Plaintiff has been charged under MARCORPSMAN 6210.6, Section 2. Pursuant to MARCORPSMAN 6302.1, such a charge may not be preferred unless and until efforts to counsel Plaintiff have proved unsuccessful. Indeed, MARCORPSMAN 6105.1 flatly states that it is "Marine Corps policy ... that reasonable efforts at rehabilitation should be made before initiation of separation proceedings." This mandate, in turn, reflects the overarching Marine policy, stated in MARCORPSMAN 6101.1, that "separation before completion of a period of obligated service represents a loss of investment while requiring increased accessions." Defendants, having made no effort to counsel Plaintiff to the end of reaching a mutual understanding of the Marine's good citizenship policies and practices, are in violation of MARCORPSMAN 6105.3.

Defendants, having failed to comply with their own rules and regulations, have thereby denied Plaintiff due process of law.

**2.    Sgt. Stein is Likely to Succeed on Count III of the Complaint**

At the heart of Plaintiff's claim in Count III is that the Involuntary Separation Proceeding initiated against him denies him liberty without due process of law. Because the Notification of

1  Administrative Proceeding includes notice that Plaintiff is being charged with the "commission of a
2  serious offense," namely a violation of Article 134, UCMJ, and because the Notification also states that
3  Plaintiff's commanding officer recommends that Plaintiff be given an "Other than Honorable Discharge,"
4  Plaintiff's liberty is at stake, triggering the application of the due process protection of the Fifth
5  Amendment to the U. S. Constitution. *See Goss v. Lopez*, 419 U.S. 565, 574-575 (1975). Thus, Plaintiff is
6  entitled to adequate notice of the charges against him, and to a meaningful opportunity to be heard.
7  Plaintiff has been granted neither.

8  According to MARCORPSMAN 6303.1, Plaintiff is entitled to know the "specific" reason or
9  reasons for separation. The Notification falls short of this standard. Although it alleges violations of
10 Article 134, UCMJ, and of DOD Directive 1344.10, it does not specify the particular "statements
11 regarding the President" or the particular "content of a Facebook page" at issue. As the United States
12 Court of Appeals for the Third Circuit observed, "[w]e need not detail the importance of the opportunity
13 to be apprised of the precise evidence which will be considered, so that an intelligent comment or
14 response can be prepared." *Neal v. Secretary of the Navy*, 639 F.2d 1029, 1043 (3d Cir. 1981). This
15 observation is particularly apt in light of the period of time covered by the DOD Directive charge, a
16 period of over 17 months. As the Third Circuit ruled in *Neal*, the failure to specify the factual basis of the
17 charges against Plaintiff denies him sufficient opportunity mount an "effective challenge" at the time of
18 the administrative hearing.

19 Not only is there insufficient notice of the specific charges, but Plaintiff has not been afforded
20 adequate time to prepare his defense. Denial of Plaintiff's request for a postponement of the hearing date
21 of the Administrative Separation Board, that is now scheduled for Maundy Thursday, April 5, 2012, is
22 likely to prejudice the preparation of his defense to the military involuntary discharge recommendation,
23 so as to effectively deprive him of due process. Plaintiff's civilian counsel was engaged on Wednesday,
24 March 28, and the hearing is now scheduled for Thursday, April 5. Plaintiffs' military co-counsel was
25 unavailable on Thursday March 29, and Friday March 30, due to other commitments.

1  Due to the extreme haste with which the Marine Corps seeks to terminate Plaintiff's enlistment, denying any request for more time, and giving him and his civilian co-counsel insufficient time to prepare his case, Plaintiff will be effectively denied his due process rights, as provided in MARCORSEPMAN Section 6304(1)(d), (e), (i), and (m), to meaningfully consult with both military and civilian counsel, to obtain the documents forming the basis for the termination, to examine the evidence against him, to cross examine witnesses, and to find and submit his own witnesses and evidence. This violation of Marine Corps regulations contravenes both the Administrative Procedure Act and due process. *See Stainback v. Mabus*, 671 F. Supp. 2d 126, 138 (D.D.C. 2009) ("The Coast Guard, like the military departments and agencies in general, is bound to follow its own regulations … a fair and impartial process is essential to the due process rights of military personnel faced with discharge from their military service"); *Crane v. Secretary of Army*, 92 F. Supp. 2d 155, 164 (W.D.N.Y. 2000) ("The APA requires the Army, like any other agency, to follow its own administrative procedures. An agency's failure to follow its own established procedures or regulations constitutes a violation of the APA.") (citation omitted).

Effectively preventing Plaintiff from presenting a full defense to the recommendation for separation would, therefore, be a deprivation of Sgt. Stein's due process rights under the Fifth Amendment to the U. S. Constitution. It is undisputed that the Notification of Administrative Separation Proceedings was not issued and delivered to Sgt. Stein until March 21, 2012, and that Sgt. Stein's subsequent request for a hearing was met with a mandatory hearing date of March 30, 2012 — a mere week or so later. Sgt. Stein's counsel's request for a reasonable extension of that date was denied without explanation. Stein's civilian counsel was engaged on March 27, 2012. As more fully developed in the analysis below, there has been insufficient time for Sgt. Stein's counsel to meet with him, to gather witnesses, and to prepare a defense for presentation at the hearing.

Plaintiff has not had a reasonable period of time to prepare his defense to the recommendation for involuntary separation, which would effectively deprive Sgt. Stein of his due process rights. The hearing date of March 30 was set on March 21, 2012. Sgt. Stein's military counsel — previously committed to

1  appear elsewhere on March 30 — met with Stein on March 23, 2012, and, on March 25, 2012, requested a
2  postponement of the hearing date for one week to give Sgt. Stein an opportunity to retain civilian counsel.
3  That request was denied on March 26, 2012, without explanation. Sgt. Stein engaged the undersigned
4  civilian counsel the following day, March 27, 2012, and, on that day, Sgt. Stein's civilian counsel
5  requested a hearing postponement of ten days. That request has been denied.

6  Thus, although Plaintiff has been afforded an opportunity for a hearing before the Board, he has
7  been given a specious right, for he will be severely prejudiced in his ability to prepare a comprehensive,
8  thorough, defense to the pending charges. *See*, e.g., *Mullane v. Central Hanover Bank & Trust Co.*, 339
9  U.S. 306 (1950); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14 (1978). Clearly, the right
10 to counsel encompasses more than the mere appointment; it includes the opportunity for counsel to
11 prepare, and to conduct the case in a reasonably efficacious manner. *Cf. Powell v. Alabama*, 287 U.S. 45,
12 71 (1932). While perhaps the Constitution does not require the Marine Corps to provide counsel for an
13 administrative proceeding such as for discharge, due process requires that it must ensure that any
14 appointed or retained counsel has a meaningful opportunity to assist Plaintiff. In the present
15 circumstances, that opportunity does not exist, given the lack of clarity in the Notification, and the lack of
16 time for counsel to prepare for the hearing.

17  **3.   Sgt. Stein Is Likely to Prevail on Count IV**

18  The First Amendment unquestionably protects members of the military. In *United States v.*
19  *Wilcox*, 66 M.J. 442, 446-47 (C.A.A.F. 2008), the Court of Appeals for the Armed Forces affirmed that
20  speech "on issues of social and political concern … has been recognized as 'the core of what the First
21  Amendment is designed to protect.'" To be sure, courts have held that the First Amendment operates
22  differently in the military and civilian contexts. Nevertheless, "members of the military are not excluded
23  from the protection granted by the First Amendment." *Parker v. Levy*, 417 U.S. 733, 758 (1974). The
24  military itself has recognized that "[t]he right to express opinions on matters of public and personal
25  concern is secured to soldier and civilian…." *Committee for GI Rights v. Callaway*, 518 F.2d 466, 470

1  (D.C. Cir. 1975) (quoting "Guidance on Dissent," AGAM-P, Headquarters, Department of the Army, 23
2  June 1969).
3      The government alleges two grounds for discharging Plaintiff, based on his speech: (1) he made
4  "statements regarding the President … that are prejudicial to good order and discipline, as well as service
5  discrediting in violation of Article 134, UCMJ; (2) he violated Department of Defense Directive 1344.10
6  by making certain comments on Facebook and the media." Without a full explanation by the government
7  for the basis of the charges, it is difficult to respond. However, nothing apparently alleged by the
8  government justifies discharging Plaintiff on either ground, for speech that is clearly protected by the First
9  Amendment to the U. S. Constitution.

    a.    **Article 134**

11      In relevant part, Article 134 prohibits "all disorders and neglects to the prejudice of good order
12  and discipline in the armed forces [and] all conduct of a nature to bring discredit upon the armed forces."
13  10 U.S.C. § 934. This sweeping language has survived "against constitutional attack for vagueness and
14  overbreadth" only "*in light* of the narrowing construction developed in military law through the
15  precedents of this Court and limitations within the Manual for Courts–Martial." *Wilcox*, 66 M.J. at 447
16  (emphasis in original).
17      The First Amendment protects speech in the military, unless it "interferes with or prevents the
18  orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale
19  of the troops." *Id*. at 448. To violate Article 134, the government must show a "direct and palpable
20  connection" between the "statements and the military mission." Id. The statements must be taken in their
21  full context. *Id*. at 447.
22      Taken in their full context, as they must be, Plaintiff's statements regarding Barack Obama
23  amounted to a declaration that he would not follow hypothetical unlawful orders. That principle is far
24  from controversial. Indeed, it is a fundamental part of military law, codified in Article 90 of the Uniform
25  Code of Military Justice. 10 U.S.C. § 890. Plaintiff neither disobeyed nor advocated disobeying any

particular order. Instead, he simply participated in an online discussion about a public controversy. Though he may have initially used some intemperate language, he immediately, publicly, and repeatedly clarified that he was only talking about the principle that unlawful orders need not be obeyed. The government, therefore, cannot show the necessary clear danger to loyalty, discipline, mission, or morale. Indeed, it is the government that is threatening loyalty, discipline, mission, or morale, by seeking to discharge a good Marine, who, at worst, blew off steam by using some intemperate language, but immediately cooled down to affirm his belief in the U. S. Constitution and the fundamental principles of military law. If the government were to discharge every Marine or servicemember who has ever done the same, the armed services would be decimated. Even in the military, the First Amendment must protect a certain amount of "breathing space" for freedom of expression. *City of Houston v. Hill*, 482 U.S. 451, 467 (1987).

The Wilcox decision strongly supports Plaintiff's position. In *Wilcox*, the Court of Appeals for the Armed Forces struck down the Article 134 conviction of a servicemember who posted "an online profile containing … views in which the author identified himself as a 'US Army Paratrooper'" and expressed racist political views, as well as stating, "This government is not worth supporting in any of its components." *Wilcox*, 66 M.J. at 445. According to the court, the First Amendment prohibited a conviction based on the message "expressed in his online profiles," without any evidence that "the communications either 'interfere[d] with or prevent[ed] the orderly accomplishment of the mission,' or 'present[ed] a clear danger to loyalty, discipline, mission, or morale of the troops.'" *Id.* at 446, 449. As a result, the court found that Wilcox's speech did not threaten "good order or discipline" under Article 134.

Here, Plaintiff's statements were far less extreme than those in Wilcox, and, therefore, were much less likely to threaten good order or discipline, when all that he did ultimately was to affirm his faith in the U. S. Constitution, and to discuss the principle of not obeying unlawful orders. However intemperate his language might initially have been, his statements were far less outrageous than those of the soldier in Wilcox. Moreover, here, as in Wilcox, "it is pure speculation that the … views propounded on the

1  Internet by a single person purporting to be a [Marine] either were viewed or would be viewed by other
2  servicemembers or would be perceived by the public or a servicemember as an expression of [Marine
3  Corps] or military policy." *Id.* at 450. Therefore, they could not "discredit" the service under Article 134.

                **b.**     **DOD Directive 1344.10**

5        Department of Defense Directive 1344.10 purportedly encourages "members of the Armed
6  Forces … to carry out the obligations of citizenship." However, the directive is fatally vague and
7  overbroad on its face, or as applied to Plaintiff, in violation of the First Amendment, and cannot be
8  enforced against him.
9        The Directive allows Plaintiff to "express a personal opinion on political candidates and issues,
10 but not as a representative of the Armed Forces," and "[w]rite a letter to the editor of a newspaper
11 expressing the member's personal views on public issues or political candidates, if such action is not part
12 of an organized letter-writing campaign or a solicitation of votes for or against a political party or partisan
13 political cause or candidate. If the letter identifies the member as on active duty (or if the member is
14 otherwise reasonably identifiable as a member of the Armed Forces), the letter should clearly state that
15 the views expressed are those of the individual only and not those of the Department of Defense." Dir.
16 1344.10 §§ 4.1.1.1, 4.1.1.6. Plaintiff can "[d]isplay a political bumper sticker on [his] private vehicle" and
17 "[j]oin a partisan or nonpartisan political club and attend its meetings when not in uniform." *Id.* §§
18 4.1.1.3, 4.1.1.8.
19       However, he cannot "[a]llow or cause to be published partisan political articles, letters, or
20 endorsements signed or written by the member that solicits votes for or against a partisan political party,
21 candidate, or cause." *Id.* § 4.1.2.3. Somehow, this prohibition "is distinguished from a letter to the editor
22 as permitted under the conditions noted in subparagraph 4.1.1.6." *Id.* Moreover, he cannot "[s]erve in any
23 official capacity with or be listed as a sponsor of a partisan political club … [s]peak before a partisan
24 political gathering, including any gathering that promotes a partisan political party, candidate, or cause,"
25 or "[p]articipate in any radio, television, or other program or group discussion as an advocate for or

against a partisan political party, candidate, or cause." *Id.* §§ 4.1.2.4, 4.1.2.5, 4.1.2.6.

The fatal confusion in this ambiguous Directive renders it vague and unenforceable under the First Amendment. A law must be clear enough so that it enables "ordinary people to understand what conduct it prohibits" and does not "authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). When "First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998). The Directive, which regulates political speech at the heart of the First Amendment, fails this test. It says that a service member may express his "personal opinion on political candidates and issues," including writing a "letter to the editor of a newspaper expressing the member's personal views on public issues or political candidates." However, he is also told that he may not engage in any activity that could be construed as partisan advocacy or endorsement on behalf of any specific political candidate or issue. See §§ 4.1.1.6 and 4.1.2.3. The distinction between expressing an opinion publicly on political candidates, which is permitted, as opposed to partisan advocacy and endorsements, which is prohibited, is not explained in such a way as to ensure that the service members would know what they can and cannot say. Without providing a careful distinction between expressing one's opinion, and partisan advocacy or endorsement, it appears that the rights of a service member under this policy depend upon the zeal, or lack thereof, in the expression of one's opinion, or the subjective opinion of whoever might be deciding the question—precisely the evil that the First Amendment is designed to prevent.

Moreover, the definition of "partisan political activity" is vague, if not overbroad. That term is defined as "[a]ctivity supporting or relating to candidates representing, or issues specifically identified with, national or State political parties and associated or ancillary organizations or clubs." *Id.* § E2.5. This sweeping definition cannot possibly be enforceable. By encompassing any activity "relating to … issues specifically identified with" political parties or associated clubs, the definition of "partisan" reaches virtually almost any speech relating to any conceivable political issue. There is virtually no political issue

on which political parties and their affiliated organizations take no position, and, thus, there exists virtually no issue not "specifically identified" with one or more political parties—not to mention all of their "associated or ancillary organizations or clubs." *Cf. American Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979, 986 (9th Cir. 2004) (statute that "applies to 'material or information relating to an election, candidate or any question on a ballot' … reaches objective publications that concern any aspect of an election, candidate, or ballot question—including, for example, discussions of election procedures, analyses of polling results, and nonpartisan get-out-the-vote drives, such as those conducted by the League of Women Voters"). As a result, a Marine, like Sergeant Stein, has no practical way to know whether his speech would be deemed "partisan," and the Directive is, therefore, subject to arbitrary enforcement, which is precisely what the rule against vagueness is supposed to prevent, especially in the First Amendment context.

In that vein, a service member cannot reasonably be expected to discern whether "partisan" applies to loose, unaffiliated groups, such as the "Tea Party," that are often at odds with both major political parties, or a Facebook page in the name of "Armed Forces Tea Party," which carries an express disclaimer that it does not represent the views of the government or armed forces. Moreover, a service member cannot reasonably understand what the Directive means by "partisan … letters … that solicit[] votes for or against a partisan political party, candidate, or cause." What is a partisan "cause"? What is the difference between "soliciting votes," which is prohibited, and expressing "personal views," which is not? Given that the government has failed to specify exactly how Plaintiff allegedly violated Directive 1344.10, it is difficult to respond further, except to say that the directive suffers fatal vagueness problems.

Even if not vague, it remains unconstitutional because it is an unconstitutional, content-based, if not viewpoint-based, restriction on political speech of service members in their capacities as private citizens. "Political speech is core First Amendment speech, critical to the functioning of our democratic system," and rests "on the highest rung of the hierarchy of First Amendment values." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009). The Directive is a content-

based regulation on political speech, because it requires officials to "necessarily examine the content of the message that is conveyed," to determine if it complies with the Directive. *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984); *see also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) ("if the statute describes speech by content then it is content based"). Content-based restrictions on speech are subject to strict scrutiny. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). To survive strict scrutiny, a restriction on speech must: (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest. *Sable Comm. of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). The Directive cannot meet that test.

While a "politically-disinterested military, good order and discipline, and the protection of service members' rights to participate in the political process are compelling governmental interests," the government cannot show "how these interests are in any way furthered" by the sweeping restrictions on the speech of service members imposed by the Directive. *Rigdon v. Perry*, 962 F. Supp. 150, 161 (D.D.C. 1997) (enjoining application of Directive 1344.10 to chaplains). Given that the military allows service members to express "personal opinions," write letters to the editor, display political bumper stickers, and otherwise state their political views, it makes little or no sense why Plaintiff should not be allowed to maintain an "Armed Forces Tea Party" Facebook page, as long as he posts a disclaimer that he does not speak in an official capacity for the Marine Corps, or for the federal government. While the government has a strong interest that the military remain politically neutral, that interest is served by the disclaimer, and by preventing service members from using their official authority for political purposes. It cannot justify silencing a noncommissioned officer, who speaks on his own time, in his own capacity, on matters of public concern, without any evidence that he is advocating disobedience to specific orders, or otherwise directly threatening loyalty and discipline. To state a point of view is not to be disloyal.

**B.   STEIN WILL BE IRREPARABLY HARMED IF THE INJUNCTION IS NOT GRANTED**

Irreparable harm ordinarily is an important factor in all cases where denial of an injunction would

substantially and probably severely impair a party in the conduct of his case. As noted, First Amendment violations are per se irreparable harm. *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998). Moreover, assuming the Administrative Separation Board convenes on April 5, 2012, as presently scheduled, and it makes a determination in line with the recommendation of Commanding Officer Dowling, there is no question that it would severely prejudice Sgt. Stein. Although any such determination would be subject to appeal, such an appeal would be on the record, and would not be de novo. It would be effectively irreversible, absent a reversible error of law.

At this time, it is impossible to predict what the Administrative Separation Board would conclude, no matter what evidence and arguments may be presented at the hearing. The issue, however, is prejudice if the hearing goes forward. And, in addition to the potential (if not likely) result that the determination would be harmful to Sgt. Stein, if he is not given an adequate opportunity to prepare, the almost certain conclusion that the administrative record will not be as favorable to Sgt. Stein as it would be with adequate preparation time is virtually indisputable.

Plaintiff contests the grounds upon which the Marine Corps proposes his involuntary separation from the U.S. military, under which his separation would be characterized as "Other Than Honorable Conditions." The potential deleterious effects of such a characterization cannot be denied, nor can Sgt. Stein's right to defend himself against a recommendation for such a prejudicial separation from service. The substantive ground for his defense is that he violated no law or military rule that would justify such a recommendation or determination, and that any such determination — if it is made — would violate Plaintiff's Constitutional rights. Alternatively, Plaintiff contends that if the military rules could be interpreted against Plaintiff's conduct, those rules are unconstitutional.

**C.     THERE IS NO INTERFERENCE WITH MILITARY FUNCTIONS OR EXPERTISE**

The third and fourth factors on judicial review of military decisions, "'[t]he extent of interference with military functions' and "[t]he extent to which military discretion or expertise is involved,' are generally considered together." *Wenger*, 282 F.3d at 1075. Neither factor defeats judicial review. This is a

1  Constitutional case about free speech and due process. It involves no "sensitive area of military expertise
2  and discretion." Id. It is precisely this Court's function to decide Constitutional questions, and the Court
3  does not defer to the military on fundamental Constitutional issues, such as those that are involved in this
4  case.

5  **C.    BALANCING THE RELATIVE PROSPECT OF POTENTIAL HARM IF THE**
6  **INJUNCTION IS NOT GRANTED FAVORS GRANTING IT**

7  In considering a request to issue an injunction, it is important to focus upon the probability, if
8  any, of harm, to other parties and to the public, if the requested injunction is granted — or if it is denied.
9  As discussed above, the effect upon Sgt. Stein would be severely prejudicial if the injunction did
10 not issue. On the other hand, the defendant can show no prejudice if the hearing is postponed for a
11 reasonable period of time. Indeed, the only reason for refusing to grant the postponement — aside from
12 pure arbitrariness — would be to prejudice Sgt. Stein. There is no countervailing consideration, and this
13 factor clearly favors issuing the injunction requested by Sgt. Stein.
14 With respect to probable harm to the parties, therefore, in balancing the equities, there can be no
15 question that considerations of resulting probable harm greatly favor granting Sgt. Stein's motion for a
16 preliminary injunction.

17 **D.    THE TRADITIONAL STANDARD FOR ISSUING A TEMPORARY RESTRAINING**
18 **ORDER ALSO FAVORS PLAINTIFF**

19 The basis for entry of a temporary restraining order is similar to that for granting a preliminary
20 injunction. *See Thalheimer v. City of San Diego*, 706 F. Supp. 2d 1065 (S.D. CA 2010), aff'd, 645 F.3d
21 1109 (9th Cir. 2011). Injunctive relief is an extraordinary remedy, which will be granted upon a clear
22 showing of relief, establishing: (1) the likelihood of success on the merits; (2) irreparable harm, if relief is
23 not granted; (3) that the balance of equities tips in the movant's favor; and (4) that issuance of an
24 injunction would be in the public interest. *Id.* at 1071. *See Winter v. Natural Resources Defense Council,*
25 *Inc.*, 555 U.S. 8 (2008). Under the "sliding scale" approach to preliminary injunctions observed in the

1  Ninth Circuit, "the elements of the preliminary injunction test are balanced, so that a stronger showing of
2  one element may offset a weaker showing of another," *Alliance for Wild Rockies v. Cottrell*, 632 F.3d
3  1127, 1131 (9th Cir. 2011).
4      Plaintiff has already demonstrated the likelihood of success on the merits, and irreparable harm.
5  The Court need not linger over the other factors. The "balancing of equities that is undertaken in a
6  conventional equity case is out of place in dealing with rights so important as the modern Supreme Court
7  considers the rights of expression to be." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985).
8  Courts "have consistently recognized the significant public interest in upholding First Amendment
9  principles." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002). It "is always
10 in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v.*
11 *Michigan Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994). "In a First Amendment case,
12 therefore, the likelihood of success on the merits is often the determining factor in whether a preliminary
13 injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). Because Plaintiff has
14 demonstrated a likelihood of success, or at least the serious issues on the merits, combined with
15 irreparable harm, the Court should issue a temporary restraining order.

16                                     **CONCLUSION**
17     For the foregoing reasons, Plaintiff respectfully requests that the Court enter a temporary
18 restraining order enjoining his imminent administrative separation hearing on April 5, 2012.
19
20 Dated: April 2, 2012
21     Respectfully submitted,
22
23
24
25

```
                                    /s/

_____
UNITED STATES JUSTICE FOUNDATION
GARY G. KREEP (CA SBN 066482)
NATHANIEL J. OLESON (CA SBN 276695)
932 "D" Street, Suite 3
Ramona, California 92065
Tel: (760) 788-6624
Fax: (760) 788-6414
usjf@usjf.net
njoleson@gmail.com

Attorneys for Plaintiff, Gary A. Stein
```

**Of Counsel:**

```
_____
J. Mark Brewer
Brewer & Pritchard
Three Riverway, 18th Floor
Houston, TX 77056
Tel: (713) 209-2910
Fax: (713) 659-5302
brewer@bplaw.com

Stewart Rhodes
OATHKEEPERS
5130 S. Fort Apache Road. Suite 215-160
Las Vegas, NV 89148
Tel: (702) 353-0627
rhodeslegalwriting@gmail.com

William J. Olson (VA Bar No. 15841)
Herbert W. Titus (VA Bar No. 41126)
John S. Miles
Jeremiah L. Morgan
William J. Olson, P.C.
370 Maple Avenue, West, #4
Vienna, Virginia 22180-5615
Tel: (703) 356-5070
Fax: (703) 356-5085
wjo@mindspring.com
johnsmiles@hotmail.com

David LOY (CA Bar No. 229235)
ACLU Foundation of San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
Tel: 619-232-2121
davidloy@aclusandiego.org
```