LAURA E. DUFFY
United States Attorney
TOM STAHL
Assistant U.S. Attorney
Chief, Civil Division
California State Bar No. 078291
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7767
Facsimile: (619) 546-7754
Email: thomas.stahl@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEANT GARY A. STEIN, | Case No.: 12cv0816 H (BGS) |
| Plaintiff | OPPOSITION TO REQUEST FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| COLONEL C. S. DOWLING, et al., | |
| Defendants. | |

**STATEMENT OF FACTS**

Between November of 2010 and March of 2012, Sergeant Gary Stein ("Plaintiff") posted numerous politically charged statements that were deemed inappropriate and impermissible under Department of Defense regulations for active duty personnel. These comments were posted on his personal Facebook page as well as a similar page dedicated to discussions among future and current active duty Marines.

The comments were disparaging to certain national leaders, most notably the President of the United States - the Commander-in-Chief of the armed forces of the United States. The statements were construed by his supervisors as disrespectful and insulting to the President, in violation of Article 134 of the Uniform Code of Military Justice. The statements included comments such as "Screw Obama," and "I will not follow all orders from him." He also referred to the Commander-in-Chief as the "economic" and "religious" enemy of the United States Constitution.

Aside from being considered disrespectful, Plaintiff's supervisors found the comments showed a lack of personal and professional discipline expected of an active duty Marine and were prejudicial to the good order and discipline of his unit as a whole. Plaintiff was required to attend a class on political activities for active duty personnel in March and was formally counseled twice that his activities had exceeded the bounds deemed appropriate by Department of Defense Directive 1344.10, which constituted DOD guidance on the limits of political activities for active duty service members.

Plaintiff was read his rights by his Company First Sergeant on March 5, 2012 that he was suspected of making disrespectful statements in violation of a lawful regulation. Plaintiff had discussions with a military attorney that same day. Plaintiff's First Sergeant approached him again on March 9, 2012, advising that the comments should be removed from the Facebook pages as they violated DOD Directive 1344.10 and articles of the UCMJ. Failing to follow these directions, Plaintiff was formally counseled on March 23, 2012 by his superiors, and advised that he needed to cease the comments and remove the disparaging statements on the internet. Plaintiff was also required to take a course on the limits of political activities for active duty personnel and proper use of social media sites. On March 22, 2012, over his Command's warnings, Plaintiff spoke at a partisan political gathering and continued to use disparaging remarks toward national leaders, including the President.

On March 21, 2012, Plaintiff was notified by his Commanding Officer, Colonel C. S. Dowling, that he was being processed for separation from the Marine Corps because of the commission of a serious offense, namely the willful and continued violation of DOD Directive 1344.10, the UCMJ Article 134, and the repeated orders from his Command. Plaintiff's notice of administrative separation processing noted:

1) Plaintiff made statements regarding the President that were prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ; and

2) Plaintiff created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DOD Directive 1344.10.

According to DOD-wide regulations regarding separation proceedings, Plaintiff was notified that the worse characterization of service he faced if separated was an "Other Than Honorable" discharge. He was notified of all of his administrative board rights, including his right to be represented by counsel and to present evidence. The hearing was scheduled for March 30, 2012. When Plaintiff's counsel indicated

1 he had a schedule conflict, the hearing was moved to Mach 31, 2012.  At the request of his counsel,
2 Plaintiff's hearing was again rescheduled to April 5, 2012.  Plaintiff's counsel requested an additional delay
3 but that request was denied and the hearing remains set for April 5, 2012.

## STANDARD FOR ENTITLEMENT TO INJUNCTIVE RELIEF

An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2761 (2010). Plaintiffs have the burden to prove by clear and convincing evidence that injunctive relief is appropriate. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442–43 (1974).  Because they are extraordinary remedies, a plaintiff seeking a temporary restraining order ("TRO") or preliminary injunction ("PI")[1] "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. NRDC, 555 U.S. 7, 20 (2008); see also Munaf v. Geren, 553 U.S. 674, 690 (2008) ("a party seeking a preliminary injunction must demonstrate, among other things, a likelihood of success on the merits." (quotation marks and citation omitted)); Mazurek v. Armstrong, 520 U.S. 968, 971, 976 (1997) (overturning a preliminary injunction issued when a plaintiff had established only a 'fair chance of success on the merits' of his claim).

The Ninth Circuit recognizes the Winter test. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  However, the Ninth Circuit has articulated an alternate version of this test whereby "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

Under this approach, "serious questions going to the merits" requires more than showing that "success is more likely than not"; it requires a plaintiff to demonstrate a "substantial case for relief on the merits." Leiva-Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011). And even where success on the merits

---

[1] The standard for a temporary restraining order is the same as for a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

3

1 is likely or "serious questions" are raised an injunction "is not a remedy which issues as of course."
2 Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982).

### PRELIMINARY STATEMENT

Plaintiff's Memorandum of Points and Authorities in Support of their Motion for a Temporary Restraining Order, ECF No. 2 ("Pl's Mem.") begins by telling the Court that "[t]his is a case about protecting a U.S. Marine against unconstitutional discharge in retaliation for protected speech." Pl's Mem. at 2. That is wrong. This is not a case about a discharge, constitutional or otherwise. This case, or at least the instant motion, is about the proceeding Plaintiff's motion for a temporary restraining order asks the Court to enjoin: the Administrative Separation Board hearing that is scheduled to begin April 5, 2012.

Plaintiff's request is extraordinary for two reasons. First, Plaintiff asks the Court for emergency relief, via a temporary restraining order, enjoining a hearing to begin tomorrow, April 5, 2012. This is in the usual case an extraordinary remedy, not one granted as of right, and the four-part test Plaintiff must show entitles them to it is not met in this case, as discussed below. It is an especially extraordinary request in this case because Plaintiff seeks to enjoin a hearing that he knew had been scheduled for tomorrow several days ago, March 30, 2012, according to their complaint, Pl's Compl. ¶ 25, ECF No. 1. But he did not file his motion for a temporary restraining order until several days later, April 3, 2012. By delaying in filing his motion, Plaintiff has denied the Marine Corps and the Court time to give even minimal consideration to the request.

Second, by asking the Court to enjoin the Marine Corps from considering, through an adversarial hearing, whether or not to discharge him, Plaintiff asks the Court to interfere with the decision-making processes of the military. As such, the Mindes test stands as a bar to the instant motion's justiciability, see Wenger v. Monroe, 282 F.3d 1068, 1073 (9th Cir. 2002), as Plaintiff recognizes. This test does not render automatically justiciable claims alleging "a violation of a recognized constitutional right, a federal statute, or military regulations" that Plaintiff has either exhausted or for which exhaustion is excused, id.

Rather, under Mindes, where the two threshold requirements are met, the Court "weighs four factors to determine whether judicial review … is appropriate." Wenger, 282 F.3d at 1072. These are: "(1) [t]he nature and strength of the plaintiff's claim; (2) [t]he potential injury to the plaintiff if review is refused; (3) [t]he extent of interference with military functions; and (4) [t]he extent to which military discretion or

1 expertise is involved." Id. As discussed below in the framework of the test applicable to motions for temporary restraining orders, each of these factors counsels against the Court finding the Mindes test satisfied and Plaintiff's motion justiciable.

### A. The Marine Corps has not failed to implement DoD Directive 1344.10

Plaintiff's assertion that the Marine Corps has failed to publish implementing guidance regarding DoD Directive 1344.10 is erroneous. Compl. ¶ 33. The Marine Corps published implementing guidance for DoD Directive 1344.10 in an administrative message on June 30, 2010. MARADMIN 365/10 (June 30, 2010) (found at http://www.marines.mil/news/messages/Pages/maradmins.aspx). MARADMIN 365/10 provides that all Marines are responsible for their actions and speech on social networking sites and failure to adhere to the Message and the additional guidance could result in disciplinary action under the Uniform Code of Military Justice. Attachment ___. Paragraph 4 of MARADMIN 365/10 directs Marines to www.marines.mil/omg for more specific information regarding appropriate online behavior by Marines. Notwithstanding these implementing directives, Section 4.6.4 of DoD Directive 1344.10 clearly states "[t]his is a lawful general regulation. Violations of paragraphs 4.1. through 4.5. of this Directive by persons subject to the Uniform Code of Military Justice are punishable under Article 92, 'Failure to Obey Order or Regulation,' Chapter 47 of [Title 10, United States Code]." See Plaintiff's Attachment "G". Plaintiff, as an active-duty Marine, is governed by the provisions of DoD Directive 1344.10 and MARADMIN 365/10. The Marine Corps has not failed to issue the appropriate implementing documents for DoD Directive 1344.10.

### B. The Marine Corps has not violated MARCORPSEPMAN Sections 6105.1 and 6302

Plaintiff's claim that the Marine Corps has violated MARCORPSEPMAN Sections 6105.1 and 6302 is also without merit.[1] While not adhering to an agency regulation may provide grounds for a Due Process claim, such is not the case here. ____. Plaintiff's chain of command has repeatedly counseled him not to engage in violating DoD 1344.10 and Plaintiff has refused to comply with this Department of Defense Directive and Article 134.

On March 5, 2012, Plaintiff's First Sergeant counseled him regarding this facebook speech. Attachment ____. On March 9, 2012, Plaintiff's First Sergeant also notified him that he was

---

[1] Defendant concurs that these regulations are applicable and that Plaintiff has correctly characterized their content.

required to comply with DoD Directive 1344.10. Attachment ___. On April 13, 2010, the Office of the Staff Judge Advocate, First Marine Expeditionary Force, provided Plaintiff guidance on DoD Directive 1344.10 when the USMC discovered that that Plaintiff intended to be a guest on the television program "Hardball" with Chris Mathews to discuss political subjects. Attachment ____. On January 25, 2012, the Headquarters Company First Sergeant, Weapons and Field Training Battalion, distributed Attachment ___, the CMC's Guidance Memo on Political Activities, to all Staff Non-Commissioned Officers within Headquarters Company. Having knowledge of Plaintiff's prior involvement with political activities in 2010, the Company First Sergeant specifically directed Plaintiff to review a copy the Memo. ____. Plaintiff, responded via email on January 25, 2012 that he had read and understood the memo. ____. The Commandant's memo specifically notes DoD Directive 1344.10 and states "[p]rior to engaging in any politically related activity, all Marines and Civilian Marines must review the references to fully understand the extent of appropriate involvement in the political process…References (b) through (d) provide the applicable rules and restrictions regarding political activity for all military personnel and include examples of permissible and prohibited conduct." See Attachment "6". Despite having acknowledged this memo and its contents, on or about March 1, 2012, and continuing through March 21, 2012, Plaintiff engaged in conduct that forms the basis for administrative separation described in Paragraph 17 of its complaint.

**C.   The Marine Corps has not violated the Due Process Clause of the Constitution or MARCORPSEPMAN 6304**

Plaintiff's claim that Defendant has failed to properly notify him as to the bases for separation is without merit. Section 6304 of the MARCORSEPMAN provides that USMC must notify the member of the basis for the proposed separation, including the circumstances upon which the action is based. Attachment ___. The USMC notified Plaintiff on March 21, 2012, that he was being processed for administrative separation and listed the grounds as:

> [O]n or about 1 March 2012, you allegedly made statement regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ; (2) from on or about November 2010 to the present you allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DoD Directive 1344.10.

1  This notification alleges the appropriate amount of specificity, especially given the many
2 attempts by Plaintiff's command to counsel him on these issues. No Due Process violation has occurred.
3  Plaintiff has also been afforded a reasonable period of time to consult with his attorneys.
4 MARCORPSEPMAN Section 6304 provides that Plaintiff is entitled to counsel to represent him in this
5 proceeding. Attachment ___. The USMC assigned Plaintiff a defense counsel. Members are also
6 entitled to civilian counsel at their own expense provided that their appearance does not unduly delay
7 the proceedings. Attachment ___. The Convening Authority has the right to require the member
8 respondent to proceed within civilian counsel. Id. The Convening Authority has already granted
9 Plaintiff a continuance of five days.

10 **D. Plaintiff has not articulate a First Amendment Violation**.

11  Title 5 U.S.C. 7321 states that it is Congress' policy to encourage federal employees to fully
12 participate in the political process "to the extent not expressly prohibited by law." "While the members
13 of the military are not excluded from the protection granted by the First Amendment, the different
14 character of the military community and of the military mission requires a different application of those
15 protections." Parker v. Levy, 417 U.S. 733, 758 (1974). "Speech that is protected in the civil population
16 may nonetheless undermine the effectiveness of response to [military] command" and "[i]f it does, it
17 is constitutionally unprotected." Id. at 759 (internal citations omitted). "While '[d]isrespectful and
18 contemptuous speech . . . is tolerable in the civilian community,' other considerations must be weighed
19 in the military context." Millican v. United States, 744 F. Supp. 2d 296, 307 (D.D.C. 2010) (quoting
20 Parker, 417 U.S. at 759).

21  Millican is particularly instructive here. In Millican, an Air Force major claimed that his speech
22 urging others to refuse to receive the Anthrax vaccine constituted protected speech under the First
23 Amendment. Millican, 744 F. Supp. at 307. The District Court for D.C. disagreed, finding that the
24 plaintiff's "[u]rging Squadron members to disregard orders and calling into question a commander's
25 credibility and concern for his Squadron members 'is constitutionally unprotected' because it 'may . . .
26 undermine the effectiveness of response to command.'" Id.

27  Similarly, here plaintiff posted comments for others to see that called into question the authority
28 of the Commander-in-Chief. Specifically, plaintiff stated that President is the "domestic enemy," that

7

he would not follow "all orders from him," and that he will not salute President Obama. These comments could fairly be characterized as undermining the command structure and do not qualify as protected speech.

Plaintiff's reliance upon Rigdon v. Perry, 962 F. Supp. 150 (D.D.C. 1997) is misplaced. In Rigdon, military chaplains challenged DoD Directive 1344.10 after they were instructed that encouraging their parishioners to petition Congress for passage of the Partial Birth Abortion Ban constituted unauthorized political activity under the Directive. The District Court of D.C. distinguished the conduct of the chaplains from the activities barred under the Directive, finding that the chaplains were not soliciting votes for or against particular candidates but were instead advocating that they contact their congressional representatives. Rigdon, 962 F. Supp. at 156-60. The district court did not, as the plaintiff suggests, find DoD Directive 1344.10 to be content or viewpoint discriminatory.

Plaintiff's allegations of a potential First Amendment violation fail to transform his potential discharge – or the impending end of his temporary appointment – into the hypothetical "genuinely extraordinary situation" that might suggest irreparable injury. As multiple circuits have emphasized, the mere claim of a First Amendment violation does not satisfy the irreparable harm requirement in an employee speech case. See, e.g., Bennett v. Lucier, 239 Fed. App'x 639, 640-41 (2d Cir. 2007); Schrier v. Univ. of Colo., 427 F.3d 1253, 1266-67 (10th Cir. 2005); Nat'l Treasury Employees Union v. United States, 927 F.2d 1253, 1254-55 (D.C. Cir. 1991); Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir. 1989); Savage v. Gorski, 850 F.2d 64, 67-68 (2d Cir. 1988). Rather, to satisfy the requirement in a case such as this, Plaintiff must establish that a discharge "pending the outcome of the case would have a chilling effect on [his] First Amendment rights," Am. Postal Workers v. U.S. Postal Service, 766 F.2d 715, 721 (2d Cir. 1985), or, put differently, that the injunction he seeks "'will prevent the feared deprivation of free speech rights.'" Chaplaincy of Full Gospel Churches, 454 F.3d at 301 (quoting Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349-50 (2d Cir. 2003)). Plaintiff has made no such allegation.

**The Military and Public Interest**

Plaintiff does not provide any evidence motion provides superficial and cursory evidence in support of ruling in her favor on the two remaining factors: (1) harm to the nonmovant party that would be caused by granting the requested relief, and (2) the public interest.

As previously stated, Plaintiff has failed to provide this Court with evidence in support of her allegations that her constitutional rights have been violated, prosecutorial misconduct, or that she received ineffective assistance of counsel. Moreover, these issues were previously raised in pre-trial motions, during her trial and post-trial review. Furthermore, plaintiff will have this same right to raise these issues after her separation at the BCNR. Ultimately, the Navy is discharging the plaintiff because she was found to be unsuitable for continued service as an officer because of her misconduct and substandard performance of duties. The Navy has a strong interest in maintaining high standards for its officers, who set an example by fully complying with Navy core values and policies. The Navy would be placed in an untenable position in terms of requiring compliance with its standards and policies if it must retain persons unsuitable for continued service as an officer, despite their failure to adhere to those standards and policies.

In addition, enjoining plaintiff's dismissal would significantly intrude upon the Secretary's exercise of discretion in a matter committed to his decision making authority. Courts have consistently recognized that military personnel decisions implicate interests of unusual importance. "'[T]he public has an interest, particularly in light of current events, in seeing that the Army's discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference.'" Parrish v. Brownlee, 335 F. Supp. 2d 661, 675 (E.D.N.C. 2004) (quoting Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D.Va. 2003)). The recognition of the harm that necessarily results from interference in military personnel decisions is exactly why courts have applied the heightened Sampson standard in such situations. See, e.g., Guerra, 942 F.2d at 275 ("[S]econd-guessing the military . . . 'would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities.'" (citation omitted)); Sebra, 801 F.2d at 1139 (alleged injury must be "weighed against the hardship to the military of judicial scrutiny of every military personnel decision" (citation omitted)).

**Plaintiff Will Suffer No Irreparable Harm Absent An Injunction**

Plaintiff contends that he is facing irreparable injury due to his imminent discharge. Compl. ¶ 31. However, Plaintiff is not facing discharge; he is facing administrative separation proceedings, the outcome of which does not result in a discharge. MARCORSEPMAN Section 6305. Even if he was facing a military discharge, this is not irreparable injury. See Sampson v. Murray, 415 U.S. 61 (1974).

9

Sampson has been repeatedly applied to cases where military personnel have tried to block discharges from active duty. Guerra v. Scruggs, 942 F.2d 270, 274 (4th Cir. 1991) ("... Sampson's higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters."); Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985) ("The necessity of making this stronger [Sampson] showing is implicit in the magnitude of the interests weighing against judicial interference in the internal affairs of the armed services."); Chilcott v. Orr, 747 F.2d 29, 33 (1st Cir. 1984) ("Congress, in allowing servicemen to be discharged upon such terms as the Secretary should prescribe, clearly indicated that military discharges should be enjoined only in exceptional circumstances. In view of the strong judicial policy against interfering with the internal affairs of the armed forces, we will apply the more stringent test of Sampson to applications for preliminary injunctions by military personnel."); and Mackey v. Hoffman, 403 F. Supp. 467, 471 (D.D.C. 1975). As a discharge is not even at issue at this time, this Court should refrain from injunctive relief.

DATED: April 4, 2012                    Respectfully submitted,

LAURA E. DUFFY
United States Attorney


s/ Tom Stahl


TOM STAHL
Assistant U.S. Attorney
Chief, Civil Division
Attorneys for Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28