**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SERGEANT GARY A. STEIN, United States Marine Corps, Camp Pendleton, California 92055,

Plaintiff,

vs.

COLONEL C.S. DOWLING, Commander, Weapons and Field Training Battalion, Camp Pendleton, California 92055; RAY MABUS, SECRETARY OF THE UNITED STATES NAVY, The Pentagon, Washington, D.C.; UNITED STATES DEPARTMENT OF DEFENSE, The Pentagon, Washington, D.C.; UNITED STATES OF AMERICA; and BRIGADIER GENERAL DANIEL YOO,

Defendants.

CASE NO. 12-CV-0816-H (BGS)

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT PREJUDICE**

On April 3, 2012, Plaintiff Sergeant Gary A. Stein ("Plaintiff" or "Stein") filed a complaint against Defendants, along with an *ex parte* motion for temporary restraining order and order to show cause why a preliminary injunction should not issue. (Doc. Nos. 1 & 2.) Plaintiff alleges that Defendants have scheduled administrative separation proceedings against Plaintiff Stein on Thursday, April 5, 2012. (Id.) Specifically, Plaintiff maintains that he has inadequate time to present a defense at the administrative separation proceedings and that the conduct sought to be enjoined, if allowed to occur, will cause Stein immediate and irreparable

injury. (Doc. No. 2.) The Court declined to address Plaintiff's motion *ex parte*, and Defendants filed a response on April 4, 2012. (Doc. No. 5.)

The Court held a hearing on April 4, 2012. Gary G. Kreep, Nathaniel J. Oleson, David Loy, and J. Mark Brewer (pro hac vice) appeared for Plaintiff, and Thomas C. Stahl appeared for Defendants. The Court compliments both sides on the excellent presentation on short notice. This case was especially complicated because it implicates First Amendment rights, fundamental rights protected by the United States Constitution. In the Court's review of the matter, the Court recognizes that Plaintiff has some valid arguments and Defendants have valid responses. In this matter, Plaintiff alleges that Defendants seek to discharge Plaintiff on short notice in violation of Plaintiff's First Amendment right of free expression and Fifth Amendment Due Process rights. Plaintiff also alleges that Defendants violated their own rules and regulations concerning administrative separation procedures. The Plaintiff has been in the United States Marines for nearly nine years, and the country owes Plaintiff and other Marines a debt of gratitude for their service. Plaintiff is charged with certain responsibilities as an active-duty member of the United States Marines and is required to comply with all the lawful rules and regulations of the United States Marines. On enlistment, Plaintiff took an oath to comply, among other things, with the Uniform Code of Military Justice.

For the following reasons, the Court declines to enjoin Plaintiff's scheduled administrative separation proceedings.

## **Background**

On April 4, 2012, Plaintiff initiated the instant action against Defendants for declaratory and injunctive relief to enjoin Defendants' attempts to discharge Plaintiff from the United States Marine Corps with an "Other Than Honorable" discharge. (Doc. No. 1, ¶ 1.) Plaintiff alleges that Defendants are attempting to discharge Plaintiff on short notice, depriving Plaintiff of (a) his liberty without due process of law; (b) his right that Defendants comply with their own rules, regulations, and procedures; and (c) his rights of full American citizenship as promised by Department of Defense Directive 1344.10 ("DOD Directive 1344.10"). (Id.)

///

Since July 15, 2003, Plaintiff has been an enlisted Marine with the United States Marine Corps. (Doc. No. 1, ¶ 6.) On May 1, 2008, Plaintiff attained the rank of Sergeant, and Plaintiff's current term of service expires on July 28, 2012. (Id.) Plaintiff alleges that during the period of 2010 through 2012, Plaintiff, through activities unconnected with his duties as a U.S. Marine, spoke, wrote, and otherwise communicated with other private citizens regarding matters of public concern, including public policy issues, along with three other individuals during his personal time. (Id., ¶ 13.) Plaintiff expressed personal opinions on political candidates and issues, and Plaintiff and three other individuals maintained an account on the computer social networking site known as "Facebook." (Id.) Plaintiff is permitted to do so, as long as he is not in violation of his military rules and obligations. Plaintiff does have First Amendment protection for his own personal views and his own personal Facebook account.

In April 2010, Plaintiff was invited to appear on Chris Matthews' television show, Hardball. (Id., ¶ 14.) Plaintiff obtained permission from his immediate superior, his Gunnery Sergeant, and made travel plans to appear. (Id.) On Plaintiff's way to appear on the television show, Plaintiff received a telephone call from Headquarters, Marine Corps, in Quantico, Virginia, and Plaintiff was ordered to return to his base and did return to the base. (Id.) This should not be a basis for any separation or discharge.

Subsequently, Plaintiff was approached by his Chief Warrant Officer concerning his Facebook page, because of the possibility that it could be construed as emanating from military sources, rather than from private sources. (Id., ¶ 14.) Plaintiff took down his Facebook page while he reviewed the matter. (Id.) Plaintiff was urged by a Judge Advocate of the First Marine Expeditionary Force to add a disclaimer to his Facebook page, if he was going to leave the page up, that all statements therein are personal views, not made in an official capacity, and not representing the views of the U.S. Marine Corps. (Id.) The Court agrees that this would be First Amendment protected expression. Plaintiff added a disclaimer to the Facebook page that he hosted with three other individuals and put the Facebook page back on the Internet. Plaintiff was not advised at that time, or later, to take down the Facebook page. (Id.)

///

From November 2010, through March 1, 2012, Plaintiff is alleged to have posted on his Facebook page and on METOC, a Marine weathermen community social media site, various criticisms of President Barack Obama, questions concerning the Obama Administration's policies, and critiques of other politicians. (Id., ¶ 15.) Plaintiff alleges that he did not disobey or advocate disobeying any particular order actually issued by any superior officer. (Id.) Plaintiff alleges, "[t]hough some of the language he used in discussing certain hypothetical unlawful orders might have been viewed as intemperate, he subsequently clarified, repeatedly, and publicly, that he was only discussing the settled principle of military law that service members should not follow unlawful orders." (Id.) It is a correct statement of the law that service members are not required to follow unlawful orders.

Plaintiff alleges that between November 2010 and March 1, 2012, no attempt was made by any of Plaintiff's commanding officers, or any other Marine Corps officer, to restrict or correct Plaintiff's, and his friends', Facebook activities. (Id., ¶ 16.) On March 21, 2012, Plaintiff's Commanding Officer Dowling ("Defendant Dowling") notified Plaintiff of the institution of Administrative Separation Proceedings where Defendant Dowling was recommending Plaintiff's discharge from the United States Marine Corps, because of alleged misconduct. (Id., ¶ 17.) As grounds for discharge, Plaintiff's Notification of Administrative Separation Proceedings, dated 21 March 2012 ("Notification") stated:

> The bases for this recommendation are as follows: (1) that on or about 1 March 2012, you allegedly made statements regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ; (2) from on or about November 2010 to the present you allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DOD Directive 1344.10.

(Doc. No. 1, Ex. A, at 1.) According to the Notification, Defendant Dowling intended to recommend that Plaintiff receive a separation from service characterization of "Other Than Honorable Conditions" ("OTH"). (Doc. No. 1, ¶ 18.) The Notification required Plaintiff to respond, in default of which his rights would be waived, within two working days, the minimum time required by Section 6304.4, of the Marine Corps Separation and Retirement Manual ("MARCORSEPMAN"). (Id., Ex. H.) Plaintiff alleges that the Notification was

served on Plaintiff during a period that Defendants knew that all Judge Advocates serving as defense counsel at Plaintiff's base were involved in annual legal training, and thus, were unavailable to consult with Plaintiff before his response was required to be filed. (Id., ¶ 19.) If intentional, this may be a violation of Plaintiff's Due Process rights.

Plaintiff responded timely to the Notification, and Defendants scheduled a hearing for March 20, 2012. (Id., ¶ 20, Ex. B.) Plaintiff alleges that Defendants were aware that any members of the Judge Advocate who were able to serve as defense counsel to Plaintiff were at a conference and could not begin work on Plaintiff's case until March 23, 2012. (Id., ¶ 20.)

On March 23, 2012, Defendant Dowling counseled Plaintiff regarding his activities. Specifically, Plaintiff was advised: "On 1 Mar 12 you made specific disrespectful and insulting statements about your Commander-in-Chief, the President of the United States, in violation of Article 134, UCMJ, which were prejudicial to good order and discipline and were of a nature to bring discredit upon the United States Marine Corps and the U.S. armed forces. Specifically, you stated:

> "As an Active Duty Marine I say 'Screw Obama' and I will not follow all orders from him . . . Will do my job better then [sic] the next guy . . . But has [sic] for saluting Obama as commander-in-chief . . . I will not" and "Your [sic] right it said to defend the 'I will support and defend the Constitution of the United States against all enemies, foreign and domestic' Obama is the economic enemy . . . He is the religious enemy . . . he is the 'Fundamentally change' America enemy . . . he IS the Domestic Enemy."

In this statement, Plaintiff identified himself as an active-duty Marine. Therefore, Plaintiff's statements go beyond his individual capacity because he identifies himself as an active-duty Marine. His defense is that he is simply articulating the existing law that he is not required to follow any unlawful order. His defense is that he is making these statements in the context of public policy discussions.

According to the Commanding Officer, Defendant Dowling: "Your comments were clearly disrespectful in tone and tenor toward your Commander-in-Chief and unquestionably constitute a lack of personal and professional discipline on your part as an active-duty Marine. Furthermore, your specific statement that 'I will not follow all orders from him', which you made while on active duty as a Sergeant of Marines, is unquestionably prejudicial to the good

order and discipline of this command and our Corps. You posted these inappropriate and disrespectful statements to a Facebook page designed for discussion among active-duty Marines in the METOC community and were in fact viewed by active-duty Marines at that time. Your disrespectful and insulting comments also constitute a serious deviation from our core values of honor, courage, and commitment and have unquestionably brought discredit upon yourself, this Command, and our Corps."

These statements are the views of Plaintiff's Commanding Officer, Defendant Dowling, on the base. Plaintiff's Commanding Officer belatedly counseled Plaintiff on March 23, 2012, after initiating Plaintiff's administrative separation procedures on March 21, 2012, based on Plaintiff's specific METOC statement on March 1, 2012. Plaintiff's METOC statements were not made on Plaintiff's own Facebook page that included the banner disavowing any connection to the military. Plaintiff attributed the METOC statements to himself "as an Active-Duty Marine." Plaintiff's counsel may explain the full defense to the administrative separation board. If Plaintiff is simply articulating well-established law that a Marine is not required to comply with unlawful orders, Plaintiff will win. If however, Plaintiff's statements go beyond that, and deviate from the military core values of honor, courage, and commitment, or discredit the service, then Plaintiff may face the appropriate consequences for these statements. The Court concludes that the initial decision as to whether these statements violate Article 134 or DOD Directive 1344.10, or whether these statements are protected speech, should be made through the military process. For the Court to step in and decide as a preliminary matter that Plaintiff's statements are protected free speech, unrelated to any violation of any military rule and regulation, would be premature.

The Commanding Officer, Defendant Dowling, further counseled Plaintiff as follows: "On 5 Mar 2012 your Company 1stSgt read you your Article 31(b) rights and informed you that you were suspected of violating the UCMJ for making disrespectful comments about the President of the United States on your recent 1 Mar 12 Facebook posts. After 1stSgt completed his Art 31(b) rights advisement, you indicated that you did not desire to discuss this topic any further until you had the opportunity to speak with a military attorney. Your

company 1stSgt approached you later that week on or about 9 Mar 12 and specifically advised you that as an active-duty U.S. Marine, you were required to comply with the provisions of DOD Directive 1344.10, entitled "Political Activities by Members of the Armed Forces", and the UCMJ."

The Court requests further briefing from both parties, as soon as reasonably possible, on the applicability of any injunction prohibiting the military from violating First Amendment rights under DOD Directive 1344.10. See Rigdon v. Perry, 962 F. Supp. 150, 166 (D. D.C. 1997) (enjoining the defendants "from interpreting DOD Directive 1344.10, or any similar law or regulation in a manner that prohibits the plaintiffs from exercising their free speech and free exercise rights under the First Amendment of the Constitution.") In the Court's view, DOD Directive 1344.10 would be authorized if it is narrowly tailored and not overly broad, in order to avoid suppressing legitimate First Amendment rights of the military. Plaintiff's counsel may raise these constitutional arguments to the military board.

Plaintiff's Commanding Officer, Defendant Dowling, further counseled Plaintiff: "This was after you attended a mandatory class on DOD Directive 1344.10 and Social Media guidance. You informed your Company 1stSgt again that you understood the provisions of DOD Directive 1344.10 and you acknowledged that you were required to comply with the provisions of that Directive while you remained on active duty. You personally informed the 1stSgt that you knew "what you could and could not do and that you still planned to do interviews." You have since disregarded that counseling on numerous occasions and engaged in partisan political activities in violation of DOD Directive 1344.10 and Article 92, UCMJ, to include purposefully speaking before a partisan political gathering on 22 Mar 12 and continuing to utilize various media sources to advocate partisan politics and undermine the chain of command."

///
///
///
///

It is clear to the Court that if given a specific lawful order by a Commanding Officer, a person in the military may not disregard the order. Plaintiff may have a difference of opinion as to whether his activities constitutes partisan political activities. If Plaintiff received guidance on the parameters of partisan political activities, Plaintiff disregarded that advice at his peril. Plaintiff may, however, assert that his activities were not in violation of the order. The Court believes that the military should properly evaluate these contentions in the administrative separation proceedings.

Plaintiff's Commanding Officer, Defendant Dowling, additionally advised Plaintiff: "You have been formally notified that you will be subject to an administrative separation proceeding for commission of serious offenses for violating DOD Directive 1344.10 and for those aforementioned disrespectful and insulting statements about your Commander-in-Chief."

Plaintiff's counsel believe that these statements are not "serious offenses" under the applicable military regulations. The lawyers may present at the hearing the maximum punishment chart, appendix 12, defining serious offenses. The lawyers may make their arguments that these statements, including the case interpreting disloyal statements, do not apply to this instance. Plaintiff may also present to the administrative separation board that the Secretary of the Navy did not issue implementing instructions for the DOD Directive 1344.10. Additionally, Plaintiff's counsel may make the argument that Defendant Dowling's counseling should have occurred prior to instituting the administrative separation because these offenses are not appropriately classified as serious within the military's own rules and regulations. "[A]n agency of the government must scrupulously observe its own rules, regulations and procedures." Blassingame v. Sec'y of the Navy, 866 F.2d 556, 560 (2d Cir. 1989). "With respect to the armed forces, this requirement 'does not involve any undue interference with the proper and efficient operation of our military forces because we only require that the [Navy] carry out the procedures and regulations it created itself." Id.; see also Wisotsky v. United States, 69 Fed. Cl. 299, 305, 2006 U.S. Claims LEXIS 5, ** 17-**18 (2006).

///

The Commanding Officer, Defendant Dowling, made recommendations as follows: "Specific recommendations for corrective action are to refrain from engaging in partisan political activity in accordance with DOD Directive 1344.10, to comply with the UCMJ and refrain from conduct that is prejudicial to good order and discipline or is of a nature to bring discredit upon the armed forces. Your conduct is not what is expected of a Marine Non-Commissioned Officer and sets a poor example for junior Marines and the Corps as a whole."

Plaintiff's Commanding Officer, Defendant Dowling, advised Plaintiff, "You may seek assistance, which is available through the chain of command and the Office of the Staff Judge Advocate." Plaintiff acknowledged, "I understand that I am being processed for the following judicial or adverse administrative action: Involuntary Administrative Separation for Misconduct for Commission of a Serious Offense per paragraph 6210.6, MCO P1900.16F. I was advised that within 5 working days after acknowledging this entry I may submit a written rebuttal which will be filed on the document side of the service record. I choose to ____/ not to __x__ make such a statement."

Following the counseling, Plaintiff was appointed military counsel. On March 23, 2012, Plaintiff's military attorney notified the hearing officer that he had a scheduling conflict on Friday, March 30, 2012. (Doc. No. 1, ¶ 21.) In response, by letter dated March 26, 2012, the hearing was delayed one day, until Saturday March 31, 2012. (Id.) On March 25, 2012, Plaintiff requested an additional one week in order to allow more adequate preparation for the hearing. (Id.) On March 26, 2012, that request was denied. (Id., Ex. C.)

On March 26, 2012, Plaintiff retained, as civilian counsel, J. Mark Brewer, one of Plaintiff's undersigned counsel, pursuant to MARCORSEPMAN, Section 6304.4(c). (Id., Ex. H.) On March 27, 2012, Plaintiff's civilian counsel requested an extension of the hearing date for ten days. (Id., Ex. I.) On March 28, 2012, that request was denied, but the hearing date was moved to April 5, 2012. (Id., Ex. D.)

///

///

///

On March 30, 2012, Plaintiff's military attorney submitted to Defendants a Request for Legal Ethics Opinion, which would respond to three questions relevant and necessary to the conduct and outcome of Plaintiff's Notification hearing:

> 1. Has the Defense Department's Directive Number 1344.10 and other interpretative documents been modified to fully comply with the Order ... in Rigdon v. Perry, 963 F. Supp. 150, 164 (D.D.C. 1997)....
>
> 2. May an active duty, non-commissioned, U.S. Marine maintaining a Facebook web page bearing a clear disclaimer that all statements are personal views, not made in an official capacity and not representing the views of the Marine Corps, make statements thereon supporting or opposing either (i) a political party or (ii) a candidate for federal, state or local office or (iii) both?
>
> 3. May such a Marine make statements critical of a candidate for political office when that candidate is also currently serving in office? Does a separate rule apply to criticisms of a candidate for political office serving as President of the United States?

(Doc. No. 1, Ex. E.)

On April 4, 2012, the military denied Plaintiff's Request for a Legal Ethics Opinion. The military also denied counsel's request to continue Plaintiff's administrative separation hearing in order to prepare an adequate defense. Plaintiff sued all Defendants in their official capacity for declaratory and injunctive relief pursuant to 5 U.S.C. § 702 on April 3, 2012. (Id., ¶ 12.)

Defendant Dowling is a colonel in the United States Marine Corps and serves as the Commanding Officer of the Weapons and Field Training Battalion, Marine Corps Recruit Depot, San Diego, California. (Id., ¶ 7.) Defendant Dowling is Plaintiff's Commanding Officer and the Convening Authority with regards to Plaintiff and the Administrative Separation Board. (Id.)

Defendant Ray Mabus ("Mabus") is the Secretary of the United States Navy, one of the military branches within the Defense Department in the United States Government, whose office is charged by DOD Directive 1344.10, with the legally enforceable duty to "issue appropriate implementing documents" for the purpose of enforcing DOD Directive 1344.10, with respect to service members of the United States Marine Corps. (Id., ¶ 8.) Defendant Mabus' office has immediate supervision over Defendant Dowling in ensuring compliance


with DOD Directive 1344.10. (Id.)

Defendant, the United States Department of Defense ("DOD"), is a department of the Executive Branch of the United States Government, which adopted, and is in charge of enforcing the Uniform Code of Military Justice ("UCMJ") and DOD Directive 1344.10. (Id., ¶ 9.)

Defendant United States of America ("United States") is a government entity supervising the Armed Forces of the United States of America, and this is the entity empowered to enforce sanctions for knowing and willful violations of the law. (Id., ¶ 10.) Plaintiff alleges that Defendant United States' agents are responsible for regulating and enforcing the UCMJ and DOD Directive 1344.10, including their enforcement as challenged by Plaintiff. (Id.)

Defendant Brigadier General Daniel Yoo ("Yoo") is the Commanding General of the United States Marine Corps Depot, San Diego, and as a result of this position, exercises authority over the separation of Plaintiff from service with the Marine Corps. (Id., ¶ 11.) The Court now turns to the applicable legal standards.

## Legal Standards

An injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2761 (2010). Plaintiffs have the burden to that injunctive relief is appropriate. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442–43 (1974). Because they are extraordinary remedies, a plaintiff seeking a temporary restraining order ("TRO") or preliminary injunction "must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Winter v. NRDC, 555 U.S. 7, 20 (2008); see also Munaf v. Geren, 553 U.S. 674, 690 (2008) ("a party seeking a preliminary injunction must demonstrate, among other things, a likelihood of success on the merits") (citations omitted) (internal quotation marks omitted)); Mazurek v. Armstrong, 520 U.S. 968, 971, 976 (1997) (overturning a preliminary injunction issued when a plaintiff had established only a fair chance

of success on the merits of his claim).

The Ninth Circuit recognizes the Winter test. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). However, the Ninth Circuit has articulated an alternate version of this test whereby "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

Under this approach, "serious questions going to the merits" requires more than showing that "success is more likely than not," it requires a plaintiff to demonstrate a "substantial case for relief on the merits." Leiva-Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011). And even where success on the merits is likely or "serious questions" are raised an injunction "is not a remedy which issues as of course." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982).

In this context, Plaintiff seeks the Court to enjoin a military administrative separation proceeding. (Doc. Nos. 1 & 2.) "Military discharge decisions are subject to judicial review." Muhammad v. Sec'y of Army, 770 F.2d 1494, 1495 (9th Cir. 1985). The Court may review unlawful military decisions if the plaintiff alleges (a) violation of a constitutional right, federal statute, or military regulations, and (b) exhaustion of administrative remedies, unless exhaustion is excused. Wenger v. Monroe, 282 F.3d 1068, 1072 (9th Cir. 2002).

Here, Plaintiff alleges violations of his First and Fifth Amendment rights, as well as various military regulations. (Doc. No. 1, ¶¶ 32-46.) Therefore, Plaintiff meets the first part of the test because Plaintiff alleges violations of constitutional rights and military regulations. Because Plaintiff has not exhausted administrative remedies, however, exhaustion must be excused.

Exhaustion of administrative remedies is excused if "(1) if the intraservice remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if

substantial constitutional questions are raised." Wenger, 282 F.3d at 1073. Plaintiff raises substantial Constitutional questions, so the Court would have the authority to enjoin the administrative separation proceeding after balancing the appropriate factors under the law. See Wenger, 282 F.3d at 1072.

Under Wenger, where plaintiff alleges constitutional violations and exhaustion is excused, "a court weighs four factors to determine whether judicial review of his claims is appropriate. These factors include: (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved." Wenger, 282 F.3d at 1072.

From Plaintiff's point of view, he is being administratively separated from the service after almost nine years, solely because of his exercise of protected speech. The Court notes that the country is in the middle of a presidential campaign, where people hold strongly held beliefs for and against the sitting President of the United States. In the military context, the President is the Commander-in-Chief, further complicating the analysis. Nevertheless, from the Plaintiff's perspective, Plaintiff is simply exercising his constitutional right of free speech involving issues of public policy. From the Defendants' point of view, Plaintiff has crossed the line by violating direct orders, by engaging in activities that are contrary to the good order of the Marines, and by disregarding military regulations.

Speech "on issues of social and political concern . . . has been recognized as 'the core of what the First Amendment is designed to protect.'" United States v. Wilcox, 66 M.J. 442, 446-47 (C.A.A.F. 2008). As a result, "members of the military are not excluded from the protection granted by the First Amendment," Parker v. Levy, 417 U.S. 733, 758 (1974). The First Amendment therefore protects speech in the military unless it "interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops." Wilcox, 66 M.J. at 448. To violate Article 134, the government must show a "direct and palpable connection" between the "statements of the military mission" and the statements must be taken in their full context. Id. at 447-48.

The Court, after having concluded that the Plaintiff has alleged serious constitutional concern, now turns to the alleged violations. The administrative separation proceedings against Plaintiff are based on alleged violations of Article 134 and DOD Directive 1344.10. Article 134 prohibits disloyal statements. Article 134 states that disloyal statements include:

(b) Elements.

(1) That the accused made a certain statement;

(2) That the statement was communicated to another person;

(3) That the statement was disloyal to the United States;

(4) That the statement was made with the intent to promote disloyalty or disaffection toward the United States by any member of the armed forces or to interfere with or impair the loyalty to the United States or good order and discipline of any member of the armed forces; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

(c) Explanation. Certain disloyal statements by military personnel may not constitute an offense under 18 U.S.C. §§ 2385, 2387, and 2388, but may, under the circumstances, be punishable under this article. Examples include praising the enemy, attacking the war aims of the United States, or denouncing our form of government with the intent to promote disloyalty or disaffection among members of the armed services. A declaration of personal belief can amount to a disloyal statement if it disavows allegiance owed to the United States by the declarant. The disloyalty involved for this offense must be to the United States as a political entity and not merely to a department or other agency that is part of its administration.

In this instance, Defendant Dowling, filed a declaration indicating why the administrative board needs to convene promptly, why a continuance is not in the best interest of the military, and why, in his view, Plaintiff violated Article 134. In defense, Plaintiff's counsel indicates that the cases and authorities support his view that Plaintiff's statements do not constitute serious offenses, that the exercise of First Amendment rights must be protected by the military, and any restrictions must be narrowly tailored to avoid unnecessary limitations on Plaintiff's First Amendment rights, and therefore, Plaintiff has not violated Article 134.

The second ground is an alleged violation of DOD Directive 1344.10. DOD Directive 1344.10 addresses permissible "Political Activities by Members of the Armed Forces." Plaintiff challenges the DOD Directive 1344.10 on several grounds. (See Doc. Nos. 1 & 2.) Plaintiff's challenge raises an interesting question: does attendance at a Tea Party event

constitute "partisan political activity?" Many constitutional scholars could disagree whether participation by a service member, not in uniform, at a Tea Party event, constitutes partisan political activity with a recognized political party. In contrast to an established political party, Plaintiff's counsel maintains that the Tea Party is not a partisan political organization, but rather, a loose affiliation of individuals with varying views. In this instance, the military contends that Plaintiff crossed the line into partisan political activity and counseled Plaintiff not to attend these events.

In reviewing military decisions that raise constitutional issues, "a court weighs four factors to determine whether judicial review of his claims is appropriate. These factors include: (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved." Wenger, 282 F.3d at 1072.

Plaintiff's counsel has suggested that the outcome of the administrative separation proceeding is foregone, rendering Plaintiff's efforts futile. The Court does not hold that belief. Plaintiff's counsel may raise his challenges to both Article 134 and DOD Directive 1344.10 to the administrative separation board and present their briefing and arguments to the board.

The Court further notes that the board, under the administrative separation proceedings, is not required to separate Plaintiff. At the administrative separation proceedings, the board may: (1) find that the government has not met its burden and retain Plaintiff; (2) find that the government has met its burden and recommend retention; (3) find that the government has met its burden and recommend discharge and then recommend the character of the discharge as either honorable, general under honorable conditions or under other than honorable conditions. It is not a foregone conclusion that Plaintiff will be separated from the service. The board may conclude that Plaintiff should receive an honorable discharge.

If, however, the board finds that the government has met its burden and recommends discharge under other than honorable conditions, Plaintiff may also seek a review process initially to the Convening Authority and ultimately to the Board for Correction of Naval Records where Plaintiff may seek redress for any injustice or error. (Doc. No. 1, Ex. H,

Marine Corps Separation Manual.) Under these circumstances, the Court concludes that Plaintiff has not made the requisite showing of irreparable injury. See Wenger, 282 F.3d at 1072. If the board rules in his favor, he will not suffer irreparable injury. Plaintiff could also seek appeal. Plaintiff has defense counsel, can articulate his defense, and the members of the board should listen to counsel's arguments and evaluate the merits of the matter.

The Court concludes that Plaintiff has not made a sufficient showing under Wenger. The Commanding Officer, Defendant Dowling, contends that Plaintiff has interfered with military functions by influencing junior Marines, and the regulations at issue may involve military discretion and expertise. Wenger, 282 F.3d at 1072. Accordingly, Plaintiff has not satisfied his burden under Wenger.

The Court notes, however, that this may be a case capable of repetition, yet evading review. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 398 (1980). If, for example, the government is attempting to squelch Plaintiff, and other military personnel, from speaking out on matters of public concern, this would violate the First Amendment. If the basis for Plaintiff's separation is his protected speech, or if the military persists in violating other service members' free speech rights, this case may proceed. If, at the conclusion of the Plaintiff's administrative separation proceeding, Plaintiff was not permitted to present his defense, Plaintiff may renew his Due Process arguments and again request the Court to enjoin Plaintiff's discharge or reinstate Plaintiff. See, e.g., Cammermeyer v. Perry, 97 F.3d 1235 (9th Cir. 1996). As a result, the Court denies Plaintiff's current request for a temporary restraining order without prejudice.

Moreover, Plaintiff may renew his request for continuance to the administrative separation board. The Court questions the government's insistence on proceeding so expeditiously after Plaintiff's nearly nine years of service. At a minimum, the Court strongly recommends that the military voluntarily provide Plaintiff's counsel a continuance of twenty-four hours or more to permit review of this Court's order. Given the fact that the Court was presented with this matter late yesterday and has been in a trial today, the Court only had a limited time to review the matter. As a result, the Court believes that Plaintiff should be

provided the opportunity to have the Ninth Circuit review this Court's order. Based on the current record, however, the Court denies Plaintiff's application for temporary restraining order without prejudice.

**IT IS SO ORDERED.**

Dated: April 4, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT