DECLARATION OF GARY G. KREEP

I, Gary G. Kreep, hereby declare, under penalty of perjury, as follows:

1.      That I serve as Co-Counsel to Sergeant Gary A. Stein before this Court, and that I served as civilian Co-Counsel to Sergeant Gary A. Stein before the Administrative Separation Board hearing held on April 5, 2012, which was Maundy Thursday;

2.      That, during the hearing, legal advisor to the Board, Major Houltz, admitted that he was aware of each of Judge Huff's requests to Assistant U.S. Attorney Tom Stahl to call the convening authority to arrange for a continuance of the hearing, and that he intercepted those calls and denied the requests, never bothering to present those requests to either Colonel Dowling or to Lt. Colonel Hairston, as the Convening Authority.  A challenge was made by defense counsel to the independence of Major Houltz, which was denied summarily by Colonel Dowling;

3.      That the prosecution, in part, based its case against Sergeant Stein on the fact that he had filed the instant lawsuit in federal court, challenging the action by the Marine Corps, thereby bringing discredit to the Marine Corps;  Moreover, the prosecution argued that Sgt. Stein's attempts to raise funds for his legal defense brings discredit to the Marine Corps. Defense counsel requested a continuance per the guidance of Judge Huff to review the court's order of April 4, and that was denied ;

4.      That Sgt. Stein's civilian legal team had retained the services of a court reporter, as we were advised that our request for a military court reporter might be denied and that the military bureaucracy was such that it could be a substantial period of time before any request by Sgt. Stein's military legal team for a copy of the transcript would be replied to; that the privately retained court reporter appeared, but after the hearing had progressed for a relatively short period of time, she advised me, and the other defense counsel there, that, due

1    to the manner in which the hearing was being conducted, and the way that the military counsel

2    were "interacting," she could not perform her duties in a professional manner, and she

3    withdrew; therefore, the only court reporter present at the hearing on base was a military

4    reporter, who advised us that a transcript would only be prepared if an order to prepare one

5    was given by the prosecution, and that it would take at least one week to prepare;

6         5.      That the hearing began approximately 8:00 am, and ended near 10:00 pm,

7    before the board withdrew to deliberate, finally rendering its decision at approximately 11:00

8    pm;

9         6.      That, at the outset of the hearing, after prosecution counsel furnished each

10   member of the Administrative Separation Board with a 3-inch thick notebook, containing the

11   documents on which it was asking the Board to make its decision; defense counsel advised the

12   Board that they had not previously been provided a copy of the this notebook and had never

13   seen most of these documents; when defense counsel objected, and asked for a continuance to

14   review the documents, the Board denied any continuance, stating that this was the first time

15   the Board had seen the documents as well, and defense counsel could review them during the

16   course of the hearing; however, when the defense counsel provided the prosecution with a

17   small number of additional documents, the prosecution objected, and, so, the Board ordered a

18   brief recess to allow the prosecution to review the documents;  This effectively deprived

19   defense counsel of the opportunity to prepare for the hearing with respect to those documents;

20   further, when defense counsel complained, in my presence, but off record, of being denied the

21   ability to interview at least one of the prosecution witnesses, the prosecution advised defense

22   counsel that they had advised all prosecution witnesses that they could refuse to talk to defense

23   counsel about the incident, denying defense counsel of the opportunity to prepare for the

24   hearing with respect to at least the one prosecution witness

1       7.      That, as Legal Advisor to the Board, Major Houltz, failed to protect Sgt.

2  Stein's procedural rights, and failed to fulfill his role as the impartial advisor to the Board on

3  matters of law, and took the role of the Prosecution from the outset of the hearing, in that:

4           A.      Major Houltz continually tried to direct defense counsel Captain Grey as to

5                  what he could and could not ask.  Major Houlz made a statement along to the

6                  effect that he was "not going to "make a record for the federal court."

7           B.      Major Houltz limited voir dire of the Board by defense counsel, even without

8                  any objection being made by the Prosecution.

9           C.      Despite Judge Huff's direction in this case to defendants that counsel be allowed

10               to argue legal issues to the Board, Major Houltz intervened to prevent defense

11               counsel from doing so before the Board.

12          D.      On the advice of Major Houltz, the Presiding Officer overruled an objection to

13               admission of an article in "Marine Times" that contained both hearsay and

14               unsubstantiated allegations about Sgt. Stein and the effect of his actions on the

15               U.S. Marine Corps.

16          E.      Major Houltz attempted to control evidentiary objections made by Defense

17               counsel.

18          F.      Major Houltz allowed the Prosecution to mislead the Board about certain facts

19               in the case during closing argument, including, but not by way of exclusion, the

20               fact, testified to by one of the prosecution's own witnesses, that Sgt. Stein did

21               not post several of the postings that he was accused of posting in closing

22               argument, and that, according to a member of the Camp Pendleton prosecution

23               team, who testified as a witness against Sgt. Stein, Sgt. Stein did not say

24               anything inappropriate during his appearance at the Fallbrook Tea Party rally,

25               as he was accused of doing in closing argument;

1    G.      During his opening and closing argument, Captain Torricella stated that the

2            government would make no recommendation as to the "service

3            characterization" being requested (e.g., other than honorable discharge), but,

4            for the first time on closing argument rebuttal, he expressly requested an other

5            than honorable discharge from the Board.  The Prosecution argued that since

6            Colonel Dowling, the Battalion Commander, had recommended an Other than

7            Honorable Discharge, the Board has an obligation do exactly that.

8    8.      Members of the Board operated under several mistakes of fact and mistakes of

9    law, including the following:

10   A.      The prosecution argued, and two of the Board Members said, that the "Tea

11           Party" was a political party, and the third Board Member was not sure;  Of

12           course, the Tea Party is not a political party registered with the Federal Election

13           Commission or operating in California; The Presiding Officer, after testimony

14           by prosecution witnesses, relented, and agreed that the "Tea Party" was not a

15           political party; however, the prosecution continued to argue that the Fallbrook

16           Tea Party meeting was a "partisan political meeting," and that it was a violation

17           of Marine Corps rules for any Marine, in or out of uniform, to attend any

18           meeting of any "partisan" group or "cause;

19   B.      All three board members stated their belief that a Marine was completely barred

20           from any discussion about political candidates, whether in uniform or not,

21           whenever that person is identified as a Marine.

22   8.      The hearing revealed that other Marines posted to the METOC Facebook page

23   statements similar to those of Sergeant Stein, and that there was no punishment or even

24   counseling of those Marines underway.

1    9.    That the Board President barred defense expert witness and former Judge Advocate

2    to the Commandant of the Marines, the senior ranking Judge Advocate in the U.S. Marine

3    Corps, Brigadier General Brahms (USMC, ret.), from presenting any testimony as to the

4    effect of Sergeant Stein's comments on good order and discipline in the Marine Corps, *inter*

5    *alia*, based on the argument by the Prosecution that, as a "General Officer," he might unduly

6    influence the Tribunal, because he now practiced law privately now, and was a "defense"

7    attorney, he would be "biased," and because any testimony that he would give would be

8    "speculative," this despite the fact that the Board had accepted testimony from several

9    prosecution witnesses that those witnesses believed that Sgt. Stein's actions would negatively

10   affect the "good order and discipline" of the Corps, and despite the fact that other than one

11   sergeant calling Sgt. Stein an idiot, there was no evidence that such was the case; the Board

12   also barred the testimony of several other defense witnesses who would have similarly testified

13   that Sgt. Stein's conduct did not adversely impact good order and discipline in the Marine

14   Corps.

15        10.   That the Prosecution argued that media interest in this case has brought discredit

16   upon the Marine Corps and based Sgt. Stein's separation in part on this ground.

17        11.   That Sergeant Barnhardt, a prosecution witness, testified that Marines do not have

18   First Amendment rights.

19        12. That Lead Prosecutor Captain John Torrasala repeatedly stated his view that a

20   Marine cannot attend any event involving public policy issues such as pro life, pro choice, pro

21   gun, etc.

22        13.   That testimony by a subordinate legal officer to Captain John Torresala, Captain

23   Gavin Logan, was to the effect that when Sergeant Stein attended a Tea Party meeting at

24   which he was observed, nothing Stein said was objectionable, but the prosecution argued that

25   his presence there was inappropriate as there were people at the event who opposed the re-

1    election of Barack Obama.  During cross-examination, Captain Logan admitted that, in 2005,

2    on his Facebook page, he posted a picture of himself in uniform, and he also posted the

3    statement "You shut the F*** up.  We'll protect America.  Keep out of our F****** way

4    liberal pussies."

5          14.  The Board did not address Plaintiff's constitutional arguments challenging DoD

6    Directive 1344.10, stating that such issues were not within their purview.

7

8          Executed this 6ᵗʰ day of April, 2012 in Ramona, California

9

10                                     **s/ Gary G. Kreep**_____

11                                     Gary G. Kreep