GARY G. KREEP (SBN 66482)
NATHANIEL J. OLESON (CA Bar No. 276695)
UNITED STATES JUSTICE FOUNDATION
932 "D" Street, Suite 3
Ramona, CA 92065
Tel: (760) 788-6624
Fax: (760) 788-6414
usjf@usjf.net

DAVID LOY (SBN 229235)
ACLU FOUNDATION OF SAN DIEGO &
 IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: (619) 232-2121
Fax: (619) 232-0036
davidloy@aclusandiego.org

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGEANT GARY A. STEIN,<br><br>             Plaintiff,<br><br>v.<br><br>COLONEL C.S. DOWLING, *et al.*,<br><br>             Defendants. | Case No. 12-cv-0816 H (BGS)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

    Through undersigned counsel, Sergeant Gary Stein submits this memorandum in support his motion for a preliminary injunction against Defendants to restrain and enjoin them from discharging him from the United States Marine Corps, or in the alternative, to prevent his discharge on an Other than Honorable basis. As Sergeant Stein has explained in briefs previously submitted to the Court, the discharge proceedings against him are both procedurally and substantively unconstitutional. Defendants have violated and continue to violate Sergeant Stein's constitutional rights to due process and freedom of speech by pursuing fundamentally unfair administrative proceedings in retaliation for his protected political speech. Sergeant Stein need

not repeat his previous oral and written arguments, with which the Court is familiar and which are incorporated herein by reference. This brief is submitted to discuss why the administrative separation hearing conducted on Thursday, April 12, 2012 failed to meet the Court's expectations because it was fundamentally unfair and violated Sergeant Stein's constitutional rights to due process and freedom of speech and petition. For the reasons already argued by Sergeant Stein, this Court has the power to enjoin his imminent unconstitutional discharge from the Marine Corps. The Court need not and should not wait for administrative remedies to be exhausted, given that the initiation and pursuit of the discharge proceedings themselves are unconstitutional and should therefore be enjoined.

## FACTS AND PROCEDURAL HISTORY

As the Court is familiar with the proceedings, only a brief recitation is provided. By notice dated March 21, 2012, when military defense counsel were unavailable due to a training conference, the Commanding Officer, Weapons and Field Training Battalion, Marine Corps Recruit Depot San Diego, initiated administrative separation ("AdSep") proceedings against Sergeant Stein on the grounds that the sergeant (1) "allegedly made statements regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ," and (2) "allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DoD Directive 1344.10." An AdSep hearing was initially scheduled only nine days later. Despite the complexity of the issues involved, the Commanding Officer refused to continue the hearing beyond April 5, 2012. In the Marine Corps, an AdSep hearing to recommend for or against discharge is not conducted by a judicial officer. Instead, it is conducted by a three-member board of Marines selected for that hearing, none of whom is typically a lawyer or military judge, who are advised on legal matters by a staff judge advocate. The hearing is administrative and not bound by the rules of evidence applied to court martial proceedings.

On April 4, 2012, the Court heard argument on Sergeant Stein's application for temporary restraining order (TRO) to halt the AdSep proceedings on due process and free speech grounds. The Court recognized that Sergeant Stein presents substantial constitutional issues but declined to

1 issue the TRO, stating that it expected the AdSep board would hear and fully consider all matters
2 that Sergeant Stein would present in his defense, consistent with due process.
3       The AdSep hearing proceeded on April 5, 2012, and as Sergeant Stein's counsel
4 anticipated before this Court, the board recommended an other than honorable discharge.
5 Immediately after the AdSep hearing, on April 6, 2012, the Court heard a request for TRO to
6 prevent Sergeant Stein's discharge. The Court again recognized the substantial constitutional
7 questions at stake but declined to issue the TRO. However, the Court agreed to hear an expedited
8 motion for preliminary injunction on April 13, 2012. The Court now has the benefit of a
9 transcript of the AdSep hearing in addition to the witness statements that the AdSep board refused
10 to consider or allow into the administrative record.

## ARGUMENT

12       As permitted by the Court during the hearing of April 6, 2012, Sergeant Stein comes
13 before the Court seeking a preliminary injunction. The standard for issuing a preliminary
14 injunction need not be discussed in detail. As previously discussed, if Sergeant Stein satisfies the
15 legal standard for enjoining a military discharge, *Wenger v. Monroe*, 282 F.3d 1068, 1072-73 (9th
16 Cir. 2002), he necessarily demonstrates that "serious questions going to the merits were raised
17 and the balance of hardships tips sharply in the plaintiff's favor," and "there is a likelihood of
18 irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v.
19 Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Without repeating arguments the Court has
20 already heard, which are incorporated by reference, this brief discusses the administrative
21 separation hearing, which compounded the violation of Sergeant Stein's constitutional rights.

22 **I. SERGEANT STEIN NEED NOT EXHAUST ADMINISTRATIVE REMEDIES, AND THE COURT SHOULD EXERCISE ITS POWER TO**
23 **ENJOIN AN UNCONSTITUTIONAL DISCHARGE.**

24       As the Court has recognized, Sergeant Stein presents "substantial constitutional questions"
25 sufficient to excuse exhaustion of administrative remedies. *Wenger v. Monroe*, 282 F.3d 1068,
26 1073 (9th Cir. 2002). This case also satisfies the *Mindes* factors for enjoining an unconstitutional
27 discharge: "(1) The nature and strength of the plaintiff's claim; (2) The potential injury to the
28 plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The

extent to which military discretion or expertise is involved." *Id.* at 1072 (citing *Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971)).

**A.    This Case Presents Strong Constitutional Grounds to Prevent an Unconstitutional Discharge.**

**1.    The administrative separation proceedings violated Sergeant Stein's fundamental due process rights.**

As can be seen from the AdSep hearing transcript ("ASBT") from the April 5, 2012 hearing, the board violated Sergeant Stein's fundamental due process rights. The hearing was presided over by a three Marine Panel, over which the Senior member, Lt. Col. Hairston, presided. The purportedly neutral legal advisor to the Panel, Col. Houltz, acted, in effect, as a part of the prosecutorial legal team, and, instead of answering the questions of the Panel regarding legal advice, took over power of the Senior member, deciding objections to, and attempting to block, voir dire of both himself and of the Panel, contrary to the normal procedures of an AdSep hearing (ASBT, pages 5, 7, 12, 16, 25-27, 29-30, 34-37, 85-86); refused to answer certain questions on the grounds that, "We're not going to sit here and build up a record for federal court. That's not what this hearing is about." (ASBT page 16); and even threatened a superior officer (Lt. Col. Atterbury, the supervising officer for the military legal team for Sergeant Stein) with removal from the hearing, when Lt. Col Atterbury objected to the interference by Maj. Houltz in the voir dire (ASBT, pages 2, 27, 36-37);

On the day of the hearing, Sergeant Stein's military legal team was served with approximately 1-1/2" of documentary evidence that the prosecution was submitting to the Panel that day for consideration. Sergeant Stein's legal team had never seen any of the documents before, and, as a result, a continuance was requested Sergeant Stein's legal team, so that they could timely review the evidence, and prepare responses to it, but that the request was denied by Lt. Col. Hairston (ASBT page 66-68, 75, 89-92 );

The prosecution admitted that the charges against Sergeant Stein did not warrant his separation from the Marine Corps, but argued that an "analogous" charge, which was not applicable to Sergeant Stein, as it only applied to Commissioned Officers, should be applied to Sergeant Stein, so that he could be discharged from the Corps (ASBT pages 121-122, 273).

1  Testimony was proffered, and written statements were submitted, from multiple defense expert
2  witnesses, that contradicted this claim, and provided that the charges alleged against STEIN could
3  not, as a matter of law, result in his discharge, but the testimony was not allowed by Lt. Col.
4  Hairston (ASBT 159-162, 225-226, 241-242).  Further, the written statements of Brigadier
5  General David Brahms, USMC (Ret.), Major Neil Ringlee, USMC (Ret.), and Lt. Col. Jeffrey
6  Addicott (Army, Ret.), JD, LLM, SJD, copies of which are submitted herewith, were submitted to
7  the Panel, but Lt. Col. Hairston refused to accept them into the record of the proceedings.
8      The prosecution was allowed to ask their witnesses their opinions as to whether the
9  alleged actions of Sergeant Stein contributed to a "breakdown of good order and discipline," but
10  Sergeant Stein was denied the ability to present expert testimony to rebut the testimony (ASBT
11  pages 145, 159-162, 166-167, 192, 225-226, 241-242).
12      Off the record, Lt. Col. Hairston announced during the hearing, that the hearing would end
13  at 17:00 hours, and re-commence the next day.  As a result, due to the lateness of the day, and the
14  fact that the prosecution had not yet completed examining their witnesses, Sergeant Stein's legal
15  defense team started calling off the witnesses that they had on standby, ready to testify.
16  Subsequently, again off the record, Lt. Col. Harrison announced that the hearing would go until it
17  ended that day, even if it took until 23:00, which it did, and one of Sergeant Stein's witnesses
18  could not testify, due to the legal team being unable to contact him (ASBT pages 240-241).
19      During their closing arguments, the prosecution raised, as grounds for separating Sergeant
20  Stein from the Marine Corps under less than honorable conditions, the following irrelevant and
21  completely inappropriate matters:
22      a.    The fact that a publication called the MARINE CORPS TIMES published an
23      article discussing the issue (ASBT page 253);
24      b.    The claim that the "Tea Party" movement is a formal political party, and thus,
25      Sergeant Stein's attendance at a Tea Party meeting violated of Department of Defense
26      Directives (ASBT page 255);
27      c.    That Sergeant Stein had no commendations or citations on his military record
28      (ASBT page 256)

1       d.       That he had bad debts (ASBT 256); and

2       e.       That he filed the instant lawsuit, seeking to protect his Constitutional rights (ASBT

3       257).

4       Such arguments, allowed over objection, were a blatant, and successful, attempt to

5 persuade the Panel to discharge Sergeant Stein under less than honorable conditions, despite the

6 fact that the prosecution admitted that the charges could not lead to his discharge at all, much less

7 under less than honorable conditions.  For all these reasons, the conduct of the hearing violated

8 fundamental principles of due process.

9       **2.**       **The administrative separation board's decision violated the First Amendment.**

10

11       During the administrative separation hearing, the Marine Corps committed an outrageous

12 First Amendment violation by arguing that Sergeant Stein discredited the Corps and deserved

13 discharge because he sought judicial review in this Court.  As the prosecutor argued, "he sues his

14 commanding officer in federal court and his commanding general in an attempt to stop this board.

15 That's his right.  I bring it up to show you that this is not a Marine who thinks about the

16 institution.  This is not a Marine concerned with the institution."  ASBT at 257.  Though the

17 prosecutor backhandedly acknowledged Sergeant Stein had a right to seek judicial review, he

18 expressly urged the board to consider this lawsuit as grounds for an other than honorable

19 discharge.  It is difficult to imagine a greater affront to fundamental constitutional principles.

20       Sergeant Stein has a fundamental First Amendment right to petition this Court for redress.

21 *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972).  The

22 government may not retaliate against him for the exercise of that right.  *Soranno's Gasco, Inc. v.*

23 *Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Given that the board did not specify the reasons

24 for its decision, *see* ASBT at 277, the decision is incurably tainted, because it is impossible to

25 determine whether the board relied on this clearly unconstitutional ground.  *See Griffin v. United*

26 *States*, 502 U.S. 46, 53 (1991) ("where a provision of the Constitution forbids conviction on a

27 particular ground, the constitutional guarantee is violated by a general verdict that may have

28

rested on that ground"). For this reason alone, in addition to those previously argued, the imminent discharge of Sergeant Stein would violate the First Amendment and should be enjoined.

### B. Because They Are Inherently Unconstitutional, the Discharge Proceedings Represent Irreparable Injury to Sergeant Stein.

If this Court does not act, the injury to Sergeant Stein arises not only from the severe consequences of an Other than Honorable Discharge. The injury arises from the initiation and pursuit of the discharge proceedings themselves. In First Amendment cases, the process itself is often the punishment. As the Supreme Court has recognized, the harm to a plaintiff in retaliation for "the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Regardless of whether the Board for Correction of Naval Records could alter the nature of Sergeant Stein's discharge, award him back pay and other benefits, or order his reinstatement, it cannot undo the harm he has suffered and will suffer from the existence of the discharge proceedings themselves. Much like absolute or qualified immunity for government officials, the First Amendment protects individuals from the fact of prosecution or trial itself, not merely liability or conviction, because of protected speech. *See Collins v. Kendall County*, 807 F.2d 95, 98 n.5 (7th Cir. 1986) ("When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction."). Accordingly, courts may properly enjoin the government from pursuing an improper prosecution arising from the exercise of First Amendment rights. *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006). If the Court can enjoin a criminal prosecution that violates the First Amendment, it can certainly take the lesser step of enjoining clearly unconstitutional administrative proceedings, even in the military.

### C. This Case Does Not Involve Deference to Uniquely Military Expertise.

The "'extent of interference with military functions' and "[t]he extent to which military discretion or expertise is involved,' are generally considered together." *Wenger*, 282 F.3d at 1075. Neither factor defeats judicial review. This is a constitutional case about free speech and

due process. It involves no "sensitive area of military expertise and discretion." *Id.* Instead, this case involves questions of constitutional law which this Court is expressly empowered to decide and over which it has superior expertise than the administrative separation board and commanding officer responsible for Sergeant Stein's discharge, none of whom are lawyers or judges. Courts do not hesitate to enjoin unlawful discharges. *See Meinhold v. Department of Defense,* 34 F.3d 1469, 1472 (9th Cir. 1994) ("to the extent the district court's judgment enjoins the Navy from discharging Meinhold based solely on his statement of status, we affirm"); *McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998) (preliminary injunction against discharge for likely violations of Navy regulations and Electronic Communications and Privacy Act); *Cooney v. Dalton*, 877 F. Supp. 508, 512-13 (D. Haw. 1995) (temporary restraining order against discharge because of due process violation). Nor should this Court hesitate. The record shows that Defendants committed grave violations of Sergeant Stein's constitutional rights to due process and freedom of speech and petition. An injunction against unconstitutional discharge is necessary to vindicate those rights and prevent further irreparable harm.

## II. NO BOND SHOULD BE REQUIRED, BECAUSE THE GOVERNMENT WILL SUFFER NO COMPENSABLE HARM FROM AN INJUNCTION.

The Court should not require a bond under Fed. R. Civ. P. 65(c). The "purpose of such a bond is to cover any costs or damages suffered by the government, arising from a wrongful injunction." *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). The Court "is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm …." *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Moreover, no bond should be required in free speech cases involving no harm to the defendant. *Baca v. Moreno Valley Unified School Dist*., 936 F. Supp. 719, 738 (C.D. Cal. 1996).

It is difficult to envision how the government would incur compensable costs or damages, even if the preliminary injunction were later dissolved. Rule 65(c) does not authorize the Defendants to recover attorney fees arising from issuance of the injunction. *Bass v. First Pacific Networks, Inc*., 219 F.3d 1052, 1055-56 (9th Cir. 2000). Nothing about the injunction would

1  otherwise cause compensable harm to the government.  Accordingly, no bond should be required.
2  *See Gorbach*, 219 F.3d at 1092.

### CONCLUSION

For the foregoing reasons, the Court is respectfully requested to issue a preliminary injunction prohibiting Defendants from discharging Plaintiff.

Dated:  April 12, 2012                                                  Respectfully submitted,

          **s/David Loy**
David Loy
Attorney for Plaintiff

Of counsel:

J. MARK BREWER
BREWER & PRITCHARD
Three Riverway, 18th Floor
Houston, TX 77056
Tel:  (713) 209-2910
Fax:  (713) 659-5302
brewer@bplaw.com

STEWART  RHODES
OATHKEEPERS
5130 S. Fort Apache Road.
Suite 215-160
Las Vegas, NV 89148
Tel:  (702) 353-0627
rhodeslegalwriting@gmail.com

WILLIAM J. OLSON
HERBERT W. TITUS
JOHN S. MILES
JEREMIAH L. MORGAN
WILLIAM J. OLSON, P.C.
370 Maple Avenue, West, #4
Vienna, Virginia 22180-5615
Tel: (703) 356-5070
Fax: (703) 356-5085
wjo@mindspring.com