# GE-18



**UNITED STATES MARINE CORPS**
OFFICE OF THE STAFF JUDGE ADVOCATE
MARINE CORPS RECRUIT DEPOT
3700 CHOSIN AVENUE
SAN DIEGO, CA 92140-5197

In reply refer to:
5800
TKL
30 Mar 12

From:  Captain Thomas K. Liu████████ / 4402 USMC
To:    File

Subj:  BIOGRAPHICAL INFORMATION IN THE CASE OF SERGEANT GARY A. STEIN, USMC
       0101/6842

Encl:  (1) Excerpts of SNM's Service Record Book, BIR, and Chronological
           Record
       (2) DON CAF Security Revocation
       (3) Screen capture of www.garysteinhomes.com
       (4) 6105 counseling entry

1.  <u>Biographical Information</u>

    a.  <u>Basic Individual Record</u>

        (1) Name: Gary A Stein

        (2) Rank: Sergeant

        (3) Component: Active

        (4) DOR: 1 Jun 2008

        (5) MOS: 6842 Meteorology and Oceanography (METOC) Analyst/Forecaster
(reclassified due to loss of security clearance)

        (6) Clearance: None (Prior Top Secret clearance revoked in Jan 2010).

            (a) An investigation revealed, among other matters of concern,
that SNM failed to report a pattern of financial mismanagement that included
over $25,000 in bad debts, judgments, and repossessions.  See enclosure (2).

        (7) AFADB: 15 Jul 2003

        (8) EAS: 28 Jul 2012

            (a) SNM attempted to reenlist but was denied, because he lost his
security clearance and was on limited duty for a leg injury.

        (8) Home of Record: ████████████████

        (9) Current Residence: ████████████████

    b.  <u>Family/Dependent Status</u>

        (1) SNM ████████████████████

        (2) ████████████████████████████

000449

Subj:  BIOGRAPHICAL INFORMATION IN THE CASE OF <u>SERGEANT GARY A. STEIN</u> ███████
       █████ / 6842 USMC

      (3) SNM ███████████████████████████████████

    (4) SNM also advertises himself as a realtor in the Temecula area, enclosure (3) germane.

2.  Service History

    a.  <u>Service Chronology</u>

      (1) 15 Jul 03 to 10 Oct 03

        (a) Unit: 1st Recruit Training Bn, MCRD Depot San Diego

        (b) Billet: Recruit

      (2) 5 Nov 03 to 25 Nov 03: School of Infantry West

        (a) Unit: School of Infantry, MCB Camp Pendleton

        (b) Billet: 9900

      (3) 27 Nov 03 to 19 Mar 04

        (a) Unit: Marine Detachment Keesler AFB

        (b) Billet: Student, Air Force Weather School

      (4) 39 Mar 04 to 11 Dec 07

        (a) Unit: MWSS 372

        (b) Billet: METOC Observer (6821)

      (5) 7 Jan 08 to 18 Sep 08

        (a) Unit: Marine Detachment Keesler AFB

        (b) Billet: Student, Air Force Weather School

      (6) 13 Oct 08 to 20 Jun 11

        (a) Unit: 1st Intelligence Bn,

        (b) Billet: METOC Analyst/Forecaster (6842)

      (7) 21 Jun 11 to Present

        (a) Unit:  Headquarters Company, Weapons and Field Training Battalion, Marine Corps Recruit Depot San Diego

        (b) Billet: S-3 Range Chief.  Contrary to the SRB that states SNM is assigned as a 6842 (METOC Analyst/Forecaster), he is not filling any MOS-related duties.

    b.  <u>Deployment History</u>.

000450

Subj:   BIOGRAPHICAL INFORMATION IN THE CASE OF SERGEANT GARY A. STEIN ████ / 6842 USMC

(1) SNM was deployed in 2 Aug 2005 to 14 Mar 2006 with MWSS-372 in support of OPERATION IRAQI FREEDOM.  SNM was stationed at Al Taqqadum air base.

(2) No combat action ribbon.  When asked by radio personalities whether he left base perimeters, he gave a vague answer in which he hesitantly acknowledged having left the base perimeter on a few occasions on security missions.  METOC Marines at 1st Intelligence Battalion who have visited the METOC operations at Al Taqqadum stated that METOC Marines there normally do not leave base perimeter.

(3) The Page 11 counselings dated 10 Jan 06 and 12 Feb 06 both relate to an incident occurring while on deployment; Sgt Stein was counseled for lack of judgment and maturity for building rock formations while on guard duty.

c. Administrative Entries

(1) Page 11 counselings.  SNM has three Page 11 counselings.

(a) 5 Jan 04.  Not recommended for promotion to Private First Class due to numerous academic and non-academic counselings.

(b) 10 Jan 06.  Not recommended for promotion to Corporal due to lack of maturity and judgment.

(c) 12 Feb 06.  Not recommended for promotion to Corporal due to lack of maturity and judgment.

(2) "6105" counseling.  On 23 Mar 2012, SNM was counseled by his Battalion Commander regarding his disrespectful and insulting statements about the Commander-in-Chief, speaking to media, and speaking at a partisan political meeting in violation of DoD Directive 1344.10, encl (4) germane.

(3) Other negative findings

(a) SF86 investigations revealed that SNM was counseled by his superiors while deployed and instructed to write a 1,000 page essay after his NCO found him distracted while on post.

(b) A subsequent investigation revealed that SNM omitted negative financial information from his SF86 form.

(c) Financial Mismanagement.  A security background check conducted in 2010, encl (2), revealed a pattern of financial mismanagement.  Notable entries include:

1. $1,870 charge off by Pacific Marine Federal Credit Union

2.  $1,229.00 in debt owed to Archstone Apartments, Oceanside, CA.  SNM agreed to remit payment but never complied.

3.  $4,628.99 in debt owed to Windrift Apartments, Oceanside, CA.  Debt sent to collections.

000451

Subj:  BIOGRAPHICAL INFORMATION IN THE CASE OF <u>SERGEANT GARY A. STEIN</u> ██████
       ████ / 6842 USMC

        <u>4</u>.  $10,300 repossession by Mojave Credit Union.  Creditors claimed that SNM damaged the vehicle prior to repossession.

        <u>5</u>.  Two rent checks were returned with not sufficient funds, while SNM was assigned to MARDET Keesler AFB.

3.  <u>Point of Contact</u>

    a.  Capt Christopher L. Kaiser, METOC Officer, may be contacted at ██████ ████████ or at ████████████████████

    b.  CWO2 George W. Mills, METOC Officer 1st Intel Bn, may be reached at ████████████ or ██████████████████

    c.  The undersigned may be reached at █████████████ or ███████████████████

T. K. Liu

000452

# GE-19

**EJ-130**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number and address): | FOR COURT USE ONLY |
|---|---|
| THOMAS M. BUCHENAU 075976<br>LAW OFFICES THOMAS M. BUCHENAU<br>275 EAST DOUGLAS AVE, SUITE 110<br>EL CAJON, CA 92020-4547 | |

TELEPHONE NO.: ▇▇▇▇▇▇▇  FAX NO.: ▇▇▇▇▇▇▇

E-MAIL ADDRESS: ▇▇▇▇▇▇▇

ATTORNEY FOR (Name): Systematic National Collections, Inc.

[X] ATTORNEY FOR   [X] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

STREET ADDRESS: 41002 COUNTY CENTER DRIVE #100
MAILING ADDRESS: SAME
CITY AND ZIP CODE: TEMECULA, CA 92591
BRANCH NAME: TEMECULA COURT

PLAINTIFF: Systematic National Collections, Inc.

DEFENDANT: Gary A. Stein

| WRIT OF | [X] EXECUTION (Money Judgment)<br>[ ] POSSESSION OF   [ ] Personal Property<br>[ ] Real Property<br>[ ] SALE | CASE NUMBER:<br>TEC 095437 |
|---|---|---|

[X] Limited Civil Case   [ ] Small Claims Case
[ ] Unlimited Civil Case   [ ] Other

1. To the Sheriff or Marshal of the County of: RIVERSIDE
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. To any registered process server: You are authorized to serve this writ only in accord with CCP 699.080 or CCP 715.040.

3. (Name): Systematic National Collections, Inc.
   is the [X] judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.

4. Judgment debtor (name, type of legal entity stated in judgment if not a natural person, and last known address):

   Gary A. Stein
   ▇▇▇▇▇▇▇▇▇▇▇▇

   [ ] Additional judgment debtors on next page

5. Judgment entered on (date):
   October 17, 2011

6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).

8. [ ] Joint debtor information on next page.

9. [ ] See next page for information on real or personal property to be delivered under a writ of possession or sold under a writ of sale.

10. [ ] This writ is issued on a sister-state judgment.

11. Total judgment ............................ $ 4,587.06
12. Costs after judgment (per filed order or memo CCP 685.090) ............ $
13. Subtotal (add 11 and 12) .................. $ 4,587.06
14. Credits ................................... $
15. Subtotal (subtract 14 from 13) ............ $ 4,587.06
16. Interest after judgment (per filed affidavit CCP 685.050) (not on GC 6103.5 fees) .. $
17. Fee for issuance of writ .................. $ 25.00
18. Total (add 15, 16, and 17) ............... $ 4,612.06
19. Levying officer:
    (a) Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) of ............ $ 1.26
    (b) Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(i)) ........ $

20. [ ] The amounts called for in items 11-19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

[SEAL]

Issued on (date): JAN 2 4 2012   Clerk, by _Debra Ely_ , Deputy

NOTICE TO PERSON SERVED: SEE NEXT PAGE FOR IMPORTANT INFORMATION.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. January 1, 2012]



**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

JAN 12 2012

000454

# GE-20A

000455

PENTAGON - POLITICS

# Marine Says He'll Continue to Post on Tea Party Facebook Page

By Joshua Rhett Miller
Published April 15, 2010 | FOXNews.com



A Camp Pendleton Marine whose Facebook posts ignited a debate about whether active duty troops are allowed to criticize the president of the United States says he intends to keep posting his views on the Web.

Sgt. Gary Stein created the Facebook group "**Armed Forces Tea Party Patriots**" three weeks ago as a way to voice his opposition to President Obama's health care overhaul. On Tuesday, prior to a cable TV interview, superior officers asked the 24-year-old Marine to review the Department of Defense directives on political activities. Stein then removed the Facebook group, only to see it revived by a civilian member of a local Tea Party group hours later.

According to Department of Defense directives, military personnel are prohibited from sponsoring a political club, writing anything that solicits votes for a political cause or speaking at any event that promotes a political movement.

Stein says he respects Obama and will follow any order handed down by his commander in chief, but he plans to continue to voice his opinion on Facebook. He said he has contacted an attorney who told him he has committed no wrongdoing.

"I'm speaking as Gary Stein, not as Sgt. Gary Stein," he told FoxNews.com. "I just want to give my daughter the greatest country that we can, just like my parents gave me. I want her to inherit the America I know we can be."

Stein, who lives in Temecula, Calif., with his wife, Ashley, and their 2-year-old daughter, said he will still contribute to the Facebook group, but will do so in a more controlled fashion.

"I'm not going to push it," he said. "I'm going to think a lot more before I post and not go off on wild tangents like I did before."

Stein's initial posts to the group have been removed, and he declined to indicate exactly what he posted that drew the attention of his superiors. But he insisted he did not comment on military matters.

"It wasn't meant to be a group to speak out against the government or against the president," he said. "I respect the president. I will follow his orders."

He said he removed the page voluntarily after realizing it "had become not what I intended it for" -- to be an open forum for military members who affiliate themselves with the Tea Party movement.

News of Stein's experience ignited a polarized debate online, particularly on the very Facebook page he created and later removed.

Staff Sgt. Victor Rodriguez, who, like Stein, is a military meteorologist and at one point was a member of the Facebook group, told FoxNews.com he and many of his associates were disappointed with the Marine's actions.

"Though I do not speak for them, they have expressed their concern with Stein's violation of military policy," Rodriguez wrote FoxNews.com. "I believe in order to maintain a cohesive unit, military members need to remain apolitical when it comes to the public.

"Yes, we all have our views, and we discuss them amongst one another. However, we understand that unit cohesion is a large part of our occupation and sending the enemy mixed signals about our policies and support for those policies can be an added benefit to them for propaganda purposes."

Rodriguez continued, "With that being said, I am sure Sgt. Stein is not a bad Marine, and that it was just a misunderstanding concerning the articles of the Uniformed Code of Military Justice and associated articles pertaining to political activism."

But Joseph E. Torres, who said he spent 11 years as a Marine, disagreed with Rodriguez's assessment.

"It's really sad that Marines can't speak out on issues not dealing with Military Op's," Torres wrote on Facebook. "Like we don't have a say in the government we serve. You know they're not going to promote

Sgt. Gary Stein

him if he ever get on the list."

The San Diego chapter of the American Civil Liberties Union said in a statement that it sent a letter to Camp Pendleton's commanding officer urging the Marine Corps to protect Stein's right to freedom of speech.

"While the Corps has indicated through a spokesperson that it 'is not looking to file charges,' Sgt. Stein's speech has nonetheless been chilled," the statement read. "The ACLU strongly supports the First Amendment rights of servicemembers to discuss and critique the government's policies and conduct. Speech on issues of social and political concern is recognized by the courts, including military courts, as 'the core of what the First Amendment is designed to protect.'"

Former Marine Corps attorney Patrick Callahan told the San Diego Union-Tribune that military members do surrender some free speech rights when they don a uniform.

"There are restrictions on time, place and manner," he told the paper. "For instance, service members can't go to political rallies in uniform. The issue becomes whether somebody is doing it in their professional capacity."

Camp Pendleton spokeswoman Maj. Gabrielle Chapin said the Marine Corps is not considering filing charges against Stein.

"Marines take care of Marines," she wrote in an e-mail to FoxNews.com. "Sergeant Stein's supervisor was concerned that his activities with the Armed Forces Tea Party Patriots could give the appearance or impression that the Marine Corps is endorsing the group and its messages."

She said Stein was not disciplined, and he received the same "one-on-one mentorship and guidance" provided to all Marines.

Stein, who has another child on the way, said he has grown from the experience and intends to keep posting messages he deems appropriate.

"I'm going to do make sure I'm doing it the right way, I'm going to lead by example," he said. "I'm glad my voice can be heard. I wish everyone's voice can be heard the way mine is right now."

# GE-20B

## MARINE CORPS RECRUIT DEPOT SAN DIEGO
## WESTERN RECRUITING REGION

| | | |
|---|---|---|
| U N I T E D   S T A T E S | ) | ADMINISTRATIVE SEPARATION |
| | ) | BOARD |
| v. | ) | |
| | ) | AFFIDAVIT OF LTCOL DAREN |
| STEIN, Gary A. | ) | ERICKSON |
| Sergeant | ) | |
| U.S. Marine Corps | ) | |
| XXX XX 0101 | ) | (29 MAR 12) |
| | ) | |

I, Lieutenant Colonel Daren Erickson, United States Marine Corps, hereby declare, under penalty of perjury, that the following facts are true:

1. I am currently assigned as the Officer-in-Charge, Legal Service Support Section (LSSS), Camp Pendleton, California.

2. Between on or about July 2009 to May 2011, I served as the Deputy Staff Judge Advocate, I-MEF, Camp Pendleton, California.

3. Approximately April 2010, I became aware of an issue at 1st Intelligence Battalion, I-MEF, involving Sgt Gary Stein. I was informed that Sgt Stein had posted several comments on a Facebook page entitled "Armed Forces Tea Party Patriots."

4. I was also informed that Sgt Stein planned to speak on a television program (Hardball) about many of the same subjects discussed on his Facebook page.

5. On or about 13 April 2010, I arranged for a PME to be held at the I MEF SJA office and invited Sgt Stein to attend. The PME was for the marines assigned to the I MEF SJA office and anyone else who wished to attend.

6. Sgt Stein attended the PME.

7.  Major Donald Plowman, a Judge Advocate assigned to the LSSS, conducted the PME and provided a hand out to the attendees, to include Sgt Stein.  The hand out that was provided to Sgt Stein was sent via email to the Recorder.

8.  After the PME, Maj Plowman and I asked the attendees, too include Sgt Stein, if they have any questions to contact Maj Plowman.

9.  Sgt Stein thereafter took down the subject Facebook page and declined to do the Hardball interview.

10. I have had no further interaction or involvement with Sgt Stein since April 2010.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 29 MARCH 2012.

Daren J. Erickson
LtCol, USMC

2

Subj:   POLITICAL ACTIVITIES

Ref:   (a)   DOD Directive 1344.10 of 19 Feb 08, Subj: Political Activities by Members of the
Armed Forces

1. Policy.  A member of the Armed Forces is expected and encouraged to carry out their
obligation as a citizen but, while on active duty, participation in partisan political activity is
subject to limitation and they should avoid inferences that their political activities imply or create
the appearance of official sponsorship, approval or endorsement.

2. Definitions:

   a.   Active duty is full-time duty in the active military service of the United States regardless
   of duration or purpose.

   b.   Partisan political activity is activity in support of or related to, candidates representing, or
   issues specifically identified with, national or State political parties and associated or
   ancillary organizations.

3. Some examples of permissible political activities (a limited "private citizen" standard):

   a.   Register, vote, and express a personal opinion on political candidates and issues, but not
   as a representative of the Armed Forces.

   b.   Promote and encourage others to exercise their voting rights provided such promotion
   does not constitute use of their official authority or influence to interfere with the
   outcome of any election.

   c.   Join a political club and attend its meetings as a spectator when not in uniform.

   d.   Sign a petition for a specific legislative action or a petition to place a candidate's name on
   an official election ballot, if the signing does not obligate the member to engage in
   partisan political activity and is done as a private citizen and not as a representative of the
   Armed Forces.

   e.   Write a letter to the editor of a newspaper expressing the member's personal views on
   public issues or political candidates, provided it is not part of an organized letter-writing
   campaign or a solicitation of votes for or against a political party or partisan political
   cause or candidate.  If the letter identifies the member as on active duty (or if the member
   is otherwise reasonably identifiable as a member of the Armed Forces), the letter should
   clearly state that the views expressed are those of the individual only and not those of the
   Department of Defense.

   f.   Make monetary contributions to a political organization or party, provided it does not
   conflict with any other applicable Federal law or regulation.

   g.   Display a political bumper sticker on the member's private vehicle.

000461

Subj:  POLITICAL ACTIVITIES

    h.  Attend political fundraising activities, meetings, rallies, debates, conventions, or activities as a spectator when not in uniform and when no inference or appearance of official sponsorship, approval, or endorsement can reasonably be drawn.

General Rule:  (1) not in uniform, (2) no use of Government propriety or resources; (3) no interference with duty; and, (4) no implied Government position, endorsement or involvement.

4.  Some examples of prohibited political activities:

    a.  Participate in partisan political fundraising activities rallies, conventions (including making speeches), management of campaigns, debates, or TV/radio discussions for or against a partisan political party, candidate, or cause.  Participation includes more than mere attendance as a spectator.

    b.  Use official authority or influence to interfere with an election, solicit votes for a particular candidate or issue, or require or solicit political contributions from others.

    c.  Publish partisan political articles, letters, or endorsements signed or written by the member that solicits votes for or against a partisan political party, candidate, or cause (as distinguished from a letter to the editor as permitted paragraph 3.e)

    d.  Serve in any official capacity with or be listed as a sponsor of a partisan political club.

    e.  Speak before a partisan political gathering, including any gathering that promotes a partisan political party, candidate, or cause.

    f.  Conduct a political opinion survey.

    g.  Perform clerical or other duties for a partisan political committee or candidate.

    h.  Solicit or otherwise engage in fundraising activities in Federal offices or facilities for any political cause or candidate.

    i.  March or ride in a partisan political parade.

    j.  Display a large political sign, banner, or poster (as distinguished from a bumper sticker) on a private vehicle.

    k.  Participate in any organized effort to provide voters with transportation to the polls.

    l.  Promote partisan political dinners and similar fundraising events.

    m.  Attend partisan political events as an official representative of the Armed Forces, except when authorized as a member of a joint Armed Forces color guard at the opening ceremonies of the national conventions.

000462

# GE-20C

000463

**MARINE CORPS RECRUIT DEPOT SAN DIEGO**
**WESTERN RECRUITING REGION**

| | | |
|---|---|---|
| U N I T E D   S T A T E S | ) | ADMINISTRATIVE SEPARATION |
| | ) | BOARD |
| v. | ) | |
| | ) | AFFIDAVIT OF MAJOR GABRIELLE |
| STEIN, Gary A. | ) | CHAPIN |
| Sergeant | ) | |
| U.S. Marine Corps | ) | |
| XXX XX 0101 | ) | (29 MAR 12) |
| | ) | |

I, Major Gabrielle Chapin, United States Marine Corps, hereby declare, under penalty of perjury, that the following facts are true:

1. I am currently assigned as the Public Affairs Director for First Marine Expeditionary Force, MCB Camp Pendleton.

2. I became aware of Sergeant Stein through a telephone call in 2010 from a producer of the cable news show Hardball.

3. Sergeant Stein was preparing to appear on the show as a result of his political activities.

4. Having served at the Pentagon, the producer noted there was no command involvement with Sergeant Stein's scheduled appearance, and inquired whether it was approved.

5. I notified First Intelligence Battalion of Sergeant Stein's scheduled appearance, of which they were unaware.

6. I spoke to Sergeant Stein regarding my role as a Public Affairs Officer and explained there were rules and regulations regarding a Marine's involvement with the media and politics.

7.  I directed him to speak to a Judge Advocate concerning appropriate conduct of Marines in regards to politics and the media.

8.  I was present for several interviews Sergeant Stein gave to the media.

9.  Sergeant Stein also gave a few interviews to the media outside of my presence.

10. Prior to me initially speaking to Sergeant Stein, my Marines did an internet search for him and showed me the results that came up.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on _30 MAR 2012_

Gabrielle Chapin
Major, USMC

2

# GE-21A

**MARINE CORPS RECRUIT DEPOT SAN DIEGO**
**WESTERN RECRUITING REGION**

| | | |
|---|---|---|
| U N I T E D  S T A T E S | ) | ADMINISTRATIVE SEPARATION |
| | ) | BOARD |
| v. | ) | |
| | ) | AFFIDAVIT OF SERGEANT MAJOR |
| STEIN, Gary A. | ) | TREVOR JACKSON |
| Sergeant | ) | |
| U.S. Marine Corps | ) | |
| XXX XX 0101 | ) | (29 MAR 12) |
| | ) | |

I, SgtMaj Trevor Jackson, United States Marine Corps, hereby declare, under penalty of perjury, that the following facts are true:

1. I am currently assigned as the Battalion SgtMaj for Weapons and Field Training Battalion, MCRD San Diego, located on Edson Range, MCB Camp Pendleton. I am set to PCS to 1st Marine Aircraft Wing, Okinawa, Japan on 4 April 2012.

2. I am aware that Sergeant Gary Stein is assigned to Headquarters Company, Weapons and Field Training Battalion, and works in the S-3 Section as the Range Chief.

3. I have only had routine interactions with Sergeant Stein since his arrival at Weapons and Field Training Battalion in June of 2011.

4. I was not aware of any concerns Sergeant Stein's previous command may have had about his political activity in 2010.

5. On Thursday, 1 March 2012, I received an email from Sergeant Major Calvin E. Smith. Jr., SgtMaj of Marine Air Control Group 38 (MACG-38).

6. Sergeant Major Smith informed me a Master Sergeant in his unit discovered posts by a Marine identified as Sergeant Stein on a Facebook discussion board.

7. According to Sergeant Major Smith, the posts contained "some not so good things on this web site about the Commander-N-Chief." As I do not maintain a Facebook account, I was unable to view the alleged posts for myself.

8. Thereafter on 1 March 2012, I notified Colonel Christopher Dowling, Commanding Officer, Weapons and Field Training Battalion, and First Sergeant Joseph Rocha, Company First Sergeant for Headquarters Company, of the situation. I instructed First Sergeant Rocha to look into the posts and conduct any further investigation as necessary.

9. On Monday, 5 March 2012, I received a second email from Sergeant Major Smith with an attached one page screen shot of a METOC Facebook discussion containing Sergeant Stein's comments about the President.

10. The METOC Facebook discussion contained a post by Sergeant Stein that included the words "Screw Obama" and indicated that he would not follow the orders of the President or salute him. Sergeant Stein's postings also called the President the "Domestic enemy".

11. Based on my 26 years in the Marine Corps, I find these statements to be highly prejudicial to good order and discipline within the Marine Corps and believe Sergeant Stein should be held accountable to the fullest extent possible.

12. Sergeant Stein's comments not only undermine the chain of command, but have also embarrassed our Corps in the media. I fully support the Commander's decision to take administrative action.

2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 20120329.

Trevor V. Jackson
SgtMaj, USMC

3

000469

# GE-21B

000470

**MARINE CORPS RECRUIT DEPOT SAN DIEGO**
**WESTERN RECRUITING REGION**

| | | |
|---|---|---|
| U N I T E D   S T A T E S | ) | ADMINISTRATIVE SEPARATION |
| | ) | BOARD |
| v. | ) | |
| | ) | |
| STEIN, Gary A. | ) | AFFIDAVIT OF RON D. BRUNDIGE |
| Sergeant | ) | |
| U.S. Marine Corps | ) | |
| XXX XX 0101 | ) | (29 MAR 12) |
| | ) | |

I, Ron D. Brundige, hereby declare, under penalty of perjury, that the following facts are true:

1. I currently work as the Command Security Manager for Marine Corps Recruit Depot San Diego, California.

2. Through the course of my duties as the Command Security Manager, I am familiar with the process for requests and revocations of security clearances.

3. A security clearance request is initiated by a Marine with the unit Security Manager.

4. The Marine then fills out the standard Form 86 - Questionnaire for National Security Positions (SF 86).

5. The SF 86 requires disclosure of work history, places of residence, finances and personal references.

6. The Marine signs the SF 86 attesting to its truthfulness before it is submitted to the Office of Personnel Management (OPM).

7. OPM processes the application and investigates the Marine's background.

8. OPM conducts a check with the Federal Bureau of Investigation, credit reporting agencies, and the references listed on the application.

9. The results of the OPM investigation are compared to the information given on the SF 86 by the Marine.

10. The results of the OPM investigation are forwarded to the Department of the Navy Central Adjudication Facility (DONCAF).

11. DONCAF is the agency that either awards or declines a security clearance to the Marine.

12. In cases where finances are an issue, DONCAF may request further information from the Marine.

13. After evaluating the Marine's explanation, DONCAF will award or deny the security clearance.

14. In the case of denial, a Marine can request to reestablish eligibility one year after the initial application was denied.

15. Whether granted or denied, DONCAF will notify the unit Security Manager who routed the security clearance request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 29 MARCH 2012

Ron D. Brundige
Command Security Manager
MCRD San Diego, CA

2

000472

# GE-21C

**MARINE CORPS RECRUIT DEPOT SAN DIEGO
WESTERN RECRUITING REGION**

| | | |
|---|---|---|
| U N I T E D  S T A T E S | ) | ADMINISTRATIVE SEPARATION |
| | ) | BOARD |
| v. | ) | |
| | ) | |
| STEIN, Gary A. | ) | AFFIDAVIT OF COL SHAWN |
| Sergeant | ) | SHUMAKE |
| U.S. Marine Corps | ) | |
| XXX XX 0101 | ) | |
| | ) | (30 MAR 12) |

I, Colonel Shawn Shumake, United States Army, declare, under penalty of perjury, that the following facts are true:

1.  I am currently assigned as the legal advisor to The Inspector General, Department of the Army.  I have served as a Judge Advocate for over 25 years in a variety of legal billets, including over 11 years in the Pentagon on the Army Staff and in the Office of the Under Secretary of Defense (Personnel and Readiness).

2.  Between June 2007 and July 2011, I served as the Director, Office of Legal Policy, Undersecretary of Defense (Personnel and Readiness).  My responsibilities included political activities involving members of the Armed Forces.

3.  At that time, I was specifically responsible for drafting, coordinating, and staffing revisions to DoD Directive 1344.10, "Political Activities by Members of the Armed Forces," which resulted in the current version of the order dated 19 February 2008.

4.    Based on my experience as a staff officer at the Pentagon, I am familiar with the

process and procedures for implementing orders such as DoD Directive 1344.10.

Such orders are extensively vetted, researched, and socialized with the highest levels

of the Department of Defense, including the Office of General Counsel, and each of

the Services to ensure compliance with Federal Law and applicable administrative

regulations.  I worked directly with the Under Secretary of Defense (Personnel and

Readiness) on several political activities issues and on DoD Directive 1344.10.

5.   Enclosure (1) is an Action Memo I prepared for the Undersecretary of Defense

(Personnel and Readiness) for forwarding to the Deputy Secretary of Defense for

implementation of DoD Directive 1344.10.

6.   Enclosure (2) is the Coordination List accompanying the Action Memo that lists all

the offices and departments with whom DoD Directive 1344.10 was staffed.  Included

on this list is the Principal Deputy General Counsel for the Department of Defense, as

well as senior legal and personnel officers for the Services.

7.   It is also significant to recognize that DoD Directive 1344.10 has been in effect for

several decades and embodies the long-standing bedrock principal that members on

active duty should not engage in partisan political activity.  The Directive has been

revised several times to account for changes in Federal Law, with each subsequent

revision undertaking the same level of scrutiny and staffing prior to implementation.

2

8. Based on my experience, training, and education, as well as my direct involvement with the implementation of DoD Directive 1344.10, I am confident that the Directive is necessary for the maintenance of good order and discipline in the Armed Forces and fully complies with all applicable legal authorities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 30 March 2012.

_____

Shawn Shumake
COL, USA, JAGC

3

000476

# ACTION MEMO

February 4, 2008, 12:30AM

FOR:  USD (P&R)

FROM:  Deputy Under Secretary of Defense for Program Integration ~~FEB – 4 2008~~

SUBJECT:  DoD Directive (DoDD) 1344.10, "Political Activities by Members of
the Armed Forces on Active Duty"

- DoDD 1344.10 updates policies on political activities of members of the
  Armed Forces and implements section 973(b) through (d) of title 10, United
  States Code (U.S.C.).

- The Action Memorandum from you to the Deputy Secretary of Defense
  recommends that he sign the revised Directive.  It also, however, gives him
  the option to direct that you sign the issuance as an instruction and as a
  lawful general regulation for purposes of the Uniform Code of Military
  Justice.  Should he choose the latter option, then I will provide you that
  issuance for your signature.  It is not provided now because it will have to
  have the date of the Deputy Secretary's decision inserted.

RECOMMENDATION:  Initial and forward the Action Memorandum from you to
the Deputy Secretary of Defense.

COORDINATION:  TAB C

Attachments:
As stated

Prepared by:  COL Shawn Shumake, OUSD (P&R) PI-LP, 697-3387

LIST OF COORDINATING OFFICIALS FOR DIRECTIVE/INSTRUCTION 1344.10,
"Political Activities by Members of the Armed Forces"

| | | |
|---|---|---|
| General Counsel, DoD | Daniel Dell'Orto<br>Principal Deputy General<br>Counsel | December 27, 2007 |
| Inspector General, DoD | Patricia A. Brannin<br>Acting Deputy IG<br>For Policy and Oversight | December 21, 2007 |
| Director of Administration and<br>Management, OSD | Michael L. Rhodes<br>Deputy Director<br>for Michael B. Donley | December 18, 2007 |
| Legislative Affairs | Robert L. Wilke<br>ASD (LA) | December 14, 2007 |
| Army | Benedict Cohen<br>General Counsel of the<br>Army | January 22, 2008 |
| Air Force | William A. Davidson<br>Administrative Assistant | December 21, 2007 |
| Navy | Anita K. Blair<br>Acting ASN(M&RA) | December 21, 2007 |
| US Coast Guard | Calvin M. Lederer<br>Acting Judge Advocate<br>General | January 11, 2008 |
| National Guard Bureau | LTC Christian Rofrano<br>Chief Counsel, NGB | January 7, 2008 |

GE-22A

USMC FITNESS REPORT (1610)
NAVMC 10835A (Rev. 10-10) (EF)
PREVIOUS EDITIONS WILL NOT BE USED

**COMMANDANT'S GUIDANCE**

The completed fitness report is the most important information component in manpower management. It is the primary means of evaluating a Marine's performance and is the Commandant's primary tool for the selection of personnel for promotion, augmentation, resident schooling, command, and duty assignments. Therefore, the completion of this report is one of an officer's most critical responsibilities. Inherent in this duty is the commitment of each Reporting Senior and Reviewing Officer to ensure the integrity of the system by giving close attention to accurate marking and timely reporting. Every officer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps. Inflationary markings only serve to dilute the actual value of each report. Reviewing Officers will not concur with inflated reports.

## A. ADMINISTRATIVE INFORMATION

**1. Marine Reported On:**

| a. Last Name | b. First Name | c. MI | d. SSN | e. Grade | f. DOR | g. PMOS | h. BILMOS |
|---|---|---|---|---|---|---|---|
| STEIN | GARY | A | ▮▮▮ | SGT | 20080601 | 6842 | 6842 |

**2. Organization:**

| a. MCC | b. RUC | c. Unit Description |
|---|---|---|
| 114 | 20373 | 1ST INTELLIGENCE BATTALION |

| 3. Occasion and Period Covered: | | | | 4. Duty Assignment ( descriptive title ): |
|---|---|---|---|---|
| a. OCC | b. From | To | c. Type | METEOROLOGICAL AND OCEANOGRAPHIC FORECASTER |
| AN | 20100801 | 20110331 | N | |

| 5. Special Case: | | | 6. Marine Subject Of: | | | 7. Recommended For Promotion: | | |
|---|---|---|---|---|---|---|---|---|
| a. Adverse ☐ | b. Not Observed ☐ | c. Extended ☐ | a. Commendatory Material ☐ | b. Derogatory Material ☐ | c. Disciplinary Action ☐ | a. Yes ☒ | b. No ☐ | c. N/A ☐ |

**8. Special Information:**

**9. Duty Preference:**

| | a. Code | b. Descriptive Title |
|---|---|---|
| 1st | Y04 | FMF WEST COAST |
| 2nd | Y41 | RECRUITING DUTY – 1ST DISTRICT |
| 3rd | Y42 | RECRUITING DUTY – 4TH DISTRICT |

**10. Reporting Senior:**

| a. Last Name | b. Init c. Service | d. SSN | e. Grade | f. Duty Assignment |
|---|---|---|---|---|
| ▮▮▮ | GW USMC | ▮▮▮ | CWO2 | METOC OFFICER |

**11. Reviewing Officer:**

| a. Last Name | b. Init c. Service | d. SSN | e. Grade | f. Duty Assignment |
|---|---|---|---|---|
| ▮▮▮ | MR USMC | ▮▮▮ | MAJ | COMPANY COMMANDER |

## B. BILLET DESCRIPTION

-Analyze and interpret centrally prepared products, alphanumeric data, satellite images, and Doppler radar coverage to gain a comprehensive understanding of the atmosphere as it applies to the scope of operations within the mission statement.
-Prepare forecasts and weather briefings tailored to the mission of supported agencies, which highlight environmental factors expected to impact their operations.
-Possess a comprehensive understanding of all equipment routinely utilized to acquire, display, and disseminate meteorological data including computer operating systems, communications architecture, and functionality.
-Assist in coordinating operations of the Meteorological and Oceanographic (MetOc) Platoon with higher and adjacent MetOc sections as well as supported units.
-Train, mentor, and supervise subordinate personnel within the section, and enable their technical and professional development through mentorship and instruction.
-Appointed as the Training NCO for the MetOc Platoon.

## C. BILLET ACCOMPLISHMENTS

-As the Training NCO, assisted with local curriculum development, supervised the conduct of general military and MOS related training, and recorded event completions in individual training jackets.
-Supported operational exercises with daily products and briefs, specifically being the primary provider of weather support to 4th Reconnaissance Battalion while they conducted exercises in California and Hawaii.
-Served as the MetOc Platoon Sergeant during the reporting period; supervised the day to day operations within the platoon, and provided in-depth instruction on meteorological concepts to all initial accession MetOc Forecasters as well as the other forecasters in the section.
-Coordinated and tracked annual training requirements through the Production and Analysis Support Company training office.
-Completed one MOS related distance learning course, gaining an increased knowledge and understanding of meteorological phenomena and their effects.

| 1. Marine Reported On: | | | | a. OCC | b. From | To |
|---|---|---|---|---|---|---|
| a. Last Name | b. First Name | c. MI | d. SSN | | | |
| STEIN | GARY | A | ███████ | AN | 20100801 | 20110331 |

## D. MISSION ACCOMPLISHMENT

**1. PERFORMANCE.** Results achieved during the reporting period. How well those duties inherent to a Marine's billet, plus all additional duties, formally and informally assigned, were carried out. Reflects a Marine's aptitude, competence, and commitment to the unit's success above personal reward. Indicators are time and resource management, task prioritization, and tenacity to achieve positive ends consistently.

| ADV | Meets requirements of billet and additional duties. Aptitude, commitment, and competence meet expectations. Results maintain status quo. | | Consistently produces quality results while measurably improving unit performance. Habitually makes effective use of time and resources; improves billet procedures and products. Positive impact extends beyond billet expectations. | | Results far surpass expectations. Recognizes and exploits new resources; creates opportunities. Emulated; sought after as an expert with influence beyond unit. Impact significant; innovative approaches to problems produce significant gains in quality and efficiency. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**2. PROFICIENCY.** Demonstrates technical knowledge and practical skill in the execution of the Marine's overall duties. Combines training, education and experience. Translates skills into actions which contribute to accomplishing tasks and missions. Imparts knowledge to others. Grade dependent.

| ADV | Competent. Possesses the requisite range of skills and knowledge commensurate with grade and experience. Understands and articulates basic functions related to mission accomplishment. | | Demonstrates mastery of all required skills. Expertise, education and experience consistently enhance mission accomplishment. Innovative troubleshooter and problem solver. Effectively imparts skills to subordinates. | | True expert in field. Knowledge and skills impact far beyond those of peers. Translates broad-based education and experience into forward thinking, innovative actions. Makes immeasurable impact on mission accomplishment. Peerless teacher, selflessly imparts expertise to subordinates, peers, and seniors. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**JUSTIFICATION:**

## E. INDIVIDUAL CHARACTER

**1. COURAGE.** Moral or physical strength to overcome danger, fear, difficulty or anxiety. Personal acceptance of responsibility and accountability, placing conscience over competing interests regardless of consequences. Conscious, overriding decision to risk bodily harm or death to accomplish the mission or save others. The will to persevere despite uncertainty.

| ADV | Demonstrates inner strength and acceptance of responsibility commensurate with scope of duties and experience. Willing to face moral or physical challenges in pursuit of mission accomplishment. | | Guided by conscience in all actions. Proven ability to overcome danger, fear, difficulty or anxiety. Exhibits bravery in the face of adversity and uncertainty. Not deterred by morally difficult situations or hazardous responsibilities. | | Uncommon bravery and capacity to overcome obstacles and inspire others in the face of moral dilemma or life-threatening danger. Demonstrated under the most adverse conditions. Selfless. Always places conscience over competing interests regardless of physical or personal consequences. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**2. EFFECTIVENESS UNDER STRESS.** Thinking, functioning and leading effectively under conditions of physical and/or mental pressure. Maintaining composure appropriate for the situation, while displaying steady purpose of action, enabling one to inspire others while continuing to lead under adverse conditions. Physical and emotional strength, resilience and endurance are elements.

| ADV | Exhibits discipline and stability under pressure. Judgment and effective problem-solving skills are evident. | | Consistently demonstrates maturity, mental agility and willpower during periods of adversity. Provides order to chaos through the application of intuition, problem-solving skills, and leadership. Composure reassures others. | | Demonstrates seldom-matched presence of mind under the most demanding circumstances. Stabilizes any situation through the resolute and timely application of direction, focus and personal presence. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**3. INITIATIVE.** Action in the absence of specific direction. Seeing what needs to be done and acting without prompting. The instinct to begin a task and follow through energetically on one's own accord. Being creative, proactive and decisive. Transforming opportunity into action.

| ADV | Demonstrates willingness to take action in the absence of specific direction. Acts commensurate with grade, training and experience. | | Self-motivated and action-oriented. Foresight and energy consistently transform opportunity into action. Develops and pursues creative, innovative solutions. Acts without prompting. Self-starter. | | Highly motivated and proactive. Displays exceptional awareness of surroundings and environment. Uncanny ability to anticipate mission requirements and quickly formulate original, far-reaching solutions. Always takes decisive, effective action. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**JUSTIFICATION:**

| 1. Marine Reported On: | | | | | | |
|---|---|---|---|---|---|---|
| a. Last Name | b. First Name | c. MI | d. SSN | a. OCC | b. From | To |
| STEIN | GARY | A | ████████ | AN | 20100801 | 20110331 |

## F. LEADERSHIP

**1. LEADING SUBORDINATES.** The inseparable relationship between leader and led. The application of leadership principles to provide direction and motivate subordinates. Using authority, persuasion and personality to influence subordinates to accomplish assigned tasks. Sustaining motivation and morale while maximizing subordinates' performance.

| ADV | Engaged; provides instructions and directs execution. Seeks to accomplish mission in ways that sustain motivation and morale. Actions contribute to unit effectiveness. | Achieves a highly effective balance between direction and delegation. Effectively tasks subordinates and clearly delineates standards expected. Enhances performance through constructive supervision. Fosters motivation and enhances morale. Builds and sustains teams that successfully meet mission requirements. Encourages initiative and candor among subordinates. | Promotes creativity and energy among subordinates by striking the ideal balance of direction and delegation. Achieves highest levels of performance from subordinates by encouraging individual initiative. Engenders willing subordination, loyalty, and trust that allow subordinates to overcome their perceived limitations. Personal leadership fosters highest levels of motivation and morale, ensuring mission accomplishment even in the most difficult circumstances. | N/O |
|---|---|---|---|---|

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
|  | [X] |  |  |  |  |  |  |

**2. DEVELOPING SUBORDINATES.** Commitment to train, educate, and challenge all Marines regardless of race, religion, ethnic background, or gender. Mentorship. Cultivating professional and personal development of subordinates. Developing team players and esprit de corps. Ability to combine teaching and coaching. Creating an atmosphere tolerant of mistakes in the course of learning.

| ADV | Maintains an environment that allows personal and professional development. Ensures subordinates participate in all mandated development programs. | Develops and institutes innovative programs, to include PME, that emphasize personal and professional development of subordinates. Challenges subordinates to exceed their perceived potential thereby enhancing unit morale and effectiveness. Creates an environment where all Marines are confident to learn through trial and error. As a mentor, prepares subordinates for increased responsibilities and duties. | Widely recognized and emulated as a teacher, coach and leader. Any Marine would desire to serve with this Marine because they know they will grow personally and professionally. Subordinate and unit performance far surpassed expected results due to MRO's mentorship and team building talents. Attitude toward subordinate development is infectious, extending beyond the unit. | N/O |
|---|---|---|---|---|

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
|  |  | [X] |  |  |  |  |  |

**3. SETTING THE EXAMPLE.** The most visible facet of leadership: how well a Marine serves as a role model for all others. Personal action demonstrates the highest standards of conduct, ethical behavior, fitness, and appearance. Bearing, demeanor, and self-discipline are elements.

| ADV | Maintains Marine Corps standards for appearance, weight, and uniform wear. Sustains required level of physical fitness. Adheres to the tenets of the Marine Corps core values. | Personal conduct on and off duty reflects highest Marine Corps standards of integrity, bearing and appearance. Character is exceptional. Actively seeks self-improvement in wide-ranging areas. Dedication to duty and professional example encourage others' self-improvement efforts. | Model Marine, frequently emulated. Exemplary conduct, behavior, and actions are tone-setting. An inspiration to subordinates, peers, and seniors. Remarkable dedication to improving self and others. | N/O |
|---|---|---|---|---|

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
|  |  | [X] |  |  |  |  |  |

**4. ENSURING WELL-BEING OF SUBORDINATES.** Genuine interest in the well-being of Marines. Efforts enhance subordinates' ability to concentrate/focus on unit mission accomplishment. Concern for family readiness is inherent. The importance placed on welfare of subordinates is based on the belief that Marines take care of their own.

| ADV | Deals confidently with issues pertinent to subordinate welfare and recognizes suitable courses of action that support subordinates' well-being. Applies available resources, allowing subordinates to effectively concentrate on the mission. | Instills and/or reinforces a sense of responsibility among junior Marines for themselves and their subordinates. Actively fosters the development of and uses support systems for subordinates which improve their ability to contribute to unit mission accomplishment. Efforts to enhance subordinate welfare improve the unit's ability to accomplish its mission. | Noticeably enhances subordinates well-being, resulting in a measurable increase in unit effectiveness. Maximizes unit and base resources to provide subordinates with the best support available. Proactive approach serves to energize unit members to "take care of their own," thereby correcting potential problems before they can hinder subordinates' effectiveness. Widely recognized for techniques and policies that produce results and build morale. Builds strong family atmosphere. Puts motto *Mission first, Marines always*, into action. | N/O |
|---|---|---|---|---|

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
|  |  | [X] |  |  |  |  |  |

**5. COMMUNICATION SKILLS.** The efficient transmission and receipt of thoughts and ideas that enable and enhance leadership. Equal importance given to listening, speaking, writing, and critical reading skills. Interactive, allowing one to perceive problems and situations, provide concise guidance, and express complex ideas in a form easily understood by everyone. Allows subordinates to ask questions, raise issues and concerns and venture opinions. Contributes to a leader's ability to motivate as well as counsel.

| ADV | Skilled in receiving and conveying information. Communicates effectively in performance of duties. | Clearly articulates thoughts and ideas, verbally and in writing. Communication in all forms is accurate, intelligent, concise, and timely. Communicates with clarity and verve, ensuring understanding of intent or purpose. Encourages and considers the contributions of others. | Highly developed facility in verbal communication. Adept in composing written documents of the highest quality. Combines presence and verbal skills which engender confidence and achieve understanding irrespective of the setting, situation, or size of the group addressed. Displays an intuitive sense of when and how to listen. | N/O |
|---|---|---|---|---|

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
|  |  | [X] |  |  |  |  |  |

**JUSTIFICATION:**

| NAVMC 10835C (Rev.4-03) (P A-PES 5.2.4.18) | FITREP ID #1221751 | PAGE 4 OF 2 |
|---|---|---|

| 1. Marine Reported On: | | | | 2. Occasion and Period Covered: | | |
|---|---|---|---|---|---|---|
| a. Last Name | b. First Name | c. MI | d. SSN | a. OCC | b. From | To |
| STEIN | GARY | A | XXXXX0101 | AN | 20100801 | 20110331 |

## G. INTELLECT AND WISDOM

**1.PROFESSIONAL MILITARY EDUCATION (PME).** Commitment to intellectual growth in ways beneficial to the Marine Corps. Increases the breadth and depth of warfighting and leadership aptitude. Resources include resident schools; professional qualifications and certification processes; nonresident and other extension courses; civilian educational institution coursework; a personal reading program that includes (but is not limited to) selections from the Commandant's Reading List; participation in discussion groups and military societies; and involvement in learning through new technologies.

| ADV | Maintains currency in required military skills and related developments. Has completed or is enrolled in appropriate level of PME for grade and level of experience. Recognizes and understands new and creative approaches to service issues. Remains abreast of contemporary concepts and issues. | | PME outlook extends beyond MOS and required education. Develops and follows a comprehensive personal program which includes broadened professional reading and/or academic course work; advances new concepts and ideas. | | Dedicated to life-long learning. As a result of active and continuous efforts, widely recognized as an intellectual leader in professionally related topics. Makes time for study and takes advantage of all resources and programs. Introduces new and creative approaches to services issues. Engages in a broad spectrum of forums and dialogues. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**2. DECISION MAKING ABILITY.** Viable and timely problem solution. Contributing elements are judgment and decisiveness. Decisions reflect the balance between an optimal solution and a satisfactory, workable solution that generates tempo. Decisions are made within the context of the commander's established intent and the goal of mission accomplishment. Anticipation, mental agility, intuition, and success are inherent.

| ADV | Makes sound decisions leading to mission accomplishment. Actively collects and evaluates information and weighs alternatives to achieve timely results. Confidently approaches problems; accepts responsibility for outcomes. | | Demonstrates mental agility; effectively prioritizes and solves multiple complex problems. Analytical abilities enhanced by experience, education, and intuition. Anticipates problems and implements viable, long-term solutions. Steadfast, willing to make difficult decisions. | | Widely recognized and sought after to resolve the most critical, complex problems. Seldom matched analytical and intuitive abilities; accurately foresees unexpected problems and arrives at well-timed decisions despite fog and friction. Completely confident approach to all problems. Masterfully strikes a balance between the desire for perfect knowledge and greater tempo. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**3. JUDGMENT.** The discretionary aspect of decision making. Draws on core values, knowledge, and personal experience to make wise choices. Comprehends the consequences of contemplated courses of action.

| ADV | Majority of judgments are measured, circumspect, relevant and correct. | | Decisions are consistent and uniformly correct, tempered by consideration of their consequences. Able to identify, isolate and assess relevant factors in the decision making process. Opinions sought by others. Subordinates personal interest in favor of impartiality. | | Decisions reflect exceptional insight and wisdom beyond this Marine's experience. Counsel sought by all; often an arbiter. Consistent, superior judgment inspires the confidence of seniors. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

JUSTIFICATION:

## H. FULFILLMENT OF EVALUATION RESPONSIBILITIES

**1. EVALUATIONS.** The extent to which this officer serving as a reporting official conducted, or required others to conduct, accurate, uninflated, and timely evaluations.

| ADV | Occasionally submitted untimely or administratively incorrect evaluations. As RS, submitted one or more reports that contained inflated markings. As RO, concurred with one or more reports from subordinates that were returned by HQMC for inflated marking. | | Prepared uninflated evaluations which were consistently submitted on time. Evaluations accurately described performance and character. Evaluations contained no inflated markings. No reports returned by RO or HQMC for inflated marking. No subordinates' reports returned by HQMC for inflated marking. Few, if any, reports were returned by RO or HQMC for administrative errors. Section Cs were void of superlatives. Justifications were specific, verifiable, substantive, and where possible, quantifiable and supported the markings given. | | No reports submitted late. No reports returned by either RO or HQMC for administrative correction or inflated markings. No subordinates' reports returned by HQMC for administrative correction or inflated markings. Returned procedurally or administratively incorrect reports to subordinates for correction. As RO nonconcurred with all inflated reports. | | N/O |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

JUSTIFICATION:

NAVMC 10835D (Rev. 4-03) (PA-PES 5.2.4.18)      FITREP ID #1221751      PAGE 000463

| 1. Marine Reported On:<br>a. Last Name | b. First Name | c. MI | d. SSN | | 2. Occasion and Period Covered:<br>a. Occ | b. From | To |
|---|---|---|---|---|---|---|---|
| STEIN | GARY | A | | AN | 20100801 | 20110331 |

## I. DIRECTED AND ADDITIONAL COMMENTS

Helpful, intuitive NCO dedicated to increasing the MOS proficiency of subordinate Marines within the platoon. Throughout the reporting period, Sgt Stein taught basic and intermediate meteorological concepts to new accession MetOc Forecasters, assisting the OIC and Training SNCO with curriculum development. MRO also coordinated with the company office to schedule training and provided operational support briefs to tenant and transient units aboard the base. Firm work ethic; produces acceptable results. Sgt Stein is currently enrolled in appropriate non-resident PME for grade.  Promote.

Directed Comment; Sect A, Item 8B: MRO is medically exempt from the semi-annual PFT due to his Limited Duty status.
Directed Comment; Sect A, Item 8C: MRO was medically exempt from the last semi-annual CFT due to his Limited Duty status.

## J. CERTIFICATION

| 1. I CERTIFY that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality and that I have provided a signed copy of this report to the Marine Reported on. | Electronically Signed By<br><br>(Signature of Reporting Senior) | 2 0 1 1 0 4 1 5<br>(Date in YYYYMMDD format) |
|---|---|---|

2. I ACKNOWLEDGE the adverse nature of this report and

☐ I have no statement to make

☐ I have attached a statement

(Signature of Marine Reported On)          (Date in YYYYMMDD format)

## K. REVIEWING OFFICER COMMENTS

| 1. OBSERVATION: | [X] Sufficient | ☐ Insufficient | 2. EVALUATION: | [X] Concur | ☐ Do Not Concur |
|---|---|---|---|---|---|

| 3. COMPARATIVE ASSESSMENT:<br>Provide a comparative assessment of potential by placing an "X" in the appropriate box. In marking the comparison, consider all Marines of his grade whose professional abilities are known to you personally. | DESCRIPTION | | COMPARATIVE ASSESSMENT |
|---|---|---|---|
| | THE EMINENTLY QUALIFIED MARINE | ☐ | |
| | ONE OF THE FEW | ☐ | |
| | EXCEPTIONALLY QUALIFIED MARINES | ☐ | |
| | ONE OF THE MANY HIGHLY QUALIFIED | ☐ | |
| | PROFESSIONALS WHO FORM THE | ☐ | |
| | MAJORITY OF THIS GRADE | ☐ | |
| | A QUALIFIED MARINE | [X] | |
| | UNSATISFACTORY | ☐ | |

4. REVIEWING OFFICER COMMENTS: Amplify your comparative assessment mark; evaluate potential for continued professional development to include: promotion, command, assignment, resident PME, and retention; and put Reporting Senior marks and comments in perspective.

Concur with RS comments - Sgt Stein is a capable young Sergeant.  Promote with peers.

| 5. I CERTIFY that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality. | Electronically Signed By<br><br>(Signature of Reviewing Officer) | 2 0 1 1 0 4 2 8<br>(Date in YYYYMMDD format) |
|---|---|---|

6. I ACKNOWLEDGE the adverse nature of this report and

☐ I have no statement to make

☐ I have attached a statement

(Signature of Marine Reported On)          (Date in YYYYMMDD format)

## L. ADDENDUM PAGE

ADDENDUM PAGE ATTACHED:   ☐ YES

| NAVMC 10835E (Rev. 4-03) (P A-PES 5.2.4.18) | FITREP ID #1221751 | PAGE 5 OF 5 |
|---|---|---|

# GE-22B

000485

USMC FITNESS REPORT (1610)
NAVMC 10835A (Rev. 4-98) (PA-PES 3.2.5.7)
PREVIOUS EDITIONS WILL NOT BE USED

Case 2:10-cv-01610-TFBGS   Document 23-7   Filed 04/12/12   Page 39 of 67

DO NOT STAPLE
THIS FORM

## COMMANDANT'S GUIDANCE

The completed fitness report is the most important information component in manpower management. It is the primary means of evaluating a Marine's performance and is the Commandant's primary tool for the selection of personnel for promotion, augmentation, resident schooling, command, and duty assignments. Therefore, the completion of this report is one of an officer's most critical responsibilities. Inherent in this duty is the commitment of each Reporting Senior and Reviewing Officer to ensure the integrity of the system by giving close attention to accurate marking and timely reporting. Every ...cer serves a role in the scrupulous maintenance of this evaluation system, ultimately important to both the individual and the Marine Corps. ...flationary markings only serve to dilute the actual value of each report. Reviewing Officers will not concur with inflated reports.

## A. ADMINISTRATIVE INFORMATION

**1. Marine Reported On:**

| a. Last Name | b. First Name | c. MI | d. SSN | e. Grade | f. DOR | g. PMOS | h. BILMOS |
|---|---|---|---|---|---|---|---|
| STEIN | GARY | A | ▇▇▇ | SGT | 20080601 | 6800 | 6842 |

**2. Organization:**

| a. MCC | b. RUC | c. Unit Description |
|---|---|---|
| 114 | 20373 | 1ST INTELLIGENCE BATTALION |

| 3. Occasion and Period Covered: | | | 4. Duty Assignment (descriptive title): |
|---|---|---|---|
| a. OCC | b. From | To | c. Type |
| TR | 20110401 | 20110620 | N | BASIC WEATHER SERVICE MARINE |

| 5. Special Case: | | | 6. Marine Subject Of: | | | 7. Recommended For Promotion: | | |
|---|---|---|---|---|---|---|---|---|
| a. Adverse | b. Not Observed | c. Extended | a. Commendary Material | b. Derogatory Material | c. Disciplinary Action | a. Yes | b. No | c. N/A |
| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

**8. Special Information:**

▇▇▇▇▇▇▇▇

| 9. Duty Preference: | a. Code | b. Descriptive Title |
|---|---|---|
| 1st | Y04 | FMF WEST COAST |
| 2nd | Y41 | RECRUITING DUTY - 1ST DISTRICT |
| 3rd | Y42 | RECRUITING DUTY - 4TH DISTRICT |

**10. Reporting Senior:**

| a. Last Name | b. Init | c. Service | d. SSN | e. Grade | f. Duty Assignment |
|---|---|---|---|---|---|
| ▇▇▇ | GW | USMC | ▇▇▇ | CWO2 | METOC OFFICER |

**11. Reviewing Officer:**

| a. Last Name | b. Init | c. Service | d. SSN | e. Grade | f. Duty Assignment |
|---|---|---|---|---|---|
| ▇▇▇ | MR | USMC | ▇▇▇ | MAJ | COMPANY COMMANDER |

## B. BILLET DESCRIPTION

## C. BILLET ACCOMPLISHMENTS

| 1. Marine Reported On: | | | | 2. Occasion and Period Covered: | | |
|---|---|---|---|---|---|---|
| a. Last Name | b. First Name | c. MI | d. SSN | a. OCC | b. From | To |
| STEIN | GARY | A | ▮▮▮▮▮ | TR | 20110401 | 20110620 |

## I. DIRECTED AND ADDITIONAL COMMENTS

Directed Comment; Sect A, Item 5C: This is an extended report; my evaluation of MRO remains the same as my evaluation of MRO from 20100801 to 20110331.

Directed Comment; Sect A, Item 8B: MRO is medically exempt from the semi-annual PFT due to his Limited Duty status.

## J. CERTIFICATION

**1. I CERTIFY** that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality and that I have provided a signed copy of this report to the Marine Reported on.

Electronically Signed By

_____
(Signature of Reporting Senior)

Date: 2011 07 07 (Date in YYYYMMDD format)

**2. I ACKNOWLEDGE** the adverse nature of this report and

☐ I have no statement to make
☐ I have attached a statement

_____
(Signature of Marine Reported On)

(Date in YYYYMMDD format)

## K. REVIEWING OFFICER COMMENTS

**1. OBSERVATION:** ☐ Sufficient ☒ Insufficient    **2. EVALUATION:** ☐ Concur ☐ Do Not Concur

**3. COMPARATIVE ASSESSMENT:** Provide a comparative assessment of potential by placing an "X" in the appropriate box. In marking the comparison, consider all Marines of this grade whose professional abilities are known to you personally.

| DESCRIPTION | | COMPARATIVE ASSESSMENT |
|---|---|---|
| THE EMINENTLY QUALIFIED MARINE | ☐ | |
| ONE OF THE FEW | ☐ | |
| EXCEPTIONALLY QUALIFIED MARINES | ☐ | |
| ONE OF THE MANY HIGHLY QUALIFIED | ☐ | |
| PROFESSIONALS WHO FORM THE | ☐ | |
| MAJORITY OF THIS GRADE | ☐ | |
| A QUALIFIED MARINE | ☐ | |
| UNSATISFACTORY | ☐ | |

**4. REVIEWING OFFICER COMMENTS:** Amplify your comparative assessment mark; evaluate potential for continued professional development to include: promotion, command, assignment, resident PME, and retention; and put Reporting Senior marks and comments in perspective.

This is an extended report; my evaluation remains the same.

**5. I CERTIFY** that to the best of my knowledge and belief all entries made hereon are true and without prejudice or partiality.

Electronically Signed By

_____
(Signature of Reviewing Officer)

Date: 2011 07 20 (Date in YYYYMMDD format)

**6. I ACKNOWLEDGE** the adverse nature of this report and

☐ I have no statement to make
☐ I have attached a statement

_____
(Signature of Marine Reported On)

(Date in YYYYMMDD format)

## L. ADDENDUM PAGE

ADDENDUM PAGE ATTACHED: ☐ YES

NAVMC 10835E (Rev. 4-03) (P A-PES 5.2.5.7)    FITREP ID #1281871    PAGE 5 OF 5

000487

# GE-22C

**Reporting Senior**
**Fitrep Evaluation Record**
# Sergeant



Code: A=1, B=2, C=3, D=4, E=5, F=6, G=7

Avg=AVERAGE(H#:T#)

| L. Name | F. Name | SSN | Unit | From | To | OCC | D1 | D2 | E1 | E2 | E3 | F1 | F2 | F3 | F4 | F5 | G1 | G2 | G3 | Ave |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | MWSS-373 | 20080829 | 20090331 | AN | 2 | 3 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 2.54 |
| | | | 1ST INTEL BN | 20100903 | 20110103 | TR | 4 | 4 | 2 | 3 | 3 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3.31 |
| | | | MWSS-373 | 20080829 | 20090331 | GC | 5 | 4 | 3 | 3 | 4 | 4 | 4 | 5 | 4 | 4 | 3 | 3 | 3 | 3.77 |
| | | | MWSS-373 | 20080701 | 20090331 | AN | 2 | 3 | 2 | 2 | 2 | 3 | 2 | 1 | 2 | 3 | 2 | 2 | 1 | 2 |
| | | | MWSS-373 | 20090401 | 20090923 | CH | 3 | 3 | 3 | 3 | 4 | 3 | 3 | 3 | 3 | 4 | 3 | 3 | 3 | 3.08 |
| | | | 1ST INTEL BN | 20110118 | 20110331 | AN | 4 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 3 | 3 | 4 | 3 | 3 | 3.38 |
| | | | 1ST INTEL BN | 20110401 | 20110706 | CH | 4 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3.46 |
| | | | MWSS-373 | 20090201 | 20090331 | AN | 3 | 3 | 2 | 3 | 3 | 3 | 4 | 3 | 3 | 2 | 3 | 3 | 3 | 2.92 |
| | | | MWSS-373 | 20080829 | 20090331 | AN | 4 | 4 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 3.54 |
| | | | 1ST INTEL BN | 20110401 | 20110914 | TD | 3 | 3 | 2 | 2 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 2 | 3 | 2.62 |
| | | | 1ST INTEL BN | 20111029 | 20120120 | TD | 4 | 3 | 3 | 2 | 3 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 3 | 3.38 |
| | | | MWSS-373 | 20100401 | 20100731 | CH | 3 | 3 | 2 | 2 | 3 | 3 | 3 | 4 | 3 | 3 | 2 | 2 | 3 | 2.77 |
| | | | MWSS-373 | 20080620 | 20090331 | AN | 4 | 4 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 4 | 3 | 3 | 3 | 3.23 |
| | | | MWSS-373 | 20090401 | 20100501 | GC | 4 | 4 | 2 | 4 | 3 | 3 | 4 | 4 | 3 | 4 | 3 | 3 | 3 | 3.54 |
| | | | MWSS-373 | 20080829 | 20090331 | AN | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| | | | 1ST INTEL BN | 20110908 | 20111104 | TD | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2.92 |
| | | | MWSS-373 | 20080828 | 20090331 | AN | 4 | 4 | 2 | 3 | 3 | 4 | 3 | 4 | 3 | 3 | 4 | 3 | 3 | 3.31 |
| | | | 1ST INTEL BN | 20120101 | 20120401 | TR | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 3 | 2.85 |
| | | | MWSS-373 | 20080829 | 20090331 | AN | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| | | | MWSS-373 | 20080828 | 20090331 | AN | 4 | 3 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 2.85 |



| Unit | Start | End | Code | | | | | | | | | | | | | | Avg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MWSS-373 | 20100401 | 20100731 | CH | 2 | 2 | 2 | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | **2.08** |
| MWSS-373 | 20100428 | 20100731 | CH | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 2 | 3 | 2 | 3 | 3 | **2.69** |
| MWSS-373 | 20080829 | 20090331 | AN | 3 | 3 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **3.08** |
| MWSS-373 | 20080828 | 20090331 | AN | 3 | 3 | 3 | 4 | 3 | 3 | 4 | 3 | 3 | 3 | 4 | 3 | 3 | **3.15** |
| MWSS-373 | 20100401 | 20100731 | CH | 4 | 4 | 4 | 3 | 3 | 4 | 3 | 3 | 4 | 4 | 3 | 3 | 3 | **3.38** |
| 1ST INTEL BN | 20100801 | 20110331 | AN | 2 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | **2.54** |
| 1ST INTEL BN | 20110401 | 20111130 | TR | 3 | 3 | 3 | 3 | 2 | 2 | 3 | 2 | 3 | 2 | 3 | 3 | 3 | **2.69** |
| 1ST INTEL BN | 20101219 | 20110331 | TD | 4 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | **3.31** |
| MWSS-373 | 20080620 | 20090331 | AN | 4 | 2 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | **3.38** |
| MWSS-373 | 20090401 | 20090921 | CH | 4 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | **3.46** |
| MWSS-373 | 20080401 | 20080731 | GC | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **3** |
| MWSS-373 | 20080719 | 20090331 | CH | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 2 | **2.31** |
| 1ST INTEL BN | 20100801 | 20101029 | TD | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | **2.77** |
| 1ST INTEL BN | 20111110 | 20120331 | AN | 2 | 3 | 3 | 2 | 3 | 2 | 2 | 3 | 2 | 3 | 3 | 2 | 2 | **2.46** |
| 1ST INTEL BN | 20100801 | 20110331 | AN | 2 | 3 | 2 | 2 | 2 | 3 | 2 | 3 | 2 | 3 | 3 | 2 | 2 | **2.31** |
| MWSS-373 | 20100401 | 20100731 | CH | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **3** |
| 1ST INTEL BN | 20111004 | 20120331 | AN | 3 | 3 | 2 | 3 | 3 | 3 | 3 | 1 | 3 | 3 | 3 | 2 | 2 | **2.46** |

Overall Average: 2.96



| | | | | | | | | | | | | | | | | | | | | | | | Ave |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1ST INTEL BN | 20110401 | 20111130 | TR | 3 | 3 | 3 | 3 | 2 | 3 | 2 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | **2.69** |
| 1ST INTEL BN | 20110401 | 20110914 | TD | 3 | 3 | 2 | 3 | 2 | 2 | 3 | 3 | 3 | 3 | 2 | 3 | 3 | 2 | **2.62** |
| MWSS-373 | 20080829 | 20090331 | AN | 2 | 3 | 3 | 2 | 3 | 3 | 2 | 2 | 2 | 3 | 3 | 3 | 2 | 3 | **2.54** |
| 1ST INTEL BN | 20100801 | 20110331 | AN | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 2 | 3 | **2.54** |
| 1ST INTEL BN | 20111110 | 20120331 | AN | 2 | 3 | 3 | 3 | 3 | 2 | 2 | 3 | 3 | 2 | 3 | 3 | 3 | 3 | **2.46** |
| 1ST INTEL BN | 20111004 | 20120331 | AN | 2 | 3 | 2 | 2 | 3 | 2 | 3 | 3 | 2 | 3 | 2 | 2 | 2 | 2 | **2.46** |
| MWSS-373 | 20080719 | 20090331 | CH | 3 | 3 | 2 | 3 | 1 | 2 | 3 | .3 | 2 | 3 | 3 | 3 | 3 | 2 | **2.31** |
| 1ST INTEL BN | 20100801 | 20110331 | AN | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 2 | 2 | 3 | 2 | 2 | 2 | **2.31** |
| MWSS-373 | 20100401 | 20100731 | CH | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | **2.08** |
| MWSS-373 | 20080701 | 20090331 | AN | 2 | 3 | 2 | 2 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 3 | 2 | 1 | **2** |

SGT BASELINE

| D1 | D2 | E1 | E2 | E3 | F1 | F2 | F3 | F4 | F5 | G1 | G2 | G3 | Ave |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 3 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **2.85** |

000491

GE-22D

## USMC COUNSELING SHEET

Name:  STEIN, GARY A.       SSN: ▇▇▇▇▇▇       Date:   2011 03 08
Grade: SGT                  MOS: 6842                 Billet: Training NCO

<u>Place of Offense</u>:   Marine Corps Base Camp Pendleton, CA
<u>Date of Offense</u>:    September 2010 to February 2011
<u>UCMJ Violations</u>:

**Article 92** — Failure to obey an order or regulation
**Article 123a** — Making, drawing, or uttering check, draft, or
order without sufficient funds

### Subjects on Which Guidance Was Provided:

   Between September 2010 and February 2011, your personal finances
have been in complete disarray and have become progressively worse
over time.  In September of this year you received two notices from
the base MCCS Financial Management Division (dated 8 September and 14
September respectively) for bounced checks.  You received a formal
counseling for this issue on 6 October 2010, and after explaining the
situation, you assured me that it was an isolated incident which
would not be repeated.  Since that counseling, your chain of command
has been contacted on two separate occasions regarding your tuition
assistance indebtedness.  As well, the Production and Analysis
Support Company First Sergeant recently received a phone call from
creditors regarding a vehicle of yours which they intended to
repossess.  Your reply to this was that you contacted the financing
company to enact a voluntary repossession, but that they were unaware
of this when they contacted the command.  Your inability to manage
your finances has caught the attention of the command, and
regrettably has also been seen by your peers and subordinates.  You
have lost the respect of your peers, subordinates, and senior
leadership.  You have disappointed your entire chain of command, and
are directed to police yourself <u>immediately</u> to avoid future
administrative or punitive action.

SNM does / does not wish to make a statement on his behalf concerning
the above mentioned items.  If SNM does desire to make a statement,
use the back of this form or attach an enclosure to this sheet.

| | |
|---|---|
| Marine Counseled | Sgt G.A. Stein / |
| Marine Performing Counseling | CWO2 ▇▇▇▇▇▇▇ |
| Date of Counseling | 8 March 2011 |
| Target Date For Next Session | N/A |

# GE-22E

## USMC COUNSELING SHEET

Name:  STEIN, GARY A.      SSN: ██████████      Date: 101006
Grade: SGT                 MOS: 6842             Billet: PLATOON SERGEANT

Place of Offense:    Marine Corps Base Camp Pendleton, CA
Date of Offense:     30 August to 8 September, 2010
UCMJ Violations:

**Article 92** — Failure to obey an order or regulation
**Article 123a** — Making, drawing, or uttering check, draft, or order without sufficient funds

### Subjects on Which Guidance Was Provided:

Between 30 August and 8 September 2010, you drafted two checks aboard MCB Camp Pendleton without having sufficient funds in your bank account to cover those checks.  This action on your part is in direct violation of Articles 92 and 123a of the UCMJ, and will not be tolerated under any circumstances.  As a Marine Non-Commissioned Officer, it is imperative that you set the example for subordinate Marines to emulate both day and night.  These Marines look to you for leadership and guidance daily, and to them, you are the living embodiment of our core values.  Writing bad checks, whether intentionally or otherwise, casts serious doubt on your maturity and ability to handle your personal finances.  Unfortunately, it also casts doubt on your ability to lead Marines and set the example for them to emulate.

You were chosen to serve as the platoon sergeant for the MetOc Platoon based upon your demonstrated leadership prowess.  No one handed you this position; rather, you earned it.  You are the number one NCO in this platoon, and as such you are looked upon with much closer scrutiny than all other MetOc personnel.  Lapses in judgment on your part should be few and far between, and drafting bad checks is a serious lapse in judgment.  I consider this to be an isolated incident, and am confident that a formal counseling will suffice to inform you of and help you correct your deficiencies.  From this point forward any further misconduct on your part, whether intentional or unintentional, will result in an adverse Page 11 entry into your Service Record Book.

SNM does / does not wish to make a statement on his behalf concerning the above mentioned items.  If SNM does desire to make a statement, use the back of this form or attach an enclosure to this sheet.

Marine Counseled                    Sgt G.A. Stein /
Marine Performing Counseling        CWO2 ███████████ /
Date of Counseling                  6 October 2010
Target Date For Next Session        N/A

GE-22F

UNCLASSIFIED



**UNITED STATES MARINE CORPS**
PRODUCTION AND ANALYSIS SUPPORT COMPANY
1ST INTELLIGENCE BATTALION
I MARINE EXPEDITIONARY FORCE
BOX 555327
CAMP PENDLETON, CALIFORNIA 92055-5327

IN REPLY REFER TO:
1510
METOC
10 Jan 11

From:   Meteorological & Oceanographic Platoon Commander, 1st Intelligence Battalion

To:     Sergeant Gary A. Stein

Subj:   APPOINTMENT AS METEOROLOGICAL AND OCEANOGRAPHIC PLATOON TRAINING NON-COMMISSIONED OFFICER

Ref:    (a) NAVMC 3500.38
        (b) MCO 1500
        (c) FA 890 AIRS Checklist
        (d) ATRIMS Users Guide

1.  Per the references, you are hereby appointed as the Training Non-commissioned Officer for the Meteorological and Oceanographic Platoon, 1st Intelligence Battalion.

2.  You are directed to familiarize yourself with the references and other directives pertinent to your duties.

3.  You are tasked to assist the Training SNCO in curriculum development, supervise the conduct of training within the MetOc Platoon, and record training requirements in individual training jackets.  You are responsible to the Training SNCO and MetOc Chief for the accomplishment of all MOS training requirements, as well as the maintenance of training records.

    a.  <u>Technical Training and Certification Program</u> – In accordance with Reference (a), supervise a localized training program with the goal of efficient certification of all initial accession MetOc Forecasters.  As well, implement a training program for the developmental progress of all MetOc Marines assigned to the 1st Intelligence Battalion MetOc Platoon.

    b.  <u>ATRIMS and M-SHARP Tracking</u> – In accordance with APX-33, TECOM, and direction from higher headquarters, maintain training and readiness qualification status on all personnel within the MetOc Platoon.  Training and qualification information will be input into both the ATRIMS and M-SHARP systems, maintained locally in individual training jackets, and provided to the TECOM MetOc representative upon request.

    c.  <u>Training Materials</u> – Maintain an adequate supply of training courses, software, lesson plans, and testing materials within the MetOc office.  All materials will be given appropriate safeguards to prevent loss, theft, damage, or compromise.

    d.  <u>Training Records</u> – Maintain accurate and up to date records for all MetOc Marines, both in individual training jackets as well as electronically. Assign and record classes given by MetOc personnel.

UNCLASSIFIED

Subj: APPOINTMENT AS METEOROLOGICAL AND OCEANOGRAPHIC PLATOON TRAINING
    NON-COMMISSIONED OFFICER

    e.  <u>Military Training Assignments</u> - Working with the MetOc Chief and
Training SNCO, assign MetOc personnel to required training and classes,
supervise the conduct of these classes, maintain liaison with appropriate
training offices, and ensure the entry of training into official individual
records.

    f.  <u>Training Plans</u> - In conjunction with P&A Support Company's annual
training plan, assist the Training SNCO in establishing an annual MetOc
training schedule for submission to the MetOc Platoon Commander.  Publish
both monthly and weekly training schedules to give more detailed guidance and
to assign pertinent MOS related and Marine Corps classes.

    g.  <u>Reports Required</u>                    <u>Date Due</u>

        (1) Annual Training Plan            28 February
        (2) Monthly Training Plan           25th of the month prior
        (3) Weekly Training Plan            Wednesday of the week prior
        (4) Personnel Training Sheet        1st of each month
        (5) Training Statistics             1st of each month

4.  This appointment will remain in effect until canceled by me in writing,
upon your change of primary duty, or upon your transfer.

---

FIRST ENDORSEMENT                                                        METOC

From:  Sergeant Gary A. Stein
To:    Meteorological & Oceanographic Platoon Commander, 1st Intelligence
       Battalion

1.  I have familiarized myself with the references and have assumed all
duties pertaining to this appointment.



                                    G. A. STEIN

Copy to:
MetOc Plt Cmdr
MetOc Chief
SNM
Files

000499

# GE-23

**Torresala Capt John W**

From:
Sent:          Tuesday, April 03, 2012 11:35 AM
To:
Subject:       FW: Sgt Stein

FYI!

From:
Sent: Monday, April 02, 2012 1:39 PM
To: 'Chris Kaiser'
Subject: Sgt Stein

Chris,

   I saw and deleted Sgt Stein's comment that was posted on the METOC Facebook Page on 01 Mar
- below.  Based on Sgt Stein's public history with political activism via Facebook, I wanted
to nip this in the butt before it gained traction and spiraled out of control.  As far as
alerting his command and dropping him from the Facebook METOC Page, Senior SNCOs within the
METOC Field addressed those points.  Below the deleted comment is a copy of my personal
discussion with Stein regarding those comments and why I deleted them.

   My concern with his comments surrounded the potential from detracting from the intent of
the METOC Facebook Page which could have resulted in negative press or elimination of the
page.  I was not attempting to deter or restrict his 1st Amendments rights to free speech
just redirecting him to exercise those rights elsewhere.  I did not respond to Sgt Stein's
post of 15 Mar 2012 asking if he had been banned.

   If you have any questions, feel free to contact me at                    .  My cell phone is
currently out for repairs.

Dave

From: Gary Stein [mailto:notification+zifv61iz@facebookmail.com]
Sent: Thursday, March 01, 2012 7:00 PM
To: Marine Corps Meteorology and Oceanography (METOC) Services
Subject: [Marine Corps Meteorology and Oceanography (METOC) Services] Just wanted to say that
I may have been...

1

000501

Gary Stein posted in Marine Corps Meteorology and Oceanography (METOC) Services
<http://www.facebook.com/n/?groups%2Fusmcmetoc%2F10150665492527733%2F&mid=5ba0ac1G4ccd91ddG2a11abcG96&bcode=GJOhc5hl&n_m=djburn11%40comcast.net> .

Just wanted to say that I may have been just a...
<http://www.facebook.com/n/?profile.php&id=1397855254&mid=5ba0ac1G4ccd91ddG2a11abcG96&bcode=GJOhc5hl&n_m=djburn11%40comcast.net>

Gary Stein
<http://www.facebook.com/n/?profile.php&id=1397855254&mid=5ba0ac1G4ccd91ddG2a11abcG96&bcode=GJOhc5hl&n_m=djburn11%40comcast.net>

7:00pm Mar 1

Just wanted to say that I may have been just a little over the line when I stated that Obama is the domestic enemy our oath speaks about and I apologize about that... But I will go on record and say all of the policy he has set forth in the last 3 years have done nothing but hurt the this country. I will follow all lawful orders set forth by him. But if we have 4 more years of him I am afraid of what is going to happen in this country.

<http://www.facebook.com/email_open_log_pic.php?mid=5ba0ac1G4ccd91ddG2a11abcG96>

View Post on Facebook
<http://www.facebook.com/n/?groups%2Fusmcmetoc%2F10150665492527733%2F&mid=5ba0ac1G4ccd91ddG2a11abcG96&bcode=GJOhc5hl&n_m=djburn11%40comcast.net>
<http://www.facebook.com/n/?groups%2Fusmcmetoc%2F&view=notifications&mid=5ba0ac1G4ccd91ddG2a11abcG96&bcode=GJOhc5hl&n_m=djburn11%40comcast.net>  · Reply to this email to add a comment.

Sir was I banned from the page? <http://www.facebook.com/gary.a.stein>

Gary Stein <http://www.facebook.com/gary.a.stein>

12:38am Mar 15

Sir was I banned from the page?

Conversation History

████████████████████████████████████████████

7:32pm Mar 1

Look smart one- the title of the Forum is Marine Corps METOC not Stein's METOC forum, focus on the first two words - Marine Corps. This forum is monitored by the Marine Corps and you could inadvertently have this site shut down with the wrong comment after I receive a few warnings as the site manager. Political sensitivities and monitoring goes up during an election year because people push the rules and the Marine Corps is required to maintain an unbiased and blind approach to politics, as you know. Again, focus on the first two words of the forum. I prefer not to push the envelop and have this site highlighted negatively by the Marine Corps. Share your political opinions and comments on another forum or with direct messages that's all that is being asked. The problem with politics and religion is the fact that you can start strings on end which is why I prefer not to entertain them. Thanks!

000502

Gary Stein <http://www.facebook.com/gary.a.stein>

Gary Stein <http://www.facebook.com/gary.a.stein>

7:33pm Mar 1

Roger that sir... will make sure to stay on topic... I apologize sir.



7:47pm Mar 1

No problems but what starts out as an innocent comment can lead into some inappropriate material through the course of follow-on responses. That's my concern. This is going to be a super charged election year and some people can easily become just as super charged at a personal level. Keep in mind there are some young METOC Marines on our site that may follow someone's lead and believe discussing politics openly in this forum is OK and end up hurting themselves professionally by saying something stupid. None of us want to see that. So thanks for your understanding.

Gary Stein <http://www.facebook.com/gary.a.stein>

Gary Stein <http://www.facebook.com/gary.a.stein>

7:49pm Mar 1

I understand sir... Someone reported what I said to my command so I can see were it could get out of hand. Again, I apologize for taking the forum off topic.

   <http://www.facebook.com/email_open_log_pic.php?mid=5cb7672G4ccd91ddG0G0>

View Conversation on Facebook
<http://www.facebook.com/n/?messages%2F&action=read&tid=id.162579500528437&mid=5cb7672G4ccd91ddG0G0&bcode=3aVZhTU0&n_m=djburn11%40comcast.net>  · Reply to this email to message Gary Stein.

000503

# GE-24

## President Obama announces reelection bid

Posted by Chris Cillizza and Emi Kolawole at 07:03 AM ET, 04/04/2011

-   -   Text Size      Print      E-mail      Reprints

Share:        More >



▶ Obama launches 2012 reelection campaign

**President Obama** announced his plans to seek reelection in 2012 via an e-mail and Web video sent to supporters this morning, a move designed to allow him to begin raising money for 2012 nearly 20 months before the election.

"Today, we are filing papers to launch our 2012 campaign," Obama wrote in the e-mail. "We're doing this now because the politics we believe in does not start with expensive TV ads or extravaganzas, but with you — with people organizing block-by-block, talking to neighbors, co-workers, and friends."

The accompanying video features the voices of average people talking about the election to come. "I just saw the energy and hope that he had for this country," says "Mike," "even though I couldn't exactly vote at the time I knew that someday I'd be able to help reelect him."

The formation of a reelection committee will allow Obama to begin collecting cash for what is expected to be the most expensive campaign in political history. Obama raised $750 million in 2008 and is widely expected to meet or exceed that total in 2012.

Already Obama campaign manager Jim Messina has been touring the country to meet with major donors; he has asked 400 major donors to each collect $350,000 in 2011, a target that, if met, would mean that Obama would end the year with $140 million raised — before a single vote was cast in the race for Republican presidential nomination.

Among Republicans, former Minnesota governor **Tim Pawlenty** (who responded with a web video of his own Monday), former Louisiana governor **Buddy Roemer** and businessman **Herman Cain** have formed presidential exploratory committees.

Obama is not expected to say anything publicly about the incorporation of his reelection committee today although **Vice President Biden** will be in New Hampshire, a swing state, today for an event with Education Secretary **Arne Duncan**.

009505

# GE-25

(8) *Contempt or disrespect to other noncommissioned or petty officer.* Forfeiture of two-thirds pay per month for 3 months, and confinement for 3 months.

f. *Sample specifications.*

(1) *Striking or assaulting warrant, noncommissioned, or petty officer.*

In that _____ (personal jurisdiction data), did, (at/on board—location) (subject-matter jurisdiction data, if required), on or about _____ 20____, (strike) (assault)_____, a _____ officer, then known to the said _____ to be a (superior)_____ officer who was then in the execution of his/her office, by _____ him/her (in) (on) (the _____) with (a) _____ (his/her)_____.

(2) *Willful disobedience of warrant, noncommissioned, or petty officer.*

In that _____ (personal jurisdiction data), having received a lawful order from _____, a _____ officer, then known by the said-_____ to be a _____ officer, to _____, an order which it was his/her duty to obey, did (at/on board— location), on or about _____ 20____, willfully disobey the same.

(3) *Contempt or disrespect toward warrant, noncommissioned, or petty officer.*

In that _____ (personal jurisdiction data) (at/on board—location), on or about _____ 20_____, [did treat with contempt] [was disrespectful in (language) (deportment) toward] _____, a _____ officer, then known by the said-_____ to be a (superior) - _____ officer, who was then in the execution of his/her office, by (saying to him/her, "_____," or words to that effect) (spitting at his/her feet) (_____ )

## 16. Article 92—Failure to obey order or regulation

a. *Text of statute.*   **Any person subject to this chapter who—**

**(1) violates or fails to obey any lawful general order or regulation;**

**(2) having knowledge of any other lawful or-**der issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or

**(3) is derelict in the performance of his duties; shall be punished as a court-martial may direct.**

b. *Elements.*

(1) *Violation of or failure to obey a lawful general order or regulation.*

(a) That there was in effect a certain lawful general order or regulation;

(b) That the accused had a duty to obey it; and

(c) That the accused violated or failed to obey the order or regulation.

(2) *Failure to obey other lawful order.*

(a) That a member of the armed forces issued a certain lawful order;

(b) That the accused had knowledge of the order;

(c) That the accused had a duty to obey the order; and

(d) That the accused failed to obey the order.

(3) *Dereliction in the performance of duties.*

(a) That the accused had certain duties;

(b) That the accused knew or reasonably should have known of the duties; and

(c) That the accused was (willfully) (through neglect or culpable inefficiency) derelict in the performance of those duties.

c. *Explanation.*

(1) *Violation of or failure to obey a lawful general order or regulation.*

(a) *Authority to issue general orders and regulations.* General orders or regulations are those orders or regulations generally applicable to an armed force which are properly published by the President or the Secretary of Defense, of Homeland Security, or of a military department, and those orders or regulations generally applicable to the command of the officer issuing them throughout the command or a particular subdivision thereof which are issued by:

(i) an officer having general court-martial jurisdiction;

(ii) a general or flag officer in command; or

(iii) a commander superior to (i) or (ii).

(b) *Effect of change of command on validity of order.* A general order or regulation issued by a commander with authority under Article 92(1) re-

¶16.c.(1)(b)

tains its character as a general order or regulation when another officer takes command, until it expires by its own terms or is rescinded by separate action, even if it is issued by an officer who is a general or flag officer in command and command is assumed by another officer who is not a general or flag officer.

(c) *Lawfulness.* A general order or regulation is lawful unless it is contrary to the Constitution, the laws of the United States, or lawful superior orders or for some other reason is beyond the authority of the official issuing it. *See* the discussion of lawfulness in paragraph 14c(2)(a).

(d) *Knowledge.* Knowledge of a general order or regulation need not be alleged or proved, as knowledge is not an element of this offense and a lack of knowledge does not constitute a defense.

(e) *Enforceability.* Not all provisions in general orders or regulations can be enforced under Article 92(1). Regulations which only supply general guidelines or advice for conducting military functions may not be enforceable under Article 92(1).

(2) *Violation of or failure to obey other lawful order.*

(a) *Scope.* Article 92(2) includes all other lawful orders which may be issued by a member of the armed forces, violations of which are not chargeable under Article 90, 91, or 92(1). It includes the violation of written regulations which are not general regulations. *See also* subparagraph (1)(e) above as applicable.

(b) *Knowledge.* In order to be guilty of this offense, a person must have had actual knowledge of the order or regulation. Knowledge of the order may be proved by circumstantial evidence.

(c) *Duty to obey order.*

(i) *From a superior.* A member of one armed force who is senior in rank to a member of another armed force is the superior of that member with authority to issue orders which that member has a duty to obey under the same circumstances as a commissioned officer of one armed force is the superior commissioned officer of a member of another armed force for the purposes of Articles 89 and 90. *See* paragraph 13c(1).

(ii) *From one not a superior.* Failure to obey the lawful order of one not a superior is an offense under Article 92(2), provided the accused had a duty to obey the order, such as one issued by a sentinel

or a member of the armed forces police. *See* paragraph 15b(2) if the order was issued by a warrant, noncommissioned, or petty officer in the execution of office.

(3) *Dereliction in the performance of duties.*

(a) *Duty.* A duty may be imposed by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the service.

(b) *Knowledge.* Actual knowledge of duties may be proved by circumstantial evidence. Actual knowledge need not be shown if the individual reasonably should have known of the duties. This may be demonstrated by regulations, training or operating manuals, customs of the service, academic literature or testimony, testimony of persons who have held similar or superior positions, or similar evidence.

(c) *Derelict.* A person is derelict in the performance of duties when that person willfully or negligently fails to perform that person's duties or when that person performs them in a culpably inefficient manner. "Willfully" means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act. "Negligently" means an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances. "Culpable inefficiency" is inefficiency for which there is no reasonable or just excuse.

(d) *Ineptitude.* A person is not derelict in the performance of duties if the failure to perform those duties is caused by ineptitude rather than by willfulness, negligence, or culpable inefficiency, and may not be charged under this article, or otherwise punished. For example, a recruit who has tried earnestly during rifle training and throughout record firing is not derelict in the performance of duties if the recruit fails to qualify with the weapon.

d. *Lesser included offense.* Article 80—attempts

e. *Maximum punishment.*

(1) *Violation or failure to obey lawful general order or regulation.* Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 2 years.

(2) *Violation of failure to obey other lawful order.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

[Note: For (1) and (2), above, the punishment set

000508

forth does not apply in the following cases: if in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed; or if the violation or failure to obey is a breach of restraint imposed as a result of an order. In these instances, the maximum punishment is that specifically prescribed elsewhere for that particular offense.]

(3) *Dereliction in the performance of duties.*

(A) *Through neglect or culpable inefficiency.* Forfeiture of two-thirds pay per month for 3 months and confinement for 3 months.

(B) *Willful.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

f. *Sample specifications.*

(1) *Violation or failure to obey lawful general order or regulation.*

In that _____ (personal jurisdiction data), did, (at/on board—location) (subject-matter jurisdiction data, if required), on or about _____ 20_____, (violate) (fail to obey) a lawful general (order) (regulation), to wit: (paragraph_____, (Army) (Air Force) Regulation _____, dated _____ 20_____) (Article_____, U.S. Navy Regulations, dated _____ 20_____) (General Order No._____, U.S. Navy, dated _____ 20_____) (_____), by (wrongfully) _____.

(2) *Violation or failure to obey other lawful written order.*

In that _____ (personal jurisdiction data), having knowledge of a lawful order issued by _____, to wit: (paragraph _____, (_____ the Combat Group Regulation No. _____) (USS _____ Regulationtion _____), dated _____) (_____), an order which it was his/her duty to obey, did, (at/on board—location) (subject-matter jurisdiction data, if required), on or about _____ 20_____, fail to obey the same by (wrongfully)_____.

(3) *Failure to obey other lawful order.*

In that _____, (personal jurisdiction data) having knowledge of a lawful order issued by_____(to submit to certain medical treat-

ment) (to _____) (not to _____) (_____), an order which it was his/her duty to obey, did (at/on board—location) (subject-matter jurisdiction data, if required), on or about _____ 20 _____, fail to obey the same by (wrongfully)_____.)

(4) *Dereliction in the performance of duties.*

In that _____, (personal jurisdiction data), who (knew) (should have known) of his/her duties (at/on board—location) (subject-matter jurisdiction data, if required), (on or about _____ 20_____) (from about _____ 20_____ to about _____ 20_____), was derelict in the performance of those duties in that he/she (negligently) (willfully) (by culpable inefficiency) failed_____, as it was his/her duty to do.

## 17. Article 93—Cruelty and maltreatment

a. *Text of statute.*

**Any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct.**

b. *Elements.*

(1) That a certain person was subject to the orders of the accused; and

(2) That the accused was cruel toward, or oppressed, or maltreated that person.

c. *Explanation.*

(1) *Nature of victim.* "Any person subject to his orders" means not only those persons under the direct or immediate command of the accused but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless whether the accused is in the direct chain of command over the person.

(2) *Nature of act.* The cruelty, oppression, or maltreatment, although not necessarily physical, must be measured by an objective standard. Assault, improper punishment, and sexual harassment may constitute this offense. Sexual harassment includes influencing, offering to influence, or threatening the career, pay, or job of another person in exchange for sexual favors, and deliberate or repeated offensive comments or gestures of a sexual nature. The imposition of necessary or proper duties and the exaction of their performance does not constitute this offense

lows: _____, the property therein certified as received being of a value of about $_____.

## 59. Article 133—Conduct unbecoming an officer and gentleman

a. *Text of statute.*

**Any commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct.**

b. *Elements.*

(1) That the accused did or omitted to do certain acts; and

(2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

c. *Explanation.*

(1) *Gentleman.* As used in this article, "gentleman" includes both male and female commissioned officers, cadets, and midshipmen.

(2) *Nature of offense.* Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty. Not everyone is or can be expected to meet unrealistically high moral standards, but there is a limit of tolerance based on customs of the service and military necessity below which the personal standards of an officer, cadet, or midshipman cannot fall without seriously compromising the person's standing as an officer, cadet, or midshipman or the person's character as a gentleman. This article prohibits conduct by a commissioned officer, cadet, or midshipman which, taking all the circumstances into consideration, is thus compromising. This article includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman. Thus, a commissioned officer who steals property violates both this article and Article 121. Whenever the offense charged is the same as a specific offense set forth in this Manual, the elements

of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman.

(3) *Examples of offenses.* Instances of violation of this article include knowingly making a false official statement; dishonorable failure to pay a debt; cheating on an exam; opening and reading a letter of another without authority; using insulting or defamatory language to another officer in that officer's presence or about that officer to other military persons; being drunk and disorderly in a public place; public association with known prostitutes; committing or attempting to commit a crime involving moral turpitude; and failing without good cause to support the officer's family.

d. *Lesser included offense.* Article 80—attempts

e. *Maximum punishment.* Dismissal, forfeiture of all pay and allowances, and confinement for a period not in excess of that authorized for the most analogous offense for which a punishment is prescribed in this Manual, or, if none is prescribed, for 1 year.

f. *Sample specifications.*

(1) *Copying or using examination paper.*

In that _____ (personal jurisdiction data), did, ( a t / o n   b o a r d — l o c a t i o n ) ,  o n  o r about _____ 20_____, while undergoing a written examination on the subject of _____, wrongfully and dishonorably (receive) (request) unauthorized aid by ((using) (copying) the examination paper of _____)) (_____).

(2) *Drunk or disorderly.*

In that _____ (personal jurisdiction data), w a s ,  ( a t / o n   b o a r d — l o c a t i o n ) ,  o n  o r about _____ 20_____, in a public place, to wit: _____, (drunk) (disorderly) (drunk and disorderly) while in uniform, to the disgrace of the armed forces.

## 60. Article 134—General article

a. *Text of statute.*

**Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may**

be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

b. *Elements.* The proof required for conviction of an offense under Article 134 depends upon the nature of the misconduct charged. If the conduct is punished as a crime or offense not capital, the proof must establish every element of the crime or offense as required by the applicable law. If the conduct is punished as a disorder or neglect to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces, then the following proof is required:

(1) That the accused did or failed to do certain acts; and

(2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

c. *Explanation.*

(1) *In general.* Article 134 makes punishable acts in three categories of offenses not specifically covered in any other article of the code. These are referred to as "clauses 1, 2, and 3" of Article 134. Clause 1 offenses involve disorders and neglects to the prejudice of good order and discipline in the armed forces. Clause 2 offenses involve conduct of a nature to bring discredit upon the armed forces. Clause 3 offenses involve noncapital crimes or offenses which violate Federal law including law made applicable through the Federal Assimilative Crimes Act, *see* subsection (4) below. If any conduct of this nature is specifically made punishable by another article of the code, it must be charged as a violation of that article. *See* subparagraph (5)(a) below. However, *see* paragraph 59 *c* for offenses committed by commissioned officers, cadets, and midshipmen.

(2) *Disorders and neglects to the prejudice of good order and discipline in the armed forces (clause 1).*

(a) *To the prejudice of good order and discipline.* "To the prejudice of good order and discipline" refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. Almost any irregular or improper act on the part of a member of the military service could be regarded as prejudicial in some indirect or remote sense; however, this arti-

cle does not include these distant effects. It is confined to cases in which the prejudice is reasonably direct and palpable. An act in violation of a local civil law or of a foreign law may be punished if it constitutes a disorder or neglect to the prejudice of good order and discipline in the armed forces. However, *see* R.C.M. 203 concerning subject-matter jurisdiction.

(b) *Breach of custom of the service.* A breach of a custom of the service may result in a violation of clause 1 of Article 134. In its legal sense, "custom" means more than a method of procedure or a mode of conduct or behavior which is merely of frequent or usual occurrence. Custom arises out of long established practices which by common usage have attained the force of law in the military or other community affected by them. No custom may be contrary to existing law or regulation. A custom which has not been adopted by existing statute or regulation ceases to exist when its observance has been generally abandoned. Many customs of the service are now set forth in regulations of the various armed forces. Violations of these customs should be charged under Article 92 as violations of the regulations in which they appear if the regulation is punitive. *See* paragraph 16c.

(3) *Conduct of a nature to bring discredit upon the armed forces (clause 2).* "Discredit" means to injure the reputation of. This clause of Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem. Acts in violation of a local civil law or a foreign law may be punished if they are of a nature to bring discredit upon the armed forces. However, *see* R.C.M. 203 concerning subject-matter jurisdiction.

(4) *Crimes and offenses not capital (clause 3).*

(a) *In general.* State and foreign laws are not included within the crimes and offenses not capital referred to in this clause of Article 134 and violations thereof may not be prosecuted as such except when State law becomes Federal law of local application under section 13 of title 18 of the United States Code (Federal Assimilative Crimes Act— *see* subparagraph (4)(c) below). For the purpose of court-martial jurisdiction, the laws which may be applied under clause 3 of Article 134 are divided into two groups: crimes and offenses of unlimited application (crimes which are punishable regardless where they may be committed), and crimes and of-

000511

fenses of local application (crimes which are punishable only if committed in areas of federal jurisdiction).

(b) *Crimes and offenses of unlimited application.* Certain noncapital crimes and offenses prohibited by the United States Code are made applicable under clause 3 of Article 134 to all persons subject to the code regardless where the wrongful act or omission occurred. Examples include: counterfeiting (18 U.S.C. § 471), and various frauds against the Government not covered by Article 132.

(c) *Crimes and offenses of local application.*

(i) *In general.* A person subject to the code may not be punished under clause 3 of Article 134 for an offense that occurred in a place where the law in question did not apply. For example, a person may not be punished under clause 3 of Article 134 when the act occurred in a foreign country merely because that act would have been an offense under the United States Code had the act occurred in the United States. Regardless where committed, such an act might be punishable under clauses 1 or 2 of Article 134. There are two types of congressional enactments of local application: specific federal statutes (defining particular crimes), and a general federal statute, the Federal Assimilative Crimes Act (which adopts certain state criminal laws).

(ii) *Federal Assimilative Crimes Act (18 U.S.C. § 13).* The Federal Assimilative Crimes Act is an adoption by Congress of state criminal laws for areas of exclusive or concurrent federal jurisdiction, provided federal criminal law, including the UCMJ, has not defined an applicable offense for the misconduct committed. The Act applies to state laws validly existing at the time of the offense without regard to when these laws were enacted, whether before or after passage of the Act, and whether before or after the acquisition of the land where the offense was committed. For example, if a person committed an act on a military installation in the United States at a certain location over which the United States had either exclusive or concurrent jurisdiction, and it was not an offense specifically defined by federal law (including the UCMJ), that person could be punished for that act by a court-martial if it was a violation of a noncapital offense under the law of the State where the military installation was located. This is possible because the Act adopts the criminal law of the state wherein the military installation is located and applies it as

though it were federal law. The text of the Act is as follows: Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(5) *Limitations on Article 134.*

(a) *Preemption doctrine.* The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent— there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

(b) *Capital offense.* A capital offense may not be tried under Article 134.

(6) *Drafting specifications for Article 134 offenses.*

(a) *In general.* A specification alleging a violation of Article 134 need not expressly allege that the conduct was "a disorder or neglect," that it was "of a nature to bring discredit upon the armed forces," or that it constituted "a crime or offense not capital." The same conduct may constitute a disorder or neglect to the prejudice of good order and discipline in the armed forces and at the same time be of a nature to bring discredit upon the armed forces.

(b) *Specifications under clause 3.* When alleging a clause 3 violation, each element of the federal or assimilated statute must be alleged expressly or by necessary implication. In addition, the federal or assimilated statute should be identified.

(c) *Specifications for clause 1 or 2 offenses not listed.* If conduct by an accused does not fall under any of the listed offenses for violations of Article 134 in this Manual (paragraphs 61 through 113 of this Part) a specification not listed in this Manual may be used to allege the offense.

000512

tion of law to be decided by the military judge. Whether the person who imposed correctional custody had such a status is a question of fact to be decided by the factfinder.

d. *Lesser included offense.* Article 80—attempts

e. *Maximum punishment.*

(1) *Escape from correctional custody.* Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 1 year.

(2) *Breach of correctional custody.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

f. *Sample specifications.*

(1) *Escape from correctional custody.*

In that _____ (personal jurisdiction data), while undergoing the punishment of correctional custody imposed by a person authorized to do so, did, (at/on board—location), on or about_____ 20____, escape from correctional custody.

(2) *Breach of correctional custody.*

In that _____ (personal jurisdiction data), while duly undergoing the punishment of correctional custody imposed by a person authorized to do so, did, (at/on board—location), on or about_____ 20_____, breach the restraint imposed thereunder by _____.

## 71. Article 134—(Debt, dishonorably failing to pay)

a. *Text of statute. See* paragraph 60.

b. *Elements.*

(1) That the accused was indebted to a certain person or entity in a certain sum;

(2) That this debt became due and payable on or about a certain date;

(3) That while the debt was still due and payable the accused dishonorably failed to pay this debt; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

c. *Explanation.* More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations. For a debt to form the basis of this offense, the accused must not have had a defense, or an equivalent offset or counterclaim, either in fact or according to the accused's belief, at the time alleged. The offense should not be charged if there was a genuine dispute between the parties as to the facts or law relating to the debt which would affect the obligation of the accused to pay. The offense is not committed if the creditor or creditors involved are satisfied with the conduct of the debtor with respect to payment. The length of the period of nonpayment and any denial of indebtedness which the accused may have made may tend to prove that the accused's conduct was dishonorable, but the court-martial may convict only if it finds from all of the evidence that the conduct was in fact dishonorable.

d. *Lesser included offenses.* None.

e. *Maximum punishment.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

f. *Sample specification.*

In that _____ (personal jurisdiction data), being indebted to _____ in the sum of $_____ for _____, which amount became due and payable (on) (about) (on or about) _____ 20____, did (at/on board—location)(subject-matter jurisdiction data, if required), from _____ 20____, to _____ 20____, dishonorably fail to pay said debt.

## 72. Article 134—(Disloyal statements)

a. *Text of statute. See* paragraph 60.

b. *Elements.*

(1) That the accused made a certain statement;

(2) That the statement was communicated to another person;

(3) That the statement was disloyal to the United States;

(4) That the statement was made with the intent to promote disloyalty or disaffection toward the United States by any member of the armed forces or to interfere with or impair the loyalty to the United States or good order and discipline of any member of the armed forces; and

(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and

¶72.b.(5)

discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

c. *Explanation.* Certain disloyal statements by military personnel may not constitute an offense under 18 U.S.C. §§ 2385, 2387, and 2388, but may, under the circumstances, be punishable under this article. Examples include praising the enemy, attacking the war aims of the United States, or denouncing our form of government with the intent to promote disloyalty or disaffection among members of the armed services. A declaration of personal belief can amount to a disloyal statement if it disavows allegiance owed to the United States by the declarant. The disloyalty involved for this offense must be to the United States as a political entity and not merely to a department or other agency that is a part of its administration.

d. *Lesser included offense.* Article 80—attempts

e. *Maximum punishment.* Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 3 years.

f. *Sample specification.*

In that _____ (personal jurisdiction data), did, (at/on board—location), on or about_____ 20_____, with intent to (promote (disloyalty) (disaffection) (disloyalty and disaffection)) ((interfere with) (impair) (the (loyalty) (good order and discipline)) of any member of the armed forces of the United States communicate to _____, the following statement, to wit: "_____," or words to that effect, which statement was disloyal to the United States.

## 73. Article 134—(Disorderly conduct, drunkenness)

a. *Text of statute. See* paragraph 60.

b. *Elements.*

(1) That the accused was drunk, disorderly, or drunk and disorderly on board ship or in some other place; and

(2) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

c. *Explanation.*

(1) *Drunkenness. See* paragraph 35c(6) for a discussion of intoxication.

(2) *Disorderly.* Disorderly conduct is conduct of

IV-122

such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby. It includes conduct that endangers public morals or outrages public decency and any disturbance of a contentious or turbulent character.

(3) *Service discrediting.* Unlike most offenses under Article 134, "conduct of a nature to bring discredit upon the armed forces" must be included in the specification and proved in order to authorized the higher maximum punishment when the offense is service discrediting.

d. *Lesser included offense.* Article 80—attempts

e. *Maximum punishment.*

(1) *Disorderly conduct.*

(a) *Under such circumstances as to bring discredit upon the military service.* Confinement for 4 months and forfeiture of two-thirds pay per month for 4 months.

(b) *Other cases.* Confinement for 1 month and forfeiture of two-thirds pay per month for 1 month.

(2) *Drunkenness.*

(a) *Aboard ship or under such circumstances as to bring discredit upon the military service.* Confinement for 3 months and forfeiture of two-thirds pay per month for 3 months.

(b) *Other cases.* Confinement for 1 month and forfeiture of two-thirds pay per month for 1 month.

(3) *Drunk and disorderly.*

(a) *Aboard ship.* Bad-conduct discharge, forfeiture of all pay and allowances, and confinement for 6 months.

(b) *Under such circumstances as to bring discredit upon the military service.* Confinement for 6 months and forfeiture of two-thirds pay per month for 6 months.

(c) *Other cases.* Confinement for 3 months and forfeiture of two-thirds pay per month for 3 months.

f. *Sample specification.*

In that _____ (personal jurisdiction data), was, (at/on board—location) (subject-matter jurisdiction data, if required), on or about _____ 20_____, (drunk) (disorderly) (drunk and disorderly) (which conduct was of a nature to bring discredit upon the armed forces).