# GE-26

1004.  CHARACTERIZATION OF SERVICE

1.  Importance of Proper Characterization

    a.  Characterization is recognition of the quality of a Marine's performance and conduct.  Determining the proper characterization should not be underestimated.  Characterization serves as a goal for each Marine and as a meaningful endorsement to potential employers.

    b.  Most Marines serve honorably.  In fairness to those Marines, commanders and separation authorities should ensure that undeserving Marines receive no higher characterization than is due.

2.  Types of Characterization or Description.  Characterization of service or description of separation based upon administrative action is authorized as follows:

    a.  Honorable.  This is the highest quality of characterization.

    *(1) Honorable upon EAS separation.  Honorable characterization is appropriate when the quality of the Marine's service has met the standards of accepted conduct and performance of duty for military personnel.  Therefore, characterization will be honorable for Marines with average proficiency marks of 3.0 or higher and average conduct marks of 4.0 or higher.  Separation upon EAS does not specifically indicate the expiration of contractual obligated service (EOS).

    *(2) Honorable upon involuntary separation under chapter 6 or separation in lieu of trial by court-martial.  If a Marine is being separated as a result of adverse conduct, unsatisfactory performace, or is requesting separation in lieu of court-martial, an honorable characterization is appropriate only if the Marine's service is otherwise so meritorious that any other characterization would clearly be inappropriate.

    *b.  General (Under Honorable Conditions).  This is the second highest quality of characterization and is appropriate if the member's service has been honest and faithful but significant negative aspects of the member's conduct or performance outweigh positive aspects of the member's military record.  See also paragraph 1004.3 and the specific basis in chapter 6.

    *(1) General upon EAS separation.  Characterization should be general for Marines with average proficiency marks below 3.0 and average conduct marks below 4.0.  The separation authority may determine a fully honorable characterization of service is warranted, however, this discretion should only be used if the Marine's service is otherwise so meritorious that any other characterization would clearly be inappropriate.  "EAS separation" does not specifically indicate the contractual EAS.

    *(2) General upon involuntary separation under chapter 6 or separation in lieu of trial by court-martial.  If a Marine is requesting separation in lieu of court-martial, a general characterization is appropriate only if the Marine's service is otherwise so meritorious that any other characterization would clearly be inappropriate.

    c.  Under Other Than Honorable Conditions (OTH).  This is the least favorable characterization.

    (1) OTH upon EAS separation.  Not authorized.

(2) <u>OTH upon involuntary separation under chapter 6 or separation in lieu of trial by court-martial</u>.  OTH is appropriate when the basis for separation is commission or omission of an act that constitutes a significant departure from the conduct expected of a Marine.  Examples of factors that may be considered include, but are not limited to, the use of force or violence to produce serious bodily injury or death; abuse of special positions of trust; disregard of customary senior-subordinate relationships; acts or omissions endangering the security of the Marine Corps; deliberate acts or omissions seriously endangering the health and safety of others; and drug abuse.  OTH characterization is authorized only if (1) the member has been afforded the opportunity to request an administrative board, or (2) the member requests separation in lieu of trial by court-martial under paragraph 4104 or 6419.

(3) When an enlisted Marine serving in pay grade E-4 or above is administratively separated with an other than honorable characterization of service, the Marine shall be administratively reduced to pay grade E-3, with such reduction to become effective upon separation.

d.  <u>Uncharacterized</u>.  See paragraph 1004.5.

3.  <u>Guidelines for Determining Characterization for Involuntary Separations Under chapter 6</u>.  A board or separation authority may consider the following factors and any other relevant factors in determining characterization:

*a.  Standards of performance and conduct as determined by MCO P1610.7 series, Performance Evaluation System, MCO P1070.12 series, Individual Records Administration Manual (IRAM), and customs of the service form the primary basis for determining characterization of service.  Minimum acceptable average proficiency and conduct markings during an enlistment are 3.0 and 4.0 respectively.  Failure of a Marine to achieve either of these standards is evidence of significant negative aspects, outweighing all but the most meritorious military records.  Marines who do not achieve these standards should not receive an honorable discharge.

b.  The reason for separation.

c.  The type of behavior which is the basis for separation.  Generally, characterization will be based on a pattern of behavior rather than an isolated incident, although a single instance of misconduct or poor performance may be the basis for characterization.

d.  The limitations on characterization in paragraph 1004.4 and sections 2 and 4 of chapter 6.

e.  The member's age, length of service, grade, aptitude, and physical and mental condition.

f.  Conduct in the civilian community, whether or not such conduct is subject to the UCMJ, which brings discredit to the service or prejudices good order and discipline.

4.  <u>Limitations on Characterization</u>

    a.  <u>Prior enlistment or period of service</u>

        (1) <u>Characterization</u>.  Characterization of the current enlistment or period of service is determined by conduct, actions, or performance during that enlistment or service plus any extensions prescribed by law or regulations or effected with the consent of the member.  Thus, positive or negative conduct, acts, or performance during a period of <u>prior</u> military service--including court-martial, nonjudicial punishment, absence without leave, misconduct for which a reenlistment waiver was granted, or commission of other offenses for which punishment was not imposed or adjudged--cannot be considered in determining the characterization to be recommended for the current enlistment.  (Note: 6105 counseling entries from previous enlistments carry over and remain valid in current enlistment.)  The issuance of a DD Form 214 to a member of the Selected Marine Corps Reserve (SMCR) or Individual Ready Reserve (IRR) after any period of active duty in determining characterization of separation from the reserve component.

        (2) <u>Retention</u>.  Prior conduct, acts, or performance can be considered in determining whether the board or separation authority will recommend or decide retention or separation.  If such matter is considered on the issue of retention or separation, the record shall include a statement that the separation authority did <u>not</u> consider such matter on the issue of characterization.

    b.  <u>Pre-service activities</u>.  Pre-service activities, including misconduct for which an enlistment waiver was granted, may not be considered in determining characterization except in a proceeding concerning fraudulent entry into the Marine Corps.  Evidence of pre-service misrepresentations about matters that would have precluded, postponed, or otherwise affected the member's eligibility for enlistment or induction may be considered.

    *c.  <u>Serious offense</u>.  When separation is based solely upon a serious offense or serious offenses (including a violation of Article 112a, UCMJ) which resulted in a conviction by a special or general court-martial that did not adjudge a punitive discharge, and the general court martial convening authority (GCMCA) recommends a characterization of service as under other than honorable conditions under the guidance in sections 1 and 2 of chapter 6, separation and characterization must be approved by the Deputy Commandant (M&RA) on a case-by-case basis.  However, referral to the Deputy Commandant (M&RA) is not required if the special or general court-martial was not authorized to adjudge a punitive discharge.  For the purpose of this paragraph, summary courts-martial, nonjudicial punishments, and other misconduct considered at a special or general court-martial do not, thereby, become part of the serious offense(s) resulting in conviction.  Referral to the Deputy Commandant (M&RA) is not required when the Marine is notified of processing based upon misconduct in addition to the serious offense(s) of which convicted at special or general court-martial, when the additional misconduct would form the basis, in whole or in part, for an other than honorable characterization of service.

    d.  Conduct by Reservists.  Conduct in the civilian community by a member of the inactive reserves (including the IRR) who, at the time of the conduct, is not on active duty, or active duty for training, may form the basis for characterization under other than honorable conditions only if such conduct directly affects the performance of military duties (service related).  Such conduct may form the basis of characterization as general (under honorable conditions) only if such conduct adversely affects the overall effectiveness of the Marine Corps including military morale and efficiency.

    *e.  Drug Abuse.  Confirmed illegal drug use requires mandatory administrative separation processing.  If processing is based solely upon evidence that may not be considered in determining characterization of service, the separation authority may direct retention, or approve an honorable or general (under honorable conditions) characterization of service as warranted by the respondent's service record.  In all other administrative separation proceedings based on drug abuse, the GCMCA may act as the separation authority and take final action in accordance with paragraph 6309 (except in cases that must be forwarded to the Secretary of the Navy or the CMC under subparagraph 1004.4c or paragraph 6307).  See SECNAVINST 5300.28 series for a detailed discussion.

        (1)  Using urinalysis results.  Evidence obtained from an involuntary urinalysis taken under Military Rules of Evidence 312-316 (bodily or medical examinations or intrusions, inspections, search, or seizure) may be used in determining characterization and can support OTH characterization.  Urinalysis results obtained during fitness for duty examinations, if not based on probable cause or valid medical purpose, cannot be used as the basis for unfavorable characterization except when used for impeachment or rebuttal in any proceeding in which evidence of drug abuse has been first introduced by the Marine.

        (2)  Rehabilitation.  A Marine's voluntary submission to a DoD treatment and rehabilitation program, and evidence voluntarily disclosed by the Marine as part of the course of treatment in such a program, may not be used against the Marine on the issue of characterization of service.  In such cases, the separation authority may only direct or approve an honorable or general (under honorable conditions) characterization of service as warranted by the respondent's service record if the separation authority does not direct retention.  This limitation does not apply to:

        (a)  Introducing evidence for impeachment or rebuttal in any proceeding in which evidence of drug abuse has been first introduced by the Marine; or

        (b)  The taking of action based on independently derived evidence, including evidence of continued drug abuse after initial entry into a treatment and rehabilitation program; information disclosed by the Marine to persons other than military substance abuse program personnel; or information disclosed in connection with investigation or disciplinary proceedings.

000519

*f.  Domestic Abuse Repeat Offenders.  Commanders shall initiate administrative separation proceedings for Marines determined to have committed a "Substantiated" second domestic abuse offense as defined and required by MCO P1700.24 series.  When initiating an administrative separation as a result of domestic abuse involvement, the commander must include domestic abuse as part of the reason for separation so the spouse and family may initiate the application process for financial compensation and retention of ID card benefits and privileges through the Transitional Compensation for Abused Family Members program.

*g.  The separation authority for all Marines with 18 or more years of active/active constructive service is the CMC.  The characterization of service for these Marines is normally honorable.  However, characterization of service for Marines in this category, who are separated as a result of misconduct, may be less than honorable.  In cases which warrant such a characterization, the command must forward a recommendation to the CMC (MMSR-3), with supporting documentation and endorsements for a determination.

5.  Uncharacterized Separations

     a.  Uncharacterized.  An uncharacterized description shall be used as follows:  (Note:  With respect to nonservice related administrative matters, i.e., Department of Veteran Affairs (DVA) benefits, civilian employment, etc., an uncharacterized separation shall be considered as the equivalent of an honorable or general, [under honorable conditions] characterization.)

          (1) When a separation is initiated while a member is in an entry level status (see paragraph 1002.21), except in the following circumstances:

               (a) When separation for misconduct, fraudulent enlistment, or homosexual conduct is authorized and when characterization under other than honorable conditions is warranted by the circumstances of the case;

               (b) When separation in lieu of court-martial is authorized and when characterization under other than honorable conditions is warranted by the circumstances of the case; or,

               (c) When characterization of service as honorable is clearly warranted by the presence of unusual circumstances involving personal conduct and performance of military duty and is approved on a case-by-case basis by the Secretary of the Navy.  Honorable characterization will be considered when the member is separated by reason of selected changes in service obligation,

Convenience of the Government (CoG), disability, or Secretarial plenary authority.

(2) When a Marine with broken service is separated while in indoctrination training for failure to satisfactorily complete such training; or

(3) When a Marine is separated while in the Delayed Entry Program because of ineligibility for enlistment.  Separation is effected per paragraph 6204 of this Manual.

b.  Void Enlistments or Induction.  A member whose enlistment or induction is void shall not receive a discharge certificate.  Characterization of service shall be uncharacterized.  The separation shall be described as an order of release from custody or control of the service concerned.  When a constructive enlistment arises, characterization is required.

(1) An enlistment is void in the following circumstances:

(a) If it was effected without the voluntary consent of a person who has the capacity to understand the significance of enlisting in the Marine Corps, including enlistment of a person who is intoxicated or insane at the time of enlistment;

(b) If the person is under 17 years of age;

(c) If the person is a deserter from another military service; or

(d) If the person tests positive for drugs or alcohol during the entrant drug and alcohol test, follow the procedures in paragraph 6211.

(2) Although an enlistment may be void at its inception, a constructive enlistment arises in the case of a person serving with the Marine Corps who:

(a) Submitted voluntarily to military authority;

(b) Met mental competency and minimum age qualifications at the time of voluntary submission to military authority;

(c) Received military pay or allowances; and

(d) Performed military duties.

(3) If an enlistment is void at its inception and is followed by a constructive enlistment within the same term of service, characterization of service, or description of separation, shall be per paragraphs 1003 and 1004.  If the enlistment was void by reason of desertion from another service, the member shall be separated by an order of release from the custody and control of the Marine Corps, regardless of any subsequent constructive enlistment, unless the Secretary of the Navy determines that retention is appropriate.

(4) The occurrence of such a constructive enlistment does not preclude the CMC, in an appropriate case, from either retaining or separating the Marine on any basis for separation provided in this Manual.

000521

b.  Long term rehabilitation is determined necessary and the Marine is transferred to a civilian medical facility for rehabilitation.

2.  Initiate separation proceedings following the procedures in paragraph 6303 or 6304 as appropriate.

3.  Characterization is honorable, general (under honorable conditions), or uncharacterized per table 6-1.

*4.  Nothing in this paragraph precludes separation under other provisions in this Manual.  See MCO P1700.24 series for further information.

6210.  UNDERLINE MISCONDUCT

1.  Whenever a Marine is involved in misconduct, as described in the following paragraphs, commanders shall process the Marine for separation unless rehabilitation and retention are warranted under the guidelines in paragraph 6105.  Characterization of service normally shall be under other than honorable conditions, but characterization as general (under honorable conditions) may be warranted in some circumstances.  For Marines who have completed entry level status, characterization of service as honorable is not authorized unless the Marine's record is otherwise so meritorious that any other characterization clearly would be inappropriate and the separation is approved by the GCMCA.  When characterization of service under other than honorable conditions is not warranted for a Marine in entry level status, the separation shall be uncharacterized.  Separation processing for a series of minor disciplinary infractions or a pattern of misconduct may not be initiated until the member has been counseled per the guidelines for counseling in paragraph 6105.  Counseling per paragraph 6105 and rehabilitation are not required if the basis of separation is commission of a serious offense, a civilian conviction, or a similar juvenile adjudication, or drug abuse.  Process per provisions of paragraph 6303 or 6304 as appropriate.  Actions on related misconduct separations:

    a.  Misconduct involving homosexual conduct shall be processed under paragraph 6207;

    b.  Misconduct involving a fraudulent entry shall be processed under paragraph 6204.3;

    c.  Offenses involving drug abuse shall be processed for separation by reason of the appropriate drug abuse offense in paragraph 6210.5, as well as other applicable reasons in this Manual; and

    *d.  See MCO P1400.32 series, Enlisted Promotion Manual regarding nonpunitive reductions relating to professional incompetence and competency review boards.

2.  Minor Disciplinary Infractions.  A Marine may be separated when there is, in his or her service record book, a documented series of at least THREE minor disciplinary infractions, during the current enlistment, of a nature which have been or would have been appropriately disciplined under Article 15, UCMJ, nonjudicial punishment.  When multiple offenses have been the subject of one nonjudicial punishment, they remain separate offenses for the purpose of determining eligibility for processing under this paragraph.  If separation of a member in entry level status is warranted solely by reason of minor disciplinary infractions, the processing should be under Entry Level Performance and Conduct.  Separation processing may not be initiated until the

000522

Marine has been counseled per paragraph 6105.  The notification procedure contained in paragraph 6303 may be used if characterization of service under other than honorable conditions is not warranted.

3.  A Pattern of Misconduct

    a.  A minimum of TWO incidents occurring within one enlistment is required.  Misconduct occurring in an extension of an enlistment is considered to be within one enlistment.  The infractions may be minor or more serious. There must be discreditable involvement with civil or military authorities or conduct prejudicial to good order and discipline.  The misconduct need not have been the subject of NJP or military or civilian conviction.  Such incidents include, but are not limited to, an established pattern of minor unauthorized absences; an established pattern of dishonorable failure to pay just debts; or an established pattern of dishonorable failure to contribute adequate support to family members or comply with orders, decrees, or judgments of a civil court concerning support of family members.  The incidents of misconduct do not have to be of the same nature.

    b.  Separation processing may not be initiated until the Marine has been counseled per paragraph 6105.  The notification procedure contained in paragraph 6303 may be used if characterization of service under other than honorable conditions is not warranted.

4.  Sexual Perversion.  Sexual perversion (see paragraph 6002.21) is not a specific basis for discharge.  Marines involved in acts of sexual perversion shall be processed under paragraph 6210.6 or 6210.7, as appropriate.

5.  Drug Abuse

    *a.  Commanders shall process Marines for administrative separation for illegal, wrongful, or improper use, possession, sale, transfer, distribution, or introduction on a military installation of any controlled substance, marijuana, steroids, or other dangerous or illicit drug or other forms of substance abuse (such as designer drugs, fungi, chemicals not intended for human consumption, etc.) as defined in SECNAVINST 5300.28 series paragraph 5.c), and/or the possession, sale, or transfer of drug paraphernalia as defined in SECNAVINST 5300.28 series.  Commanders shall also process Marines who attempt to engage in any of the aforementioned activities.  Evidence obtained from an involuntary urinalysis administered pursuant to an inspection under Military Rule of Evidence in the current version of the Manual for Courts Martial (MCM), or from a search and seizure under Military Rules of Evidence 311-317, or incident to an examination conducted for a valid medical reason may be used to characterize a member's discharge as under other than honorable conditions.  The procedures contained in paragraph 6304 shall be used when separating a Marine under these provisions, unless a characterization of service more favorable than other than honorable is warranted.

    b.  Except as provided below, all Marines (regardless of pay grade) identified for mandatory processing under the criteria of paragraph 6210.5a will be processed for administrative separation by reason of misconduct, due to drug abuse, on the first offense.  Processing is not required if:

        (1)  The offense has been adjudicated at a general or special court martial, for which the sentence approved by the convening authority includes a punitive discharge (suspended or unsuspended), or

        (2)  The limitations of paragraph 6106.1 apply

c.  Self-referral for drug use constitutes confirmation of illegal drug abuse and requires a Marine to be processed for administrative separation. The Voluntary Drug Exemption Program is no longer applicable.  However, a Marine's voluntary submission to a DoD treatment and rehabilitation program, and evidence voluntarily disclosed by the Marine as part of the course of treatment in such a program may not be used against the Marine on the issue of characterization of service.  This limitation does not apply to:

(1) The introduction of evidence for the purpose of impeachment or rebuttal in any proceeding in which evidence of drug abuse has been first introduced by the Marine; or

(2) The taking of action based on independently derived evidence, including evidence of continued drug abuse after initial entry into a treatment and rehabilitation program.

*d.  Marines separated for drug abuse will be screened for drug dependency at a Substance Abuse Counseling Center (SACC) and provided treatment prior to separation.  Under special circumstances, they will be referred to the Department of Veterans Administration (DVA) for counseling and/or treatment. The commanding officer determines when treatment at a VA Medical Facility is in the best interest of the Marine Corps and the Marine being separated.

6.  Commission of a Serious Offense

a.  A Marine may be processed for separation for commission of a serious military or civilian offense under the following circumstances:

(1) The specific circumstances of the offense warrant separation; and

(2) A punitive discharge would be authorized for the same or a closely related offense under the UCMJ.

b.  A military or civilian conviction is not required for discharge under this provision.

c.  The notification procedure contained in paragraph 6303 may be used if characterization of service under other than honorable conditions is not warranted.

7.  Civilian Conviction

a.  Commanders may process Marines for separation when civilian authorities (foreign or domestic) have convicted a Marine or taken action which is tantamount to a finding of guilty, including similar adjudication in juvenile proceedings, when:

(1) the specific circumstances of the offense warrant separation, and

(2) a punitive discharge would be authorized for the same or a closely related offense under the UCMJ; or

(3) the sentence by civilian authorities includes confinement for 6 months or more without regard to suspension or probation.

b.  Separation processing may be initiated whether or not a Marine has filed an appeal of a civilian conviction or has stated an intention to do so. However, execution of an approved separation should be withheld pending outcome of the appeal or until the time for appeal has passed, unless the Marine has requested separation or the member's separation has been requested

6210                MARINE CORPS SEPARATION AND RETIREMENT MANUAL

by the CMC.  Such requests must be approved by the Secretary of the Navy who
may direct that the member be separated before final action on the appeal.

    c.  For special provisions regarding characterization of discharge based
upon civilian conviction in the case of a Reservist, see paragraph 1004.4d.

    d.  The notification procedure contained in paragraph 6303 may be used if
characterization of service under other than honorable conditions is not
warranted.

8.  Sexual Harassment

    a.  Processing for separation is mandatory following the first
substantiated incident of sexual harassment (see defintion paragraph 6002.19)
involving any of the following circumstances:

        (1) Threats or attempts to influence another's career or job for
sexual favors;

        (2) Rewards in exchange for sexual favors; or,

        (3) Physical contact of a sexual nature which, if charged as a
violation of the UCMJ, could result in a punitive discharge.

    b.  An incident is considered substantiated when there has been a
court-martial conviction, nonjudicial punishment, or the commander determines,
based on a preponderance of the evidence, that sexual harassment has occurred.

    c.  Refer to the procedures in paragraph 6303 or 6304, as applicable.  The
basis for separation shall be under paragraph 6210.2 (Minor Disciplinary
Infractions); 6210.3 (Pattern of Misconduct); or 6210.6 (Commission of a
Serious Offense).  Counseling per paragraph 6105 is not required for
processing a Marine for separation under this paragraph, unless the Marine is
processed under paragraph 6210.2 or 6210.3.

9.  Participation in Supremacist or Extremist Organizations or Activities

    a.  Processing for separation is mandatory following the first
substantiated incident of misconduct resulting from the member's participation
in extremist or supremacist activities which, in the independent judgment of
an administrative separation board convening authority, is more likely than
not to undermine unit cohesion or be detrimental to the good order,
discipline, or mission accomplishment of the command.  Such misconduct must
relate to:

        (1) Illegal discrimination based on race, creed, color, sex, religion,
or national origin; or

        (2) Advocating the use of force or violence against any Federal,
State, or local government, or any unit or agency thereof, in contravention of
Federal, State, or local laws.

    b.  An incident is considered substantiated when there has been a court
martial conviction, nonjudicial punishment, or an administrative separation
board convening authority determines, based on a preponderance of the
evidence, that the member has engaged in supremacist or extremist conduct

000525

c.  The basis for separation shall be under paragraph 6210.2 (minor disciplinary infractions); 6210.3 (pattern of misconduct); 6210.6 (commission of a serious offense); or 6214 (separation in the best interest of the service).  Note, however, that paragraph 6210.2 and 6210.3 may not be used unless the Marine has been previously counseled concerning misconduct per paragraph 6105.

d.  The least favorable characterization is under other than honorable conditions, if an administrative board procedure (paragraph 6304) is used.  Characterization is honorable, general (under honorable conditions), or uncharacterized (entry level separation), if the notification procedure (paragraph 6303) is used.  Refer to paragraph 6210.2, 6210.3, 6210.6, and 6214 to determine the applicability of paragraphs 6303 and 6304.

*10.  Driving Under the Influence

*a.  A Marine may be processed for separation for driving under the influence following a substantiated incident.

*b.  An incident is considered substantiated when there has been a court martial conviction, nonjudicial punishment, a civilian conviction, or an administrative separation board convening authority determines based on a preponderance of the evidence that the member has engaged in the act of driving under the influence.

*c.  The basis for separation shall be under paragraph 6210.3 (pattern of misconduct); 6210.6 (commission of a serious offense); 6210.7 (civilian conviction); or 6214 (separation in the best interest of the service).  Note, however, that paragraph 6210.3 may not be used unless the Marine has been previously counseled concerning misconduct per paragraph 6105.

*d.  The least favorable characterization is under other than honorable conditions, if an administrative board procedure (paragraph 6304) is used.  Characterization is honorable, general (under honorable conditions), or uncharacterized (entry level separation), if the notification procedure (paragraph 6303) is used.  Refer to paragraphs 6210.3, 6210.6, 6210.7, and 6214 to determine the applicability of paragraphs 6303 and 6304.

*e.  Processing for separation for driving under the influence is mandatory following the second substantiated incident.  For the purposes of mandatory processing under this paragraph, a second substantiated incident is defined as a conviction at court-martial for operating a vehicle impaired or with a blood alcohol concentration that exceeds the limit proscribed in Article 111, UCMJ, a civilian conviction for driving under the influence that is substantially equivalent to a violation of Article 111, or nonjudicial punishment for driving under the influence in violation of Article 111.  The first substantiated incident necessary to trigger mandatory processing must have occurred during the Marine's current enlistment and the Marine's service record book must indicate that the Marine was counseled concerning the earlier substantiated incident per paragraph 6105.  Preserve misconduct shall not be considered for determining whether mandatory processing is required

6211.  NEW ENTRANT DRUG AND ALCOHOL TESTING

1.  The enlistment of any person determined to have been dependent on drugs or alcohol at the time of such enlistment shall be voided, and the member shall normally be given an uncharacterized separation.  The following guidelines apply:

    a.  The basis of separation for members found dependent on drugs or alcohol at the time of enlistment shall be a void enlistment (10 U.S.C. 978).

    b.  Dependency will be determined by a medical officer using appropriate medical/psychiatric criteria.

    c.  Prepare a DD Form 214 for all individuals separated under this paragraph per section 2 of chapter 1 with the following exceptions:

        (1) Enter zeros in all blocks of item 12 for non-prior service individuals.  For individuals with prior service, enter zero in blocks a, b, c, and i and complete the remaining portion as appropriate.

        (2) Enter "VOID ENLISTMENT" in blocks 23 and 24.

        (3) Enter "10 U.S.C. 978" in block 25.

        (4) Assign separation code, JFU1.

        (5) Assign reenlistment code, RE-3C.

    d.  A person whose enlistment is voided due to alcohol or drug dependency shall be referred to a civilian treatment facility.

    e.  This paragraph also applies to officer candidates undergoing initial training in an enlisted status.

2.  Members who test positive, but are not found dependent, for drugs or alcohol during an initial entry drug or alcohol test shall be processed for separation per the appropriate provision of paragraph 6204 (defective enlistment and induction).  Commanding officers are not precluded in appropriate cases from taking disciplinary action against a member or processing a member for discharge, with or without a characterization, under an alternative basis for separation.

000527

MARINE CORPS SEPARATION AND RETIREMENT MANUAL

CHAPTER 6

ENLISTED ADMINISTRATIVE SEPARATIONS

SECTION 3:  ADMINISTRATIVE PROCEDURES

PART C:  ADMINISTRATIVE SEPARATION BOARD.  See Appendix L, Involuntary Administrative Discharge Outline and Checklist.

6314.  CONVENING AUTHORITIES.  An administrative separation board as required by this chapter shall be convened in writing by any commander having special court-martial convening authority, or by any other commanding officer or officer in charge when specifically authorized to do so by a superior authority who is a Marine commander having general court-martial jurisdiction. When a board is convened under delegated authority, the order appointing the board will contain specific reference to the source of such delegated authority.  Additionally, authority to convene administrative separation boards is specifically delegated to those units delineated in figure 6-1 provided they exercise special court-martial convening authority.  Not all convening authorities are separation authorities.  See paragraph 6307 for the definition of a separation authority.

6315.  COMPOSITION

1.  Members

    a.  The convening authority shall appoint to the administrative board at least three commissioned/warrant or staff noncommissioned officers of the Armed Forces of the United States of America (or Reserve components thereof). Enlisted personnel appointed to the board shall be in the pay grade of E-7 or above and be senior to the respondent.  At least one member of the board will be in the pay grade of O-4 or above and a majority shall be commissioned or warrant officers.  When the respondent is an active duty member, the senior member must be on the active duty list of the service.  When no active duty-list officer is reasonably available, the convening authority may substitute a Reserve officer designated for duty in the Active Reserve (AR) Program who has served on continuous active duty for more than 12 months immediately before appointment to the board.

    b.  If the respondent is an enlisted member of a Reserve component or holds an appointment as a Reserve commissioned or warrant officer, the board shall include at least one Reserve commissioned officer as a voting member. Voting members shall be senior to the respondent's Reserve grade.  If the respondent is a member of a Reserve component and an other than honorable discharge is authorized by this Manual, all board members shall be commissioned officers.  Characterization may be under other than honorable conditions if the member consents to or waives administrative discharge proceedings or a court-martial or a board.

    c.  The convening authority shall ensure that the opportunity to serve on administrative boards is given to women and minorities.  The mere appointment or failure to appoint a member of such a group to the board, however, does not provide a basis for challenging the proceeding.

    d.  Unless at least three voting members of the board are present, no business other than declaring a recess or adjournment shall be transacted by

000528

the board.  If a voting member will be absent for more than a short period of time and the member's absence reduces the voting membership present to fewer than three members, the convening authority will be advised and will appoint (an) additional member(s) to ensure that at least three voting members of the board are present during the conduct of all business by the board.

e.  The board, in the absence of a voting member, may proceed if at least three voting members are present and the senior member present is a major or higher.  Where a new member of the board has been appointed (i.e., following a successful challenge against a former member), or where a member of the board who has been temporarily absent returns, that part of the proceedings conducted may be orally summarized in open session by the recorder, or the summarized record of that part of the proceedings conducted in absence shall be examined by that member and that examination noted in the record.  The appointment of a new member, or the temporary absence of a member, does not preclude that member's full participation in the deliberations of the board relating to its findings of fact, opinions, and recommendations.

f.  Attendance at the proceedings of an administrative separation board becomes the primary duty of a member.  No member shall fail to attend at the appointed time unless prevented by illness, ordered away, or excused by the convening authority.

g.  If any of the above prescribed mandatory requirements for the composition of a board cannot be met in a particular case from the officer personnel locally available, the convening authority will notify the CMC (MMSR-3) and request appropriate instructions.  Locally includes officers from higher headquarters in the chain of command of the convening authority and units of other services geographically co-located with the convening authority.  Convening authorities should consult their command staff judge advocate before notifying the CMC (MMSR-3).

h.  The convening authority may delegate the power to excuse members before the convening of the board's initial session to the cognizant staff judge advocate, legal services support section officer in charge, or law center director.  The convening authority's delegate may not excuse more than one-third of the total number appointed.

2.  <u>Presiding Officer</u>

a.  The senior member of the board in the grade of major or higher shall serve as president and shall preserve order and decide upon matters relating to the routine business of the board.  (Members frocked to pay grade of 0-4 <u>cannot</u> serve as president of administrative separation boards.)  The president may grant a continuance, recess, and adjourn the board to meet at a time and a place most convenient and proper.  The president shall preside and rule finally on all matters of procedure and evidence, but the rulings of the president may be overruled by a majority of the board.  If appointed, the legal adviser shall rule finally on all matters of procedure, evidence, and challenges, except challenges to the legal advisor.  The president's rulings are subject to objection by any voting member of the board.  Should a voting member object to the president's ruling on any matter, a vote shall be taken in closed session and the question shall be decided by a majority vote.

b.  Motions or objections pertaining to any matter other than to continuances, recesses, or adjournments do not require ruling by the president of the board.  Such motions or objections should be heard and merely noted in the record for resolution by the separation authority.

*3.  Recorder.  A non-voting recorder will be appointed by the convening authority to each administrative separation board.  An assistant recorder may be appointed.  The convening authority may delegate the authority to appoint the nonvoting recorder or assistant recorder to the cognizant staff judge advocate, legal services support section officer in charge, or law center director.  A recorder or assistant recorder may be changed at any time by the convening authority or their delegate.  The assistant recorder, at the direction of the recorder, may perform any duty or function which the recorder is required or empowered to perform.  The recorder's primary responsibility is to exploit all practical sources of information and to bring out all the facts in a manner to permit the board to make fully informed findings and recommendations concerning the respondent.  The recorder and assistant recorder should be experienced officers and shall be warrant or commissioned officers.  Staff non-commissioned officers may be appointed to act as recorders upon approval by the convening authority's cognizant Staff Judge Advocate.  The recorder and/or the assistant recorder may be a lawyer within the meaning of UCMJ, Article 27b(1).  The recorder is responsible for ensuring that the board is presented only such materials and documents which may properly be considered by it.  The recorder is also responsible for ensuring that the board is presented all testimony, materials, and documents which may properly be considered by it, which are necessary to arrive at such findings, opinions, and recommendations, as will permit the discharge authority to make a proper disposition of the case.  The recorder will conduct a preliminary review of all available evidence, screen out improper matter, and obtain such additional evidence as appears necessary.  The recorder will arrange for the time, date, and place of the hearing after consulting with the president of the board and the counsel for the respondent.  The recorder will also arrange for the attendance of all material witnesses authorized to appear at the hearing pursuant to paragraph 6317, except those witnesses whose attendance is arranged by the respondent.  At the hearing, the recorder will conduct the direct examination of all witnesses, except those requested or called by the respondent.  The recorder will not participate in the closed sessions of the board or in the determination of the boards findings, opinions (if any), and recommendations.  Under the direction of the president of the board, the recorder will prepare or cause to be prepared a record of the board's proceedings.  The convening authority of the board may appoint a reporter to provide other clerical assistance for the purpose of assisting the recorder in preparing the record.

4.  Legal Advisor.  At the discretion of the convening authority, a non-voting legal advisor, who is a judge advocate certified in accordance with Article 27b(1), UCMJ, may be appointed to the board.  If appointed, the legal advisor shall rule finally on all matters of procedure, evidence and challenges, except challenges to the legal advisor.  A legal advisor shall not be both junior to and in the same direct chain of command as any voting member of the board.  If the convening authority desires to appoint a legal advisor but does not have a judge advocate readily available, the convening authority should contact the CMC (MMSR-3) for assistance.

6316.  PROCEDURE.  The following rules shall govern the procedures to be employed by an administrative separation board.  Where questions arise as to matters of procedure not covered in this Manual, such questions will be resolved at the discretion of the board or the convening authority.

1.  Rules of Evidence.  An administrative separation board functions as an administrative rather than a judicial body.  Accordingly, in the board's proceedings, the strict rules of evidence governing trials by court-martial

are not applicable.  The admissibility of evidence is a matter within the discretion of the president of the board.  There is a sharp and distinct delineation between the administrative process which has as its purpose the administrative elimination of unsuitable, unfit, or unqualified Marines, and the judicial process, the purpose of which is to establish the guilt or innocence of a member accused of a crime and to administer punishment when appropriate.  No evidence will be rejected from consideration solely on the grounds that it would be inadmissible in court-martial proceedings.  Reasonable restrictions shall be observed, however, concerning relevancy and competency of evidence.  The president of the board has full authority to decline to accept evidence whose probative value is outweighed by the prejudicial effect on the respondent, or which would cause unnecessary embarrassment to a witness or victim involved in the case.  Within the discretion of the president of the board, the respondent or recorder may present the results of a polygraph and testimony or information about the polygraph procedure.  If the results are presented to the board, the respondent or recorder may present evidence to rebut that evidence or to rebut the validity of polygraph evidence in general.

2.  <u>Explanation of Respondent's Rights</u>.  At the onset of the proceedings, the board will ascertain whether or not the respondent has been fully advised of and understands their rights under paragraph 6304.  The assurance of the respondent's counsel in this regard will normally suffice.  If the board is not satisfied that the respondent has been so advised, or the respondent does not fully understand any explanation previously given, the board will clearly explain those rights to the respondent.

3.  <u>Exercise and Waiver of Respondent's Rights</u>.  The respondent will be given a reasonable opportunity to exercise any and all rights before the board.  The failure of the respondent to exercise or invoke any of the specified rights, after having been apprised of the same, will not be considered as a bar to the board proceedings, findings, opinions, and recommendations.  Such rights will be conclusively presumed to be waived.

4.  <u>Eliciting Further Information</u>.  Whenever it appears desirable to the members of the board to elicit or develop additional information for a proper hearing of the matters before the board, the president will advise the recorder and may direct the calling of a witness, pursue further lines of questioning, or direct that other evidence be presented.

5.  <u>Security Matters</u>.  If any matter to be heard by the board requires a security clearance and individual counsel for the respondent or other participants in the board's proceedings have not been granted such clearance, consult the convening authority for further guidance (see OPNAVINST 5510.1 and JAGMAN, section 0144).

6.  <u>Sessions</u>.  The proceedings of the board will be open to the public unless the convening authority directs otherwise.  At the direction of the president of the board, the hearing room may be cleared at any time for deliberations by the board members.  At such times, all persons except voting members will withdraw from the hearing room.

7.  <u>Challenges</u>

    a.  The respondent may challenge any voting member or legal advisor for cause only.  The basis for such challenge is that the challenged person cannot approach the case with impartiality and an open mind.  A challenged person will be given the right to make a statement with respect to the challenge.

000531

The board will not receive a challenge to more than one person at a time. After disclosing the grounds for challenge, the respondent may examine the challenged person as to matters relating to their competency to sit in that particular case. This examination may or may not be under oath or affirmation at the discretion of the respondent. When the respondent desires oath or affirmation the election to swear or affirm resides with the challenged person. The recorder and other members of the board may also examine the challenged person. Other evidence relevant to the challenged person's competency to sit on the board may also be heard.

   b.  The burden of persuasion in establishing a challenge is on the respondent.

   c.  The convening authority shall rule finally on all challenges for cause of legal advisors, when appointed, and of board members when a legal advisor has not been appointed.

   d.  If a challenge is sustained as to any member or legal advisor, such person is excused from further participation in the case.

   e.  If a sustained challenge reduces the number of members below three or leaves the board without a member in the grade of major or higher, the convening authority shall be notified immediately. The board will stand adjourned until the convening authority appoints such additional voting members as required under paragraph 6315.1.

8.  <u>Order of Presenting Evidence</u>

   a.  The testimony of witnesses and the presentation of other evidence will normally be in the following order:

      (1) Witnesses called and evidence presented by the recorder;

      (2) Witnesses called and evidence presented by the respondent;

      (3) Witnesses called and evidence presented by the recorder in rebuttal;

      (4) Witnesses called and evidence presented by the respondent in rebuttal;

      (5) Witnesses called and evidence presented at the request of the board.

   b.  The order of examining each witness is:

      (1)  Direct examination.

      (2)  Cross examination.

      (3)  Redirect examination.

      (4)  Recross examination.

      (5)  Examination by the board.

000532

c.  The foregoing order of presentation and examination of witnesses need not be followed when the board determines that a different order will secure a more effective presentation of evidence.

9.  _Final Arguments_.  The recorder and counsel for the respondent will be permitted to present final argument, if they so desire.  The recorder has the right to make opening final argument and, if argument is made on behalf of the respondent, the closing final argument.

10.  _Burden of Proof_.  The burden of proof before administrative separation boards rests upon the Government.  This burden never shifts.  After the presentation of the Government's case, certain justifiable inferences which are adverse to the respondent may be drawn from the evidence by the board, the convening authority, and the separation authority.  In this latter instance, the burden of going forward with evidence to avoid the adverse effect of these justifiable inferences may then shift to the respondent.

11.  _Standard of Proof_.  The standard of proof is a preponderance of the evidence as to all matters before an administrative separation board.

12.  _Weight and Credibility of Evidence_.  The board will rely upon its own judgment and experience in determining the weight and credibility to be given material or testimony received in evidence.

6317.  _WITNESSES_.  Testimonial evidence may be presented to the administrative board through the personal appearance of the witness, through the use of oral or written depositions, unsworn written statements, affidavits, testimonial stipulations, or any other accurate and reliable means for presenting testimonial evidence.  The testimony of a witness may be excluded if the legal advisor or president of the board determines that its probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

1.  _Attendance_.  Within a reasonable period of time before the date set for the administrative board hearing, the respondent or the respondent's counsel will submit a written request to the convening authority, via the president of the board, for all witnesses requested to testify on behalf of the respondent. Failure to submit a request for witnesses in a timely fashion shall not automatically result in denial of the request, but if it would be necessary to delay the hearing in order to obtain a requested witness, lack of timeliness in submitting the witness request may be considered along with other factors in deciding whether to provide the witness.  If the requested witness is not physically located at the command, the respondent may request TAD or invitational travel orders.  Civilian witnesses whose attendance is required shall be issued invitational travel orders.

a.  If production of a witness will require expenditure of funds by the convening authority, the written request for attendance of the witness shall also contain the following:

(1) A synopsis of the testimony that the witness is expected to give.

(2) An explanation of the relevance of such testimony to the issues of separation or characterization.

(3) An explanation as to why written or recorded testimony would not be sufficient to provide for a fair determination.

000533

b.  The convening authority may authorize expenditure of funds for production of witnesses only if the president (after consultation with a judge advocate) or the legal advisor (if appointed) determines that:

(1) The testimony of a witness is not cumulative;

(2) The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization;

(3) Written or recorded testimony will not accomplish adequately the same objectives;

(4) The need for live testimony is substantial, material, and necessary for proper disposition of the case; and

(5) The significance of the personal appearance of the witness, when balanced against the practical difficulties in producing the witness, favors production of the witness.  Factors to be considered in relation to the balancing test include, but are not limited to, the cost of producing the witness, the timing of the request for production of the witness, the potential delay in the proceedings that may be caused by producing the witness, or the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

c.  If the convening authority determines that the personal testimony of a witness is required, the hearing will be postponed or continued if necessary to permit the attendance of the witness.

d.  The hearing shall be continued or postponed to provide the respondent with a reasonable opportunity to obtain a written statement from the witness if a witness requested by the respondent is unavailable in the following circumstances:

(1) When the president determines that the testimony of the witness is not required;

(2) When the commanding officer of a military witness determines that the military necessity precludes the witness' attendance at the hearing; or

(3) When a civilian witness declines to attend the hearing.

e.  Any expense incident to the appearance of material witnesses on active duty with any of the Armed Forces before an administrative separation board will be charged to the operation and maintenance allotment of the convening authority of the board.

f.  Paragraph 6317.1d(3) does not authorize a Federal employee to decline to appear as a witness if directed to do so in accordance with applicable procedures of the employing agency.

2.  _Testimony_.  The respondent, the respondent's counsel, and the recorder shall be afforded a reasonable opportunity to interview a witness before calling the witness to testify before the administrative board.

a.  The testimony of all witnesses appearing in person before the board, at the discretion of the president may be taken under oath or affirmation, except that the respondent may make an unsworn statement.  A respondent's unsworn statement may include matters concerning the acts or omissions which

000534

form the basis for discharge, matters in extenuation or mitigation, or any other relevant matter.  The respondent may not be cross-examined on such an unsworn statement.  Evidence may be introduced by the recorder to rebut any statements of fact contained in it.  The respondent's unsworn statement may be oral, in writing, or both and may be made by the respondent or the counsel, or by both of them.  The respondent's statement should be factual and not argumentative in nature.

    b.  No witness, including the respondent, appearing before the board shall be compelled to incriminate themselves or to answer any questions the answer to which may tend to incriminate them.  Nor shall they be compelled to make any statement or produce evidence if the statement or evidence is not material to any matter under investigation and may tend to degrade them.  Other than the respondent, any person, may be called as a witness before the board, whether or not they request to be a witness.  If a witness, including the respondent, is accused of, suspected of, or charged with an offense under the UCMJ, the president shall inform the witness of the nature of the offense and the service member's Article 31, UCMJ, rights.  If the witness is not subject to the UCMJ, the witness should be provided an appropriate, lawful advisement of rights.  If a witness exercises the right to refrain from testifying regarding matters related to an offense of which they are accused, suspected, or charged, the witness may be questioned on other matters.  The question of whether a witness is suspected of an offense is one for decision by the board and will depend upon the nature of the matter being considered by the board, the reasonable probability that an offense has been committed, and the reasonable probability that the witness committed the offense.  The board shall resolve all reasonable doubt in favor of the witness.  Each witness appearing before the board should be advised of the subject matter of the administrative separation board.

    c.  Unless otherwise authorized by the president, all witnesses, other than the respondent, shall be excluded from the room where the board is meeting except when they are testifying.

    d.  The president, may direct witnesses not to discuss their testimony with other witnesses or persons who have no official interest in the matter until the board's proceedings are completed.  This warning is given to ensure that the matters before the board can be fairly heard and to eliminate the possibility that disclosures of the substance of the witness' testimony may influence the testimony of a witness still to be heard.

6318.  OATHS.  The oath or affirmation to be given pursuant to this chapter will be under JAG Manual, section 0212, and will be administered by the recorder.

6319.  FINDINGS AND RECOMMENDATIONS

1.  The board shall determine its findings and recommendations in closed session.  Only voting members of the board shall be present.  All findings and recommendations shall be determined by a majority of the voting board members. A tie vote shall be resolved in favor of the position more favorable to the respondent.  All voting members shall sign the appropriate board report, majority or minority.

2.  The board shall determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence.

3.   If the board finds that one or more of the allegations are supported by the evidence, it shall then determine whether the findings warrant separation for the reason(s) stated in the notice.  If more than one reason was stated in the notice, there shall be a separate determination for each reason.

4.   <u>Findings</u>.  The board shall state:

   a.  The specific evidence it considered relating to each act, omission, or circumstance alleged in the notice;

   b.  Its determination for each alleged act, omission, or circumstance, that the preponderance of evidence does or does not support that act, omission, or circumstance;

   c.  The specific reason for separation defined in the notification letter and chapter 6 of this Manual to which each act, omission, or circumstance supported by a preponderance of the evidence applies.

5.   The board shall make recommendations on the following:

   a.  <u>Retention or Separation</u>.  The board shall recommend retention or separation.

   b.  <u>Suspension of Separation</u>.  If the board recommends separation, it may recommend that the separation be suspended under paragraph 6310.

   c.  <u>Characterization of Service or Description of Separation</u>.  If separation or suspended separation is recommended, the board shall recommend a characterization of service or description of separation as authorized per paragraph 6107.

   d.  <u>Transfer to the Individual Ready Reserve</u>.  The board shall make a recommendation as to whether the respondent should be retained in the IRR as a mobilization asset to fulfill the respondent's total service obligation except when the board has recommended separation on the basis of homosexual conduct, misconduct, drug trafficking, defective enlistment or induction, when there are medical reasons why the respondent would not be available to meet mobilization requirements, or where the board has recommended characterization of service under other than honorable conditions.  In making a recommendation for retention in the IRR, the board should consider how the respondent's performance, training, and availability affects the respondent's potential for useful service under conditions of full mobilization.  The option of transfer to the IRR applies to cases involving separation from active duty or from the Selected Marine Corps Reserve.

6.   <u>Minority Report</u>.  If a member does not concur in the findings, opinions, or recommendations of the majority of the board, the member shall prepare a minority report stating explicitly the reason(s) for disagreeing with the majority report.  The minority report may also include additional findings of fact, opinions, and recommendations.  All members concurring in the minority report shall sign the report.

6320.  <u>RECORD OF PROCEEDINGS AND REPORT OF THE BOARD</u>.  In cases where the board recommends separation, the record of the proceedings shall normally be kept in summarized form unless a verbatim record is required by the separation authority or authorized by the convening authority.  In cases where the board recommends retention, a record of the proceedings is optional unless required

000536

# GE-27

**CORPS**
# Marine Times

A GANNETT COMPANY

March 2012

...red your middle **OFFduty 6**

...ilian jobs for grunts *Teaching you the skills you need* **21**

...w rules for rifle quals   You better have the proper gear **3**

# ANTI-OBAMA MARINES

...isy NCOs who defy the
...ain of command
...— and why the brass
...n't stopping them



**NOBAMA**

TH
DR

BASE
BY B
THE
GETT

NEW
6-MO
JAPAN
TOURS
HAWA
FIRST

DEADI
A SUP
DOOM

BACK


1


USAA
now what it means to serve

**You don't just buy auto insurance this good. You earn it.**
Begin your legacy. Get a quote.
usaa.com/insurance | 800-531-3550

© 2011 USAA. 124685-0311

000538
248




**YourCorps**

# Social insubordination?

## Some Marines are speaking out against the president — and may be undermining the chain of command

By Gina Harkins
gharkins@militarytimes.com

Marines aren't supposed to question their president and their commander in chief. And he might not like what they're saying.

Or maybe it's just auto-corrected to only "single" regular.

The most nonpolitically outspoken, is Sgt. Gary Stein, who has been warning of on Facebook and in the media about his fellow in the about his commander in chief and about President Obama — even implying that he would refuse to follow certain orders issued by his free commander in chief.

Stein runs a Facebook page called Armed Forces Tea Party, which lives and dies by its disdain for Obama, and its online community of nearly 17,000 likeminded Obama critics. His page bristles with commands such as Obama from this year's Valentine's Day message to the president: "Stein's Vote Marine Corps record: Military Times survey of active-duty, service members still questions for Commandant Gen. Jim Amos about the impact

And then there's the "unfunny" movie poster, altered to show the president wearing 3-D glasses he'd refuse orders from the commander in chief, suggesting movie texts calling him "Nuclear Number One."

Stein, a weather forecaster with Weapons and Field Training Battalion at Camp Pendleton, Calif., which supported 1st Marine Logistics Group at Marine Corps Recruit Depot San Diego, posts inside the disciplinary conversation that could be discriminating.

"But it can certainly impede upon a troop's awareness of the chain of command," he said. "It would snap you to attention pretty quickly if you read his posts."

The he says, Stein is incidental. "He has led the president Pub lished in several March, these posts look page, they seem to think they cannot it all over their page, their comment. They were in active.

On March 1, after word surfaced that Stein's comments, suggesting 25 percent, down from in 2008, Obama's first year on the job. And rank-and-file Marines are bearing that voice weakness in the president. Stein has taken. no further talk on the job than, they noticed in the past.

Social media sites such as Facebook make it easy for Marines book image it easy for Marines to vent, but it automatically, in spite of regulations governing what can and can't be said online, many feel empowered to blast away, posting negative or derisive comments on Facebook that transport the web, often alongside their full name and photograph.

"When using social media, people tend to get that primal feeling," said former Sgt. Benjamin Reynolds, whose last day in active duty.

commands like Stein's have on the chain of command and the challenges they create with social media usage, but they were not answered by press time. His spokesman, however, Lt. Col. 

"With regard to Sgt. Stein, Commandant expects all Marines to obey all applicable orders on this issue, adhere to the policy in 1344.10 and the Uniform Code of Military Justice, as well as their Oath of Enlistment."

Defense Department Directive 1344.10 makes clear that many political activities are allowed, but others are not, such as the Oath of Enlistment, in which Marines swear to do is "obey the orders of the President of the United States and the orders of the officers appointed over me."

Additionally, the Marine Corps has a Facebook handbook and guidelines for social media use on each of its plat forms, with 1,000-plus content online. But Publishing content online and in a combat environment, said handbooks and training don't always get through.

### What's to hate

For starters, he's driven many key changes that are not popular with many Marines. The biggest offenses, they say, include.



000540

# MarineTimes

**Managing Editor** Andrew deGrandpré
adegrandpre@militarytimes.com
**News Editor** Tony Lombardo
tlombardo@militarytimes.com
**Deputy News Editor** Gina Harkins
gharkins@militarytimes.com
**Bureau Chief** Gidget Fuentes
San Diego bureau: gfuentes@militarytimes.com
**Senior Writer** Gina Cavallaro
gcavallaro@militarytimes.com
**Senior Writer** Dan Lamothe
dlamothe@militarytimes.com
**Staff Writer** James K. Sanborn
jsanborn@militarytimes.com

**Times News Service, OFFduty
& EDGE Magazine**
**Managing Editor** Chuck Vinch
cvinch@militarytimes.com
**Assistant Managing Editor,
EDGE Magazine/OFFduty** Amanda Miller
agmiller@militarytimes.com
**News Editor, EDGE Magazine/OFFduty**
Cathy Walker
cwalker@militarytimes.com
**Congressional Editor** Rick Maze
rmaze@militarytimes.com
**Database Editor/Reporter** Cid Standifer
cstandifer@militarytimes.com
**Pentagon Bureau Chief** Andrew Tilghman
atilghman@militarytimes.com
**Senior Writer** Jon Anderson
jona@militarytimes.com
**Senior Writer** Karen Jowers
kjowers@militarytimes.com
**Senior Writer** Patricia Kime
pkime@militarytimes.com

**Copy Chief** Karen Small
**Deputy Copy Chiefs** Kevin Kaley,
Andy Charest, Dan Ennis, Kevin Lilley
**Design Editors** Rachel Barth, Sara Davidson
**Copy Editors/Designers** Clara Fletcher,
Chris Gaudet, Barbara Greiling,
Betsy Hathaway, Jaime Ryan
**Online** militaryonline@militarytimes.com
**Web Desk Chief** Phillip Creed
**Web Editors** Sean Smyth, Steve Weigand,
Megan Wiegand

**Managing Editor/Interactive & Visual**
M. Scott Mahaskey
smahaskey@militarytimes.com
**Assistant Managing Editor/
Interactive & Visual** Angy Peterson
**Senior Designers** John Bretschneider, John Harman
**Senior Photo Editor** Alan Lessig
**Photo Editor** Mike Morones
**Senior Photographers** Rob Curtis,
James J. Lee
**Photographer** Tom Brown
**Senior Video Journalist** Colin Kelly
**Senior Web Producer** Chris Kelly
**Web Producer** Blair Tomlinson

**Newsroom** (703) 750-8636
**News research** newsresearch@militarytimes.com
(800) 368-5718

## GANNETT
### Government Media

**Publisher and:** Army Times, Navy Times, Air Force Times, Marine Corps
Times, Defense News, Federal Times, Armed Forces Journal,
C4ISR Journal, Training & Simulation Journal and Military Times EDGE

**President, CEO** G.E. Howard
**Editor in Chief** Tobias Naegele
**Senior Managing Editor/News** Alex Neill
**Vice President/Advertising** Ed Villescas
**Vice President/Audience
Development** Donna Peterson

Marine Corps Times (ISSN 1522-0869) is published or change an address,
write Marine Corps Times, Attn: Subscriber Service Department, 6883 Com-
mercial Drive, Springfield, VA 22159-0230. Periodicals Contents copyright ©
The Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA 01923,
is licensed to authorize photocopying of any article herein. Fee is $3.50 per
copy per article, flurted to 500 copies. Order online at www.copyright.com
copying ISSN 1522-0869. For custom article reprints, e-prints, posters,
plaques & permissions please contact: PARS International Corp, (212) 221-
9595 x431 or visit www.parsintlreprints.com. Advertising standards: Advertising
is accepted on the premise that the merchandise and services are accurately
described. Ads that contain fraudulent, deceptive or misleading statements or
illustrations, or in the opinion of Marine Corps Times may be offensive, are
not knowingly accepted. If you encounter noncompliance, please tell us.
Marine Corps Times: Mailed from: Army Times, Navy Times, Air Force Times,
10940 Wilshire Blvd., Suite 800, Los Angeles, CA 90024, (310) 444-2136.
Fax (310) 893-1171. Springfield, Va: 6883 Commercial Drive, Springfield, VA
22159. (703) 750-8910. Fax: (703) 658-8410. Toll free: (800) 424-9335.
Classified: (703) 750-8600.

# OpeningSho

### YOUR VIEWS AND OUR VIEWS

## [EDITORIALS]

# Obama is still the boss

Sgt. Gary Stein doesn't like his boss. Not his commanding officer. His commander in chief.

He's not alone, either, as a new Military Times survey of active-duty troops and reservists attests. Of the 800 polled, more than half gave President Obama a thumbs-down. The thing about Stein, though, is that his unapologetic rants about the president come danger-close to violating military policy on political activity and what troops can and can't say about their superiors.

He blasts Obama for mis-handling the economy and com-pelling employers to cover contra-ception as part of their health insurance plans. He's called the president a "jackass" and described him as "the Domestic Enemy."

Yet compared to many other comments made online by Marines and fellow service mem-bers, these criticisms are merely tepid. Many are far more vulgar.

The continued rise of Facebook — where Stein's Armed Forces Tea Party group has nearly 17,000 like-minded followers — and other social networking sites allows for easy airing of derisive comments, often with the Marine's name and photo attached.

So long as they're not broadcast-ing their political views in uniform or on behalf of the institution, Marines are free to express them-selves. But Stein, in saying he would refuse certain orders from the president, has gone a step too far.

Some Marines want the Corps to crush this guy and make an example of him, lest others imi-tate his behavior. Stein was read his rights, but there's no investi-gation and he has not been charged with breaking the rules.

The right to free speech is, with-out a doubt, among our most cherished civil liberties as Ameri-cans. Few appreciate its value and meaning more than the men and women who've fought to defend this and other freedoms afforded by the Constitution.

But the Constitution also calls for civilian control of the military, rightly subordinating the mili-tary to the chief executive. Marines have every right to believe what they want to believe. But public criticism of the president and refusing to obey lawful orders is, by defini-tion, insubordination.

Such Marines not only violate the law, they fail to live up to the Corps' most basic ethos: *Semper fidelis*, or always faithful.

# Homeowner help lacking

The Justice Department did a great thing in reaching a deal with five of the nation's largest lenders to give sweeping new assistance to thousands of mili-tary homeowners squeezed in the housing market downturn.

The broad outline of the Feb. 9 deal says that for qualifying troops, banks will accept whatev-er their homes sell for.

Bottom line: Banks agree to forgo collecting the difference between the amount owed on a mortgage and a home's sale price.

Justice officials were justifiably proud of the deal and crowed about going to bat for the troops in news releases. In the weeks since, however, the department's follow-through has left much to

program, and even how to apply, remain unclear. Justice issued a number for a telephone "help line" for troops, but it's merely a lengthy options menu that ends with callers simply being told to leave a message.

And even that option is aimed more at another segment of troops with questions about wrongful foreclosures.

The banks themselves took weeks to provide contact numbers. And there are still unresolved issues that may hinder the ability of some troops to use this benefit.

Having reached this landmark settlement, Justice now has a responsibility and obligation to nail down the details.

The financial well-being of

## [LETTERS]





A reader says if the Cor
training warriors, it will

## CLEAN-CUT AND F

In reference to Sg
Rogers' letter
Marines," March 5]:
I could not have
myself. The Marine
sergeants who car
the well-being of the
and the Marines 
them, and less abou
reports, billet acc
and other trivial ma

It seems the Corps
developing a new, sl
cut appearance to th
has forgotten about
appearance of bein
warriors our nation

If we place emp
being sharp and n
forget about being 
feared, we become
than Boy Scouts.

S
Ja

## KISS WENT TOO F

00054 1

was troubled