UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEANT GARY A. STEIN, United States Marine Corps, Camp Pendleton, California 92055;<br><br>    Plaintiff,<br>v.<br><br>COLONEL C. S. DOWLING, Commander, Weapons and Field Training Battalion, Camp Pendleton, California 92055, RAY MAYBUS, SECRETARY OF THE NAVY, The Pentagon, Washington, D.C.; UNITED STATES OF AMERICA; and BRIGADIER GENERAL DANIEL YOO,<br><br>    Defendants. | Civil No. 12-CV-0816-H (BGS)<br><br>DECLARATION OF<br>1ST LIEUTENANT SPENCER<br>GWARTNEY, USMC |

I, 1st Lieutenant Spencer Gwartney, United States Marine Corps, hereby declare under penalty of perjury as follows:

1. I am currently assigned as Trial Counsel, Military Justice Section, Office of the Staff Judge Advocate, Marine Corps Recruit Depot (MCRD) San Diego. I served as the assistant recorder at the 5 April 2012 administrative separation hearing for Sergeant Gary A. Stein, United States Marine Corps.

2. Captain John Torresala is the Military Justice Officer at MCRD San Diego and is my direct supervisor. Captain Torresala served as the recorder at Sergeant Stein's administrative separation hearing.

3. At the hearing, Captain Torresala and I gave binders to each member of the board and Sergeant Stein's defense team containing printouts of all government exhibits. The vast majority of these exhibits were given to Captain Nicholas Grey, Sergeant Stein's detailed

defense counsel, on 23 March 2012, including a CD-ROM containing the Facebook postings that constitute the bulk of the printed material. On 27 March 2012, Captain Torresala provided additional materials to Captain Grey (to include the recently-obtained SF-86 and recent media interviews Sergeant Stein had given since the original discovery was transmitted). To the best of my knowledge, the only items presented to the defense for the first time at the board were Government Exhibits 22 (Chief Warrant Officer Mills's personnel records), 23 (private messages between Chief Warrant Officer Burns and Sergeant Stein concerning Sergeant Stein's 1 March 2012 posting on the METOC Facebook page), 24 (President Obama reelection campaign announcement), and 29 (Commandant of the Marine Corps white letter on accountability). That said, each of those exhibits was either publicly accessible or previously known and accessible to Sergeant Stein. By contrast, the defense did not disclose any documentary exhibits to the Government until the day of the hearing.

4. Sergeant Stein's legal team hired a civilian court reporter to attend the administrative separation hearing. When she arrived, she was given a seat next to the detailed military court reporter and treated equally. My recollection is that after Captain James Baehr, Sergeant Stein's individual military counsel, began his voir dire of the board members at approximately 0920, the civilian court reporter raised her hand several times and expressed some difficulty at the speed of his delivery and the military jargon that was being provided in response to his questions. The board recessed at 0947, at which time the civilian court reporter excused herself apologetically, saying that she could not effectively transcribe the proceedings. Defense counsel made no statements on the record complaining about that fact and the board continued.

5. In response to defense questions during voir dire, several members of the board expressed their opinions as to the rights Marines enjoy under the First Amendment and Department of Defense Directive 1344.10. Captain Torresala objected to that line of questions, arguing that Major Houtz was the legal advisor and, pursuant to the separation manual, the final word on all legal questions. Captain Torresala also argued that the defense was deliberately trying to pigeonhole the members of the board, without actually demonstrating any bias or inflexibility, in order to manufacture a basis to challenge them. Captain Torresala's only question on voir dire was whether the members of the board would be able to put aside what they may think they know about laws and regulations and follow the advice of the legal officer. All members of the board responded affirmatively.

6. During the course of the hearing, Captain Torresala and I introduced documentary and testimonial evidence that Sergeant Stein went out of his way to contact the media about his case, long before he was even notified that he would be the subject of an administrative separation hearing. This evidence was relevant to the board's decision whether to separate or retain Sergeant Stein as well as how to characterize his service in the Marine Corps.

7. Captain Torresala referenced Sergeant Stein's federal lawsuit twice during the hearing, but he did not present the lawsuit as evidence of the underlying misconduct that served as the basis for the hearing and he explicitly affirmed that Sergeant Stein had the right to bring the lawsuit. During voir dire, Captain Torresala argued that the defense was deliberately stepping outside of the bounds of permissible voir dire in order to create a record for this Court. In his closing, Captain Torresala referred to the lawsuit to contrast Sergeant Stein's willingness to make these issues public with the measured response of

his command. Captain Torresala's comment in closing was brief, off-the-cuff, and immediately followed by a statement to the effect that Sergeant Stein's lawsuit was within his rights. Sergeant Stein's attorneys themselves referred to the lawsuit on multiple occasions, specifically referencing the Court's request that the Government consider a twenty-four hour continuance as well as this Court's concerns about the injunction issued in *Rigdon v. Perry*. Sergeant Stein's attorneys included this Court's opinion denying the temporary restraining order as one of its exhibits and did not object to the Government's inclusion of the Complaint as Government Exhibit 31.

8. At no point did Captain Torresala state that a Marine is barred from attending any event involving public policy issues.

9. In the afternoon, Captain Baehr informed me that he had been trying to speak with Captain Kaiser, a former officer in charge of Sergeant Stein and a government witness, but that Captain Kaiser was refusing to speak to him. In front of all of Sergeant Stein's attorneys, I told Captain Baehr that Captain Torresala and I had told Captain Kaiser that he was not under any obligation to speak with defense counsel and that it was completely up to him whether he chose to do so. I also told Captain Baehr—again, in front of all of Sergeant Stein's attorneys—that we told Captain Kaiser that it would be a professional courtesy to speak with defense counsel. I then said that we were not trying to block their access to witnesses (using a crude idiom) and repeated that we instructed Captain Kaiser that it would be a professional courtesy to speak with defense counsel.

10. After the Government presented its evidence, Lieutenant Colonel Hairston, the president of the board, instructed the defense to present its evidence. The defense called several

witnesses, including Sergeant Stein's father, childhood pastor, and Marine Corps recruiter, without objection from the Government.

11. When the defense called Brigadier General Brahms, the Government objected. Captain Torresala argued that General Brahms was not a percipient witness and essentially served as a kind of expert legal witness, which would invade the exclusive province of the legal advisor, Major Houtz. To the best of my recollection, defense counsel proffered that General Brahms would testify that Sergeant Stein's conduct was not prejudicial to good order and discipline and opine as to the constitutionality of Department of Defense Directive 1344.10. Lieutenant Colonel Hairston then denied the defense's request to have General Brahms testify, citing the fact that General Brahms was a third party witness without any first-hand knowledge of Sergeant Stein's conduct.

12. The defense also sought to introduce an affidavit purporting to be expert witness testimony by Jeffrey F. Addicott, distinguished professor of law and director of the Center for Terrorism Law at St. Mary's University School of Law in San Antonio, Texas. Lieutenant Colonel Hairston declined to admit the affidavit into evidence on the same basis as his rejection of General Brahms's testimony—that is, that Professor Addicott was not a percipient witness whose legal opinions would invade the exclusive province of the legal advisor to the board.

13. The defense then argued that a similar rationale should be applied to Government Exhibit 28, an article in the Autumn 2007 issue of *Parameters* entitled, "When Soldiers Speak Out: A Survey of Provisions Limiting Freedom of Speech in the Military." Lieutenant Colonel Hairston asked the Government for a proffer as to the article's content and, after

000793

hearing the proffer, decided to exclude Government Exhibit 28 from the evidence for the same reasons.

14. Despite Lieutenant Colonel Hairston's decision not to accept Professor Addicott's affidavit, he accepted into evidence letters from Colonel Roger Milton, USMC (Ret.), Major Rex McTyeire, USA (Ret.), Major Neil R. Ringlee, USMC (Ret.), Sergeant Major Larry Risvold, USMC (Ret.), and David Loy, Legal Director of the San Diego and Imperial Counties chapter of the American Civil Liberties Union.

15. I am not aware of any other Marines whose conduct was seen by Colonel Dowling as comparable to Sergeant Stein's who have escaped punishment or counseling. Colonel Dowling has wide discretion to punish or counsel his Marines.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11 April 2012.

S. GWARTNEY
1st Lieutenant, USMC

000794