GARY G. KREEP (SBN 66482)
NATHANIEL J. OLESON (SBN 276695)
UNITED STATES JUSTICE FOUNDATION
932 "D" Street, Suite 3
Ramona, CA 92065
Tel: (760) 788-6624
Fax: (760) 788-6414
usjf@usjf.net

DAVID LOY (SBN 229235)
ACLU FOUNDATION OF SAN DIEGO &
    IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Tel: (619) 232-2121
Fax: (619) 232-0036
davidloy@aclusandiego.org

NICHOLAS R. GREY (SBN 283780)
P.O. Box 90142
San Diego, CA 92169
Tel: (619) 800-4739
nic@grey-law.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY A. STEIN,<br><br>       Plaintiff,<br><br>       v.<br><br>RAY MABUS, Secretary of the Navy,<br><br>       Defendant. | Case No. 12-cv-0816 H (BGS)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, Gary A. Stein ("STEIN"), through his undersigned counsel, brings this First Amended Complaint against the above-named defendant in his official capacity, alleging as follows:

**INTRODUCTION AND NATURE OF ACTION**

1. This is an action for declaratory and injunctive relief. Gary Stein was unlawfully subjected to an involuntary "other than honorable" discharge from the United States Marine

1  Corps in violation of the First and Fifth Amendments to the United States Constitution. Though
2  the First Amendment may operate differently in the military and civilian contexts, the military
3  must still respect the freedom of speech. STEIN served with honor in the Marine Corps and
4  spoke on matters of public concern in his capacity as a private citizen. Taken in their full context,
5  his statements are protected by the First Amendment to the United States Constitution, as
6  interpreted and applied by both civilian and military courts. Nonetheless, the Marine Corps
7  retaliated against STEIN with an other than honorable discharge because of the content and
8  viewpoint of his political speech. Moreover, the process by which STEIN was involuntarily
9  discharged violated the Due Process Clause of the Fifth Amendment.

## JURISDICTION AND VENUE

11  2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this
12  action arises under the United States Constitution.
13  3. The Court has power to grant declaratory and injunctive relief pursuant to 5 U.S.C.
14  § 702, 28 U.S.C. § 2201, and Federal Rules of Civil Procedure 57 and 65.
15  4. The Court has personal jurisdiction over Defendant.
16  5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e), because Defendant
17  is a federal officer acting in his official capacity and a substantial part of the events giving rise to
18  this action occurred within this district.

## PARTIES

20  6. Gary Stein is a former member of the Armed Forces of the United States. He
21  served for almost ten years in the Marine Corps, beginning September 11, 2002, and attained the
22  rank of Sergeant on May 1, 2008. Over his objection, he was involuntarily subjected to an "other
23  than honorable" (OTH) discharge from the Marine Corps on May 4, 2012. But for the discharge,
24  he would have continued serving in the Marine Corps until his term of service expired on July 28,
25  2012. He had previously requested an extension of his term until June 28, 2013.
26  7. Defendant Ray Mabus ("MABUS") is the Secretary of the Navy. As Secretary of
27  the Navy, MABUS is responsible for and has the authority necessary to conduct all affairs of the
28  Department of the Navy, which includes the Marine Corps. *See* 10 U.S.C. §§ 5013, 5061. He is

1 sued in his official capacity for declaratory and injunctive relief pursuant to 5 U.S.C. § 702.

**FACTS**

8. During the period of 2010-2012, STEIN— through activities unconnected with his duties as a Marine, and on his own personal time — and three other individuals, spoke, wrote, and otherwise communicated with other private citizens in connection with a variety of matters of public concern, including public policy issues. In so doing, STEIN expressed personal opinions on political candidates and issues, but not as a representative of the Armed Forces of the United States. STEIN, and the three other individuals maintained an account on the computer social networking site known as "Facebook" (hereinafter "Facebook page").

9. In April, 2010, STEIN was approached by a representative of Chris Matthews, host of the television program "Hardball," about appearing on that show. He obtained permission from his immediate superior, his Gunnery Sergeant, and made travel plans to so appear. On his way to appear on the television program, he received a telephone call from Headquarters, Marine Corps, in Quantico, Virginia, and he was ordered to return to his base. Subsequently, he was approached by his Chief Warrant Officer concerning his Facebook page, because of the possibility that it could be construed as emanating from military sources, rather than from private sources. STEIN took down his Facebook page while he reviewed the matter. STEIN was urged by a Judge Advocate of the First Marine Expeditionary Force to add a disclaimer to his Facebook page that all statements therein are personal views, not made in an official capacity, and not representing the views of the U. S. Marine Corps, if he was going to leave the page up. STEIN thereafter put his Facebook page back up on the Internet, adding thereon an appropriate disclaimer, consistent with what he had been advised concerning the permissible maintenance of a Facebook page. STEIN was not advised, at that time, or at any subsequent time, to take down the Facebook page, to remove it from the Internet, or to make any further modifications thereto.

10. From November, 2010, to March 1, 2012, STEIN is alleged to have posted on his Facebook page various criticisms of Barack Obama, questions concerning the Obama Administration's policies, and critiques of John McCain, Ron Paul, Newt Gingrich, Rick Santorum, Mitt Romney, and others. However, STEIN did not disobey or advocate disobeying

1   any particular order actually issued by any superior officer. Though some of the language he used
2   in discussing certain hypothetical unlawful orders might have been viewed as intemperate, he
3   subsequently clarified, repeatedly, and publicly, that he was only discussing the settled principle
4   of military law that service members should not follow unlawful orders.

5   11.   During the 17-month period from November, 2010, through March 1, 2012, no
6   attempt was made by any of STEIN's commanding officers, or any other Marine Corps officer, to
7   restrict or correct STEIN's Facebook activities, including his comments about Barack Obama as a
8   candidate for reelection, nor was there any effort by any defendant, or person serving any
9   defendant, to modify or change the Facebook content, or to counsel or discuss said content in
10  relation to STEIN's duties as a member of the Marine Corps, or otherwise to advise STEIN that
11  his Facebook activities in any way prejudiced the good order and discipline of the Marine Corps.

12  12.   Instead, on March 21, 2012, STEIN was notified by his Commanding Officer,
13  Colonel Dowling, of the institution of Administrative Separation (AdSep) Proceedings, whereby
14  Dowling was recommending STEIN's discharge from the U.S. Marine Corps, because of alleged
15  misconduct, as set forth in a Notification of Administrative Separation Proceedings dated 21
16  March 2012 [hereinafter "Notification"], a true and correct copy of which is attached hereto as
17  Exhibit A, and made a part hereof.  As grounds for discharge, the Notification alleged only:

> The bases for this recommendation are as follows: (1) that on or about 1 March 2012, you allegedly made statements regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ; (2) from on or about November 2010 to the present you allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DOD Directive 1344.10.

22  13.   According to the Notification, Dowling intended to recommend that STEIN
23  receive a separation from service characterization of "Other Than Honorable Conditions"
24  ("OTH"). An OTH characterization is the worst possible mark on a service member's record that
25  can be imposed without the convening of a Court Martial Board. Moreover, it is the legal
26  equivalent to the stigma of a Bad Conduct Discharge, imposed in a sentence of a Court Martial,
27  and divests the separated service member of significant veterans' benefits for his lifetime.
28  Further, such a characterization could follow STEIN for the rest of his life, and impact his future

ability to earn a livelihood.

14. The Notification required STEIN to respond — in default of which his rights would be "waived" — within two working days, the absolute minimum time required by Section 6304.4 of the Marine Corps Separation and Retirement Manual ("MARCORSEPMAN"), a true and correct copy of which is attached hereto as Exhibit B, and made a part hereof. The Notification was served on STEIN during a period that the responsible officials knew that all Judge Advocates General serving as defense counsel at STEIN's base were involved in annual legal training, and were, therefore, unavailable to consult with him before his response was required to be filed.

15. STEIN responded timely to the Notification, and the responsible officials immediately scheduled an AdSep hearing for March 30, 2012 — just nine days after the Notification, a true and correct copy of which is attached hereto as Exhibit C, and made a part hereof. The responsible officials were aware that any members of the Judge Advocates able to serve as defense counsel were at a conference and could not begin work on STEIN's case until March 23, 2012, at the earliest.

16. On March 23, 2012, STEIN's military attorney notified the hearing officer that he had a scheduling conflict on Friday, March 30, 2012. In response, by letter dated March 26, 2012, the hearing was delayed one day, until Saturday, March 31, 2012. On March 25, 2012, Plaintiff requested an additional one week in order to allow more adequate preparation for the hearing, but that request was summarily denied on March 26, 2012.

17. On March 26, 2012, STEIN retained as civilian counsel J. Mark Brewer, one of plaintiff's undersigned counsel, pursuant to MARCORSEPMAN, Section 6304.3(c). On March 27, 2012, STEIN's civilian counsel again requested an extension of the hearing date for 10 days. On March 28, 2012, that request was denied but the hearing date was adjourned to April 5, 2012. True and correct copies of the request and response are attached hereto as Exhibit D, and made a part hereof.

18. On March 30, 2012, STEIN's JAG attorney submitted a Request for Legal Ethics Opinion, a true and correct copy of which is attached hereto as Exhibit E, and made a part hereof,

which sought a response to three questions relevant and necessary to the conduct and outcome of the Notification hearing:

"1. Has the Defense Department's Directive Number 1344.10 and other interpretative documents been modified to fully comply with the Order ... in *Rigdon v. Perry*, 963 F. Supp. 150, 164 (D.D.C. 1997)....

"2. May an active duty, non-commissioned, U.S. Marine maintaining a Facebook web page bearing a clear disclaimer that all statements are personal views, not made in an official capacity and not representing the views of the Marine Corps, make statements thereon supporting or opposing either (i) a political party or (ii) a candidate for federal, state or local office or (iii) both?

"3. May such a Marine make statements critical of a candidate for political office when that candidate is also currently serving in office? Does a separate rule apply to criticisms of a candidate for political office serving as President of the United States?"

19. The Request for a Legal Ethics Opinion was orally denied on March 30, 2012.

20. STEIN and newly-retained civilian co-counsel had insufficient time to prepare for the AdSep hearing.

21. STEIN's repeated request for a 10-day extension of the date for a hearing on the Notification was reasonable and necessary, such an extension constituting the minimum amount of time necessary for his legal counsel to consult with STEIN, interview witnesses, review documents and Internet pages, gather and prepare hearing exhibits, and assist in STEIN's preparation to testify and present an adequate defense at the AdSep hearing, which raised significant Constitutional issues far more complex than normally presented at a typical discharge hearing.

22. Although DOD Directive 1344.10 paragraph 5.2 requires MABUS to issue implementing instructions, to determine the manner in which the DOD Directive will be applied to the Navy and Marine Corps, no such instructions were issued.

23. Although MARCORSEPMAN requires counseling of a Marine prior to proceeding to an Administrative Separation Board, no such counseling occurred (see Exhibit B).

24. On April 3, 2012, Plaintiff filed this action and sought a temporary restraining order to halt the discharge proceedings and prevent the AdSep hearing from occurring, on the grounds that they would violate his constitutional rights to due process and freedom of speech. This Court denied the temporary restraining order on April 4, 2012.

25. With counsel, Plaintiff appeared at the AdSep hearing on April 5, 2012. A transcript of the AdSep hearing has been filed with this Court (Doc. No. 26) and is incorporated herein by reference.

26. On the day of the hearing, STEIN's military legal team was served with approximately 1-1/2" of documentary evidence that the prosecution was submitting to the administrative separation board (AdSep Board) for consideration. STEIN's legal team had never seen most of the documents before, and, as a result, counsel requested a continuance to review the newly-submitted evidence and prepare responses to it. The AdSep Board denied the request and forced counsel to proceed without having reviewed the new documents prior to the hearing.

27. At the hearing, the purportedly neutral legal advisor to the AdSep Board acted in effect as a part of the prosecutorial legal team. Instead of answering the questions of the non-attorney members of the AdSep Board regarding legal advice, he effectively took over the power of the senior member, deciding objections to, and attempting to block voir dire of, both himself and of the Board, contrary to the normal procedures of an AdSep hearing. The legal advisor also refused to answer certain questions on the grounds that, "We're not going to sit here and build up a record for federal court. That's not what this hearing is about," and threatened a superior officer (Lt. Col. Atterbury, the supervising officer for the military legal team for STEIN) with removal from the hearing, when Lt. Col. Atterbury objected to the interference by the legal advisor in the voir dire.

28. The prosecution admitted that the charges against STEIN did not warrant his separation from the Marine Corps, but argued that an "analogous" charge, which was not applicable to STEIN, as it only applied to Commissioned Officers, should be applied to him so that he could be discharged from the Corps. Testimony was proffered, and written statements were submitted, from multiple defense expert witnesses, that contradicted this claim, and

provided that the charges alleged against STEIN could not, as a matter of law, result in his discharge, but the testimony was not allowed by Lt. Col. Hairston. Further, the written statements of Brigadier General David Brahms, USMC (Ret.), Major Neil Ringlee, USMC (Ret.), and Lt. Col. Jeffrey Addicott (Army, Ret.), JD, LLM, SJD were submitted to the Board, but Lt. Col. Hairston refused to accept them into the record of the proceedings.

29. The prosecution was allowed to ask their witnesses their opinions as to whether the alleged actions of STEIN contributed to a "breakdown of good order and discipline," but STEIN was denied the ability to present expert testimony to rebut that evidence.

30. Lt. Col. Hairston announced during the hearing, that the hearing would end at 5:00 p.m. and re-commence the next day. As a result, due to the lateness of the day, and the fact that the prosecution had not yet completed examining their witnesses, STEIN's legal defense team started calling off the witnesses that they had on standby, ready to testify. Subsequently, Lt. Col. Harrison announced that the hearing would go until it ended that day, even if it took until 11:00 p.m., which it did, and one of STEIN's witnesses could not testify, due to the legal team being unable to contact him.

31. During closing arguments at the AdSep hearing, the prosecution argued the following irrelevant and inappropriate matters:

    a. The claim that a publication called the Marine Corps Times published an article discussing the case.

    b. The claim that the "Tea Party" movement is a formal political party, and, thus, STEIN's attendance at a Tea Party meeting violated Department of Defense directives.

    c. The claim that STEIN had no commendations or citations on his military record.

    d. The allegation that STEIN had bad debts.

    e. The claim that STEIN's initiation of this action seeking to protect his constitutional rights shows "this is not a Marine who thinks about the institution. This is not a Marine concerned with the institution."

32.     At the conclusion of the hearing, with only minimal deliberations, the AdSep Board recommended STEIN's OTH discharge from the Marine Corps by completing a boilerplate form that contained no substantive findings or discussion of the evidence or substantial legal questions presented.

33.     On April 12, 2012, STEIN moved for a preliminary injunction to prevent his discharge. By order issued April 13, the Court denied the motion.

34.     On April 30, 2012, Brigadier General Yoo approved the AdSep Board's recommendation and issued STEIN an OTH discharge from the Marine Corps, effective May 4, 2012.

35.     Plaintiff need not exhaust administrative remedies before pursuing this action because (a) those remedies do not provide an opportunity for adequate relief; (b) he will suffer irreparable harm if compelled to pursue administrative relief; (c) administrative appeal would be futile; and/or (d) this action presents substantial constitutional questions.

## FIRST CLAIM

### Violation of Fifth Amendment Right to Due Process

36.     Plaintiff hereby realleges and incorporates by reference each of the foregoing allegations as if set forth fully herein.

37.     The conduct of the discharge proceedings and/or AdSep hearing violated STEIN's right to due process of law under the Fifth Amendment to the United States Constitution.

## SECOND CLAIM

### Violation of First Amendment Right to Freedom of Speech

38.     Plaintiff hereby realleges and incorporates each of the foregoing allegations as if set forth fully herein.

39.      STEIN's speech was protected by the First Amendment to the United States Constitution and did not violate Article 134 of the Uniform Code of Military Justice, as construed by civilian and military courts in light of the First Amendment.

40.      STEIN's speech did not violate DOD Directive 1344.10. Even if it did, DOD Directive 1344.10 violates the First Amendment as applied to Plaintiff, because it is vague and/or

overbroad, unconstitutionally restricts core political speech, and/or unlawfully discriminates, based on content or viewpoint of speech.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully prays that this Court:

    a.    Declare that the discharge of STEIN violated the First and/or Fifth Amendments to the United States Constitution.

    b.    Issue an injunction requiring Mabus and his successors, agents, officers, servants, and/or employees, and anyone acting in concert with any of the foregoing persons, to recharacterize STEIN's discharge as honorable, expunge all references to his discharge as other than honorable, award back pay if any is owed, and take any other actions consistent with an honorable discharge of STEIN.

    c.    Award costs and reasonable attorney's fees; and

    d.    Grant and order such further relief as the Court may deem just and proper.

Dated:  October 3, 2012　　　　　　　　　　　　　　　　　　Respectfully submitted,

                                                                             **s/David Loy**
                                                                             David Loy
                                                                             davidloy@aclusandiego.org

Also of counsel:
STEWART RHODES
OATHKEEPERS
5130 S. Fort Apache Road. Suite 215-160
Las Vegas, NV 89148
Tel:  (702) 353-0627
rhodeslegalwriting@gmail.com