STUART F. DELERY
Principal Deputy Assistant Attorney General

LAURA E. DUFFY
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

CHRISTOPHER R. HALL
MATTHEW J.B. LAWRENCE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:      (202) 304-4778

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

GARY A. STEIN

                              Plaintiff,

v.

RAY MABUS, Secretary of the Navy,

                              Defendant.

No. 12cv0816-H(BGS)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT ....................................................................................................5

   I.   PLAINTIFF'S CLAIMS ARE INSUBSTANTIAL UNDER <u>MINDES</u>, AND FAIL
      TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED............................7

     A. PLAINTIFF'S FIRST CLAIM – VIOLATION OF THE DUE PROCESS CLAUSE – FAILS
       TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ........................7

       1.  Plaintiff has not been deprived of a protected interest...........................8

            a.     Test for establishing a "stigma plus"
                  deprivation of liberty................................ 8

            b.     Application of test to facts alleged in
                  Plaintiff's complaint................................ 9

       2.  Plaintiff has received, and still has available to him, all the process that is
          due for a "stigma plus" deprivation. ...................................... 10

     B. PLAINTIFF'S SECOND CLAIM – NOMINALLY ALLEGING VIOLATION OF THE FIRST
       AMENDMENT – FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
       GRANTED……………...................................................................12

  II.  PLAINTIFF WILL NOT BE HARMED IF REVIEW IS REFUSED..............................17

 III. JUDICIAL REVIEW WOULD INTERFERE WITH MILITARY FUNCTIONS
     INVOLVING EXTENSIVE MILITARY DISCRETION AND EXPERTISE. .................19

     A. JUDICIAL REVIEW OF PLAINTIFF'S FIRST CLAIM – VIOLATION OF THE DUE
       PROCESS CLAUSE – WOULD SUBSTANTIALLY INTERFERE WITH MILITARY
       DISCRETION AND EXPERTISE. ...........................................................20

     B. JUDICIAL REVIEW OF PLAINTIFF'S SECOND CLAIM WOULD SUBSTANTIALLY
       INTERFERE WITH MILITARY DISCRETION AND EXPERTISE. ...........................21

CONCLUSION................................................................................................23

ii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. United States,*
  17 Fed. App'x 733 (9th Cir. 2001) .................................................... 6

*Arnett v. Kennedy,*
  416 U.S. 134 (1974) ............................................................ 10, 12

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ........................................................... 9, 13

*Barrett v. Smith,*
  530 F.2d 829 (9th Cir. 1976) ......................................................... 12

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972) .................................................................. 9

*Chappell v. Wallace,*
  462 U.S. 296 (1983) ............................................................ passim

*Christoffersen v. Wash. State Air Nat'l Guard,*
  855 F.2d 1437 (9th Cir. 1988) ........................................... 7, 8, 16, 17

*Cornelius v. NAACP Legal Defense & Educ. Fund,*
  473 U.S. 788 (1985) .................................................................. 13

*Dilley v. Alexander,*
  603 F.2d 914 (D.C. Cir. 1979) ......................................................... 19

*Doe v. Garrett,*
  903 F.2d 1455 (11th Cir. 1990) ....................................................... 10

*Ethredge v. Hail,*
  56 F.3d 1324 (11th Cir. 1995) ..................................................... 14, 15

*Goldman v. Weinberger,*
  475 U.S. 503 (1986) .................................................................. 14

*Greer v. Spock,*
  424 U.S. 828 (1976) .................................................................. 13

*Guerra v. Scruggs,*
  942 F.2d 270 (4th Cir. 1991) .......................................................... 10

*Holder v. Humanitarian Law Project,*
  --- U.S. ---, 130 S. Ct. 2705 (2010) .................................................. 16

*Hyland v. Wonder,*
  972 F.2d 1129 (9th Cir. 1992) .......................................................... 9

*Jeffries v. Harleston,*
  52 F.3d 9 (2d Cir. 1995) .............................................................. 15

iii

*Khalsa v. Weinberger*,
    779 F.2d 1393 (9th Cir. 1985) ................................................................ 18, 19, 20

*Matthews v. Harney Cnty.*,
    819 F.2d 889 (9th Cir. 1987) .................................................................................. 9

*Mier v. Owens*,
    57 F.3d 747 (9th Cir. 1995) ................................................................................... 19

*Milas v. United States*,
    42 Fed. Cl. 704 (Fed. Cl. 1999) .............................................................................. 9

*Millican v. United States*,
    744 F. Supp. 2d 296 (D.D.C. 2010) ...................................................................... 16

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ................................................................................... 1

*Mustafa v. Clark Cnty. Sch. Dist.*,
    157 F.3d 1169 (9th Cir. 1998) ..........................................................10, 11, 12, 19

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .................................................................................. 5

*Orloff v. Willoughby*,
    345 U.S. 83 (1953) ................................................................................................ 14

*Parker v. Levy*,
    417 U.S. 733 (1974) .............................................................................................. 13

*Paul v. Davis*,
    424 U.S. 693 (1976) ............................................................................................ 8, 9

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) .............................................................................................. 14

*Priest v. Sec'y of the Navy*,
    570 F.2d 1013 (D.C. Cir. 1977) ............................................................................ 14

*Smith v. Org. of Foster Families for Equality & Reform*,
    431 U.S. 816 (1977) .............................................................................................. 11

*S. Or. Barter Fair v. Jackson Cnty., Or.*,
    372 F.3d 1128 (9th Cir. 2004) .............................................................................. 19

*Stein v. Dowling*,
    867 F. Supp. 2d 1087 (S.D. Cal. 2012) .................................................................. 6

*Swartz v. KPMG, LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................... 5, 6

*United States v. Williams*,
    553 U.S. 285 (2008) .............................................................................................. 16

*Wallace v. Chappell,*
   661 F.2d 729 (9th Cir. 1981) ....................................................................... 1

*Waters v. Churchill,*
   511 U.S. 661 (1994) ................................................................................. 14

*Wenger v. Monroe,*
   282 F.3d 1068 (9th Cir. 2002) ............................................................. passim

*Wilcox v. United States,*
   66 M.J. 442 (C.A.A.F. 2008) ............................................................. 14, 22

**Statutes**

10 U.S.C. § 1552 .......................................................................... 1, 12, 17

10 U.S.C. § 1553 .......................................................................... 1, 12, 17

Uniform Code of Military Justice Article 134 .................................... passim

**Regulations**

32 C.F.R. § 723.1 et seq. ................................................................... 17

32 C.F.R. § 724.205 ......................................................................... 18

32 C.F.R. § 724.902 ......................................................................... 17

32 C.F.R. § 724.903 ......................................................................... 18

38 C.F.R. § 3.12 .............................................................................. 19

1

**PRELIMINARY STATEMENT**

2        Plaintiff Gary Stein has filed a two-count complaint challenging his discharge from the

3  Marine Corps under "Other Than Honorable" conditions as a violation of the Due Process Clause

4  of the Fifth Amendment to the Constitution of the United States and as a violation of the Free

5  Speech Clause of the First Amendment.  See First Am. Compl. ¶ 36–40, ECF No. 37.  He seeks

6  declaratory relief, as well as an injunction that the Navy recharacterize his discharge as

7  "honorable" and award back pay, among other things.  Id. at 10:4–13.

8        "Congress has exercised its plenary constitutional authority over the military, has enacted

9  statutes regulating military life, and has established a comprehensive internal system of justice to

10  regulate military life, taking into account the special patterns that define the military structure."

11  Chappell v. Wallace, 462 U.S. 296, 302 (1983).  Today, that system includes two separate entities

12  empowered to consider and redress Plaintiff's challenge to his discharge from the Marine Corps.

13  Since his separation, Plaintiff has had the option of petitioning the Board of Correction of Naval

14  Records ("BCNR") to review his separation, 10 U.S.C. § 1552, and he has also had the option of

15  petitioning the Naval Discharge Review Board ("NDRB") to do the same.  10 U.S.C. § 1553.  He

16  has not gone either route.

17        Rather than make use of the administrative remedies that Congress created for him,

18  Plaintiff invites the Court to review his separation directly.  The Ninth Circuit has directed that

19  the Court hesitate before accepting such an invitation, out of deference to the respective roles of

20  the military and the judiciary in the separation of powers and out of awareness of the difficulty of

21  reviewing a military judgment in a judicial forum.  See Wallace v. Chappell, 661 F.2d 729, 732

22  (9th Cir. 1981) (non-justiciability of military claims founded on concerns that "judicial review

23  might usurp a military function" and "courts lack the competence to weigh the factors that might

24  enter into a military decision") (rev'd on other grounds sub nom Chappell v. Wallace, 462 U.S.

25  296 (1983)).  Specifically, the Ninth Circuit has instructed that even a constitutional challenge to

26  military personnel decision-making is not justiciable unless review is favored by a balance of the

27  four factors originally articulated in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971).  Wenger v.

28  Monroe, 282 F.3d 1068, 1072–73 (9th Cir. 2002).  Under the Mindes balance, a plaintiff

1

generally must establish that two factors affirmatively favor judicial review: the "nature and strength of the plaintiff's claim" and the "potential injury to the plaintiff if review is refused." Wenger, 282 F.3d at 1072.  Even then, the remaining two Mindes factors tend to disfavor review: the "extent of interference with military functions" that review would pose and the "extent to which military discretion or expertise is involved." Id.

Here, as elaborated upon below, the balance of the Mindes factors tips unequivocally against judicial review.  The factors that a plaintiff generally must establish to support judicial review do not do so in this case because (i) Plaintiff's claims are insubstantial – indeed, they fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) – and (ii) Plaintiff would not be harmed at all if the Court refuses review: he has available to him two separate congressionally-mandated administrative remedies that have the power to consider his claims and to provide him with the very relief he asks the Court to order.

On the other hand, the two Mindes factors that tend to disfavor review do so strongly in this case because of, among other things, the nature of Plaintiff's challenge to his separation. Ultimately, Plaintiff disagrees with the judgment underlying his separation, namely, that statements he admits he made and actions he admits he took threatened "good order and discipline" in violation of Article 134 of the UCMJ and DOD Directive 1344.1, First Am. Compl. ¶ 39, Oct. 3, 2012, ECF No. 37 ("STEIN's speech . . . did not violate Article 134 of the Uniform Code of Military Justice"); id. ¶ 40 ("STEIN's speech did not violate DOD Directive 1344.10").  The effect of a servicemember's actions on "good order and discipline" is a quintessential military judgment that the judiciary has neither the constitutional competence nor the expertise to make.

Accordingly, this action should be dismissed.

## BACKGROUND

On March 21, 2012, Plaintiff was a sergeant in the United States Marine Corps with roughly nine years of service.  On that date, Plaintiff's commanding officer, Colonel C.S. Dowling, informed Plaintiff that he had recommended Plaintiff for separation from the Marine Corps, by providing Plaintiff with a Notification of Administrative Separation Proceedings.

March 21, 2012 Notification of Administrative Separation Proceedings ("March 21, 2012 Notification"), Ex. A to First Am. Compl., ECF No. 37-1. That notice formally began the process set forth in the Marine Corps Separation and Retirement Manual by which the Navy determines whether to separate an enlisted marine as well as how to characterize any such separation. See Marine Corps Order 1900.16F Ch 6, Marine Corps Separation and Retirement Manual ¶ 6302, Ex. A ("Separation Manual").

The Notice explained that Plaintiff's proposed separation was based upon "Misconduct," specifically, "Commission of a Serious Offense," one of several bases for separation set forth in the Separation Manual, ¶ 6210.6. The Notice identified two such serious offenses: (1) "that on or about 1 March 2012, you allegedly made statements regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ" and (2) that "from on or about November 2010 to the present you allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DOD Directive 1344.10." Mar. 21, 2012 Notification at 1. As to the first offense, the Notice was referring to Plaintiff's statement in an online forum for Marine Corp meteorologists ("METOC") that "As an Active Duty Marine I say 'Screw Obama' and I will not follow all orders from him." See Transcript of April 5, 2012 Administrative Separation Board Hearing at 103, Ex. C. As to the second, the Notice was referring to, among other things, Plaintiff's maintenance of a Facebook page titled "Armed Forces Tea Party."

The process Colonel Dowling began when he sent Plaintiff the Notification of Administrative Separation Proceedings ended about one month later, on April 22, 2012, when Brigadier General Daniel D. Yoo, serving as the "separation authority"—the entity that, pursuant to the Separation Manual, is entrusted by the Secretary of the Navy to make a final decision about whether to separate a marine and how to characterize the separation, Separation Manual ¶ 6307—issued his decision. Separation Manual ¶¶ 6309.2, 6311. He ordered that Plaintiff be seperated within twenty days for reason of "Misconduct, specifically Commission of a Serious Offense," and that Plaintiff's separation be characterized as "Other Than Honorable," see April 22, 2012 Order of General Yoo ¶ 3, Ex. B ("Separation Order"), the default characterization for a

"Misconduct" separation.  <u>See</u> Separation Manual ¶ 6107 ("The separation authority must determine the appropriate character of service once the separation is approved."); <u>id.</u> ¶ 6210.1 ("Characterization of service normally shall be under other than honorable conditions, but characterization as general (under honorable conditions) may be warranted in some circumstances"); <u>id.</u> ¶ 6210.1 (discussing factors to be considered in characterizing separation); <u>id.</u> ¶ 1004.

General Yoo appropriately considered an abundance of evidence and argument in making his decision.  <u>See</u> Separation Order ¶ 2.  He considered, and ultimately endorsed, the recommendation of an administrative separation board, a group of service members that had, pursuant to the Separation Manual, held a hearing on the proposed separation at which Plaintiff and his five attorneys submitted evidence, witnesses, and argument.  <u>See</u> Separation Order at 1; Transcript of April 5, 2012 Admin. Separation Bd. Hr'g at 1-2, Ex. C (introducing Captain N.R. Grey, Captain James S. Baehr, Mark Brewer, Gary Kreep, and Stewart Rhodes as counsel for respondent, and recording hearing verbatim).  The Board had found that a preponderance of the evidence "PROVE[D] <u>ALL</u> acts or omissions alleged in the notification[,]" and recommended that Plaintiff's separation be characterized as "Other than honorable."[1]  <u>See</u> April 5, 2012 Findings & Recommendations in the Case of Sergeant Gary A. Stein at 1, 2, Ex. D ("Separation Recommendation").

General Yoo also considered, pursuant to paragraph 6308.1(c) of the Separation Manual, the written memorandum of a legal advisor addressing objections to Plaintiff's proposed separation (and the board process) that Plaintiff raised after the administrative separation board had made its recommendation.  <u>See</u> Separation Order ¶ 2 (citing April 17, 2012 Legal Review Officer Letter, Enclosure 3 to Separation Order); Separation Manual ¶ 6320.  Finally, General Yoo "reviewed the written statements" from several witnesses "that defense counsel sought to

---

[1] If the administrative separation board had found that a preponderance of the evidence did not support a finding that Plaintiff had committed either serious offense listed in the March 21, 2012 Notification, but General Yoo had felt its findings were clearly contrary to the weight of the evidence, he could nonetheless have recommended Plaintiff for separation to the Secretary of the Navy.  Separation Manual ¶¶ 6309.2(c)(2).

1   introduce at the subject hearing," and considered the "personal and professional opinions and

2   legal arguments expressed within these documents."  Separation Order ¶ 2.

3        Plaintiff did not dispute that he made the statements or took the actions referenced in the

4   March 21, 2012 Notification, upon the basis of which General Yoo ordered his separation.  But

5   Plaintiff did, and does, dispute that his actions violated Article 134 of the Uniform Code of

6   Military Justice or DOD Directive 1344.10, and so disputes that there was a valid or

7   constitutionally permissible basis to give him a "Serious Offense" misconduct discharge.

8   Because Plaintiff felt this way, he asked the Court to enjoin the administrative separation

9   proceedings before General Yoo had made his decision, see Mot. for Prelim. Inj., April 12, 2012,

10  ECF No. 21; Ex Parte Mot. for TRO and Order to Show Cause, April 6, 2012, ECF No. 15; Mot.

11  for TRO, April 3, 2012, ECF No. 2, which the Court refused to do.  See Order denying Mot. for

12  Prelim. Inj., April 13, 2012, ECF No. 32; Order denying Pl.'s Mot. for TRO without Prejudice,

13  April 6, 2012, ECF No. 19; Order denying without prejudice Mot. for TRO, April 4, 2012, ECF

14  No. 10.  Plaintiff has now filed an amended complaint, updated to reflect General Yoo's final

15  decision and to ask that the Court review that decision, declare it unlawful, recharacterize his

16  separation from "Other Than Honorable" to "Honorable," and order backpay.   See First Am.

17  Compl. at 10:9, ECF No. 37.

18                                    **ARGUMENT**

19        A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal

20  sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "In deciding such

21  a motion, all material allegations of the complaint are accepted as true, as well as all reasonable

22  inferences to be drawn from them."   Id.   The case will be dismissed "where there is no

23  cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

24  theory."  Id.

25        Ordinarily, "[i]n ruling on a 12(b)(6) motion, a court may generally consider only

26  allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

27  subject to judicial notice."   See Swartz v. KPMG, LLP, 476 F.3d 756, 763 (9th Cir. 2007).

28  However, "a court may consider a writing referenced in a complaint but not explicitly

                                        5

incorporated therein if the complaint relies on the document and its authenticity is unquestioned." Id. Four such writings are attached as exhibits to this motion. Exhibit A is the Marine Corps Separation Manual, a shorter excerpt of which is an attachment to Plaintiff's amended complaint. See Ex. B. to First Am. Compl, ECF No. 37-1. Exhibit B is General Yoo's Order separating Plaintiff under "Other Than Honorable" conditions. Exhibit C is the transcript of Plaintiff's Administrative Separation Board Hearing. Exhibit D is the Administrative Separation Board's Recommendations. Exhibits A and C are explicitly incorporated by Plaintiff into his Complaint. See First Am. Compl. ¶ 25 (transcript is "incorporate[d] by reference"); Ex. B to First Am. Compl., ECF No. 37-1 (presenting excerpts from Marine Corps Separation Manual). Exhibits B and D can be considered without converting this motion to one for summary judgment because they are referred to explicitly in Plaintiff's complaint, see First Am. Compl. ¶ 32 (Separation Recommendation); Id. ¶ 34 (Separation Order), and they form the basis for Plaintiff's claims. See Swartz, 476 F.3d at 763.

A non-justiciable action is subject to dismissal pursuant to Federal Rule 12(b)(6). See, e.g., Wenger v. Monroe, 282 F.3d 1068 (9th Cir. 2002) (affirming dismissal of military non-promotion case for failure to state a claim); Adams v. United States, 17 Fed. App'x 733 (9th Cir. 2001) (affirming dismissal of military separation case for failure to state a claim). In this Circuit, a modified version of the Mindes doctrine governs the justiciability vel non of a challenge to military decisionmaking. Wenger v. Monroe, 282 F.3d 1068, 1072 (9th Cir. 2002). If a Plaintiff meets the threshold requirements of alleging "(a) a violation of a recognized constitutional right, federal statute, or military regulations, and (b) exhaustion of available intraservice remedies," id. at 1072 (internal alteration omitted), as the Court has held Plaintiff's action does, Stein v. Dowling, 867 F. Supp. 2d 1087 (S.D. Cal. 2012), then the Court weighs four factors to determine whether a case is justiciable: "(1) [t]he nature and strength of the plaintiff's claim;" "(2) [t]he potential injury to the plaintiff if review is refused;" "(3) [t]he extent of interference with military functions;" and "(4) [t]he extent to which military discretion or expertise is involved." Wenger, 282 F.3d at 1072 (internal quotation marks omitted).

1    As explained below, Plaintiff's challenge to his separation is non-justiciable, and thus

2    should be dismissed.  In short: the first two Mindes factors do not counsel in favor of review here

3    because Plaintiff's claims are insubstantial and he would not be injured if review is refused.  On

4    the other hand, the latter two Mindes factors counsel strongly against review, because Plaintiff

5    asks the Court to substitute its judgment for that of General Yoo about the extent to which

6    Plaintiff's actions impacted good order and discipline—issues peculiarly within the province and

7    expertise of the military. As a result, the balance in this case is lopsided; it tips unequivocally

8    against review.

9    I.    PLAINTIFF'S CLAIMS ARE INSUBSTANTIAL UNDER MINDES, AND FAIL TO STATE A CLAIM

10         UPON WHICH RELIEF CAN BE GRANTED.

11         The first factor of the Mindes balancing test, "[t]he nature and strength of the plaintiff's

12   claim," Wenger, 282 F.3d at 1072, does not favor review here because both of Plaintiff's claims

13   are insubstantial. See Christoffersen v. Wash. State Air Nat'l Guard, 855 F.2d 1437, 1443 (9th

14   Cir. 1988) ("the first Mindes factor does not favor reviewability" where an appellant's

15   "constitutional claims are meritless").  Indeed, the allegations of Plaintiff's complaint are so

16   insubstantial that even if the decision to discharge him under "Other Than Honorable" conditions

17   were justiciable, and it is not, Plaintiff's First Amended Complaint would fail to state a claim for

18   which relief can be granted.  This action is subject to dismissal for that independent reason.

19         Point I.A below demonstrates that Plaintiff's first claim, that the separation proceedings

20   violated the Due Process Clause of the Fifth Amendment to the Constitution of the United States,

21   lacks merit.  First Am. Compl. ¶¶ 36–37.  Point I.B demonstrates that his second claim, which is

22   nominally that the separation violated the Free Speech Clause of the First Amendment, also lacks

23   merit.

24   A.    PLAINTIFF'S FIRST CLAIM—VIOLATION OF THE DUE PROCESS CLAUSE—FAILS

25         TO STATE A DUE PROCESS CLAIM UPON WHICH RELIEF CAN BE GRANTED.

26         Plaintiff's claim that his separation proceeding violated the Due Process Clause fails as a

27   matter of law for two separate reasons discussed below.  In short: (1) the strictures of the Fifth

28   Amendment do not apply to Plaintiff's separation, because the separation did not deprive

1    Plaintiff of any protected life, liberty, or property interest; and (2) even if Plaintiff had been

2    deprived of a protected life, liberty, or property interest, Plaintiff received, and in any event still

3    has available to him, all the process that he is due.

4                    **1.       Plaintiff has not been deprived of a protected interest.**

5            The wording of the Due Process Clause makes clear that the Fifth Amendment is violated

6    only if a person is "deprived of life, liberty, or property, without due process of law."  U.S. Const.

7    amend. V; see Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Nothing in Plaintiff's

8    complaint suggests that Plaintiff believes he has been deprived of a protected life or property

9    interest, nor could it.  The men and women who serve in our country's armed forces do not have

10   a protected property interest in continuing to do so.  See Christoffersen, 855 F.2d at 1443 (service

11   members had "no constitutionally protected property interest in continued employment").

12           Plaintiff's complaint does suggest that he believes he has been deprived of a protected

13   liberty interest.    Specifically, in paragraph 13, Plaintiff makes allegations about the "stigma"

14   attached to the "Other Than Honorable" characterization of his discharge.  Thus, Plaintiff appears

15   to suggest that General Yoo's order so characterizing his discharge deprived him of liberty by

16   harming his reputation.  That is not the case.

17           a.  Test for establishing a "stigma plus" deprivation of liberty

18           The protections of the Due Process Clause are not triggered by "[i]njury to reputation

19   standing alone," Wenger, 282 F.3d at 1074 (quoting Paul v. Davis, 424 U.S. 693, 712, 731

20   (1976)).  Rather, a liberty interest is implicated by an alleged reputation injury associated with a

21   personnel action only if certain additional requirements are met as part of what the Ninth Circuit

22   has called a "stigma plus" deprivation.  See Wenger, 282 F.3d 1068, 1074 (9th Cir. 2002).  In

23   Wenger, in the course of holding a military personnel case was non-justiciable, the Ninth Circuit

24   discussed the standard by which a stigma plus claim is evaluated:

25           [D]ue process protections apply only if a plaintiff is subjected to "stigma plus'; *i.e.*, if the
             state makes a charge against [a plaintiff] that might seriously damage his standing and
26           associations in the community," and "1) the accuracy of the charge is contested, 2) there
             is some public disclosure of the charge, and 3) it is made in connection with the
27           termination of employment or the alteration of some right or status recognized by state
             law.
28
     Wenger, 282 F.3d at 1074 (internal quotation marks omitted).

                                                    8

1

      b.  Application of test to facts alleged in Plaintiff's complaint

2

      Plaintiff's due process claim is missing two of the essential elements of a "stigma plus"

3 deprivation.  First, it is missing any claim that his discharge created a serious stigma.  Plaintiff

4 does not allege that the characterization of his separation will "impose on [Plaintiff] a stigma or

5 other disability that foreclose[s] his freedom to take advantage of other employment

6 opportunities."  <u>Bd. of Regents v. Roth</u>, 408 U.S. at 573.  The closest he comes is to say that the

7 "characterization could follow [Stein] for the rest of his life, and impact his future ability to earn

8 a livelihood."  First Am. Compl. ¶ 13.

9

      Even if the Court were to accept Plaintiff's conclusory allegation of stigma—which it

10 need not do, <u>see</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1951 (2009) (conclusory allegations "are not

11 entitled to the assumption of truth")—the possibility of some ill-defined, presumably negative

12 "impact" on Plaintiff's future ability to earn a livelihood does not make for the sort of "severe

13 and genuinely debilitating" stigma that triggers the protections of the Fifth Amendment.  <u>Hyland</u>

14 <u>v. Wonder</u>, 972 F.2d 1129, 1141 (9th Cir. 1992).  That is because the liberty interest at issue in a

15 "stigma plus" deprivation is not a person's abstract interest in his reputation, <u>see</u> <u>Paul</u>, 424 U.S.

16 at 712, but rather his interest in being able to "take advantage of [] employment opportunities."

17 <u>Hyland</u>, 972 F.2d at 1141 (internal quotation marks omitted).  Almost any involuntary

18 termination of employment may "impact" future employment prospects, creating at the least an

19 embarrassing resume line.  But being fired by the Government does not implicate a person's

20 liberty to pursue his livelihood unless the basis for the Government's action is "the types of

21 charges of immorality, or dishonesty that can cripple an individual's ability to earn a living."  <u>Id.</u>

22 at 1142; <u>see also Matthews v. Harney Cnty.</u>, 819 F.2d 889, 891 (9th Cir. 1987) ("[A] liberty

23 interest is implicated in the employment termination context if the charge impairs a reputation

24 for honesty or morality[.]").  While the words and actions that formed the basis for Plaintiff's

25 discharge were "intemperate," First Am. Compl. ¶ 4, or worse, Plaintiff understandably does not

26 allege that they involve the sort of dishonesty or immorality that might carry a career-threatening

27 stigma and trigger the protections of the Fifth Amendment.  <u>Cf.</u> <u>Milas v. United States</u>, 42 Fed.

28

9

Cl. 704, 709, 712 (Fed. Cl. 1999) (charges of sexual abuse underlying "other than honorable" separation conveyed "self evident" stigma).

The second essential element missing from Plaintiff's "stigma plus" claim is any assertion that Plaintiff did not engage in the conduct that was the basis for his separation.  To the contrary, Plaintiff appears to admit that he made the statements about his willingness to follow orders referenced in the Notification of Administrative Separation Proceedings that he received. See First Am. Compl. ¶ 10 ("some of the language [Plaintiff] used in discussing certain hypothetical unlawful orders might have been viewed as intemperate").  In nonetheless pressing a due process claim, Plaintiff forgets that "[a] critical element of a claimed invasion of a reputational liberty interest . . . is the falsity of the government's asserted basis for the employment decision at issue," Guerra v. Scruggs, 942 F.2d 270, 278 (4th Cir. 1991) (quoting Doe v. Garrett, 903 F.2d 1455, 1462–63 (11th Cir. 1990)). See Arnett v. Kennedy, 416 U.S. 134, 157 (1974) (Rehnquist, J.) ("liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee"); Wenger, 282 F.3d at 1074 (discussing requirement that "the accuracy of the charge is contested").

### 2. Plaintiff has received, and still has available to him, all the process that is due for a "stigma plus" deprivation.

Even assuming arguendo that Plaintiff had made out the essential elements of a "stigma plus" deprivation, Plaintiff's due process claim would nonetheless fail because Plaintiff admits that he received the process to which a person is entitled for a "stigma plus" deprivation under binding precedent, namely, "an opportunity to refute the stigmatizing charge." Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1179 (9th Cir. 1998).  Plaintiff admits that he received notice of the administrative separation proceedings, First Am. Compl. ¶ 12 ("on March 21, 2012, STEIN was notified . . . of the institution of Administrative Separation [] Proceedings"), notice of the proposed basis for his termination, id. ("[a]s grounds for discharge, the Notification alleged . . ."), and notice of the proposed characterization of his separation, First Am. Compl. ¶ 13.  ("According to the Notification, Dowling intended to recommend that STEIN receive a

separation from service characterization of "Other Than Honorable Conditions").  Plaintiff also admits that he was given, and utilized, the opportunity to respond before the administrative separation board, First Am. Compl. ¶¶ 14–32; see also id. ¶ 25 ("With counsel, Plaintiff appeared at the AdSep hearing on April 5, 2012.").  These admissions are fatal to Plaintiff's due process claim.[2]

Plaintiff was given not just notice and an opportunity to be heard; he was also given the opportunity to appear in person, present witnesses, and enter evidence at an administrative separation board proceeding, with the assistance of a legal team encompassing two military and three civilian attorneys.  First Am. Compl. ¶ 26, 28, 30.  These aspects of the Navy's separation procedures, set forth by the Marine Corps' Separation Manual, Separation Manual ¶¶ 6304, 6314-6321, go beyond the constitutional minima of due process.  Plaintiff's complaint contains various allegations about the way the hearing he received was conducted.  See First Am. Compl. ¶¶ 14–31.  The Government contests many of those allegations, as well as any implicit suggestion that the hearing—which was an administrative, not a judicial proceeding, Separation Manual ¶ 6316(1) ("An administrative separation board functions as an administrative rather than a judicial body.  Accordingly, in the board's proceedings, the strict rules of evidence governing trials by court-martial are not applicable.")—was conducted improperly.  But Plaintiff's allegations about the way the hearing was conducted are not relevant here, because none contradicts Plaintiff's admission that he had an opportunity to refute the charges that formed the basis for his proposed separation.  See Smith v. Org. of Foster Families for Equality & Reform, 431 U.S. 816, 853 (1977) ("a State does not violate the Due Process Clause by providing alternative or additional procedures beyond what the Constitution requires").

Furthermore, even if Plaintiff had not been given "an opportunity to refute the stigmatizing charge," Mustafa, 157 F.3d at 1179, before his separation, the post-separation

---

[2] Furthermore, after the hearing, Plaintiff was given and made use of a second opportunity to refute the charges underlying his separation in the form of a written challenge to the recommendation of the administrative separation board.  See Legal Review Officer Letter, Enclosure 3 to Separation Order, Ex. B (addressing various arguments raised by Plaintiff in his Letter of Deficiency).

procedures available to Plaintiff through the Board of Correction of Naval Records, 10 U.S.C. § 1552 ("BCNR"), and the Naval Discharge Review Board, 10 U.S.C. § 1553 ("NDRB"), would provide all the process that Plaintiff is due.  As discussed further in Part II, post, Plaintiff may challenge his separation or the way it was characterized before either Board.  Either post-deprivation remedy would suffice to protect Plaintiff's liberty interest in his ability to earn a livelihood.  "Since the purpose of the hearing in such a case is to provide the person 'an opportunity to clear his name,' a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." Arnett v. Kentucky, 416 U.S. 134, 157 (1974) (plurality op., overruled on other grounds, Loudermill, 470 U.S. at 539); see also Mustafa, 157 F.3d at 1179 (post-deprivation arbitration hearing was sufficient "opportunity to clear [employee's] name"); Barrett v. Smith, 530 F.2d 829, 833 n. 6 (9th Cir. 1976) (adopting reasoning of district court that "courts which have examined the Arnett opinions have consistently held that a pre-termination hearing is not required in such circumstances").

**B.    PLAINTIFF'S SECOND CLAIM – NOMINALLY ALLEGING VIOLATION OF THE FIRST AMENDMENT – FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiff's second claim is ostensibly a straightforward assertion that his discharge violated the First Amendment.  First Am. Compl. ¶¶ 39–40.  There is a wrinkle, however: Plaintiff seems to articulate a handful of alternative theories of liability in support of this claim. Id.  That multiplicity stems from the fact that the Marine Corps' decision was grounded upon Stein's commission of two separate serious offenses, both of which were sustained: that Plaintiff violated Article 134 of the UCMJ and that he violated DOD Directive 1344.10.  But if either ground for Plaintiff's discharge – UCMJ Article 134 or DOD Directive 1344.10 – withstands constitutional scrutiny, Plaintiff's "Second Claim" fails as a matter of law.  Signficant to that point, Defendant's standard for withstanding First Amendment scrutiny and for establishing a violation of UCMJ Article 134 here are essentially the same, and Plaintiff does not contend that there is anything constitutionally suspect about UCMJ Article 134 as applied to him, First Am.

Compl. ¶ 39.  By contrast, he does allege that DOD Directive 1344.10 is unconstitutional as applied, First Am. Compl. ¶ 40.  Thus, Plaintiff's "Second Claim" fails to state a claim upon which relief can be granted if the alleged facts pleaded do not make "plausible" his assertion that he did not violate Article 134.  Iqbal, 129 S. Ct at 1949.

That is precisely the outcome here.  Plaintiff's assertion that the First Amendment in this context protects his speech – including, inter alia, statements he made in his capacity "[a]s an Active Duty Marine[,]" to a wide audience via the loudspeaker of social media that he "will not follow all orders from" President Obama, his Commander-in-Chief, and that the President is the "economic," "religious," and "domestic" enemy of the United States Constitution, see Transcript of April 5, 2012 Administrative Separation Board Hearing at 103-104, Ex. C – is flatly incorrect. Thus, Plaintiff fails to state a claim upon which relief can be granted.

The Supreme Court has made clear that First Amendment rights are limited in the military.  "While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections."  Parker v. Levy, 417 U.S. 733, 758 (1974). As the Court explained in Parker v. Levy:

> In the armed forces some restrictions exist for reasons which have no counterpart in the civilian community.  Disrespectful and contemptuous speech, even advocacy of violent change, is tolerable in the civilian community, for it does not directly affect the capacity of the government to discharge its responsibilities unless it is both directed to inciting lawless action and is likely to produce such action.  In military life, however, other considerations must be weighed.  The armed forces depend on a command structure that at times must commit men to combat, not only hazarding their lives but ultimately involving the security of the Nation itself.  Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command.  If it does, it is constitutionally unprotected.

Id. at 758–59 (internal citations omitted).  Thus, "nothing in the Constitution . . . disables a military commander from acting to avert what he perceives to be a clear danger to the loyalty, discipline, or morale of troops . . . under his command."  Greer v. Spock, 424 U.S. 828, 840 (1976).

Moreover, in evaluating the degree of danger to the "effectiveness of responsiveness to command," the government is not obligated to show proof of "actual harm."  Cornelius v.

1   NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 810 (1985) ("Government need not wait

2   until actual havoc is wreaked to restrict access to a non-public forum" under First Amendment

3   forum-analysis test).  Rather, as explained by the D.C. Circuit in Priest v. Secretary of the Navy,

4   570 F.2d 1013 (D.C. Cir. 1977), it is the potential for the erosion of loyalty, discipline, or morale

5   that constitutes the bellwether for whether sanction is warranted in response to a service

6   member's speech.  Id. at 1018.  In Priest, the court reviewed the Navy's Article 134 conviction of

7   a former seaman for distribution of a newsletter urging insubordination and concluded that the

8   challenged conviction withstood First Amendment review.  In so holding, the court emphasized

9   that "[t]he government does not have the burden of showing a causal relationship between  [the

10   defendant's] newsletter and specific examples of weakened loyalty, discipline or morale; the

11   question . . . is whether there is a clear tendency . . . to diminish them."  Id.; see also Ethredge v.

12   Hail, 56 F.3d 1324, 1327-28 (11th Cir. 1995); but see Wilcox v. United States, 66 M. J. 442

13   (C.A.A.F. 2008).

14          In reviewing such a determination, courts must recognize the military's unique

15   constitutional function, and thus "give great deference to the professional judgment of military

16   authorities concerning the relative importance of a particular military interest."  Goldman v.

17   Weinberger, 475 U.S. 503, 507 (1986); see also Orloff v. Willoughby, 345 U.S. 83, 93–94

18   (1953).  As the Eleventh Circuit noted in Ethredge, "[n]ot only are courts ill-equipped to

19   determine the impact upon discipline that any particular intrusion upon military authority might

20   have, but the military authorities have been charged by the Executive and Legislative Branches

21   with carrying out our Nation's military policy."  56 F.3d at 1328.

22          Finally, even outside of the military context, settled case law permits the government, as

23   an employer, to restrict speech that is likely to interfere with "the efficiency of the public

24   services it performs through its employees."  Pickering v. Bd. of Educ., 391 U.S. 563, 568

25   (1968).  In particular, the Supreme Court has recognized that a governmental employee may be

26   discharged for engaging in speech likely to cause a significant disruption.  Waters v. Churchill,

27   511 U.S. 661, 667 (1994).  As the Second Circuit has observed, "[e]ven when the speech is

28   squarely on public issues . . . and thus earns the greatest constitutional protection. . . .  Waters

indicates that the government's burden is to make a substantial showing of <u>likely</u> interference and not an <u>actual</u> disruption." <u>Jeffries v. Harleston</u>, 52 F.3d 9, 13 (2d Cir. 1995).

Measured against these standards, it is readily apparent even from the pleadings that Plaintiff's public speech carried the potential for significant disruption to loyalty, discipline, or morale within the Marine Corps.  In particular, on March 1, 2012, Plaintiff engaged in a Facebook dialogue with numerous other Marines—including his subordinates—on the Marine Corps "METOC" (meteorologist) group page, in which he stated:

> As an Active Duty Marine I saw [sic.] "Screw Obama" and I will not follow all orders from him. . . . Will do my job better then [sic.] the next guy . . . But has [sic.] for saluting Obama as commander-in-chief . . . I will not!
>
> * * * *
>
> Your [sic.] right it said to defend the "I will support and defend the Constitution of the United States against all enemies, foreign and domestic" Obama is the economic enemy . . . He is the religious enemy . . . he is the "Fundamentally change" America enemy . . . he IS the Domestic Enemy."

<u>See</u> Gov't Ex. 5 to April 5, 2012 Administrative Separation Board Hearing, ECF No. 23-2; <u>see also</u> Transcript of April 5, 2012 Administrative Separation Board Hearing at 103, Ex. C (quoting into record, without punctuation or typographical errors, Plaintiff's METOC statements).  Under substantively similar facts, the Eleventh Circuit in <u>Ethredge</u> upheld an Air Force administrative order barring from Robins Air Force Base the display of "bumper stickers or other similar paraphernalia" that "embarrass or disparage" the President against an as-applied First Amendment challenge asserted by a civilian base employee.  56 F.3d at 1325.  Applying the forum-analysis test, the court held that the Air Force had a right to promulgate the order in response to the base command's evaluation that the plaintiff's bumper stickers – one of which read "HELL WITH CLINTON AND RUSSIAN AID" – "constituted a clear danger to military order and morale."  <u>Id.</u> at 1326, 1328.  As did the Air Force with the plaintiff's bumper stickers in <u>Ethredge</u>, Plaintiff's chain of command here has made an evaluation that his public statements constitute a clear danger to loyalty, discipline, and morale.[3]  That determination was sufficient to warrant Plaintiff's discharge.

---

[3] Furthermore, in addition to Plaintiff's statements themselves, General Yoo had before him ample evidence presented at the hearing on which to base his judgment that Plaintiff's actions threatened good order and discipline including, for example, testimony that Plaintiff's statements

1    For the same reasons, it is also clear from the pleadings that the Marine Corps'

2  conclusion that Plaintiff's statements fell within the scope of Article 134 – as noted <u>supra</u>, the

3  first of two serious offenses upon which his "Misconduct" discharge was based — was

4  reasonable.  Because that Article authorizes appropriate punitive action in response to "disorders

5  and neglects to the prejudice of good order and discipline in the armed forces[]" and "all conduct

6  of a nature to bring discredit upon the armed forces[,]" Plaintiff's statements in violation of the

7  Article fall outside of the First Amendment's protective scope, which presumably is why Plaintiff

8  does not allege that if he violated the Article, it is unconstitutional as applied, First Am. Compl. ¶

9  39.  Such statements by Plaintiff as calling the President – his Commander-in-Chief – the

10  "Domestic Enemy," among other labels; asserting that he would not "follow all orders from

11  him[;]" and that he would not salute him were reasonably evaluated as undermining the

12  command structure, thereby presenting a clear danger to loyalty, discipline, or morale.  <u>See, e.g.</u>,

13  <u>Millican v. United States</u>, 744 F. Supp. 2d 296, 307 (D.D.C. 2010) (Air Force major's speech

14  urging other personnel to refuse to receive Anthrax vaccine "constitutionally unprotected because

15  it may undermine the effectiveness of response to command." (internal quotations omitted)).

16    Thus, whether assessed under the essentially coterminous standards of the First

17  Amendment or UCMJ Article 134, Plaintiff's "Second Claim" fails to state a claim upon which

18  relief can be granted.[4]  That alone would suffice to dismiss such claim under Fed. R. Civ. P.

19  _____

20  were connected to a disruption involving Plaintiff at a Marine Corps shooting range. Transcript
of April 5, 2012 Administrative Separation Board Hearing at 163–66, Ex. C.

21
22  [4] Although the Court need not reach them, Plaintiff's allegations that DOD Directive 1344.10 is
unconstitutional as applied fare no better—although Plaintiff's allegations are so threadbare and
23  indefinite as to make it difficult even to assess their substantiality.  First Am. Compl. ¶ 40.  First,
Plaintiff says the provision is "vague and/or overbroad," but the Supreme Court has made clear
24  that a vagueness claim arises not under the First Amendment, but rather under the Due Process
Clause.  <u>Holder v. Humanitarian Law Project</u>, --- U.S. ---, 130 S. Ct. 2705, 2718 (2010); <u>United
25  States v. Williams</u>, 553 U.S. 285, 304 (2008).  As discussed above, the protections of that Clause
are not triggered here.  Furthermore, Plaintiff has pleaded no factual allegation that would
26  suggest either element of a vagueness claim is present here: that the Directive "fails to provide a
person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it
27  authorizes or encourages seriously discriminatory enforcement."  <u>Humanitarian Law Project</u>, 130
S. Ct. at 2718.  Second, Plaintiff says that the Directive restricts "core political speech," First
28  Am. Compl. ¶ 40, but such a claim rises or falls based on the same factual allegations as
Plaintiff's wrongful discharge claim.  Third, Plaintiff says that the Directive "unlawfully
discriminates based on content or viewpoint," First Am. Compl. ¶ 40, but Plaintiff does not plead

1    12(b)(6); it also establishes that the claim is insubstantial and consequently does not weigh in

2    favor of judicial review under Mindes.

3    **II.    PLAINTIFF WILL NOT BE HARMED IF REVIEW IS REFUSED.**

4          Plaintiff can obtain through administrative avenues all the relief he asks the Court to

5    grant in this proceeding, so he will not be harmed at all if the Court finds this case non-

6    justiciable.  Therefore, the second factor of the Mindes balancing test—harm to the Plaintiff if

7    the court concludes this case is non-justiciable—does not favor review here.  See Christoffersen,

8    855 F.2d at 1444 ("If this court refuses review, appellants still will be able to seek review before

9    the Air Force Board for Correction of Military Records under 10 U.S.C. § 1552.").

10         In his complaint, Plaintiff requests that the Court: "recharacterize STEIN's discharge as

11   honorable, expunge all references to his discharge as other than honorable, award back pay if any

12   is owed, and take any other actions consistent with an honorable discharge of STEIN."  First Am.

13   Compl. at 10:7-11.  The BCNR has the power to do all these things.

14         Plaintiff may petition the BCNR to review his separation.  10 U.S.C. § 1552; 32 C.F.R.

15   § 723.1 et seq.; see also Chappell v. Wallace, 462 U.S. 296, 302 (1983).  If after a hearing the

16   BCNR were to rule in Plaintiff's favor, it could recharacterize his separation as honorable, 10

17   U.S.C. § 1552(a)(1), retroactively "correct any military record" to reflect the recharacterization,

18   10 U.S.C. § 1552(a)(1), and award back pay, 10 U.S.C. § 1552(c)(1).

19         Even if the BCNR did not stand empowered to grant Plaintiff the relief he asks the Court

20   to grant, and it does, the second Mindes factor would not favor review because Plaintiff can also

21   seek recourse from the NDRB.  10 U.S.C. § 1553; 32 C.F.R. § 724.903.  On petition filed within

22   fifteen years of his separation, the NDRB would review the record of Plaintiff's separation and

23   such other evidence or witnesses as he might present, including an in-person appearance by

24   Plaintiff if he requested it.  10 U.S.C. § 1553(3).  It is empowered to consider not just the

25   "propriety" of the separation, 32 C.F.R. § 724.902 (separation improper if "[t]here exists a[]

26   [prejudicial] error of fact, law, procedure, or discretion associated with the discharge"), but also

27

28   any factual allegations that, if true, would support a conclusion of content or viewpoint
     discrimination.

the "equity" of the separation, 32 C.F.R. § 724.903.  The latter includes, <u>inter alia</u>, whether "the policies and procedures under which the applicant was discharged differ in material respects from policies and procedures currently applicable," <u>id.</u> § 724.903(a), whether the separation "was inconsistent with standards of discipline in the military service," <u>id.</u> § 724.903(b), and whether the applicant's overall service record warrants a more favorable characterization of separation. <u>Id.</u> § 724.903(c).  If the NDRB were to find in Plaintiff's favor, it could "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553(b).   While unlike the BCNR, the NDRB cannot return Plaintiff to his position in the Marine Corps, 32 C.F.R. § 724.205(a)(4) ("The Board shall have no authority to . . . [r]einstate a person in the Naval service"), Plaintiff does not ask for that.  <u>See</u> First Am. Compl. at 10:4-13.

Plaintiff has available to him two separate routes by which he can challenge his separation, as he is aware.  <u>See</u> March 21, 2012 Notification at 9 ("I have read and fully understand the Purpose and Scope of the NDRB and BCNR").  He will not be harmed if the Court refuses to serve as a third.

In any event, Plaintiff's allegations as to the harm caused him by his separation make out at best a claim for purely financial harm that could be remediated.  As discussed above, Plaintiff does not allege that his separation or its "Other Than Honorable" characterization actually will hinder his ability to earn a livelihood in his chosen profession, severely or otherwise.  While he seeks back pay, he does not ask for reinstatement, and does not say how much back pay he believes he is owed.  Because he was set to leave the service on July 28, 2012, less than three months after he was separated on May 4, 2012, First Am. Compl. ¶ 6, the amount of any such back pay would be reduced.

Although Plaintiff alleges that the "Other Than Honorable" characterization of his separation "divests the separated member of significant veterans' benefits for his lifetime," First Am. Compl. ¶ 13, he does not specify what benefits he has in mind or allege that he would, if he could, make use of any such benefits.  These propositions do not speak for themselves; for example, while a veteran who received a "dishonorable" separation is <u>per se</u> ineligible for health and disability benefits, a veteran who receives an "Other Than Honorable" separation may or

1   may not be eligible, depending on whether it is adjudged to have been issued "under

2   dishonorable conditions" or not.  See 38 C.F.R. §§ 3.12(c)(6), (d)(4)  (discussing situations under

3   which "Other Than Honorable" discharge will be considered issued "under dishonorable

4   conditions," and thereby render service member ineligible for health and disability benefits).

5   **III.   JUDICIAL REVIEW WOULD INTERFERE WITH MILITARY FUNCTIONS INVOLVING**

6   **EXTENSIVE MILITARY DISCRETION AND EXPERTISE.**

7         Finally, the third and fourth Mindes factors weigh heavily against judicial review.  Those

8   factors – "'[t]he extent of interference with military functions" and "[t]he extent to which

9   military discretion or expertise is involved,'" Wenger, 282 F.3d at 1075 (quoting Khalsa v.

10  Weinberger, 779 F.2d 1393, 1398 (9th Cir. 1985)) – are generally considered together.  Id.  In

11  denying Plaintiff's motion for a preliminary injunction, the Court determined that these

12  intertwined factors counseled against review.  ECF No. 32 at 8–12.  Even if it is not law of the

13  case, see S. Or. Barter Fair v. Jackson Cnty., Or., 372 F.3d 1128, 1136 (9th Cir. 2004) ("decisions

14  on preliminary injunctions . . . do not constitute the law of the case"), the Court's analysis of

15  Plaintiff's claims under the third and fourth Mindes factors also is applicable here at the motion-

16  to-dismiss stage, and compels the same conclusion, because the issues presented by Plaintiff's

17  claims have not changed.

18        As noted supra, Plaintiff's challenge to his discharge implicates core personnel matters

19  within the unique province of military discretion.  As the United States Court of Appeals for the

20  District of Columbia Circuit has emphasized, judicial deference to military discretion is at its

21  apogee where discharge decisions are concerned:

22        [C]ourts have shown extreme reluctance to interfere with the military's lawful
          exercise of its discretion over internal management matters.  This deference is at
23        its highest when the military, pursuant to its own regulations, effects personnel
          changes through the promotion or discharge process.

24
25  Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir. 1979) (internal citations omitted) (cited with

26  approval, Wenger, 282 F.3d at 1076).  "Courts have declined to review a variety of employment

27  actions involving military personnel because, in the military, 'overriding demands of discipline

28  and duty' prevail, demands which do not have a counterpart in civilian life."  Mier v. Owens, 57

    F.3d 747, 749 (9th Cir. 1995) (quoting Chappell v. Wallace, 462 U.S. 296, 300 (1983)).

Each of Plaintiff's claims implicates the same concerns of interference with military functions and military discretion or expertise.[5]

**A.   JUDICIAL REVIEW OF PLAINTIFF'S FIRST CLAIM—VIOLATION OF THE DUE PROCESS CLAUSE—WOULD SUBSTANTIALLY INTERFERE WITH MILITARY DISCRETION AND EXPERTISE.**

The first Count of Plaintiff's complaint alleges that "[t]he conduct of [his] discharge proceedings and/or AdSep hearing violate[d] [his] right to due process[.]"  First Am. Compl. ¶ 37.  For precisely the same reasons identified by the Court in denying Plaintiff's motion for preliminary injunction, judicial review would interfere extensively with military functions and would invade areas of substantial military discretion and expertise.  In particular, as noted by the Court, Plaintiff has available to him two statutory review processes designed by Congress by statute and the Navy by implementing regulation to address claims like those he has asserted; judicial review would interfere with those statutory processes.  ECF No. 32 at 11-12.

First, Plaintiff is entitled to seek review of his discharge before the BCNR.  See Part II, supra.  The BCNR is statutorily empowered to review Plaintiff's claims that his discharge proceedings and/or Administrative Separation hearing provided him inadequate process.  See id. More to the point, the BCNR panel is statutorily empowered – and would be better suited than an

---

[5] The justiciability of this action challenging Plaintiff's discharge—both the procedures leading up to the discharge and the substantive outcome—should be evaluated as a whole.  The Mindes doctrine governs the justiciability of "internal military decision[s]," not the justiciability of a particular claim or legal theory taking issue with such a military decision. See Khalsa v. Weinberger, 779 F.2d 1393, 1398 (9th Cir. 1984) (reaff'd, 787 F.2d 1288 (1985) ("an internal military decision is unreviewable unless . . ."); see also Wenger, 282 F.3d at 1072 ("The parties agree that Mindes controls actions such as this in which a member of the National Guard challenges a military decision" (emphases added)).  Furthermore, it would not be feasible for the Court to review one claim (or one legal theory) while leaving Plaintiff to seek recourse for his other claim (or legal theories) from the BCNR or the NDRB.  Such a piecemeal approach would not be feasible because the relief Plaintiff seeks on both claims is the same, so a favorable decision from the BCNR or NDRB on one claim could moot any district court proceeding on another claim (and vice versa), or the court and Board could come to different and potentially conflicting conclusions.  And such an approach would not be feasible because both counts of Plaintiff's claim involve the same transaction or occurrence—the decision to discharge him—so the conclusion of one proceeding could create res judicata effects for the other.  In any event, the distinction is one without a difference; as explained above, this action is non-justiciable as a whole, whether analyzed all together, claim by claim, or legal theory by legal theory.

1    Article III court – to evaluate in the first instance such claims in the unique context of Marine

2    Corps decision-making as to core personnel matters such as discharge.  See id.

3          Second, Plaintiff is entitled to seek review of the characterization of his discharge before

4    the NDRB.  See Part II, supra.  Like the BCNR, the NDRB is statutorily empowered and

5    particularly well-equipped to review Plaintiff's claims concerning core military personnel

6    matters.  See id.  Indeed, reviewing discharges is its very purpose.

7          Thus, as emphasized by the Court in denying Plaintiff's motion for preliminary

8    injunction, "because Congress created a comprehensive internal system of justice to regulate

9    military life, the Court's intervention at this stage would be premature and interfere with military

10   functions."  ECF No. 32 at 11.  Should Plaintiff invoke either form of review, the decision of

11   either board ultimately could be subject to judicial review, with the potential remedy of remand

12   to the Marine Corps for reconsideration.  Id. at 11, 12 (citing Chappell, 462 U.S. at 303).

13   **B.      JUDICIAL REVIEW OF PLAINTIFF'S SECOND CLAIM WOULD SUBSTANTIALLY**

14   **INTERFERE WITH MILITARY DISCRETION AND EXPERTISE.**

15         As noted in Part I.B, supra, Plaintiff's second claim is a straightforward assertion that his

16   discharge violated the First Amendment, but actually articulates multiple alternative (and not

17   independently dispositive) theories of liability in support of the same claim.  First Am. Compl.

18   ¶¶ 39–40.  Whether viewed as a whole or broken down by discrete theories of liability, judicial

19   review of this claim would substantially interfere with functions requiring military discretion and

20   expertise under the third and fourth Mindes factors.

21         Judicial review of Plaintiff's wrongful discharge First Amendment claim would

22   substantially interfere with military functions involving extensive military discretion and

23   expertise for the same reasons identified by the Court in denying Plaintiff's motion for

24   preliminary injunction.  ECF No. 32 at 9–10.  First, judicial review would interfere with the

25   intended operation of the BCNR and NDRB processes.

26         Furthermore, as the Court noted in its decision, "[t]he First Amendment protects speech

27   in the military, unless it 'interferes with or prevents the orderly accomplishment of the mission or

28   presents a clear danger to loyalty, discipline, mission, or morale of the troops.'"  Id. at 9 (quoting

21

1    <u>United States v. Wilcox</u>, 66 M.J. 442, 448 (C.A.A.F. 2008)).  Thus, the very standard employed

2    to assess whether a Marine's speech is protected by the First Amendment goes precisely to the

3    heart of functions involving military discretion and expertise – the effectiveness of the military's

4    mission or danger to loyalty, discipline, mission, or morale.  <u>Id.</u>  Count II, much like Plaintiff's

5    previous motion for preliminary injunction, "asks the Court to substitute its judgment for the

6    military's personnel decision-making judgment."  <u>Id.</u> at 10.  Just as the Court concluded in

7    denying Plaintiff's motion for preliminary injunction, the Court should conclude that the third

8    and fourth <u>Mindes</u> factors weigh strongly against judicial review of this claim.

9         Second, the same outcome holds true when Plaintiff's overall claim is broken down

10   argument by argument.   In attacking the two separate serious offenses at issue in his

11   "Misconduct" discharge, Plaintiff alleges, respectively, that his speech "did not violate [UCMJ]

12   Article 134," First Am. Compl. ¶ 39, and that his speech "did not violate DOD Directive

13   1344.10."  Id. ¶ 40.  As to Plaintiff's assertion that he did not violate UCMJ Article 134, the

14   Court's ruling on Plaintiff's motion for preliminary injunction – that "military discretion and

15   expertise is required to determine whether Plaintiff violated [Article 134] and whether separation

16   is warranted[]" – also holds true at the Rule 12(b)(6) stage.  As the Court explained, "Plaintiff's

17   claim that he did not violate Article 134 [] depends upon an assessment as to whether Plaintiff's

18   actions interfered with good order and discipline."  ECF No. 32 at 9.  That assessment represents

19   a textbook application of military discretion and expertise.  <u>Id.</u> (citing <u>Wilcox</u>, 66 M.J. at 448;

20   <u>Wenger</u>, 282 F.3d at 1072).

21        Likewise, the Court's conclusion at the preliminary injunction stage as to Plaintiff's

22   argument that he did not violate DOD Directive 1344.10 retains all of its force.  As the Court

23   explained, "this case does not involve a discipline for generalized social media statements by a

24   Marine.  Rather, [Plaintiff's] METOC comments, that were later clarified, identified himself as

25   an active-duty Marine who would not follow all orders from his Commander-in-Chief.  Id. at 10.

26   On the basis of those facts, it is "peculiarly within the expertise and judgment of the military[]"

27   to determine "the impact of Plaintiff's actions on military morale, discipline, and defense."  Id.

28   (citing <u>Khalsa</u>, 779 F.2d at 1400 n.4).

1    Finally, judicial review of Plaintiff's constitutional arguments attacking the second

2    serious offense underlying his discharge – his violation of DOD Directive 1344.10 – would

3    substantially interfere with military functions involving extensive military discretion and

4    expertise for the same reasons previously identified by the Court in its preliminary injunction

5    ruling.   ECF No. 32 at 9–10.   These arguments contend, respectively, that DOD Directive

6    1344.10 is vague or overbroad as applied to Plaintiff; that it unconstitutionally restricts core

7    political speech; and/or that it unlawfully discriminates based on the content or viewpoint of

8    speech.   First Am. Compl. ¶ 40.   Just as with Plaintiff's challenge to the UCMJ Article 134

9    charge, judicial review of each such argument under DOD Directive 1344.10 would also require

10   the Court to assess the effects of Plaintiff's speech on Marine Corps morale, discipline, and good

11   order – all functions implicating military discretion and expertise.   See ECF No. 32 at 9–10.

12    In sum, the third and fourth <u>Mindes</u> factors weigh heavily against judicial review of

13   Plaintiff's second claim.

14                                    **CONCLUSION**

15    For the reasons set forth above, the Court should dismiss this action as non-justiciable

16   pursuant to Fed. R. Civ. P. 12(b)(6).   In the alternative, even if the Court holds that this action is

17   justiciable, this action should nonetheless be dismissed because neither Count of Plaintiff's First

18   Amended Complaint states a claim upon which relief can be granted.

19   DATED: November 30, 2012                Respectfully submitted,

20                                           STUART F. DELERY
21                                           Principal Deputy Assistant Attorney General

22                                           LAURA E. DUFFY
                                             United States Attorney

23                                           VINCENT M. GARVEY
24                                           Deputy Branch Director

25                                           */s/ Christopher R. Hall*
                                             CHRISTOPHER R. HALL
26                                           MATTHEW J.B. LAWRENCE
                                             Attorneys
27                                           United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883
28                                           Washington, D.C. 20044
                                             Telephone:    (202) 304-4778

                                             23

1                            Attorneys for Defendant

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2012, I electronically filed a copy of the foregoing Memorandum.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's CM/ECF System.


*/s/ Matthew J.B. Lawrence*
MATTHEW J.B. LAWRENCE