1   NATHANIEL J. OLESON (SBN 276695)
    UNITED STATES JUSTICE FOUNDATION
2   932 "D" Street, Suite 3
    Ramona, CA 92065
3   Tel: (760) 788-6624
    Fax: (760) 788-6414
4   usjf@usjf.net

5   DAVID LOY (SBN 229235)
    ACLU FOUNDATION OF SAN DIEGO &
6       IMPERIAL COUNTIES
    P.O. Box 87131
7   San Diego, CA 92138-7131
    Tel: (619) 232-2121
8   Fax: (619) 232-0036
    davidloy@aclusandiego.org
9
    NICHOLAS R. GREY (SBN 283780)
10  P.O. Box 90142
    San Diego, CA 92169
11  Tel: (619) 800-4739
    nic@grey-law.com
12
    STEWART RHODES
13  OATHKEEPERS
14  5130 S. Fort Apache Road. Suite 215-160
    Las Vegas, NV 89148
15  Tel:  (702) 353-0627
    rhodeslegalwriting@gmail.com
16
    Attorneys for Plaintiff
17

18                  **UNITED STATES DISTRICT COURT**

19                 **SOUTHERN DISTRICT OF CALIFORNIA**

20  GARY A. STEIN,                          | **Case No. 12-cv-0816 H (BGS)**

21              Plaintiff,                   | **PLAINTIFF GARY STEIN'S
                                               MEMORANDUM OF POINTS AND**
22       v.                                    **AUTHORITIES IN OPPOSITION TO
                                               MOTION TO DISMISS**
23  RAY MABUS, Secretary of the Navy,
                                               Judge:      Hon. Marilyn L. Huff
24              Defendant.                      Date:       February 11, 2013
                                               Time:       10:30 a.m.
25                                             Room:       13

26

27

28

1

# TABLE OF CONTENTS

2

3      TABLE OF AUTHORITIES.. ......................................................... iii

4      INTRODUCTION.. ................................................................... 1

       FACTS.. ............................................................................. 1
5
       ARGUMENT.. ....................................................................... 8
6
          A. This Case Presents Strong Constitutional Claims Warranting Immediate
7             Judicial Review.. ........................................................... 9

8             1. STEIN's Discharge Violated the First Amendment.............................9
9
                 a. Under Military Law Itself, Article 134 Does Not Disobey
10                  or Advocate Disobedience to any Order Actually Given to
                    Him or Anyone Else…................................................. 10
11
                 b. DOD Directive 1344.10 Is Unconstitutional As Applied to
12                  STEIN.. .............................................................. 12
13
                 c. The Marine Corps Violated STEIN's First Amendment Right to
14                  Petition the Court for Redress…......................................... 16
15
              2. STEIN's Discharge Violated Due Process Because the Marine Corps
16               Denied Him the Right to Rebut Prosecution Evidence and the Neutral
17               Legal Advisor Acted in Effect as a Prosecutor….........................  17

18        B. STEIN Will be Significantly Harmed if the Court Defers Judicial Review…….. 20
19
          C. This Case Involves Questions of Constitutional Law that Do Not Implicate
20            Uniquely Military Functions or Expertise.. .............................. 22
21
       CONCLUSION..................................................................... 23
22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*American Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979 (9th Cir. 2004) .................. 14

*Beck v. West*, 13 Vet. App. 535 (2000) ....................................................................... 21

*Bland v. Connally*, 293 F.2d 852 (D.C. Cir. 1961) ..................................................... 18

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ......................................................... 18

*Boyd v. Hagee*, No. 06-cv-1025 (S.D. Cal. Feb. 19, 2008) ......................................... 21

*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508 (1972) .......................... 17

*Christoffersen v. Washington State Air Nat. Guard*, 855 F.2d 1437 (9th Cir. 1988) ............... 17

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ........................................................ 13

*City of Houston v. Hill*, 482 U.S. 451 (1987) .............................................................. 11

*City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002) .............................................. 15

*Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C. Cir. 1975) ........................................ 9

*Cooney v. Dalton*, 877 F. Supp. 508 (D. Haw. 1995) ................................................. 23

*Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) ....................................................... 20

*Dilley v. Alexander*, 603 F.2d 914 (D.C. Cir. 1979) .................................................... 23

*Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973) ...................................................... 23

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................ 20

*Ethredge v. Hall*, 56 F.3d 1324 (11th Cir. 1995) ....................................................... 11

*FCC v. League of Women Voters of Cal.,* 468 U.S. 364 (1984) ................................................ 15

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) ........................................... 13

*Griffin v. United States*, 502 U.S. 46 (1991) .............................................................. 17

*Grimm v. Brown,* 449 F.2d 654 (9th Cir. 1971) ......................................................... 17

*Hurles v. Ryan*, No. 08-99032 (9th Cir. Jan. 18, 2013) .............................................. 20

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) ................................................. 14

*Kauffman v. Secretary of the Air Force*, 415 F.2d 991 (D.C. Cir. 1969)............................18, 21

*Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123 (9th Cir. 2001)..............................................18

*Long Beach Area Peace Network v. City of Long Beach*,
   574 F.3d 1011 (9th Cir. 2009).........................................................................................15

*McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998)................................................................23

*Meinhold v. Department of Defense,* 34 F.3d 1469 (9th Cir. 1994) ........................................23

*Millican v. United States*, 744 F. Supp. 2d 296 (D.D.C. 2010) ..........................................11, 21

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) ...................................................................9, 22

*Muhammad v. Secretary of Army*, 770 F.2d 1494 (9th Cir. 1985)...........................................8

*Murillo v. Mathews*, 588 F.2d 759 (9th Cir. 1978) ...................................................................21

*Parker v. Levy*, 417 U.S. 733 (1974) .....................................................................................9, 11

*Priest v. Secretary of Navy*, 570 F.2d 1013 (D.C. Cir. 1977) ..................................................11

*Rigdon v. Perry*, 962 F. Supp. 150 (D.D.C. 1997)................................................................4, 16

*S.O.C., Inc. v. County of Clark*, 152 F.3d 1136 (9th Cir. 1998) ...............................................20

*Sable Comm. of Cal., Inc. v. FCC*, 492 U.S. 115 (1989) ..........................................................15

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989) ...........................................17

*Stainback v. Mabus*, 671 F. Supp. 2d 126 (D.D.C. 2009)...................................................17, 20

*Stein v. Dowling*, 867 F. Supp. 2d 1087 (S.D. Cal. 2012) ......................................................3, 9

*Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622 (1994) ...................................................15

*United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008)....................................................9, 10, 12

*Weinberger v. Salfi*, 422 U.S. 749 (1975)..................................................................................21

*Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002)..........................................................8, 9, 22


<u>STATUTES</u>

10 U.S.C. § 934......................................................................................................................10

OTHER AUTHORITIES

"Guidance on Dissent," AGAM-P, Headquarters, Department of the Army, 23
    June 1969) .............................................................................................................9

REGULATIONS

38 C.F.R. § 3.12(d)(4) ...........................................................................................21

**INTRODUCTION**

Plaintiff Gary Stein (hereinafter referred to as "STEIN") was unlawfully subjected to an involuntary "other than honorable" discharge from the United States Marine Corps in violation of the First and Fifth Amendments to the United States Constitution.  Though the First Amendment may operate differently in the military and civilian contexts, the military must still respect freedom of speech.  STEIN served with honor in the Marine Corps and spoke on matters of public concern in his capacity as a private citizen.  Taken in their full context, his statements are protected by the First Amendment to the United States Constitution, as interpreted and applied by both civilian and military courts.  Nonetheless, the Marine Corps retaliated against STEIN with an other than honorable discharge because of the content and viewpoint of his political speech. Moreover, the process by which STEIN was involuntarily discharged violated the Due Process Clause of the Fifth Amendment.  This case presents questions of constitutional law that are squarely within this Court's authority to decide.  It does not implicate uniquely military issues, and therefore the Court owes no deference to military expertise.  As a result, the Court should exercise its judicial power to review the constitutionality of STEIN's discharge without forcing him to endure prolonged administrative review.

**FACTS**

According to the First Amended Complaint (hereinafter referred to as "FAC"), which must be taken as true for purposes of this motion, STEIN served for almost ten years in the Marine Corps, beginning September 11, 2002, and attained the rank of Sergeant on May 1, 2008. Over his objection, he was involuntarily subjected to an "other than honorable" (hereinafter referred to as "OTH") discharge from the Marine Corps on May 4, 2012.  But for the discharge, he would have continued serving in the Marine Corps until his term of service expired on July 28, 2012.  He had previously requested an extension of his term until June 28, 2013.  FAC ¶ 6.

From 2010 to 2012, STEIN—through activities unconnected with his duties as a Marine, and on his own personal time—and three other individuals, spoke, wrote, and otherwise communicated with other private citizens in connection with a variety of matters of public concern, including public policy issues.  In so doing, STEIN expressed personal opinions on

political candidates and issues, but not as a representative of the Armed Forces of the United States.  STEIN, and the three other individuals maintained an account on Facebook (hereinafter referred to as "Facebook page").  FAC ¶ 8.

In April 2010, STEIN was approached by a representative of Chris Matthews, host of the television program "Hardball," about appearing on that show.  He obtained permission from his immediate superior, his Gunnery Sergeant, and made travel plans to so appear.  On his way to appear on the television program, he received a telephone call from Headquarters, Marine Corps, in Quantico, Virginia, and he was ordered to return to his base.  Subsequently, he was approached by his Chief Warrant Officer concerning his Facebook page, because of the possibility that it could be construed as emanating from military sources, rather than from private sources.  STEIN took down his Facebook page while he reviewed the matter.  STEIN was urged by a Judge Advocate of the First Marine Expeditionary Force to add a disclaimer to his Facebook page that all statements therein are personal views, not made in an official capacity, and not representing the views of the U. S. Marine Corps, if he was going to leave the page up.  STEIN thereafter put his Facebook page back up on the Internet, adding thereon an appropriate disclaimer, consistent with what he had been advised concerning the permissible maintenance of a Facebook page.  STEIN was not advised, at that time, or at any subsequent time, to take down the Facebook page, to remove it from the Internet, or to make any further modifications thereto.  FAC ¶ 9.

From November 2010, to March 1, 2012, STEIN is alleged to have posted on his Facebook page various criticisms of President Barack Obama, questions concerning the Obama Administration's policies, and critiques of John McCain, Ron Paul, Newt Gingrich, Rick Santorum, Mitt Romney, and others.  However, STEIN did not disobey or advocate disobeying any particular order actually issued by any superior officer.  Though some of the language he used in discussing certain hypothetical unlawful orders might have been viewed as intemperate, he subsequently clarified, repeatedly, and publicly, that he was only discussing the settled principle of military law that service members should not follow unlawful orders.  FAC ¶ 10.

During the 17-month period from November 2010, through March 1, 2012, no attempt was made by any of STEIN's commanding officers, or any other Marine Corps officer, to restrict,

1    or correct STEIN's Facebook activities, including his comments about Barack Obama as a

2    candidate for reelection, nor was there any effort by any defendant, or person serving any

3    defendant, to modify or change the Facebook content, or to counsel or discuss said content in

4    relation to STEIN's duties as a member of the Marine Corps, or otherwise to advise STEIN that

5    his Facebook activities in any way prejudiced the good order and discipline of the Marine Corps.

6    FAC ¶ 11.

7            Instead, on March 21, 2012, STEIN was notified by his Commanding Officer, Colonel

8    Dowling, of the institution of Administrative Separation (hereinafter referred to as "AdSep")

9    Proceedings, whereby Dowling was recommending STEIN's discharge from the U.S. Marine

10   Corps, because of alleged misconduct as set forth in a Notification of Administrative Separation

11   Proceedings (hereinafter referred to as "Notification"):

12       The bases for this recommendation are as follows: (1) that on or about 1 March
         2012, you allegedly made statements regarding the President of the United States
13       that are prejudicial to good order and discipline, as well as service discrediting in
         violation of Article 134, UCMJ; (2) from on or about November 2010 to the
14       present you allegedly created, administered, and provided content to a Facebook
         page, as well as other online media sources, in violation of DOD Directive
15       1344.10.

16   FAC ¶ 12.

17          According to the Notification, Dowling intended to recommend that STEIN receive a

18   separation from service characterization of "Other Than Honorable Conditions" (hereinafter

19   referred to as "OTH").  An OTH characterization is the worst possible mark on a service

20   member's record that can be imposed without the convening of a Court Martial Board.

21   Moreover, it is the legal equivalent to the stigma of a Bad Conduct Discharge, imposed in a

22   sentence of a Court Martial, and divests the separated service member of significant veterans'

23   benefits for his lifetime.  Further, such a characterization could follow STEIN for the rest of his

24   life, and impact his future ability to earn a livelihood.  FAC ¶ 13.

25          The Notification required STEIN to respond—in default of which his rights would be

26   "waived"—within two working days, the absolute minimum time required by Section 6304.4 of

27   the Marine Corps Separation and Retirement Manual (hereinafter referred to as

28   "MARCORSEPMAN").  The Notification was served on STEIN during a period that the

1  responsible officials knew that all Judge Advocates General serving as defense counsel at

2  STEIN's base were involved in annual legal training, and were, therefore, unavailable to consult

3  with him before his response was required to be filed.  FAC ¶ 14.

4      STEIN responded timely to the Notification, and the responsible officials immediately

5  scheduled an AdSep hearing for March 30, 2012—just nine days after the Notification.  The

6  responsible officials were aware that any members of the Judge Advocates able to serve as

7  defense counsel were at a conference and could not begin work on STEIN's case until March 23,

8  2012, at the earliest.  FAC ¶ 15.

9      On March 23, 2012, STEIN's military attorney notified the hearing officer that he had a

10  scheduling conflict on Friday, March 30, 2012.  In response, by letter dated March 26, 2012, the

11  hearing was delayed one day, until Saturday, March 31, 2012.  On March 25, 2012, STEIN

12  requested an additional one week in order to allow more adequate preparation for the hearing, but

13  that request was summarily denied on March 26, 2012.  FAC ¶ 16.

14      On March 26, 2012, STEIN retained as civilian counsel J. Mark Brewer, pursuant to

15  MARCORSEPMAN, Section 6304.3(c).  On March 27, 2012, STEIN's civilian counsel again

16  requested an extension of the hearing date for 10 days.  On March 28, 2012, that request was

17  denied, but the hearing date was adjourned to April 5, 2012.  FAC ¶ 17.

18      On March 30, 2012, STEIN's JAG attorney submitted a Request for Legal Ethics

19  Opinion, which sought a response to three questions relevant and necessary to the conduct and

20  outcome of the Notification hearing:

21      "1. Has the Defense Department's Directive Number 1344.10 and other interpretative

22      documents been modified to fully comply with the Order ... in *Rigdon v. Perry*, 963 F.

23      Supp. 150, 164 (D.D.C. 1997).... ?"

24      "2. May an active duty, non-commissioned, U.S. Marine maintaining a Facebook web

25      page bearing a clear disclaimer that all statements are personal views, not made in an

26      official capacity and not representing the views of the Marine Corps, make statements

27      thereon supporting or opposing either (i) a political party or (ii) a candidate for federal,

28      state or local office or (iii) both?"

"3. May such a Marine make statements critical of a candidate for political office when that candidate is also currently serving in office? Does a separate rule apply to criticisms of a candidate for political office serving as President of the United States?"

The Request for a Legal Ethics Opinion was orally denied on March 30, 2012.  FAC ¶¶ 18-19.

STEIN and newly-retained civilian co-counsel had insufficient time to prepare for the AdSep hearing.  STEIN's repeated request for a 10-day extension of the date for a hearing on the Notification was reasonable and necessary, such an extension constituting the minimum amount of time necessary for his legal counsel to consult with STEIN, interview witnesses, review documents and Internet pages, gather and prepare hearing exhibits, and assist in STEIN's preparation to testify and present an adequate defense at the AdSep hearing, which raised significant constitutional issues far more complex than normally presented at a typical discharge hearing.  FAC ¶¶ 20-21.

Although Department of Defense (hereinafter referred to as "DOD") Directive 1344.10 paragraph 5.2 requires Defendant Ray Mabus (hereinafter referred to as "MABUS") to issue implementing instructions, to determine the manner in which the DOD Directive will be applied to the Navy and Marine Corps, no such instructions were issued.  Although MARCORSEPMAN requires counseling of a Marine prior to proceeding to an Administrative Separation Board, no such counseling occurred.  FAC ¶¶ 22-23.

On April 3, 2012, STEIN filed his Complaint for Declaratory and Injunctive Relief, and filed an Ex Parte Motion for Temporary Restraining Order, and Order to Show Cause why a Preliminary Injunction Should Not Issue.  The Court declined to hear the motion ex parte and Defendants filed an answer on April 4, 2012.  A hearing on the motion for TRO was held on April 4, 2012, and the Court denied STEIN's motion that same day.

With counsel, STEIN appeared at the AdSep hearing on April 5, 2012.  FAC ¶ 25.  The hearing was permeated with procedural irregularities.  A transcript of the AdSep hearing (hereinafter referred to as "ASBT") has been filed with this Court (Doc. No. 26) and is subject to judicial notice, but the procedural problems are summarized below.

- On the hearing date, STEIN's military legal team was served with approximately 1 ½ inches of documentary evidence that the prosecution was submitting to the administrative separation board (hereinafter referred to as "AdSep Board") for consideration. STEIN's legal team had never seen most of the documents before, and, as a result, counsel requested a continuance to review the newly-submitted evidence and prepare responses to it.  The Board denied the request and forced counsel to proceed without having reviewed the new documents prior to the hearing.  FAC ¶ 26; ASBT 66-68, 75, 89-92.

- At the hearing, the purportedly neutral legal advisor to the AdSep Board acted in effect as a part of the prosecutorial legal team.  Instead of answering the questions of the non-attorney members of the AdSep Board regarding legal advice, he effectively took over the power of the senior member, deciding objections to, and attempting to block voir dire of, both himself and of the Board, contrary to the normal procedures of an AdSep hearing.  The legal advisor also refused to answer certain questions on the grounds that, "We're not going to sit here and build up a record for federal court. That's not what this hearing is about," and threatened a superior officer (Lt. Col. Atterbury, the supervising officer for the military legal team for STEIN) with removal from the hearing, when Lt. Col. Atterbury objected to the interference by the legal advisor in the voir dire.  FAC ¶ 27; ASBT 2, 5, 7, 12, 16, 25-27, 29-30, 34-37, 85-86

- The prosecution admitted that the charges against STEIN did not warrant his separation from the Marine Corps, but argued that an "analogous" charge, which was not applicable to STEIN, as it only applied to Commissioned Officers, should be applied to him so that he could be discharged from the Corps.  Testimony was proffered, and written statements were submitted, from multiple defense expert witnesses, that contradicted this claim, and provided that the charges alleged against STEIN could not, as a matter of law, result in his discharge, but the testimony was not allowed by Lt. Col. Hairston.  Further, the written statements of

Brigadier General David Brahms, USMC (Ret.), Major Neil Ringlee, USMC (Ret.), and Lt. Col. Jeffrey Addicott (Army, Ret.), JD, LLM, SJD were submitted to the Board, but Lt. Col. Hairston refused to accept them into the record of the proceedings.  FAC ¶ 28; ASBT 121-122, 159-162, 225-226, 241-242, 273.

- The prosecution was allowed to ask their witnesses their opinions as to whether the alleged actions of STEIN contributed to a "breakdown of good order and discipline," but STEIN was denied the ability to present expert testimony to rebut that evidence.  FAC ¶ 29; ASBT 145, 159-162, 166-167, 192, 225-226, 241-242.

- Lt. Col. Hairston announced during the hearing, that the hearing would end at 5:00 p.m. and re-commence the next day.  As a result, due to the lateness of the day, and the fact that the prosecution had not yet completed examining their witnesses, STEIN's legal defense team started calling off the witnesses that they had on standby, ready to testify.  Subsequently, Lt. Col. Hairston announced that the hearing would go until it ended that day, even if it took until 11:00 p.m., which it did, and one of STEIN's witnesses could not testify, due to the legal team being unable to contact him.  FAC ¶ 30; ASBT 240-241.

During closing arguments at the AdSep hearing, the prosecution argued the following irrelevant and inappropriate matters:

- The claim that a publication called the Marine Corps Times published an article discussing the case.  ASBT 253.

- The claim that the "Tea Party" movement is a formal political party, and, thus, STEIN's attendance at a Tea Party meeting violated Department of Defense directives.  ASBT 255.

- The claim that STEIN had no commendations or citations on his military record. ASBT 256.

- The allegation that STEIN had bad debts.  ASBT 256.

- The claim that STEIN's initiation of this action seeking to protect his constitutional rights shows "this is not a Marine who thinks about the institution. This is not a Marine concerned with the institution."  ASBT 257.

FAC ¶ 31.

At the conclusion of the hearing, with only minimal deliberations, the AdSep Board recommended STEIN's OTH discharge from the Marine Corps by completing a boilerplate form that contained no substantive findings, discussions of the evidence, or substantial legal questions presented.  FAC ¶ 32.

On April 6, 2012, STEIN filed a Renewed Application for Temporary Restraining Order and Order to Show Cause why Preliminary Injunction Should Not Issue to stay any action resulting from STEIN's AdSep Board hearing.  The Court held a hearing on STEIN's renewed motion on April 6, 2012, and on that same day STEIN's motion was denied.  On April 12, 2012, STEIN filed a Motion for Preliminary Injunction.  Defendants filed their opposition the same day. On April 13, 2012, the Court held a hearing on the Motion, and subsequently denied STEIN's request for Preliminary Injunction.

On April 30, 2012, Brigadier General Yoo summarily approved the AdSep Board's recommendation and issued STEIN an OTH discharge from the Marine Corps, effective May 4, 2012.  FAC ¶ 34.  On October 10, 2012, STEIN filed his First Amended Complaint.  Defendants filed a Notice of Motion and Motion to Dismiss for Failure to State a Claim.

## **ARGUMENT**

As the Ninth Circuit has recognized, "Military discharge decisions are subject to judicial review."  *Muhammad v. Secretary of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985).  The Court may review STEIN's discharge if he alleges (a) violation of a constitutional right, federal statute, or military regulations, and (b) exhaustion of administrative remedies, unless exhaustion is excused. *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002).  Exhaustion of administrative remedies is excused "(1) if the intraservice remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if the

1    administrative appeal would be futile; or (4) if substantial constitutional questions are raised." *Id.*

2    at 1073.

3         As the Court has previously recognized, "Plaintiff alleges violations of his First and Fifth

4    Amendment rights" and exhaustion is excused because he "raises substantial Constitutional

5    questions." *Stein v. Dowling*, 867 F. Supp. 2d 1087, 1096 (S.D. Cal. 2012). Given that

6    constitutional violations are alleged and exhaustion is excused, the Court "weighs four factors to

7    determine whether judicial review of his claims is appropriate. These factors include: (1) The

8    nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is

9    refused; (3) The extent of interference with military functions; and (4) The extent to which

10   military discretion or expertise is involved." *Id.* (quoting *Wenger,* 282 F.3d at 1072). Taken from

11   *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), they are known as the *Mindes* factors. In this

12   case, the *Mindes* factors favor immediate judicial review.

13   **A.    This Case Presents Strong Constitutional Claims Warranting Immediate**
         **Judicial Review.**
14

15        Taken as true, the First Amended Complaint presents strong First and Fifth Amendment

16   claims that STEIN's discharge violated his fundamental constitutional rights, which he did not

17   surrender upon enlistment in the Marine Corps.

18   **1.    STEIN's Discharge Violated the First Amendment.**

19        The First Amendment unquestionably protects members of the military. In *United States*

20   *v. Wilcox*, 66 M.J. 442, 446-47 (C.A.A.F. 2008), the Court of Appeals for the Armed Forces

21   affirmed that speech "on issues of social and political concern … has been recognized as 'the core

22   of what the First Amendment is designed to protect.'" To be sure, the First Amendment operates

23   differently in the military and civilian contexts. But "members of the military are not excluded

24   from the protection granted by the First Amendment." *Parker v. Levy*, 417 U.S. 733, 758 (1974).

25   The military itself has recognized that "[t]he right to express opinions on matters of public and

26   personal concern is secured to soldier and civilian…." *Committee for GI Rights v. Callaway*, 518

27   F.2d 466, 470 (D.C. Cir. 1975) (quoting "Guidance on Dissent," AGAM-P, Headquarters,

28   Department of the Army, 23 June 1969).

1    The government alleged two grounds for discharging STEIN based on his speech: (1) he

2    made "statements regarding the President … that are prejudicial to good order and discipline, as

3    well as service discrediting in violation of Article 134, UCMJ"; (2) he violated DOD Directive

4    1344.10 by making certain comments on Facebook and the media.   Nothing alleged by the

5    government justified discharging STEIN on either ground for speech that is clearly protected by

6    the First Amendment.   In addition, the military prosecutor committed a clear First Amendment

7    violation during the administrative separation hearing, which contaminated the Board's findings

8    as well as the commanding officer's affirmance of those findings and independently violated the

9    First Amendment.

10           **a.**        **Under Military Law Itself, Article 134 Does Not Constitutionally Apply to STEIN's Speech, Which Did Not Disobey or Advocate Disobedience to any Order Actually Given to Him or Anyone Else.**

11

12   In relevant part, Article 134 prohibits "all disorders and neglects to the prejudice of good

13   order and discipline in the armed forces [and] all conduct of a nature to bring discredit upon the

14   armed forces."  10 U.S.C. § 934.  This sweeping language has survived "against constitutional

15   attack for vagueness and overbreadth" only "*in light of* the narrowing construction developed in

16   military law through the precedents of this Court and limitations within the Manual for Courts–

17   Martial."  *Wilcox*, 66 M.J. at 447 (emphasis in original).

18   The First Amendment protects speech in the military unless it "interferes with or prevents

19   the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline,

20   mission, or morale of the troops."  *Id.* at 448.  Article 134 is not a blank check to discharge

21   service members for speech disliked by their commanding officers.  To violate Article 134, the

22   government must show a "direct and palpable connection" between the "statements and the

23   military mission."  *Id.*  The statements must be taken in their full context.  *Id.* at 447.

24   Taken in their full context, as they must be, STEIN's statements regarding the President

25   amounted only to an admittedly colorful declaration that he would not follow hypothetical

26   unlawful orders.  That principle is far from controversial.  Indeed, it is a fundamental part of

27   military law, codified in Article 90 of the Uniform Code of Military Justice.  10 U.S.C. § 890.

28

Unlike service members in cases cited by the government, STEIN neither disobeyed nor advocated disobeying any particular order. *See Parker*, 417 U.S. at 736-37 (soldier "persisted in his refusal to obey the order" to conduct specified training and urged fellow soldiers "they should refuse to go to Viet Nam and if sent should refuse to fight"); *Priest v. Secretary of Navy*, 570 F.2d 1013, 1015 (D.C. Cir. 1977) (plaintiff "encouraged enlisted men to refuse promotions" and "listed the addresses of groups in Canada aiding military deserters"); *Millican v. United States*, 744 F. Supp. 2d 296, 300 (D.D.C. 2010) (Air Force officer "refused to receive" anthrax vaccine as ordered, "urged other members of the 312th to refuse the anthrax vaccine," and "actively encouraged other pilots to persuade additional members of [his] peer group (e.g. the pilot section) to defy official Air Force policy and refuse to undergo the anthrax immunization series").

Instead, STEIN simply participated in an online discussion about a public controversy. Though he may have initially used some intemperate language, he immediately, publicly, and repeatedly clarified that he was only talking about the accepted legal principle that unlawful orders need not be obeyed. The government therefore cannot show the necessary clear danger to loyalty, discipline, mission, or morale, especially given that the discussion took place far from any battlefield.[1] *Cf. Priest*, 570 F.2d at 1018 (statement "made at the front line of combat might be unprotected whereas the same statement would be protected in another place"). Indeed, it is the government that has threatened loyalty, discipline, mission, or morale by discharging a good Marine who at worst blew off steam by using some intemperate language but immediately cooled down to affirm his belief in the Constitution and fundamental principles of military law. If the government were to discharge every service member who has ever done the same in the heat of the moment, the armed services would be decimated. Even in the military, the First Amendment must protect a certain amount of "breathing space" for freedom of expression. *City of Houston v. Hill*, 482 U.S. 451, 467 (1987).

---

[1] For similar reasons, this case is also different from *Ethredge v. Hall*, 56 F.3d 1324 (11th Cir. 1995), in which military personnel filed complaints about a sticker displayed by the plaintiff on his truck and individuals threatened to break the windows of his truck if he continued to display the sticker. *Id.* at 1325. No such facts are present in this case.

The *Wilcox* decision strongly supports STEIN's position.  In *Wilcox*, the Court of Appeals for the Armed Forces struck down the Article 134 conviction of a service member who posted "an online profile containing … views in which the author identified himself as a 'US Army Paratrooper'" and expressed racist political views, as well as stating, "This government is not worth supporting in any of its components."  66 M.J. at 445.  According to the court, the First Amendment prohibited a conviction based on the message "expressed in his online profiles," without any evidence that "the communications either 'interfere[d] with or prevent[ed] the orderly accomplishment of the mission,' or 'present[ed] a clear danger to loyalty, discipline, mission, or morale of the troops.'"  *Id.* at 446, 449.  As a result, the court found that Wilcox's speech did not threaten "good order or discipline" under Article 134.

Here, STEIN's statements, however colorful, were far less extreme than those in *Wilcox* and therefore much less likely to threaten good order or discipline, when all he did ultimately was to affirm his faith in the Constitution and discuss the principle against obeying unlawful orders. However intemperate his language might initially have been, his statements were far less outrageous than those of the soldier in *Wilcox*, who disclaimed support for the entire government. Moreover, here as in *Wilcox*, "it is pure speculation that the … views propounded on the Internet by a single person purporting to be a [Marine] … would be perceived by the public or a service member as an expression of [Marine Corps] or military policy."  *Id.* at 450.  Therefore, they could not "discredit" the service under Article 134.  If the Court of Appeals for the Armed Forces upheld Wilcox's right to freedom of speech, this Court may certainly uphold STEIN's right to speak.

### b.    DOD Directive 1344.10 Is Unconstitutional As Applied to STEIN.

Department of Defense Directive 1344.10 purportedly encourages "members of the Armed Forces … to carry out the obligations of citizenship."[2]  However, the directive is fatally vague and overbroad on its face or as applied to STEIN, in violation of the First Amendment, and cannot be enforced against him.

---

[2]  The full directive is available at http://www.dtic.mil/whs/directives/corres/pdf/134410p.pdf.

1    The Directive allows STEIN to "express a personal opinion on political candidates and

2    issues, but not as a representative of the Armed Forces," and "[w]rite a letter to the editor of a

3    newspaper expressing the member's personal views on public issues or political candidates, if

4    such action is not part of an organized letter-writing campaign or a solicitation of votes for or

5    against a political party or partisan political cause or candidate.  If the letter identifies the member

6    as on active duty (or if the member is otherwise reasonably identifiable as a member of the

7    Armed Forces), the letter should clearly state that the views expressed are those of the individual

8    only and not those of the Department of Defense."  Dir. 1344.10 §§ 4.1.1.1, 4.1.1.6.  STEIN can

9    "[d]isplay a political bumper sticker on [his] private vehicle" and "[j]oin a partisan or nonpartisan

10   political club and attend its meetings when not in uniform."  *Id.* §§ 4.1.1.3, 4.1.1.8.

11      However, he cannot "[a]llow or cause to be published partisan political articles, letters, or

12   endorsements signed or written by the member that solicits votes for or against a partisan political

13   party, candidate, or cause."  *Id.* § 4.1.2.3.  Somehow, this prohibition "is distinguished from a

14   letter to the editor as permitted under the conditions noted in subparagraph 4.1.1.6."  *Id.*

15   Moreover, he cannot "[s]erve in any official capacity with or be listed as a sponsor of a partisan

16   political club … [s]peak before a partisan political gathering, including any gathering that

17   promotes a partisan political party, candidate, or cause," or "[p]articipate in any radio, television,

18   or other program or group discussion as an advocate for or against a partisan political party,

19   candidate, or cause."  *Id.* §§ 4.1.2.4, 4.1.2.5, 4.1.2.6.

20      The fatal confusion in this ambiguous Directive renders it vague and unenforceable under

21   the First Amendment.  A law must be clear enough so that it enables "ordinary people to

22   understand what conduct it prohibits" and does not "authorize and even encourage arbitrary and

23   discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).  When "First

24   Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is

25   required."  *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998).  The Directive, which

26   regulates political speech at the heart of the First Amendment, fails this test.  It says a service

27   member may express his "personal opinion on political candidates and issues," including writing

28   a "letter to the editor of a newspaper expressing the member's personal views on public issues or

political candidates."  However, he is also told that he may not engage in any activity that could be construed as partisan advocacy or endorsement on behalf of any specific political candidate or issue.  *See* §§ 4.1.1.6 and 4.1.2.3.  The distinction between expressing an opinion publicly on political candidates, which is permitted, as opposed to partisan advocacy and endorsements, which is prohibited, is not explained in such a way as to ensure that the service members would know what they can and cannot say. Without providing a careful distinction between expressing one's opinion and partisan advocacy or endorsement, it appears that the rights of a service member under this policy depend upon the zeal, or lack thereof, in the expression of one's opinion, or the subjective opinion of whoever might be deciding the question—precisely the evil the First Amendment is designed to prevent.  *See Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012) (existence of unbridled "discretionary power" to restrict speech "is inconsistent with the First Amendment").

Moreover, the definition of "partisan political activity" is vague if not overbroad.  That term is defined as "[a]ctivity supporting or relating to candidates representing, or issues specifically identified with, national or State political parties and associated or ancillary organizations or clubs."  *Id.* § E2.5.  This sweeping definition cannot possibly be enforceable.  By encompassing any activity "relating to … issues specifically identified with" political parties or associated clubs, the definition of "partisan" reaches virtually almost any speech relating to any conceivable political issue.  There is virtually no political issue on which parties take no position, and thus virtually no issue not "specifically identified" with one or more political parties—not to mention all of their "associated or ancillary organizations or clubs."  *Cf. American Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979, 986 (9th Cir. 2004) (statute that "applies to 'material or information *relating to* an election, candidate or any question on a ballot' … reaches objective publications that concern any aspect of an election, candidate, or ballot question—including, for example, discussions of election procedures, analyses of polling results, and nonpartisan get-out-the-vote drives, such as those conducted by the League of Women Voters").  As a result, a Marine like STEIN has no practical way to know whether his speech would be deemed

1    "partisan," and the Directive is therefore subject to arbitrary enforcement, which is precisely what

2    the rule against vagueness is supposed to prevent, especially in the First Amendment context.

3            In that vein, a service member cannot reasonably be expected to discern whether

4    "partisan" applies to loose, unaffiliated groups such as the "Tea Party" that are often at odds with

5    both major political parties, or a Facebook page in the name of "Armed Forces Tea Party," which

6    carries an express disclaimer that it does not represent the views of the government or armed

7    forces.  Moreover, a service member cannot reasonably understand what the Directive means by

8    "partisan … letters … that solicit[] votes for or against a partisan political party, candidate, or

9    cause."  What is a partisan "cause"?  What is the difference between "soliciting votes," which is

10   prohibited, and expressing "personal views," which is not?  Given that the government has failed

11   to specify exactly how STEIN allegedly violated Directive 1344.10, it is difficult to respond

12   further, except to say that the Directive suffers fatal vagueness problems.

13           Even if not vague, it remains unconstitutional because it is an unconstitutional content-

14   based, if not viewpoint-based, restriction on political speech of service members in their

15   capacities as private citizens.  "Political speech is core First Amendment speech, critical to the

16   functioning of our democratic system," and rests "on the highest rung of the hierarchy of First

17   Amendment values." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011,

18   1021 (9th Cir. 2009).  The Directive is a content-based regulation on political speech because it

19   requires officials to "necessarily examine the content of the message that is conveyed" to

20   determine if it complies with the Directive.  *FCC v. League of Women Voters of Cal.,* 468 U.S.

21   364, 383 (1984); *see also City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 448 (2002)

22   ("if the statute describes speech by content then it is content based").  Content-based restrictions

23   on speech are subject to strict scrutiny.  *Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622, 642

24   (1994).  To survive strict scrutiny, a restriction on speech must: (1) serve a compelling

25   governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least

26   restrictive means of advancing that interest.  *Sable Comm. of Cal., Inc. v. FCC*, 492 U.S. 115, 126

27   (1989).  The Directive cannot meet that test.

28

While a "politically-disinterested military, good order and discipline, and the protection of service members' rights to participate in the political process are compelling governmental interests," the government cannot show "how these interests are in any way furthered" by the sweeping restrictions on the speech of service members imposed by the Directive. *Rigdon v. Perry*, 962 F. Supp. 150, 161 (D.D.C. 1997) (enjoining application of Directive 1344.10 to chaplains).  Given that the military allows service members to express "personal opinions," write letters to the editor, display political bumper stickers, and otherwise state their political views, it makes little or no sense why STEIN should be allowed to maintain an "Armed Forces Tea Party" Facebook page or attend a "Tea Party" gathering, as long as he provides a disclaimer that he does not speak for the Marine Corps or federal government.  While the government has a strong interest that the military remain politically neutral, that interest is served by the disclaimer and by preventing service members from using their official authority for political purposes.  It cannot justify silencing a noncommissioned officer who speaks on his own time in his own capacity on matters of public concern, without any evidence that he is advocating disobedience to specific orders or otherwise directly threatening loyalty and discipline.  To state a viewpoint is not to be disloyal.  It is the essence of democracy.

### c. The Marine Corps Violated STEIN's First Amendment Right to Petition the Court for Redress.

During the administrative separation hearing, the Marine Corps committed an outrageous First Amendment violation by arguing that STEIN discredited the Corps and deserved discharge because he sought judicial review in this Court.  As the prosecutor argued, "he sues his commanding officer in federal court and his commanding general in an attempt to stop this board. That's his right.  I bring it up to show you that this is not a Marine who thinks about the institution.  This is not a Marine concerned with the institution."  ASBT at 257.  Though the prosecutor backhandedly acknowledged STEIN had a right to seek judicial review, he expressly urged the board to consider this lawsuit as grounds for an other than honorable discharge.  It is difficult to imagine a greater affront to fundamental constitutional principles.

1      STEIN has a fundamental First Amendment right to petition this Court for redress.

2  *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972).  The

3  government may not retaliate against him for the exercise of that right.  *Soranno's Gasco, Inc. v.*

4  *Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Given that the board did not specify the reasons

5  for its decision, *see* ASBT at 277, and the commanding general likewise did not specify his

6  reasons for affirming the board, Mot. to Dism. Ex. B (Doc. No. 42-4) at 2, the discharge is

7  incurably tainted, because it is impossible to determine whether it was based on this clearly

8  unconstitutional ground, even assuming it otherwise had a legitimate basis.  *See Griffin v. United*

9  *States*, 502 U.S. 46, 53 (1991) ("where a provision of the Constitution forbids conviction on a

10  particular ground, the constitutional guarantee is violated by a general verdict that may have

11  rested on that ground").  For this reason alone, in addition to those previously argued, the

12  discharge violated the First Amendment.

13        **2.**    **STEIN's Discharge Violated Due Process Because the Marine Corps**
                **Denied Him the Right to Rebut Prosecution Evidence and the Neutral**

14                **Legal Advisor Acted in Effect as a Prosecutor.**

15      As a threshold matter, the government is mistaken to suggest that military discharge

16  decisions are effectively insulated from Due Process review.  A "fair and impartial process is

17  essential to the due process rights of military personnel faced with discharge from their military

18  service."  *Stainback v. Mabus*, 671 F. Supp. 2d 126, 138 (D.D.C. 2009); *see also Grimm v.*

19  *Brown,* 449 F.2d 654, 655-56 (9th Cir. 1971) (affirming district court's voiding of a discharge

20  decision until denial of "a fair and impartial hearing" was cured).

21      This is not a case about National Guard members who are subject to annual review "for

22  consideration of retention in, or separation from, their state National Guard," based on "the

23  qualifications of the individual and the needs of the Air National Guard, to be considered by the

24  Advisory Board in recommending retention or separation of each officer."  *Christoffersen v.*

25  *Washington State Air Nat. Guard*, 855 F.2d 1437, 1438 (9th Cir. 1988).  In those circumstances,

26  which effectively create a one-year term of service, revocable annually at the government's

27  discretion, a National Guard officer has "no constitutionally protected property interest in

28  continued employment" with the guard.  *Id.* at 1443; *cf. Board of Regents v. Roth*, 408 U.S. 564,

1    578 (1972) (teacher hired for one-year contract had no property interest in renewal of contract).

2    But this case does not concern non-renewal.  If the Marine Corps had allowed STEIN's term of

3    service to expire—as it would have done in July 2012—and not allowed him to re-enlist, due

4    process would likely not be implicated.  But because the Corps involuntarily discharged him

5    before his term expired, he had "interests in continued employment that are safeguarded by due

6    process," especially given that his "good name, reputation, honor, or integrity [were] at stake

7    because of what the government [was] doing to him."  *Roth*, 408 U.S. at 573, 577.  Given that

8    STEIN contested the accuracy of the discharge allegations, and the allegations were made in a

9    public hearing "in connection with the termination of employment," STEIN was entitled to "due

10   process protections."[3]  *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1129 (9th Cir. 2001).  In

11   those circumstances, STEIN had a right to due process independent of any "stigma or other

12   disability" resulting from the discharge.[4]  *Roth*, 408 U.S. at 573.

13           Under the facts as pleaded, the process resulting in STEIN's discharge was anything but

14   fair and impartial.  Though he was given the bare minimum of notice and opportunity to be heard,

15   the proceedings were infected with fundamental unfairness from start to finish.  The Notification

16   unfairly required STEIN to respond within two working days, "during a period that the

17   responsible officials knew that all Judge Advocates General serving as defense counsel at

18   STEIN's base were involved in annual legal training, and were, therefore, unavailable to consult

19   with him before his response was required to be filed."  FAC ¶ 14.  When STEIN nonetheless

20   responded, the responsible officials attempted to railroad his hearing to a date only seven days

21   after military defense counsel were able to begin work on the case, due to their absence at a

22

23   [3]  While some facts may have been undisputed, for example that STEIN said certain things, it was
     strongly disputed whether in fact he violated Article 134 or DOD Directive 1344.10, or
24   committed any other violation.

25   [4]  In any event, the OTH discharge imposed a stigma sufficient to require due process.  *See*
     *Kauffman v. Secretary of the Air Force*, 415 F.2d 991, 995 (D.C. Cir. 1969) ("In terms of its
26   effects on reputation, the stigma experienced by the recipient of a discharge under other than
     honorable conditions is very akin to the concept of infamy."); *Bland v. Connally*, 293 F.2d 852,
27   853 n.1 (D.C. Cir. 1961) ("anything less than an honorable discharge is viewed as derogatory, and
     inevitably stigmatizes the recipient").
28

conference.  FAC ¶ 15.  The Corps also unreasonably denied newly-associated civilian counsel's request for a 10-day extension, although 10 days was "the minimum amount of time necessary for … counsel to consult with STEIN, interview witnesses, review documents and Internet pages, gather and prepare hearing exhibits, and assist in STEIN's preparation to testify and present an adequate defense at the AdSep hearing, which raised significant Constitutional issues far more complex than normally presented at a typical discharge hearing."  FAC ¶¶ 17, 21.

At the hearing itself, the charade of Due Process continued.  On the hearing date itself, STEIN's counsel was belatedly served with a large stack of documents, most of which counsel had never seen before, that the prosecution was submitting to the AdSep Board.  The Board denied counsel's request for a continuance "to review the newly-submitted evidence and prepare responses to it," and instead "forced counsel to proceed without having reviewed the new documents prior to the hearing."  FAC ¶ 26.  This late presentation of documents without opportunity to review them and prepare a response violates Due Process.

During the hearing, the prosecution admitted that the charges against STEIN did not warrant his separation from the Marine Corps, but instead argued that an "analogous" charge, which was not applicable to STEIN because he was not a commissioned officer, justified his discharge.  FAC ¶ 28.  To rebut this contention, STEIN's counsel attempted to present both testimony and written statements from multiple expert witnesses showing that the charges against STEIN could not result in his discharge, but the Board refused to allow admission of either the testimony or the statements.  FAC ¶ 28; ASBT 121-122, 159-162, 225-226, 241-242, 273.  The Board also refused to allow STEIN to present expert testimony rebutting opinions given by prosecution witnesses that STEIN's alleged actions contributed to a "breakdown of good order and discipline."  FAC ¶ 29.   These refusals to allow STEIN to present defense evidence rebutting key parts of the prosecution's case violated core principles of due process, even in the administrative setting.  *See, e.g., North Am. Coal Co. v. Miller*, 870 F.2d 948, 952 (3d Cir. 1989) (because due process "requires an opportunity for rebuttal where it is necessary to the full presentation of a case," administrative law judge erred in refusing to place witness's "report in the record since that report was necessary to the full presentation" of case).

1    Perhaps most troubling of all, "the purportedly neutral legal advisor to the AdSep Board

2    acted in effect as a part of the prosecutorial legal team.  Instead of answering the questions of the

3    non-attorney members of the AdSep Board regarding legal advice, he effectively took over the

4    power of the senior member, deciding objections to, and attempting to block voir dire of, both

5    himself and of the Board, contrary to the normal procedures of an AdSep hearing."  FAC ¶ 27.

6    Due process is violated when a purportedly neutral judicial officer in effect acts as a prosecutor.

7    *See Hurles v. Ryan*, No. 08-99032, 2013 WL 219222, *12 (9th Cir. Jan. 18, 2013) (due process

8    violated if judge "acts as part of the accusatory process"); *Crater v. Galaza*, 491 F.3d 1119, 1132

9    (9th Cir. 2007) (judge may not "perform incompatible accusatory and judicial roles").

10    These fundamental due process violations were not cured by the commanding general's

11    summary rubberstamping of the AdSep Board's decision.  Even if the commanding general in

12    fact reviewed all evidence submitted to and improperly excluded from the hearing, his order

13    approving the discharge "provides no meaningful analysis for his decision, and thus is insufficient

14    to support that decision."  *Stainback*, 671 F. Supp. 2d at 136.  Although the commanding

15    general's order contains boilerplate language stating he "reviewed and considered" documents

16    submitted by the Staff Judge Advocate, Legal Review Officer, and STEIN's counsel, Mot. to

17    Dism. Ex. B (Doc. 42-4) at 2, in essence the commanding general's reasoning amounts to nothing

18    more than "a brief conclusory statement" that STEIN should be given an OTH discharge,

19    "without pointing to any particular factor or factors that lend support for that conclusion. And a

20    conclusion without an articulated basis for it is the essence of arbitrariness."  *Stainback*, 671 F.

21    Supp. 2d at 136.  As a result, the commanding general's decision was necessarily infected by the

22    due process violations committed at the AdSep hearing.

23

24    **B.    STEIN Will be Significantly Harmed if the Court Defers Judicial Review.**

25    Taking the facts pleaded as true, STEIN has suffered and will continue to suffer

26    irreparable harm arising from a discharge in violation of the First Amendment, given that First

27    Amendment violations result in irreparable harm as a matter of law.  *Elrod v. Burns*, 427 U.S.

28    347, 373 (1976); *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998).

1    Moreover, the impact of an OTH discharge goes far beyond the possible denial of "health and

2    disability benefits."  Mem. ISO Mot. to Dism. (Doc. No. 42-1) at 18:27-28.  Due to his unlawful

3    discharge, STEIN stands to lose benefits under the post 9/11 GI Bill, VA preference for home

4    lending, and veteran preference for federal employment, because a "discharge under other than

5    honorable conditions" will bar him from all veterans' benefits "if it is determined that it was

6    issued because of willful and persistent misconduct." 38 C.F.R. § 3.12(d)(4); *see also Beck v.*

7    *West*, 13 Vet. App. 535, 539 (2000) ("a discharge under OTH conditions for willful and persistent

8    misconduct will render a claimant ineligible for veterans benefits"); *Kauffman v. Secretary of the*

9    *Air Force*, 415 F.2d 991, 995 (D.C. Cir. 1969) ("a military discharge under other than honorable

10   conditions imposes a lifelong disability …").  Every day that passes with those benefits denied to

11   STEIN is another day of harm to him and his family.  If the collateral consequences of "an

12   undesirable discharge from the military" are sufficient to prevent a petition for writ of habeas

13   corpus from becoming moot, *Boyd v. Hagee*, No. 06-cv-1025, 2008 WL 481974, *2 (S.D. Cal.

14   Feb. 19, 2008), they are sufficient to make this case appropriate for judicial review.

15        Though the Board for Correction of Naval Records (BCNR) or Naval Discharge Review

16   Board (NDRB) may be empowered to recharacterize his discharge or award the limited amount of

17   back pay to which he is entitled, neither Board can restore educational, housing, and vocational

18   opportunities lost as a result of the unlawful discharge.  Such harm is beyond the power of the

19   administrative process to redress, and therefore this Court's intervention is necessary.  Also, it is

20   not clear that either board can decide the constitutionality of Article 134 and/or DOD Directive

21   1344.10 as applied to this case, making it inappropriate to defer judicial review of those issues.

22   *Cf. Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (no reason to exhaust administrative remedies

23   "once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory

24   requirement, a matter which is beyond his jurisdiction to determine"); *Murillo v. Mathews*, 588

25   F.2d 759, 762 n.5 (9th Cir. 1978) ("generally administrative agencies lack competence to decide

26   constitutional questions").  Finally, any decision of the BCNR or NDRB would likely be

27   "afforded an unusually deferential version of the arbitrary or capricious standard" of review,

28   effectively insulating any but "the most egregious decisions" from judicial review.  *Millican*, 744

1    F. Supp. 2d at 303.  Because STEIN presents substantial constitutional questions, as this Court

2    has found, those questions should be afforded the proper standard of independent judicial review

3    that only this Court can provide.

4        A comparison to the facts in *Wenger* is useful to illustrate the nature of the injury in this

5    case.  The plaintiff in *Wenger*, Colonel Wenger, was put on promotion hold during an

6    investigation into allegations of strip dancers performing at an officers' function which he

7    attended.  *Wenger*, 282 F.3d at 1070.  During the pendency of the investigation and his civil suit

8    Wenger reached the maximum service length in the grade of colonel that was permitted in the

9    Guard and he was forced into retirement.  *Id.* at 1071.   The *Wenger* court held there was no

10   "significant potential injury that judicial review of [Wenger's] case could obviate..."  *Id*. at 1075.

11   In reaching its holding, the court found "...Wenger was not retired on account of any

12   ...allegations.  He was retired because the law required his retirement.  And nothing relating to his

13   retirement would put anyone on notice that Wenger was subject of any investigation..."  *Id*.  Most

14   critically, Wenger was not challenging a regulation which impacted the speech rights of millions.

15       Wenger was allowed to serve out the maximum period of time which is allowed to a

16   colonel.  In contrast, STEIN was forced out of the Marines prior to the completion of his

17   enlistment contract.  Wenger left service with his eligibility for pension and all benefits intact.  In

18   contrast, STEIN was deprived of the separation pay and veteran's benefits which ordinarily

19   accrue in the course of service.  Wenger left service with no indication from the Guard that he

20   was even under investigation.  STEIN left service with the Marine Corps accusing him of

21   "serious misconduct" and characterizing his service as "Other than Honorable."  The factual

22   differences are stark.  The difference in legal significance is also stark: the harms to STEIN weigh

23   heavily in favor of immediate review by this Court.

24   **C.    This Case Involves Questions of Constitutional Law that Do Not Implicate**
        **Uniquely Military Functions or Expertise.**

25

26   The final two *Mindes* factors, "'extent of interference with military functions' and "[t]he

27   extent to which military discretion or expertise is involved,' are generally considered together."

28   *Wenger*, 282 F.3d at 1075.  Neither factor defeats judicial review in this case.  This is a

constitutional case about free speech and due process.  It involves no "sensitive area of military expertise and discretion."  *Id.*  It is not a case about the military's "discretion over internal management matters."  *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979).  Instead, this case involves questions of constitutional law which this Court is expressly empowered to decide and over which it has superior expertise than the AdSep board members and commanding officer, none of whom are judges.  As the Ninth Circuit has held, "Resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board."  *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973) (reversing decision that plaintiff "should first have sought administrative relief through the Board for Correction of Naval Records" and directing court to decide constitutional challenge to discharge of Marine).

As a result, courts do not hesitate to enjoin unlawful discharges.  *See Meinhold v. Department of Defense,* 34 F.3d 1469, 1472 (9th Cir. 1994) ("to the extent the district court's judgment enjoins the Navy from discharging Meinhold based solely on his statement of status, we affirm"); *McVeigh v. Cohen*, 983 F. Supp. 215 (D.D.C. 1998) (preliminary injunction against discharge for likely violations of Navy regulations and Electronic Communications and Privacy Act); *Cooney v. Dalton*, 877 F. Supp. 508, 512-13 (D. Haw. 1995) (temporary restraining order against discharge because of due process violation).  Nor should this Court hesitate to exercise judicial review over questions of constitutional law which it is empowered and suited to decide.  The Court need not intrude into military discretion and expertise in order to apply law to facts, which is a core function of federal courts under Article III.  As a result, immediate judicial review is warranted.

### CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

Dated:  January 25, 2013                         Respectfully submitted,

                                                  **s/ David Loy**
                                                  David Loy
                                                  Attorney for Plaintiff