1

STUART F. DELERY
Principal Deputy Assistant Attorney General

2

LAURA E. DUFFY
United States Attorney

3

4

JOHN R. TYLER
Assistant Director
Federal Programs Branch

5

6

CHRISTOPHER R. HALL
MATTHEW J.B. LAWRENCE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:     (202) 304-4778

7

8

9

10

Attorneys for Defendant

11

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

12

13

GARY A. STEIN

No. 12cv0816-H(BGS)

14

Plaintiff,

15

v.

**DEFENDANT'S REPLY IN SUPPORT OF
HIS MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED**

16

RAY MABUS, Secretary of the Navy,

17

Defendant.

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.   PLAINTIFF'S CLAIMS ARE INSUBSTANTIAL. ...........................................................2

    A.  Plaintiff Fails to State a Due Process Claim. ................................................2

    B.  Plaintiff Fails to State a First Amendment Claim. .......................................5

II.  PLAINTIFF WILL NOT BE HARMED IF THE COURT REFUSES REVIEW. ............10

III. JUDICIAL REVIEW WOULD INTERFERE WITH MILITARY FUNCTIONS INVOLVING EXTENSIVE MILITARY DISCRETION AND EXPERTISE. .................13

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Fishback*,
   2009 WL 2423327 (E.D. Cal.) ................................................................. 4

*Bard  v. Seamans*,
   507 F.2d 765 (10th Cir. 1974) ................................................................. 12

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972) ............................................................................... 3

*Connick v. Meyers*,
   461 U.S. 138 (1983) ............................................................................... 7

*Ethredge v. Hall*,
   56 F.3d 1324 (11th Cir. 1995) ................................................................ 7

*Goldman  v. Weinberger*,
   475 U.S. 503 (1986) ............................................................................... 13

*Griffeth  v. Detrich*,
   603 F.2d 118 (9th Cir. 1979) .................................................................. 3

*Grimm v. Brown*,
   449 F.2d 654 (9th Cir. 1971) .................................................................. 3

*Holder v. Humanitarian Law Project*,
   130 S. Ct. 2705 (2010) ........................................................................... 9

*Hyland v. Wonder*,
   972 F.2d 1129 (9th Cir. 1992) ............................................................. 3, 4

*Lord v. Lehman*,
   540 F. Supp. 125 (D. Pa. 1982) ............................................................. 2

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................11

*Lyng  v. Nw. Indian Cemetary Protective Ass'n*,
   485 U.S. 439 (1988) ............................................................................... 13

*Millican v. United States*,
   744 F. Supp. 2d 296 (D.D.C. 2010) ...................................................... 8

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) ............................................................................... 10

*N. Am. Coal Co. v. Miller*,
   870 F.2d 948 (3rd Cir. 1989) ................................................................. 4

*Parker v. Levy*,
   417 U.S. 733 (1974) ........................................................................ 7, 8, 9

*Paul v. Davis,*
    424 U.S. 693 (1976) ................................................................................. 3

*Peppers v. U.S. Army,*
    479 F.2d 79 (4th Cir. 1973) ..................................................................... 2

*Pickering v. Bd. of Educ.,*
    391 U.S. 563 (1968) ................................................................................. 8

*Priest v. Sec'y of the Navy,*
    570 F.2d 1013 (D.C. Cir. 1977) ............................................................... 8

*Schweiker v. McClure,*
    456 U.S. 188 (1982) ................................................................................. 5

*Soranno's Gasco, Inc. v. Morgan*
    874 F.2d 1310 (9th Cir. 1989) ............................................................... 10

*Stainback v. Mabus,*
    671 F.Supp. 2d 126 (D.D.C. 2009) ...................................................... 2, 5

*United States v. Wilcox,*
    66 M.J. 442 (U.S.C.A.A.F. 2008) ........................................................ 8, 9

*United States v. Williams,*
    553 U.S. 285 (2008) ................................................................................. 9

*U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,*
    413 U.S. 548 (1973) ............................................................................ 9, 10

*Waters v. Churchill,*
    511 U.S. 661 (1994) ......................................................................... 6, 8, 9

*Wenger v. Monroe,*
    282 F.3d 1068 (9th Cir. 2002) ............................................................... 11

*Wisconsin v. Constantineau,*
    400 U.S. 433 (1971) ................................................................................. 3

**Statutes**

10 U.S.C. § 1552 .................................................................... 1, 11, 13, 17

10 U.S.C. § 1557 ................................................................................... 12

5 U.S.C. § 556(d) ................................................................................... 4

Uniform Code of Military Justice Article 134 ............................... passim

**Regulations**

32 C.F.R. § 723 et seq. .......................................................................... 12

32 C.F.R. § 70.8(a) ............................................................................... 12

38 C.F.R. § 3.12 .......................................................................................... 3, 12

38 C.F.R. § 3.103 .......................................................................................... 12

Prior to his discharge, Plaintiff was a senior non-commissioned officer in the United States Marine Corps.  One of the grounds for his discharge from the Marine Corps was his statement on a Facebook page for Marine Corps meteorologists – frequented by Marines subordinate to him, among others – that he would not follow any orders from President Obama, that he would not salute the President as his Commander-in-Chief, and that the President is the "economic," "religious," and "domestic" enemy of the United States Constitution.   In his Opposition to the Government's motion to dismiss, Plaintiff himself describes those words as "intemperate" four times.  Pl.'s Opp. to Def.'s Mot. to Dismiss at 2:24, 11:12, 11:19, 12:14, ECF No. 47 ("Plaintiff's Opposition").  But, Plaintiff says, intemperate though his words might have been, he later "clarified" that he did not mean quite what he said, id. at 11:11-24, so his words did not threaten good order and discipline (and therefore he did not violate Article 134 of the Uniform Code of Military Justice and should not have been discharged on that basis).  Id. Brigadier General Daniel D. Yoo disagreed with Plaintiff's judgment on that point, and so ordered that Plaintiff be discharged.  See Def.'s Mem. in Support of Def.'s Mot. to Dismiss at 3-5, ECF No. 42-1 ("Defendant's Memorandum").

Plaintiff asks the Court to adjudicate his challenge to General Yoo's military judgment before that judgment is reviewed by one of the Boards Congress has specifically established to review claims like those asserted by Plaintiff.  By application of the Mindes doctrine, however, this case is not justiciable for two key reasons identified in the Government's Opening Memorandum and hardly disputed in Plaintiff's Opposition.   First, whether Plaintiff's concededly intemperate words were so intemperate in light of their context as to threaten "good order and discipline" is a quintessential question of military judgment that falls outside of the institutional competence of the Judiciary.   Second, Plaintiff can obtain from the Board of Correction for Naval Records ("BCNR") and the Naval Discharge Review Board ("NDRB") all the relief that he asks the Court to grant in this action.

Rather than dispute either of these points, Plaintiff asserts a smorgasbord of arguments – many premised on assertions not presented in the Complaint – that are for the most part

1

1   addressed to the first <u>Mindes</u> factor, the substantiality <u>vel non</u> of Plaintiff's claims.  None alters

2   the conclusion that this case is not justiciable.

3   **I.      PLAINTIFF'S CLAIMS ARE INSUBSTANTIAL.**

4          The first <u>Mindes</u> factor – the nature and strength of Plaintiff's claims – weighs against

5   judicial review.  Def.'s Mem. at 7-17.  Plaintiff's opposition fails to persuade otherwise.

6          **A.  Plaintiff Fails to State a Due Process Claim.**

7          The process that Congress has setup for reviewing Plaintiff's discharge is not finished yet

8   because Plaintiff has not gone to the BCNR or the NDRB.  Def.'s Mem. at 12.  Plaintiff does not

9   contest that basic fact, which dooms his Due Process claim.  Because either Board could cure

10  any purported deficiencies in the process previously afforded to Plaintiff, he cannot complain of

11  being deprived of due process rights.   <u>See</u> Def.'s Mem. at 12; <u>see also</u> <u>Peppers v. U.S. Army</u>,

12  479 F.2d 79, 83 (4th Cir. 1973) (Board of Correction process "effectively served to remedy any

13  possible violation of due process which may have been inherent at the [prior] discharge

14  proceedings"); <u>Lord v. Lehman</u>, 540 F. Supp. 125, 129 (D. Pa. 1982) ("deficiencies in earlier

15  administrative proceedings can be cured by proper BCNR review").  Plaintiff's Due Process

16  claim can be dismissed on this ground alone.

17         **<u>Plaintiff Asserts No Protected Interest.</u>**  But in addition, Plaintiff has no basis on which

18  to bring a Due Process claim because he cannot demonstrate that he has been deprived of a

19  protected property interest. "Nothing in Plaintiff's complaint suggests that Plaintiff believes he

20  has been deprived of a protected . . . property interest[,]" Def.'s Mem. at 8, so if Due Process is

21  implicated at all, it must be by virtue of Plaintiff's allegations of a liberty interest in his

22  reputation.  <u>Id.</u>  In his Opposition, Plaintiff hints that he believes he may have had a property

23  interest in continued service as a Marine, <u>see</u> Pl.'s Mem. at 17-18, but the Court need not wade

24  into that suggestion.[1]  The complaint is devoid of allegations that, if proven, would give rise to a

25

26  [1] Plaintiff cites two cases as purportedly indicating a service member can have a property interest
    in continued service.  Pl.'s Opp. at 17.  Neither so held.  The first, <u>Stainback v. Mabus</u>, 671 F.
27  Supp. 2d 126 (D.D.C. 2009), was a challenge exclusively under the Administrative Procedure
    Act to a student's discharge from the Air Force Academy.  The Court held that the discharge was
28  arbitrary and capricious because it did not follow applicable regulations.  It did not hold that the
    discharged student had a property interest for purposes of the Due Process Clause.  The other

2

1  protected property interest.  See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) (property

2  interest requires "legitimate claim of entitlement" created by specific statute, contract, regulation,

3  or other source in positive law); Griffeth v. Detrich, 603 F.2d 118, 120-21 (9th Cir. 1979); Faurie

4  v. Berkeley Unified Sch. Dist., 2008 WL 820682, *8-9 (N.D. Cal. 2008) (dismissing due process

5  claim for failure to allege any "specific positive law" as basis for property interest).

6          Plaintiff does argue explicitly that his discharge carried a stigma, and so implicated his

7  liberty interest in his reputation.  Pl.'s Opp. at 18.  His argument, however, is premised on a

8  footnoted assertion that the characterization of his discharge as Other-Than-Honorable per se

9  caused the sort of "severe and genuinely debilitating" stigma that triggers Fifth Amendment

10  protection, Hyland v. Wonder, 972 F.2d 1129, 1141 (9th Cir. 1992).  See Pl.'s Opp. at 18 n.4.  For

11  support, Plaintiff cites two 1960s-era D.C. Circuit cases which do not help him because they

12  were decided prior to Board of Regents v. Roth, and thus did not apply the "stigma plus" test.

13  See Paul v. Davis, 424 U.S. 693, 707 (1976) (pointing to Wisconsin v. Constantineau, 400 U.S.

14  433 (1971), as first case recognizing stigma associated with termination from public employment

15  as implicating liberty interest).

16          Plaintiff's suggestion that an Other-Than-Honorable discharge per se involves "the types

17  of charges of immorality, or dishonesty that can cripple [one's] ability to earn a living," Hyland,

18  972 F.2d at 1142, is refuted by the rules governing eligibility for veteran's benefits.  See 38

19  C.F.R. § 3.12(d) (explaining situations in which "Other Than Honorable" discharge is deemed to

20  have been made "under dishonorable conditions" and so render service member ineligible for

21  some benefits).

22          **Plaintiff Has Been Denied No Process.**  Even if he could establish a protected interest –

23  and he cannot, supra – Plaintiff has not been denied due process.  He admits that "he was given

24  the bare minimum of notice and opportunity to be heard[.]"  Pl.'s Opp. at 18.  But he suggests

25  that the process he has received (so far) was nonetheless tainted by four "fundamental"

26  violations.  Id. at 20.  He is wrong for three reasons.

27

28  case Plaintiff cites, Grimm v. Brown, 449 F.2d 654 (9th Cir. 1971), was not a Due Process case
either; the term "due process" does not even appear in the opinion.

First, Plaintiff's claim there were four defects in the AdSep hearing he received is refuted by the record of that hearing.[2]   In short: (1) Plaintiff says his five counsel did not have enough time to prepare for the hearing, but his counsel had fifteen days to prepare.  See Transcript of April 5, 2012 AdSep Board Hearing at 115 ("Transcript"), Ex. C to Def.'s Mot. to Dismiss, ECF No. 42-5.   (2) Plaintiff says that "a large stack of documents" was "belatedly served" on his counsel at the hearing, Pl's Opp. at 19, but the record indicates that his counsel had received most of those documents in advance, on CD rather than on paper.  See Tr. at 69-70.  By contrast, the Marine Corps was not given a copy of Plaintiff's evidence until the day of the hearing.  Tr. at 69-70.   (3) Plaintiff says that the Recorder "admitted that the charges against STEIN did not warrant his separation from the Marine Corps," Pl's Opp. at 19, but he did not do that.  See Tr. at 273.  And (4) Plaintiff says that the legal advisor "acted in effect as a part of the prosecutorial legal team," Pl's Opp. at 20 (quoting First Am. Compl. ¶ 27), but the allegations in Plaintiff's complaint do not even support that conclusory assertion.

Second, the alleged procedural errors Plaintiff puts forward are not of the sort recognized by courts as fundamental and therefore in contravention of due process.   Plaintiff argues that the exclusion of his purported expert testimony about the meaning of "good order and discipline" deprived him of due process, relying on North American Coal Co. v. Miller, 870 F.2d 948, 952 (3rd Cir. 1989) for support.   But that case interpreted the APA's requirement that rebuttal evidence "required for a full and true disclosure of the facts" be permitted in a formal, on-the-record administrative hearing within the confines of the APA.  Id. (quoting 5 U.S.C. § 556(d)).  The AdSep Board was not such a hearing, and in any event, the exclusion of legal opinion material cannot by definition prevent the "full and true disclosure of the facts."

For his argument that the conduct of the legal advisor deprived him of due process, Plaintiff points to cases holding that due process requires an un-biased decision-maker.  Pl's Opp.

---

[2] The Court need not accept Plaintiff's factual allegations to the extent that they are contradicted by the hearing transcript, because the transcript was "incorporate[d] by reference" in Plaintiff's Complaint, First Am. Compl. ¶ 25.   See Anderson v. Fishback, 2009 WL 2423327, *2 (E.D. Cal. 2009) (the "court 'need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice.'") (quoting Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)).

at 20.  But notwithstanding extensive <u>voir dire</u> during the hearing, Tr. at 3-63, Plaintiff does not allege that any voting member of the board, or the non-voting legal advisor, was biased in any way.  He simply takes issue with the role the legal advisor played because Plaintiff incorrectly thinks the legal advisor should not have decided certain procedural motions, First Am. Compl. ¶ 27.  <u>But see</u> Separation Manual § 6315(4), Ex. A to Def's Mot. to Dismiss, ECF no. 42-4 (authorizing legal advisor to decide procedural motions).  This is a far cry from the "showing of conflict of interest or some other specific reason for disqualification" that can overcome the "presumption that [government officials] are unbiased."  <u>Schweiker v. McClure</u>, 456 U.S. 188, 195 (1982).

Finally, the decision to discharge Plaintiff was not made by the AdSep Board but by General Yoo, who in addition to considering the recommendation of the Board considered the transcript of the hearing, the opinion evidence Plaintiff wanted to submit that had been excluded, a follow-up statement from Plaintiff submitted after the hearing, and the detailed report of a legal advisor discussing Plaintiff's objections to the hearing (including the objections mentioned above).  <u>See</u> April 22, 2012 Order of General Yoo, Ex. B to Def.'s Mot. to Dismiss, ECF No. 42-4.  Plaintiff does not suggest that General Yoo was biased in any way.[3]

**B.  Plaintiff Fails to State a First Amendment Claim.**

Plaintiff's First Amendment claims are without merit.

**<u>UCMJ Article 134.</u>**  As the first of two independent grounds for his separation, Plaintiff was determined to have violated UCMJ Article 134 by making a statement that threatened good order and discipline.  Plaintiff never disputes that he said the words in question in a public forum that included Marines subordinate to him.  Instead, he merely argues that General Yoo's determination that his public statement posed a threat to good order and discipline in the Corps

---

[3] Plaintiff attempts to discount the General's role as a "summary rubberstamping" of the AdSep Board's decision.  Pl.'s Opp. at 20.  But the General says that he "carefully" and "personally" "reviewed and considered" the voluminous materials in the record.  April 22, 2012 Order of General Yoo ¶¶ 2-3, Ex. B to Def.'s Mot. to Dismiss, ECF No. 42-4.  There is no assertion in Plaintiff's complaint that, taken as true, would cast doubt on that description of the decision-making process.  As such, Plaintiff's assertion to the contrary in his Opposition cannot overcome the presumption of regularity.  <u>Schweiker</u>, 456 U.S. at 195.  Plaintiff also points to <u>Stainback</u>, 671 F. Supp. 2d at 138, in arguing that the General's explanation of his decision was not detailed enough, but that is not a due process case.  <u>See</u> <u>supra</u>, n.1.

under Article 134 was incorrect, and that his discharge thus violated the First Amendment.  Pl.'s Opp. at 11-12.  In addition to the fact that judicial review of that determination would substantially interfere with functions involving extensive military discretion and expertise, thus rendering this claim non-justiciable, see Def.'s Mem. at 19-23; Part III, infra, Plaintiff's argument is incorrect as a matter of law.

At the outset, it is striking that Plaintiff's opposition never acknowledges the substance, language, or context of his statement.  This is the undisputed text of Plaintiff's statement:

> As an Active Duty Marine I saw [sic.] "Screw Obama" and I will not follow all orders from him. . . . Will do my job better then [sic.] the next guy . . . But has [sic.] for saluting Obama as commander-in-chief . . . I will not!
>
> ****
>
> Your [sic.] right it said to defend the "I will support and defend the Constitution of the United States against all enemies, foreign and domestic" Obama is the economic enemy … he is the religious enemy … he is the "Fundamentally change" America enemy … he IS the Domestic Enemy."

See Gov't Ex. 5 to April 5, 2012 AdSep Board Hearing, ECF No. 23-2.  Plaintiff fails to acknowledge that he made the statement in a forum in which his own subordinate Marines participated.  While Plaintiff subsequently asserted "that he was only talking about the accepted legal principle that unlawful orders need not be obeyed[,]" Pl.'s Opp. at 11, other Marines reading these statements could reasonably construe them to be Plaintiff's unequivocal rejection of the authority of his Commander-in-Chief to issue any orders, and an unequivocal assertion that he would not follow any orders from the President.

Plaintiff also misstates the legal standard governing his First Amendment claim, suggesting incorrectly that the Marine Corps' decision to discharge him cannot withstand First Amendment review absent a showing of "clear danger" to military "loyalty, discipline, mission, or morale."  Pl.'s Opp. at 11.  That is wrong for at least two reasons.  First, even in the civilian context – where there is none of the judicial deference owed to the military – the government-as-employer is not required to identify "clear danger" from the speech at issue to justify an employee's removal in a case alleging wrongful discharge under the First Amendment.  Rather, the government employer may consider potential disruptiveness to the performance of its mission, and need not wait until potential disruption has become manifest to take appropriate action.  Waters v. Churchill, 511 U.S. 661, 680 (1994) (government employer entitled to consider

1   "potential disruptiveness of the speech.") (emphasis in original); Connick v. Meyers, 461 U.S.

2   138, 152 (1983) (employer need not "allow events to unfold to the extent that the disruption of

3   the office and the destruction of working relationships is manifest before taking action.").

4   Second, in the military context, speech that might be tolerable in civilian employment cannot be

5   countenanced where it threatens to undermine the command structure.  Parker v. Levy, 417 U.S.

6   733, 758-59 (1974).  "The armed forces depend on a command structure that at times must

7   commit men to combat, not only hazarding their lives but ultimately involving the security of the

8   Nation itself.  Speech that is protected in the civil population may nonetheless undermine the

9   effectiveness of response to command.  If it does, it is constitutionally unprotected."  Id.

10       Plaintiff suggests that Article 134 was used as a "blank check" to discharge him for

11   speech "disliked" by his commanding officer, Pl.'s Opp. at 10, because of differing political

12   views.  However, nothing in the Complaint or the AdSep hearing transcript it incorporates

13   supports the notion that Plaintiff's commanding officer "disliked" his speech, or that Plaintiff's

14   underlying political views had anything to do with the charge that he had violated Article 134.

15   To the contrary, all indications point to the threat to good order and discipline posed by

16   Plaintiff's concededly intemperate attack against the authority of his Commander-in-Chief,

17   particularly given the forum in which he aired that attack, one frequented by junior Marines for

18   whom he was expected to set the standard as a senior NCO.[4]  Plaintiff's suggestion to the

19   contrary both trivializes and mischaracterizes the nature and effect of that speech.  See Def.'s

20   Mem. at 15-16 & n.3.

21       Plaintiff's attempts to distinguish the overwhelming weight of case law upholding

22   military personnel sanctions against First Amendment challenges fare no better.  In a footnote-

23   relegated argument, Plaintiff suggests that his case is different than Ethredge v. Hall, 56 F.3d

24   1324 (11th Cir. 1995) – which upheld a civilian employee's discharge under the First Amendment

25   – in that the plaintiff's speech in that case had generated complaints and threats from military

26   personnel.  Pl.'s Opp. at 11, n.1.  But even assuming Ethredge held that a potential disruption is

27

28

_____

[4] Plaintiff admitted in an unsworn statement during the hearing that his words and the venue in which he expressed them were inappropriate, Tr. at 247, and his counsel at the hearing conceded that the words had the "potential" to cause disorder.  Id. at 262.

7

1    insufficient, but see <u>Waters</u>, 511 U.S. at 681, Plaintiff ignores the fact that the evidence against

2    him at the AdSep hearing included testimony that Plaintiff's statements were directly connected

3    to an altercation involving Plaintiff at a Marine Corps shooting range.  Def.'s Mem. at 15-16, n.

4    3.  Plaintiff also tries to distinguish <u>Parker</u>, 417 U.S. at 736-37, <u>Priest v. Secretary of Navy</u>, 570

5    F.2d 1013, 1015 (D.C. Cir. 1977), and <u>Millican v. United States</u>, 744 F. Supp. 2d 296, 300

6    (D.D.C. 2010) – decisions in which challenged personnel actions were upheld – by suggesting

7    that each case turned on the fact that the plaintiff disobeyed or advocated disobeying a particular

8    order.  Pl.'s Opp. at 11.  That is not a meaningful distinction, but even if it were, it would cut

9    against Plaintiff.  If anything, his conduct here was potentially more disruptive to the military

10   command structure, as he stated unequivocally in a forum frequented by his own subordinates

11   that he would not obey <u>any</u> orders from his Commander-in-Chief, and went on to call the

12   President the "enemy" of the United States Constitution.  As a senior NCO, Plaintiff owed a duty

13   to set the right standard for junior Marines.  Certainly, it was reasonable for the military to

14   determine that Plaintiff's public conduct threatened to undermine the importance of following

15   the command structure – the essential feature of military order and discipline.  <u>Parker</u>, 417 U.S.

16   at 758-59.

17       That potential threat to the Marine Corps command structure, <u>inter alia</u>, renders

18   unavailing Plaintiff's heavy reliance on <u>United States v. Wilcox</u>, 66 M.J. 442 (U.S.C.A.A.F.

19   2008).  Pl.'s Opp. at 9-12.  To begin, <u>Wilcox</u> is procedurally distinct from this case: it involved a

20   service-member's appeal from a criminal conviction by an Army court-martial, which by

21   definition imposed the highest burden of proof on the United States, acting in its prosecutorial

22   capacity, to establish that the service-member's conduct violated Article 134.  By contrast, this

23   case is a challenge to a service-member's administrative separation on two independent grounds,

24   including an Article 134 violation.  That means that any First Amendment analysis invokes the

25   balancing test articulated by <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968), modified by

26   the greater deference owed to the military.  <u>Parker</u>, 417 U.S. at 758-59.  The cases are also

27   factually distinct.  In <u>Wilcox</u>, there was no evidence that the service-member's speech even

28   reached any other Army personnel, much less members of his own unit; the court found this

8

1    dispositive in concluding that his speech did not violate Article 134.  66 M.J. at 450.  Here,

2    Plaintiff's speech was purposefully directed at Marine Corps personnel, including his co-workers

3    and Marines subordinate to him; this fact alone renders "the effect of the speech on the military

4    mission [] both palpable and obvious[,]" to use the court's phrasing in Wilcox.  See id.  And even

5    if the "palpable-and-obvious" standard articulated in Wilcox was somehow different than the

6    potential disruptiveness standard articulated by the Supreme Court as to First Amendment

7    discharge cases in the civilian context, e.g., Waters, 511 U.S. at 680, it cannot trump that

8    standard in military discharge cases, where speech that threatens to "undermine the effectiveness

9    of response to command" is "constitutionally unprotected[]" to an even greater degree than in the

10   civilian context.  Parker, 417 U.S. at 758-59.

11          **Violation of DOD Directive 1344.10.**  Although the determination that Plaintiff violated

12   UCMJ Article 134 provides a sufficient basis on which to conclude that he fails to state a claim

13   under the First Amendment, Plaintiff's argument against the second independent basis for his

14   discharge – the determination that he also violated DOD Directive 1344.10 – warrants brief

15   mention.  Plaintiff principally argues that Directive 1344.10 is vague and/or overbroad and is

16   therefore unconstitutional as applied to him.  Pl.'s Opp. at 12-16.  Plaintiff's complaint, however,

17   fails to state a vagueness claim, see Def.'s Mem. at 16, n.4, and his opposition does not suggest

18   otherwise.  Vagueness claims arise not under the First Amendment but rather under the Due

19   Process Clause.  Holder v. Humanitarian Law Project, --- U.S. ---, 130 S. Ct. 2705, 2718 (2010);

20   United States v. Williams, 553 U.S. 285, 304 (2008).  Thus, Plaintiff must demonstrate a

21   property or liberty interest before he may even assert a vagueness challenge, and he cannot

22   demonstrate such an interest here.  See Def.'s Mem. at 7-9; supra at 2-3.  And even if he could,

23   Plaintiff's argument that the relevant provisions of 1344.10 are vague – essentially, that the term

24   "partisan" is ambiguous, Pl.'s Opp. at 13 – is foreclosed by controlling authority.  The Supreme

25   Court has upheld directly analogous provisions of the Hatch Act and its implementing

26   regulations, including a prohibition on "partisan political activity" by civilian federal employees,

27   against an indistinguishable vagueness challenge.  U.S. Civil Service Comm'n v. Nat'l Ass'n of

28   Letter Carriers, AFL-CIO, 413 U.S. 548, 577-79 (1973) ("There might be quibbles about the

9

1    meaning of . . . becoming a 'partisan' candidate for office; but there are limitations in the English

2    language with respect to being both specific and manageably brief, and it seems to us that

3    although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out

4    in terms that the ordinary person exercising ordinary common sense can sufficiently understand

5    and comply with, without sacrifice to the public interest."); see also id. at 578 n.21.  In light of

6    that authority, Plaintiff's essential argument – that his high-profile public efforts to promote the

7    political aims of the Tea Party were not unequivocally "partisan" – simply does not hold water.[5]

8            **Plaintiff's Petition "Claim."**  Finally, in addition to his Fifth Amendment Due Process

9    claim and First Amendment speech claim, Plaintiff presses a new claim in his opposition,

10   namely, that his discharge violated his "First Amendment Right to Petition the Court for

11   Redress."  Pl.'s Opp. at 16-17.  For support, Plaintiff points to a remark made by the Record

12   during the AdSep hearing about the fact that Plaintiff had filed this lawsuit.

13           Even if Plaintiff had pled a petition claim, his Complaint allegations would not state such

14   a claim.   In this Circuit, a "plaintiff alleging retaliation for the exercise of constitutionally

15   protected rights must initially show that the protected conduct was a 'substantial' or 'motivating'

16   factor in the defendant's decision." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

17   Cir. 1989) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

18   (The burden then shifts to the Government to show it would have made the same decision if not

19   for the protected conduct.  Id.)  The description in Plaintiff's complaint of Capt. Torresala's stray

20   remark, which takes up five lines of a 278-page hearing transcript, Tr. at 257, does not give any

21   reason to believe that Plaintiff's conduct was a "substantial" or "motivating" factor in the AdSep

22   Board's recommendation, let alone General Yoo's decision.

23   II.     PLAINTIFF WILL NOT BE HARMED IF THE COURT REFUSES REVIEW.

24

25

26   [5] Plaintiffs' alternative arguments against 1344.10 – that it unlawfully restricts "core political
     speech" and that its application to him constituted unlawful content and/or viewpoint
27   discrimination – are similarly unpersuasive.  Plaintiff's assertion that the Directive restricts "core
     political speech" hinges on the same allegations as his wrongful discharge claim; as noted supra,
28   that claim fails.  Plaintiff's assertion that the application of 1344.10 to him constituted unlawful
     content and/or viewpoint discrimination finds no support in his complaint's factual allegations.

1       Plaintiff does not dispute that the BCNR and NDRB can grant all the relief he asks from

2   the Court, but puts forward three reasons why he will be harmed nonetheless if the Court refuses

3   review: (1) neither Board can restore to him those veterans benefits, like housing and

4   employment preference, that he may be unable to make use of between now and the Board's

5   ultimate ruling because of his discharge, Pl.'s Opp. at 21; (2) "it is not clear that either board can

6   decide the constitutionality" of the regulations at issue in this case, id.; and (3) a Board's ultimate

7   decision would be entitled to deference, "effectively insulating" the underlying decision from

8   judicial review.  Id.  None of these theories of harm holds up.

9       **Alleged Missed Benefit Opportunities.**  Plaintiff first says that he will be harmed even

10  if he wins before the BCNR or the NDRB because those bodies cannot restore benefits that he is

11  denied between now and the Board's ultimate decision, Pl.'s Opp. at 21.[6]  But the Complaint

12  does not back that argument up; Plaintiff does not allege that he intends to make use of any of the

13  veteran's benefits he mentions in his opposition, that he has concrete plans to do so, or that he

14  has actually had a claim for benefits denied.  Cf. First Am. Compl. ¶ 13.  As a result, the

15  allegations of the Complaint, assumed true, would not even support standing on this "lost

16  opportunity" theory, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (plaintiff must

17  have suffered injury-in-fact that is "concrete and particularized and actual or imminent"), let

18  alone show the sort of "significant potential injury" that can counsel in favor of judicial review

19  under Mindes.  Wenger v. Monroe, 282 F.3d 1068, 1075 (9th Cir. 2002).

20      An additional problem with Plaintiff's "lost opportunity" theory is that it relies on mere

21  speculation that he might be denied unspecified benefits if he were to apply for them at some

22  time in the future.  As Plaintiff recognizes, however, his "Other-Than-Honorable" discharge

23  would not cost him many of the benefits he might apply for unless it is determined to have been

24  issued "under dishonorable conditions."  Def.'s Mem. at 18-19; Pl.'s Opp. at 21 (citing 38 C.F.R.

25

26  _____

    [6] Plaintiff's argument here might be read to suggest that, even if Plaintiff wins before the Board,
    he would still be ineligible for the educational, housing, and vocational opportunities given to
27  veterans.  But that cannot be what Plaintiff means, because a determination by either Board to
    recharacterize his discharge as "Honorable" would make him eligible for everything that goes
28  with that status.  See 10 U.S.C. § 1552(a)(4) ("a correction under this section is . . . conclusive on
    all officers of the United States").

§ 3.12(d)(4)); <u>see also</u> 38 C.F.R. § 3.103 (setting forth process by which member may appeal denial of veteran's benefits by Department of Veterans Affairs).  If Plaintiff had actually been denied benefits on such a basis, he presumably would have said so.

A final problem with Plaintiff's "lost opportunity" theory is that, even had Plaintiff alleged that he will suffer a significant, non-speculative injury pending resolution of his dispute with the Navy, it does not follow that the fastest way to get him benefits is immediate judicial review.  This litigation has already been pending for nine months since Plaintiff was discharged on April 22, 2012, due in part to Plaintiff's delay of five months in filing an amended Complaint.  That self-imposed delay belies Plaintiff's suggestion (in his brief, but not his Complaint) that he faces harm from benefit opportunities foregone while pursuing a board remedy, and provides an example of how easily the resolution of a civil action can stretch from months into years.  By contrast, the BCNR is statutorily required to resolve at least 90 percent of claims within ten months, 10 U.S.C. § 1557(a), and must resolve all claims within eighteen months.  <u>Id.</u> § 1557(b).  Thus, had Plaintiff filed a BCNR claim the day after his discharge nine months ago he might have a decision in hand by now.

**Board Authority to Resolve Constitutional Questions.**  Next, Plaintiff says he would be harmed if the Court refuses review because "it is not clear that either [the BCNR or the NDRB] can decide the constitutionality of Article 134 and/or DOD Directive 1344.10 as applied to this case."  Pl.'s Opp. at 21.  Actually, it is.  The BCNR possesses the power to review constitutional claims.  <u>See</u> 32 C.F.R. § 723.3(e)(4) (discussing consideration of "constitutional, statutory and/or regulatory violations"); <u>Bard v. Seamans</u>, 507 F.2d 765, 770 (10th Cir. 1974) (recognizing "power of the BCMR to consider even constitutional defects").  So does the NDRB.  <u>See</u> 32 C.F.R. § 70.8(a)(4)(iii)(B) (discussing "error in the discharge pertaining to a . . . constitutional provision" among "[i]ssues concerning the propriety of a discharge").

**Deference to Board Decisions.**  Finally, Plaintiff says he will be harmed if review is refused because the ultimate decision of the BCNR or NDRB would be entitled to deference, but, in Plaintiff's view, his constitutional claims "should be afforded the proper standard of independent judicial review."  Pl.'s Opp. at 21-22.  This is not the sort of "injury" that can

counsel in favor of review under <u>Mindes</u>, especially because it assumes, without basis, that an unfavorable decision from the BCNR or NDRB is a foregone conclusion.  In any event, the Court owes the Navy deference whether its action comes before the Court directly or on review of an adverse Board decision.  <u>See</u> <u>Goldman v. Weinberger</u>, 475 U.S. 503, 507 (1986) ("Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society.").

III.    JUDICIAL REVIEW WOULD INTERFERE WITH MILITARY FUNCTIONS INVOLVING EXTENSIVE MILITARY DISCRETION AND EXPERTISE.

The third and fourth <u>Mindes</u> factors – together, the extent of interference with military functions and the extent to which military discretion or expertise is involved – counsel strongly against review in this case.  Def.'s Mem. at 21-23.  Plaintiff suggests otherwise, but does not address the Government's arguments.  Instead, he asserts that this case "involves no sensitive area of military expertise and discretion" because it presents "questions of constitutional law which [the Court] is empowered and suited to decide."  Pl.'s Opp. at 23.  That is a non-sequitur. This case presents both questions of military expertise and judgment, such as whether Plaintiff's words threatened good order and discipline, as well as questions of constitutional law, such as whether § 1344.10 is unconstitutionally vague.  That some of the questions Plaintiff asks the Court to decide are fully within the competence of the Judicial Branch does not change the fact that direct review of Plaintiff's challenge to his discharge would require the Court to interfere with military discretion and expertise, <u>see</u> Def.'s Mem. at 21-23, especially because the military questions Plaintiff asks the Court to decide are antecedent to any constitutional issues.  Indeed, if Plaintiff prevailed on those antecedent questions before the BCNR or the NDRB, the Court would not ever have to reach the constitutional questions Plaintiff presses.  <u>See</u> <u>Lyng v. Nw. Indian Cemetary Protective Ass'n</u>, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

<u>CONCLUSION</u>

For the reasons set forth above and in the Government's opening memorandum, this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1    DATED: February 4, 2013                    Respectfully submitted,

2                                               STUART F. DELERY
                                                Principal Deputy Assistant Attorney General
3
                                                LAURA E. DUFFY
4                                               United States Attorney

5                                               JOHN R. TYLER
                                                Assistant Director
6                                               Federal Programs Branch

7                                               */s/ Christopher R. Hall*
                                                CHRISTOPHER R. HALL
8                                               MATTHEW J.B. LAWRENCE
                                                Attorneys
9                                               United States Department of Justice
                                                Civil Division, Federal Programs Branch
10                                              P.O. Box 883
                                                Washington, D.C. 20044
11                                              Telephone:     (202) 304-4778

12                                              Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        14

1

**CERTIFICATE OF SERVICE**

2           I hereby certify that on February 4, 2013, I electronically filed a copy of the foregoing

3  Memorandum.   Notice of this filing will be sent by email to all parties by operation of the

4  Court's electronic filing system.   Parties may access this filing through the Court's CM/ECF

5  System.

6

7                                        */s/ Matthew J.B. Lawrence*
                                         MATTHEW J.B. LAWRENCE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28