# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY A. STEIN,<br><br>　　　　　Plaintiff,<br>vs.<br>RAY MABUS, Secretary of the Navy,<br><br>　　　　　Defendant. | CASE NO. 3:12-CV-00816-H (BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |

On November 30, Defendant Ray Mabus, Secretary of the Navy ("Defendant" or "Secretary") filed a motion to dismiss the First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff's constitutional challenges to the military's personnel decision are not justiciable under <u>Mindes v. Seaman</u>, 453 F.2d 197 (5th Cir. 1971), and <u>Wenger v. Monroe</u>, 282 F.3d 1068 (9th Cir. 2002). (Doc. No. 42.) On January 25, 2013, Plaintiff Gary A. Stein ("Plaintiff" or "Stein") filed his opposition. (Doc. No. 47.) On February 4, 2013, Defendant filed a reply in support of the motion. (Doc. No. 50.) On February 12, 2013, the Court held a hearing on the matter. John David Loy, Nicholas R. Grey, and Nathaniel J. Oleson appeared for Plaintiff and Matthew J. B. Lawrence appeared for Defendant. After considering the papers submitted and the arguments of counsel, the Court grants the motion to dismiss the First Amended Complaint.
///

**Background**

Plaintiff's First Amended Complaint ("FAC") challenges his administrative separation from the United States Marine Corps. (See generally Doc. No. 37, First Amended Complaint ("FAC").) Plaintiff alleges that his administrative separation hearing and discharge occurred in violation of his Fifth Amendment Right to Due Process and his First Amendment Right to Freedom of Speech. (FAC ¶¶ 36-40.) Plaintiff seeks declaratory and injunctive relief, asking this Court to declare Plaintiff's discharge unconstitutional, require the Navy to recharacterize Plaintiff's discharge as "honorable," and award any owed back pay. (Id. at 10.)

On March 21, 2012, Plaintiff's Commanding Officer initiated administrative separation ("AdSep") proceedings against Plaintiff on the following grounds: (1) "that on or about 1 March 2012, you allegedly made statements regarding the President of the United States that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134, UCMJ;" and (2) that "from on or about November 2010 to the present you allegedly created, administered, and provided content to a Facebook page, as well as other online media sources, in violation of DOD Directive 1344.10." (FAC ¶¶ 12, 14.) Plaintiff allegedly posted the following statements in an online forum for Marine Corps meteorologists ("METOC") on March 2, 2012:

> As an active duty Marine, I say screw Obama and I will not follow all orders from him; will do my job better than the next guy. But as for saluting Obama as Commander in Chief, I will not! . . . You're right it said to defend the–I will support and defend the Constitution of the United States against all enemies, foreign and domestic. Obama is the economic enemy. He is the religious enemy. He is the fundamentally change America enemy. He is the domestic enemy.

(Doc. No. 26-1 ("AdSep Hearing") at 103-04.)[1] Plaintiff also maintained a Facebook page

---

[1] Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The Court may, however, consider the contents of documents specifically referred to and incorporated into the complaint, as well as documents whose "authenticity ... is not contested" and that are "necessarily relie[d]" upon by the complaint. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Additionally, the Court may take judicial notice of matters of public record. Id. Furthermore, "[a]lthough the Mindes test does require courts to make a preliminary assessment of some factual assertions, perhaps including matters outside the pleadings, this does not rise to the level of adjudication of

titled, "Armed Forces Tea Party." (AdSep Hearing at 105-07; FAC ¶ 8-12; Doc. No. 47 at 15.) Plaintiff alleges that during the period of 2010 through 2012, Plaintiff–through activities unconnected with his duties as a United States Marine–spoke, wrote, and otherwise communicated with private citizens regarding matters of public concern. (FAC ¶ 8.) Plaintiff expressed personal opinions on political candidates and issues, and Plaintiff and three other individuals maintained an account on Facebook. (Id.)

The AdSep Notification informed Plaintiff that his commanding officer was recommending that Plaintiff receive a separation from service characterization of "Other Than Honorable Conditions". (FAC ¶ 13.) The Notification also informed Plaintiff of his procedural rights regarding the AdSep proceedings. (FAC Ex. A, Notification of Administration Separation Proceedings ("Notification").)

Plaintiff responded timely to the Notification, and the military scheduled a separation hearing for March 30, 2012. (FAC ¶ 15.) Plaintiff alleges that Defendants were aware that any members of the Judge Advocate who were able to serve as defense counsel to Plaintiff were at a conference and could not begin work on Plaintiff's case until March 23, 2012, at the earliest. (Id. ¶¶ 14-15.)

Plaintiff was appointed military counsel, and on March 23, 2012, Plaintiff's military attorney notified the hearing officer that he had a scheduling conflict on Friday, March 30, 2012. (Id. ¶ 16.) In response, by letter dated March 26, 2012, the military delayed the hearing by one day, until Saturday, March 31, 2012. (Id.) While awaiting the military's response, on March 25, 2012, Plaintiff requested an additional one week in order to allow more adequate preparation for the hearing. (Id.) On March 26, 2012, that request was denied. (Id.)

---

disputed facts. A contrary holding would mean that no Mindes challenge to a trial court's review of a military decision could ever be disposed of by a motion to dismiss, prior to a full determination on the merits." Khalsa v. Weinberger, 779 F.2d 1393, 1401 (9th Cir. 1985). Accordingly, the Court takes judicial notice of the transcript of the AdSep hearing, incorporated by reference into the FAC; the Marine Corps Separation and Retirement Manual, relied upon in and attached in part to the FAC, attached as Exhibit A to Defendant's motion to dismiss; and Brigadier General Yoo's April 22, 2012 Order, referenced in the FAC and attached as Exhibit B to Defendant's motion to dismiss. (See FAC ¶¶ 25, 34; id. Ex. B; Doc. Nos. 26-1, 42-3, 42-4.)

On March 26, 2012, Plaintiff retained civilian counsel pursuant to the Marine Corps Separation and Retirement Manual ("Separation Manual"), section 6304.4(c). (Id. Ex. B.) On March 27, 2012, Plaintiff's civilian counsel requested a ten-day extension of the hearing. (Id. Ex. D.) On March 28, 2012, that request was denied, but the hearing date was moved to April 5, 2012. (Id. Ex. D.) On March 30, 2012, Plaintiff's military attorney submitted a Request for Legal Ethics Opinion. (FAC ¶ 18; id. Ex. E.) On April 4, 2012, the military denied Plaintiff's Request. (FAC ¶ 19.)

On April 3, 2012, Plaintiff filed this lawsuit for declaratory and injunctive relief to enjoin the Defendants' attempts to discharge Plaintiff from the United States Marine Corps with an Other Than Honorable characterization. (Doc. No. 1 ¶ 12.) On April 3, 2012, Plaintiff filed a motion for temporary restraining order. (Doc. No. 2.) After this Court denied Plaintiff's motion for temporary restraining order on April 4, 2012, (Doc. No. 10), the military held Plaintiff's AdSep proceedings on April 5, 2012. (FAC ¶ 25.) Plaintiff appeared at the AdSep hearing with counsel and contested the charges. (FAC ¶ 25; AdSep Hearing.) At the conclusion of the proceedings, the AdSep Board recommended Plaintiff's Other Than Honorable discharge. (FAC ¶¶ 25, 32.)

After the AdSep hearing, Plaintiff filed a renewed motion in this Court for a temporary restraining order to enjoin his discharge. (Doc. No. 15.) On April 6, 2012, the Court held a hearing on Plaintiff's renewed motion and denied Plaintiff's motion for temporary restraining order. (Doc. No. 19.) On April 12, 2012, Plaintiff filed a motion for preliminary injunction. (Doc. No. 21.) Following a hearing on April 13, 2012, the Court denied Plaintiff's motion for a preliminary injunction. (Doc. Nos. 29, 32.)

On April 31, 2012, the Commanding General, Brigadier General Yoo, ordered that Plaintiff be separated within twenty days for reason of "Misconduct, specifically Commission of a Serious Offense," and that Plaintiff's separation be characterized as "Other Than Honorable," the default characterization for a "Misconduct" separation. (FAC ¶ 34; Doc. No. 42-4, April 22, 2012 Order of General Yoo ("Separation Order") ¶ 3; Separation Manual ¶¶ 6107, 6210.1.)  In making his determination, the Commanding General considered the

evidence presented at the AdSep hearing, the written memorandum of a legal advisor addressing objections to Plaintiff's proposed separation and the hearing process, and the written statements, including the "personal and professional opinions and legal arguments expressed within these documents," from several witnesses Plaintiff unsuccessfully sought to introduce at the AdSep hearing. (Separation Order ¶ 2.)

Plaintiff was an enlisted Marine with the United States Marine Corps for nearly ten years. (FAC ¶ 6.) On May 1, 2008, Plaintiff attained the rank of Sergeant. (Id.) Plaintiff's discharge took effect May 4, 2012. (FAC ¶ 6.) Had Plaintiff not been discharged, he would have continued serving until his term of service expired on July 28, 2012. (FAC ¶ 6.) On October 3, 2012, Plaintiff filed his FAC challenging his discharge.

## Discussion

### I. Legal Standards

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting id. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)). "All allegations of material fact are taken as true and construed in the light most favorable to Plaintiffs.

However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir.1996); see also Twombly, 550 U.S. at 555-56.

In this lawsuit, Plaintiff asks the Court to declare Plaintiff's discharge unconstitutional, require the military to recharacterize his discharge as "honorable," and award any owed back pay. (FAC at 10.) "Military discharge decisions are subject to judicial review." Muhammad v. Sec'y of Army, 770 F.2d 1494, 1495 (9th Cir. 1985). The Court may review military decisions if the plaintiff alleges: (1) violation of a constitutional right, federal statute, or military regulations, and (2) exhaustion of administrative remedies, unless exhaustion is excused. Wenger v. Monroe, 282 F.3d 1068, 1072 (9th Cir. 2002).

Plaintiff alleges violations of his First and Fifth Amendment rights. (FAC at 9.) Specifically, Plaintiff alleges that Defendants violated Plaintiff's constitutional rights to due process and freedom of speech by pursuing fundamentally unfair administrative proceedings in retaliation for Plaintiff's protected political speech. (FAC at 1-2, 9-10.) Therefore, Plaintiff meets the first part of the Wenger test.

The second part of the test addresses whether the court excuses the exhaustion of administrative remedies. Exhaustion of administrative remedies is excused "(1) if the intraservice remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised." Wenger, 282 F.3d at 1073. Because Plaintiff raises substantial constitutional questions, exhaustion is excused.

The Court next evaluates the Mindes factors to determine if judicial review of Plaintiff's claims is warranted. Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971); accord Wenger, 282 F.3d at 1072. According to Mindes:

> [A] court weighs four factors to determine whether judicial review of his claims is appropriate. These factors include: (1) The nature and strength of the plaintiff's claim; (2) The potential injury to the plaintiff if review is refused; (3) The extent of interference with military functions; and (4) The extent to which military discretion or expertise is involved.

Wenger, 282 F.3d at 1072. If the Court determines that the action is non-justiciable under this

test, the action is subject to dismissal pursuant to Federal Rule 12(b)(6). See id. at 1078. The Court considers the Mindes factors for each claim in turn.

## II.     Plaintiff's Due Process Claims

### A.     The Nature and Strength of Plaintiff's Due Process Claims

Plaintiff alleges that the Marine Corps' conduct in discharging Plaintiff violated his due process rights. (FAC ¶ 37.) The protections of the Due Process Clause are not triggered by "injury to reputation standing alone." Wenger, 282 F.3d at 1074. "[D]ue process protections apply only if a plaintiff is subjected to 'stigma plus'; i.e., if the state makes a charge against a plaintiff that might seriously damage his standing and associations in the community, and 1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." Wenger, 282 F.3d at 1074 (citing Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1129 (9th Cir. 2001)) (internal quotation marks and alterations omitted). "If a liberty interest is thereby implicated, the employee must be given an opportunity to refute the stigmatizing charge." Mustafa v. Clark County School Dist., 157 F.3d 1169, 1179 (9th Cir. 1998) (citing Codd v.Velger, 429 U.S. 624, 627 (1977)).

Here, Plaintiff had an opportunity to refute the stigmatizing charge. "The essential requirements of [a] pre-termination process are notice and an opportunity to respond." Clements v. Airport Authority of Washoe Cnty., 69 F.3d 321, 332 (9th Cir.1995). Plaintiff alleges in the FAC that he received notice of the AdSep proceedings, notice of the proposed basis for his termination, and notice of the proposed characterization of his separation. (FAC ¶¶ 12-13.) Plaintiff's FAC acknowledges that he was given and utilized the opportunity to appear in person before the AdSep Board to rebut the charges. (FAC ¶ 25.) At the hearing, Plaintiff was represented by legal counsel including two military and three civilian attorneys, and was able to present evidence and call witnesses on his own behalf. (FAC ¶¶ 26, 28, 30.)[2]

---

[2] Plaintiff also claims that his due process rights were violated in particular when he was not permitted to introduce rebuttal evidence to counter the statements by the military's witnesses that Plaintiff's conduct violated good order and discipline. (FAC ¶ 29.) Plaintiff

After the hearing, the discharge decision was made by the Commanding General. (FAC ¶ 34.) Plaintiff makes no allegations that the Commanding General was biased or acted improperly in his decision-making. In sum, Plaintiff was afforded an opportunity to challenge and be heard on the allegations. See Mustafa, 157 F.3d at 1179 (noting Plaintiff need only be given "an opportunity to refute the stigmatizing charges").

Moreover, Plaintiff has the opportunity to appeal his discharge through military administrative channels. See Arnett v. Kennedy, 416 U.S. 134, 157 (1974) ("[A] hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause."); Mustafa, 157 F.3d at 1179 (post-deprivation arbitration hearing was sufficient "opportunity to clear [employee's] name"). The Court concludes that Plaintiff's due process claim lacks sufficient merit to weigh in favor of granting judicial review under the Mindes test.

**B.      Potential Injury to Plaintiff if this Court Defers Judicial Review**

Plaintiff asserts that "the potential injury to him if review is refused militates in favor of review." Wenger, 282 F.3d at 1075 (internal citations and alterations omitted). Plaintiff has administrative remedies to redress his claims of any alleged irregularities in the military AdSep proceedings. See Christoffersen v. Wash. State Air Nat. Guard, 855 F.2d 1437, 1441, 1444 (9th Cir. 1988) (noting that availability of an intra-service remedy tipped second Mindes factor in favor of denying review). Plaintiff may appeal his discharge to the Board for Correction of Naval Records or the Naval Discharge Review Board. Plaintiff may seek a review from the Board for Correction of Naval Records to redress any injustice or error. 10 U.S.C. § 1552(a)(1). The Board for Correction of Naval Records is a "board[] of civilians"

---

argues that the AdSep Board might have ruled differently had they heard the evidence and that their findings, had they ruled favorably for Plaintiff, would have been more binding on the Commanding General in making his ultimate decision. (See Separation Manual ¶ 6309.) Plaintiff's contention is speculative. The Commanding General and the Staff Judge Advocate reviewed the rebuttal opinion evidence proffered and were unpersuaded. (Separation Order at 1, 3.) Moreover, the officer supervising the proceedings excluded expert opinion evidence from both prosecution and defense. (AdSep Hearing at 159-62.) Plaintiff's claim that the exclusion of this evidence at the hearing violated due process lacks merit.

empowered by statute to "correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The review includes the power to consider alleged "constitutional, statutory and/or regulatory violations." 32 C.F.R. § 723.3(e)(4). Should the Board for Correction of Naval Records conclude a Marine's discharge was improper, it can recommend relief including reinstatement, recharacterization of discharge, and back pay. See Rood v. England, 16 Fed. Appx. 706, 709 (9th Cir. 2001); Nichols v. Hughes, 721 F.2d 657, 660 (9th Cir. 1983). If the Board for Correction of Naval Records denies Plaintiff's claim without a hearing, it "is required to provide a statement of its reasons." Chappell v. Wallace, 462 U.S. 296, 303 (1983). Additionally, "[b]oard decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." Id. (internal citations omitted). Plaintiff may also seek redress from the Naval Discharge Review Board, which also has the power to recharacterize his discharge. 10 U.S.C. § 1553; 32 C.F.R. §§ 724.902-03. The Naval Discharge Review Board reviews whether the discharge was appropriate and whether the procedures employed were equitable. Id.

The relief Plaintiff seeks, namely recharacterization of his discharge as honorable, is within the power of both the Board for Correction of Naval Records and the Naval Discharge Review Board to grant. Both boards can address Plaintiff's claims regarding any irregularities in his discharge process. See Lord v. Lehman, 540 F. Supp. 125, 129 (D. Pa. 1982) ("[D]eficiencies in earlier administrative proceedings can be cured by proper BCNR review."). Moreover, the Board for Correction of Naval Records has the capacity to review Plaintiff's discharge for both procedural and constitutional errors, even if it lacks the power to declare Plaintiff's discharge unconstitutional. See 32 C.F.R. § 723.3(e)(4). Additionally, the Board for Correction of Naval Records is statutorily required to resolve certain claims within a specified time. 10 U.S.C. § 1557(a)-(b). In light of the available administrative remedies, Plaintiff "has not pointed to any significant potential injury that judicial review of his case could obviate, [and therefore] the second Mindes factor militates against reviewability." Wenger, 282 F.3d at 1075.

**C.   Extent of Interference With Military Functions & The Extent to Which Military Expertise is Involved**

The third and fourth <u>Mindes</u> factors, "[t]he extent of interference with military functions" and "[t]he extent to which military discretion or expertise is involved," are generally considered together. <u>Wenger</u>, 282 F.3d at 1075. Personnel decisions are treated with a high level of caution against review by civilian courts. See <u>Christoffersen</u>, 855 F.2d at 1444 (citing <u>Dilley v. Alexander</u>, 603 F.2d 914, 919 (D.C. Cir.1979) (deference to military discretion is at its height when personnel decisions such as discharge are challenged)); <u>Johnson v. Orr</u>, 617 F. Supp. 170, 172 (E.D. Cal.1985), aff'd mem. 787 F.2d 597 (9th Cir.1986); <u>see also Muhammad</u>, 770 F.2d at 1495. Congress "has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure," including among other things, the right of a discharged Marine to seek review of his discharge before the Board for Correction of Naval Records. <u>Chappell</u>, 462 U.S. at 302-03 (citing 10 U.S.C. § 1552). "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment." <u>Id.</u> at 300.

Significantly, Plaintiff's claims implicate military expertise. Plaintiff's due process claims allege that the AdSep hearing and procedure violated military regulations, a determination better suited for the Board for Correction of Naval Records or the Naval Discharge Review Board to make. (<u>See</u> FAC ¶¶ 22-23, 26-31.) Plaintiff asks the Court to substitute its judgment for the military's personnel decision-making, and its interpretation of military regulations and procedures, rather than permit military boards the opportunity for review. The Court is reluctant to do so. See <u>Christofferson</u>, 855 F.2d at 1444-45 ("[C]ourts must give great deference to the professional judgment of military authorities." (quoting <u>Goldman</u>, 475 U.S. at 507)). Based on the <u>Mindes</u> factors, the Court declines to "involve the court in [an] area of military expertise and discretion." <u>Wenger</u>, 282 F.3d at 1076; <u>Gonzalez v. Dep't of Army</u>, 718 F.2d 926, 930 (9th Cir.1983).

## II. Plaintiff's First Amendment Claims

### A. Nature and Strength of Plaintiff's First Amendment Claims

Plaintiff alleges that his "speech was protected by the First Amendment to the United States Constitution and did not violate Article 134 of the Uniform Code of Military Justice, as construed by civilian and military courts in light of the First Amendment." (FAC ¶¶ 38-39.) Plaintiff additionally alleges that his speech either did not violate DOD Directive 1344.10 or that, if Plaintiff did violate 1344.10, then 1344.10 violates the First Amendment as applied to Plaintiff. (Id. ¶ 40.) Moreover, Plaintiff alleges that the Marine Corps retaliated against him with an Other Than Honorable discharge because of the content and viewpoint of his political speech. (FAC ¶ 1.)

To prevail on a First Amendment retaliation claim, Plaintiff must show (1) his "speech was constitutionally protected-that it addressed a matter of public concern," and (2) that "the speech in question was a 'substantial or motivating factor' for the adverse employment action." Pool v. VanRheen, 297 F.3d 899, 905-06 (9th Cir. 2002) (citing Connick v. Myers, 461 U.S. 138, 146 (1983); Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996)). "Even if the employee meets the burden of demonstrating that the relevant speech was a matter of public concern, such speech can be subject to government restriction" if the public employer's "legitimate administrative interests outweigh the employee's interest in freedom of speech." Id. (internal quotation marks omitted); see also Christoffersen, 855 F.2d at 1443 ("We may assume without deciding that the Connick test applies to appellants' exercise of military authority in which they addressed a matter of public concern. . . ."). "[E]ven an adverse action based on protected speech 'may be justified when legitimate countervailing government interests are sufficiently strong.'" CarePartners, LLC v. Lashway, 545 F.3d 867, 879-80 (9th Cir. 2008) (quoting Umbehr, 518 U.S. at 675); see also Rankin v. McPherson, 483 U.S. 378, 385 (1987) ("The determination whether a public employer has properly discharged an employee for engaging in speech requires a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its

employees." (quoting Pickering v. Board of Education, 391 U.S. 563, 568 (1968)) (internal alterations omitted)).

The First Amendment protects speech in the military, unless it "interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops." United States v. Wilcox, 66 M.J. 442, 448 (C.A.A.F. 2008). To show "prejudice of good order and discipline" under Article 134 "[i]n the context of the First Amendment," the military must demonstrate a "reasonably direct and palpable connection between [the aggrieved's] statements and the military mission." Id. at 448 (internal quotation marks omitted). "The government does not have the burden of showing a causal relationship between [the statements] and specific examples of weakened loyalty, discipline or morale," but rather need only show "a clear tendency of this type of speech to diminish them." Ethredge v. Hail, 56 F.3d 1324, 1327-28 (11th Cir. 1995) (quoting Priest v. Secretary of Navy, 570 F.2d 1013, 1018 (D.C. Cir. 1977)) (internal quotation marks and alterations omitted); see also Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 810 (1985) (noting "the Government need not wait until actual havoc is wreaked to restrict access to a non-public forum" under First Amendment forum-analysis test). The Supreme Court previously rejected a First Amendment challenge to Article 134. Parker v. Levy, 417 U.S. 733 (1974).

Plaintiff's administrative separation proceedings claimed that Plaintiff made "statements regarding the President . . . that are prejudicial to good order and discipline, as well as service discrediting in violation of Article 134,UCMJ." (FAC ¶ 12.) The basis for the charge was that Plaintiff allegedly made the following statements on March 1, 2012, during a Facebook dialogue with other marines on the Marine Corps "METOC" (meteorologist) group page:

> As an active duty Marine, I say screw Obama and I will not follow all orders from him; will do my job better than the next guy. But as for saluting Obama as Commander in Chief, I will not! . . . You're right it said to defend the–I will support and defend the Constitution of the United States against all enemies, foreign and domestic. Obama is the economic enemy. He is the religious enemy. He is the fundamentally change America enemy. He is the domestic enemy.

(FAC ¶ 12; AdSep Hearing at 103-04.) Article 134 prohibits "all disorders and neglects to the prejudice of good order and discipline in the armed forces [and] all conduct of a nature to bring discredit upon the armed forces." 10 U.S.C. § 934.

After a hearing, the Administrative Separation Board, the Staff Judge Advocate, and the Commanding General concluded that Plaintiff's statements in a forum accessible to other Marines, including his subordinates, labeling the President as the "economic . . . religious . . . [and] domestic enemy" of the United States, and that "as an active duty Marine" he would "not follow all orders from" or salute the Commander-in-Chief, showed prejudice to good order and discipline in violation of Article 134. (Separation Order at 1, 4.)[3] Military officers are better suited than civilian courts to determine, after a hearing, whether Plaintiff's conduct disrupted good order and discipline in the service. See Ethredge, 56 F.3d at 1327; Khalsa v. Weinberger, 779 F.2d 1393, 1400 n.4 (9th Cir. 1985); see also Goldman v. Weinberger, 475 U.S. 503, 507 (1986) (noting courts must "give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest").

The military's interest in preserving order, discipline, and morale can outweigh an individual soldier's right to free speech. Wilcox, 66 M.J. at 448; see also Goldman, 475 U.S. at 507 ("The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps."); Greer v. Spock, 424 U.S. 828, 840 (1976); Christoffersen, 855 F.3d at 1443 ("We . . . hold that whatever First Amendment interests are implicated by [the servicemen's exercise of free speech] are outweighed by Washington State's strong interest in promoting the efficiency of

---

[3] The government points to evidence from the hearing that Plaintiff's actions threatened good order and discipline, including, for example, testimony from a fellow Marine Sergeant about an incident with Plaintiff. (AdSep Hearing at 163-66); see Ethredge, 56 F.3d at 1328 & n.3 (holding that a military commander had supported his assertion that a bumper sticker disparaging the President would undermine military order, discipline and responsiveness where the record showed that service members had complained that the sticker was offensive and anonymous callers had contacted the commander and said that they intended to break the windows of the truck displaying the bumper sticker).

the military services it provides through the Washington Guard.").

Plaintiff also alleges that his statements taken in context did not prejudice order and discipline and that, even if he did violate Article 134, his behavior did not amount to a "serious offense" meriting an Other Than Honorable discharge in light of applicable military regulations. (FAC ¶¶ 9-10, 28, 39-40; Doc. No. 47 at 10-12.) Plaintiff had an opportunity to present evidence to the AdSep Board and the Commanding General regarding the context of his statements and whether his conduct constituted a "serious offense" under the applicable regulations. (See, e.g., AdSep Hearing at 260-64.) The Commanding General considered Plaintiff's arguments and evidence introduced at the AdSep hearing, as well as the expert opinions that Plaintiff sought to introduce at the hearing. (Separation Order at 1.) The Commanding General also reviewed Plaintiff's service record, including his awards and commendations, in making the decision, but concluded that an Other Than Honorable separation was warranted based on Plaintiff's behavior. (Separation Order at 3.)

Plaintiff may challenge whether his conduct qualifies as a serious offense with the appropriate administrative appellate boards.[4] Whether Plaintiff's conduct constitutes a serious offense and whether the conduct prejudiced order and discipline are issues better left for the Board for Correction of Naval Records or the Naval Discharge Review Board to resolve. See Khalsa, 779 F.2d at 1400 & n.4 (holding that determinations regarding order, discipline, and morale are judgments within military expertise that civilian courts should hesitate before second-guessing). In sum, Plaintiff's claim that his discharge violated the First Amendment, to the extent that his discharge was based on a violation of Article 134 of the UCMJ, lacks sufficient merit to weigh in favor of review under the Mindes test.

As to the claimed violation of DOD Directive 1344.10, Plaintiff alleges that the military has not followed its own rules and regulations. (FAC ¶¶ 22, 40.) Additionally, Plaintiff asserts

---

[4] Plaintiff additionally argues that the charges that formed the basis of his discharge did not apply to Plaintiff because he was not a Commissioned Officer. (FAC ¶ 28.) This is an argument concerning military law that is better raised to the Board for Correction of Naval Records or the Naval Discharge Review Board.

that DOD Directive 1344.10 is vague as it applies to social media, "unconstitutionally restricts core political speech, and/or unlawfully discriminates, based on content or viewpoint of speech." (Id. ¶ 40.) A court may invalidate a regulation for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2718 (2010).[5] "[W]hen a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply. But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Id. at 2719. (internal citations and quotation marks omitted). Additionally, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982); Holder, 130 S. Ct. 2719.

DOD Directive 1344.10, "Political Activities by Members of the Armed Forces," generally instructs "members on active duty" that they "should not engage in partisan political activity," and that "members not on active duty should avoid inferences that their political activities imply or appear to imply official sponsorship, approval, or endorsement." DOD Directive 1344.10 § 4. The Directive lists numerous political activities either permitted or prohibited in light of the general policy. Id. § 4.1. For example, the Directive permits a service member to express "a personal opinion on political candidates and issues" unless the speaker is identified "as a representative of the Armed Forces" and fails to "clearly state that the views expressed are those of the individual only and not those of the Department of Defense." Id. § 4.1.1.6. In contrast, "solicit[ing] votes for a particular candidate or issue" is flatly prohibited for active service members. Id. § 4.1.2.3.

The Supreme Court upheld analogous provisions prohibiting "partisan political activity" by civilian federal employees against a vagueness challenge. U.S. Civil Service Comm'n v.

---

[5] A "void for vagueness" challenge arises under the Due Process Clause, although it may implicate the First Amendment. See Holder, 130 S. Ct. at 2718.

Nat'l Ass'n of Letter Carriers, AFL-CIO, 413 U.S. 548, 577-79 (1973) ("There might be quibbles about the meaning of taking an 'active part in managing' or about 'actively participating in . . . fund-raising' or about the meaning of becoming a 'partisan' candidate for office; but there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.")

In the military context, comments that adversely implicate "good order and discipline" may by proscribed by the military. Wilcox, 66 M.J. at 448; see also Parker, 417 U.S. at 760-61 (holding fact that "there may lurk at the fringes . . . some possibility that conduct which would be ultimately held to be protected by the First Amendment could be included within [a military order's] prohibition" was "insufficient to invalidate" the order); accord Ethredge, 56 F.3d at 1329. In this case, the AdSep Board and the Commanding General concluded that Plaintiff had fair notice that his conduct was in violation of DOD Directive 1344.10. Unlike Plaintiff's comments on the "Armed Forces Tea Party" Facebook page, the record fails to indicate that Plaintiff's post on the METOC page included a disclaimer that he was expressing his own personal opinion and was not speaking as a representative of the armed forces as he had been advised to do. (FAC ¶ 9; AdSep Hearing at 103-04.) Plaintiff's METOC post, accessible to junior Marines, stated in part that Plaintiff, "as an active duty Marine," would not salute "Obama as Commander in Chief." (Id.) The AdSep Board and the Commanding General concluded that, in light of the record, Plaintiff acted in violation of Directive 1344.10 and affected good order and discipline. (Separation Order at 1.) The Court defers to the professional judgment of military authorities on the relative importance of a particular military interest. See Goldman, 475 U.S. at 507; Christofferson, 855 F.2d at 1444-45.

Additionally, if Plaintiff's discharge can be sustained under Article 134, it is not necessary to review the validity of Directive 1344.10. See Webb v. Sloan, 330 F.3d 1158, 1167-68 (9th Cir. 2003) (stating even when "one of the theories submitted to the jury was

legally defective" a general jury verdict can be upheld "when we are able to construe a general verdict as attributable to a theory submitted to the jury that was viable").[6] In light of the Mindes factors, the Court need not determine all hypothetical applications of Directive 1344.10 to social media for other service members.

The Court concludes that the strength of Plaintiff's First Amendment claims do not weigh in favor of judicial review under the Mindes test. See Christoffersen, 855 F.3d at 1443 (holding state's "strong interest in promoting the efficiency of military services it provides" outweighed service member's First Amendment interest in speaking about matters of public concern, and that the "ability . . . to make even routine personnel decisions would be severely impaired if we were to hold otherwise").

**B.    Potential Injury if this Court Defers Review**

Plaintiff argues that his Other Than Honorable discharge irreparably and immediately harms Plaintiff in violating his First Amendment rights and in potentially depriving him of certain veterans' benefits depending on the ultimate characterization of his discharge. (Doc. No. 47 at 20-22.); see Beck v. West, 13 Vet. App. 535, 539 (2000) ("a discharge under [other than honorable] conditions for willful and persistent misconduct will render a claimant ineligible for veterans benefits"). But Plaintiff may seek recharacterization of his discharge as honorable and "any other actions consistent with an honorable discharge" from the Board for Correction of Naval Records or the Naval Discharge Review Board. See Rood, 16 Fed. Appx. at 709; Nichols, 721 F.2d at 660. The Board for Correction of Naval Records is

---

[6] Although not directly alleged in the FAC, Plaintiff additionally claims that the military prosecutor's reference to this lawsuit during the hearing violated Plaintiff's right to petition this Court for redress and amounted to retaliation. (Doc. No. 47 at 16-17.) Significantly, Plaintiff's commanding officer initiated Plaintiff's AdSep proceedings before the lawsuit was filed. Plaintiff makes no allegation that the Commanding General acted improperly in making the final decision regarding Plaintiff's discharge. See Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) ("[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision. At that point, the burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct." (quoting Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977)); cf Schweiker v. McClure, 456 U.S. 188, 195 (1982) (in proving bias, plaintiff must overcome a "presumption that [government officials] are unbiased").

empowered to hear constitutional as well as regulatory challenges to Plaintiff's discharge, and a final decision by the Board is reviewable by a district court. See 32 C.F.R. § 723.3(e)(4); Chappell, 462 U.S. at 303. In light of available administrative remedies, the second Mindes factor weighs against judicial review of Plaintiff's First Amendment claims. See Wenger, 282 F.3d at 1075 (holding because plaintiff "has not pointed to any significant potential injury that judicial review of his case could obviate, the second Mindes factor militates against reviewability"); Christoffersen, 855 F.2d at 1441, 1444 (noting that availability of intra-service remedy tipped second Mindes factor in favor of denying review).

### C. Extent of Interference With Military Functions & The Extent to Which Military Expertise is Involved

Defendant argues that this Court would interfere with the proper functioning of the military regarding matters of military discretion if this Court reviews Plaintiff's First Amendment claims. Personnel decisions are treated with a high level of caution against review by civilian courts. Christoffersen, 855 F.3d at 1444. Moreover, Plaintiff's First Amendment claims allege that Plaintiff did not violate either Article 134 of the UCMJ or DOD Directive 1344.10, issues squarely within the military's unique expertise. (FAC ¶¶ 39-40.) Plaintiff's additional argument that his conduct did not amount to a "serious offense" meriting discharge under the applicable military regulations likewise is a determination better left to the professional judgment of the military, such as through an appeal to the Board for Correction of Naval Records or the Naval Discharge Review Board. See Christofferson, 855 F.2d at 1444-45 ("[C]ourts must give great deference to the professional judgment of military authorities." (quoting Goldman, 475 U.S. at 507)). Further, the Board for Correction of Naval Records is empowered to hear constitutional as well as regulatory challenges to Plaintiff's discharge. See 32 C.F.R. § 723.3(e)(4).

Congress "has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure," including among other things, the right of a discharged Marine to seek review of his discharge before the Board for Correction of Naval Records. Chappell, 462 U.S. at 302-03. Plaintiff

asks the Court to substitute its judgment for the military's personnel decision-making, and the Court's interpretation of military regulations. Whether Plaintiff's actions merited discharge as a serious offense and the impact of Plaintiff's actions on military morale, discipline, and defense are issues peculiarly within the expertise and judgment of the military. Khalsa, 779 F.2d at 1400 n.4. Accordingly, the final two Mindes factors weigh against granting judicial review. See Wenger, 282 F.3d at 1076; Gonzalez, 718 F.2d at 930.

### IV. The Balance of the Mindes Factors Weighs Against Review

The Court concludes that "[t]he nature and strength of [plaintiff's] substantive claim[s are] weak . . . and the potential for interference with essential military prerogatives, if we reviewed this case on the merits, would be great." Sebra v. Neville, 801 F.2d 1135, 1142 (9th Cir. 1986); accord Wenger 282 F.3d at 1077. If this Court declines to hear Plaintiff's case, Plaintiff may seek review of his discharge before the Board for Correction of Naval Records or the Naval Discharge Review Board. Thereafter, Plaintiff may appeal a final decision from either board to the district court should he have grounds to state a constitutional claim. Accordingly, this Court declines review of Plaintiff's claims based on the Mindes factors. See Wenger, 282 F.3d at 1076.

### Conclusion

The Court concludes that this action is non-justiciable under Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), and Wenger v. Monroe, 282 F.3d 1068 (9th Cir. 2002). Accordingly, the Court grants Defendant's motion to dismiss the First Amended Complaint. Plaintiff requested leave to amend if the Court dismissed his First Amended Complaint. As a result, the Court grants Plaintiff thirty days from the date of this order to cure the deficiencies, if he can do so, in an amended complaint.

**IT IS SO ORDERED.**

DATED: February 14, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT